UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC**, | |
| Plaintiff, | Civil Action No. 6:22-cv-00050 |
| - vs. - | **Jury Trial Demanded** |
| **Rhodium Enterprises, Inc.**;<br>**Rhodium Technologies LLC**;<br>**Rhodium 10mw LLC**;<br>**Rhodium 2.0 LLC**;<br>**Rhodium 30mw LLC**;<br>**Rhodium Encore LLC**;<br>**Rhodium Industries LLC**;<br>**Rhodium JV LLC**;<br>**Rhodium Renewables LLC**;<br>**Rhodium Shared Services LLC**;<br>**Rhodium Shared Services PR Inc.**;<br>**Chase Blackmon;**<br>**Cameron Blackmon;** and<br>**Nathan Nichols**, | |
| Defendants. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Midas Green Technologies, LLC ("MGT" or "Plaintiff") hereby brings this action for patent infringement against each of Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium 10mw LLC, Rhodium 2.0 LLC, Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium Industries LLC, Rhodium JV LLC, Rhodium Renewables LLC, Rhodium Shared Services LLC, and Rhodium Shared Services PR Inc. (together "Rhodium"), as well as against each of Chase Blackmon, Cameron Blackmon, and Nathan Nichols in their individual capacities (together "the Individual Defendants").

MGT alleges infringement of U.S. Patent No 10,405,457, entitled "Appliance Immersion Cooling System" (the '457 patent) and U.S. Patent No. 10,820,446, entitled "Appliance

Immersion Cooling System" (the '446 patent), at least by reason of Defendants' continued operation of their infringing bitcoin mining facility in Rockdale, Texas, as well as their contemplated operation of their second bitcoin mining facility presently under construction in Temple, Texas.

True and correct copies of the '457 and '446 patents (together "Patents-in-Suit" or "Asserted Patents") are attached as Exhibits A and B, respectively.

**Parties**

1.      Plaintiff Midas Green Technologies, LLC is a Texas limited liability company with its principal place of business at 8107 Springdale Road, Austin, Texas 78724. MGT designs and builds immersion cooling solutions for use in data centers and cryptocurrency mining facilities. MGT has been an innovative pioneer in immersion cooling technology.

2.      On information and belief, Defendant Rhodium Enterprises, Inc. is a Delaware corporation formed on April 22, 2021. On information and belief, Rhodium Enterprises, Inc. conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to its most recent SEC filing, Rhodium Enterprises, Inc. is a holding company and the sole managing member of Defendant Rhodium Technologies LLC. *See* Amended SEC Form S-1, Rhodium Enterprises, Inc. (Dec. 14, 2021), *available at* https://sec.report/Document/0001213900-21-065116/fs12021a4_rhodium.htm.

3.      On information and belief, Defendant Rhodium Technologies LLC is a Delaware limited liability company formed on October 23, 2020. On information and belief, Rhodium Technologies LLC was formerly known as Rhodium Enterprises LLC. On information and belief, Rhodium Technologies LLC is a subsidiary of Defendant Rhodium Enterprises, Inc. On information and belief, Rhodium Technologies LLC conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to the foregoing most-recent Amended SEC Form S-1 filing,

Defendant Rhodium Technologies LLC is a holding company. In the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is known as "Rhodium Holdings."

4.      On information and belief, Defendant Rhodium 10mw LLC is a Delaware limited liability company formed on March 12, 2021. On information and belief, Rhodium 10mw LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 10mw LLC conducts business in Texas, including in this District, and including in the Waco Division.

5.      On information and belief, Defendant Rhodium 2.0 LLC is a Delaware limited liability company formed on December 17, 2020. On information and belief, Rhodium 2.0 LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 2.0 LLC conducts business in Texas, including in this District, and including in the Waco Division.

6.      On information and belief, Defendant Rhodium 30mw LLC is a Delaware limited liability company formed on April 1, 2020. On information and belief, Rhodium 30mw LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 30mw LLC conducts business in Texas, including in this District, and including in the Waco Division.

7.      On information and belief, Defendant Rhodium Encore LLC is a Delaware limited liability company formed on January 1, 2021. On information and belief, Rhodium Encore LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Encore LLC conducts business in Texas, including in this District, and including in the Waco Division.

8.      On information and belief, Defendant Rhodium Industries LLC is a Delaware limited liability company formed on May 17, 2021. On information and belief, Rhodium Industries LLC is an operating company and a subsidiary of Defendant Rhodium Technologies

LLC. On information and belief, Rhodium Industries LLC conducts business in Texas, including in this District, and including in the Waco Division.

9.      On information and belief, Defendant Rhodium JV LLC is a Delaware limited liability company formed on April 1, 2020. On information and belief, Rhodium JV LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium JV LLC conducts business in Texas, including in this District, and including in the Waco Division.

10.      On information and belief, Defendant Rhodium Renewables LLC is a Delaware limited liability company formed on March 17, 2021. On information and belief, Rhodium Renewables LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Renewables LLC conducts business in Texas, including in this District, and including in the Waco Division.

11.      On information and belief, Defendant Rhodium Shared Services LLC is a Delaware limited liability company formed on December 23, 2020. On information and belief, Rhodium Shared Services LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Shared Services LLC conducts business in Texas, including in this District, and including in the Waco Division.

12.      On information and belief, Defendant Rhodium Shared Services PR Inc. is a Puerto Rico corporation formed on November 24, 2020. On information and belief, Rhodium Shared Services PR Inc. is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Shared Services PR Inc. conducts business in Texas, including in this District, and including in the Waco Division. On information and belief, the business of Defendant Rhodium Shared Services PR Inc. includes facilitating the employment of personnel for Rhodium Enterprises, Inc. and its subsidiaries.

13.      The foregoing SEC filing describes each of Defendants Rhodium 10mw LLC, Rhodium 2.0 LLC, Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium Industries LLC, Rhodium JV LLC, Rhodium Renewables LLC, Rhodium Shared Services LLC, and Rhodium

Shared Services PR Inc. as operating subsidiaries of Rhodium Technologies LLC. Accordingly, these defendants will be collectively be referenced herein as "the Rhodium Operating Subsidiaries."

14.     On information and belief, Defendant Chase Blackmon is a Texas resident and is a co-founder and the Chief Operating Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Chase Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Chase Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies by way of an entity called Imperium Investment Holdings LLC. Imperium is the majority and controlling owner of both Rhodium entities. According to the foregoing SEC filing, Chase Blackmon controls 25% of the voting interests in Imperium. On information and belief, Defendant Chase Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, and/or of the Rhodium Operating Subsidiaries.

15.     On information and belief, Defendant Cameron Blackmon is a Texas resident and is a co-founder and the Chief Technology Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Cameron Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Cameron Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium Investment Holdings LLC. According to the foregoing SEC filing, Cameron Blackmon controls 25% of the voting interests in Imperium. On information and belief, Defendant Cameron Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, and/or of the Rhodium Operating Subsidiaries.

16.     On information and belief, Defendant Nathan Nichols is a Texas resident and is a co-founder and the Chief Executive Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Nathan Nichols serves on the board of directors for Rhodium Enterprises. Nathan Nichols also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium Investment Holdings LLC. According to the foregoing SEC filing, Nathan

Nichols controls 25% of the voting interests in Imperium. On information and belief, Defendant Nathan Nichols personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, and/or of the Rhodium Operating Subsidiaries.

17.     On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries operate in actuality as a single operating entity and are alter egos of each other. For example, throughout the previously referenced SEC filings of Defendant Rhodium Enterprises, references to "we" and "our" describe the operations of the various operating subsidiaries as a collective entity, "Rhodium." *See id.* at 62 ("'Rhodium,' 'we,' and 'us' refers to (i) each of Rhodium Holdings and Rhodium JV's wholly and majority-owned subsidiaries as of the period from April 1, 2020 to December 31, 2020 and (ii) Rhodium and its subsidiaries for the nine months ended September 30, 2021. During the period ended December 31, 2020, Rhodium operated through its wholly and majority-owned subsidiaries."); F-2 ("Rhodium Enterprises, Inc., the issuer in this offering (together with its wholly owned subsidiaries, "Rhodium Enterprises" or the "Company"); F-16 ("The Company, together with its subsidiaries, operates a digital asset mining operation, which utilizes specialized computers (also known as "miners") using application-specific integrated circuit ("ASIC") chips to solve complex cryptographic algorithms in order to support the Bitcoin blockchain (in a process known as "solving a block"), in exchange for digital asset (Bitcoin) rewards."). Specifically, "Rhodium Enterprises is the sole managing member of Rhodium Holdings, controls, and is responsible for all operational, management and administrative decisions related to Rhodium Holdings' business and consolidates the financial results of Rhodium Holdings and its subsidiaries." *Id.* at F-16. Each Rhodium operating subsidiary is an agent of Rhodium Holdings and Rhodium Holdings' owners and operators, Chase Blackmon, Cameron Blackmon, and Nathan Nichols. Rhodium Holdings and Rhodium do not maintain separate financial statements and otherwise do not maintain corporate separateness. *See id.* at F-17 ("The condensed consolidated financial statements include the accounts of Rhodium

Enterprises Inc. and its respective subsidiaries. **All inter-company accounts, balances, and transactions have been eliminated.**"). On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries therefore act as a common enterprise, their actions ultimately being directed by the Individual Defendants. On information and belief, the purpose of foregoing corporate structure of is to illegitimately shield Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC, and in turn the Individual Defendants, from liability for the actions of their operating subsidiaries, through which each conduct all business.

## Jurisdiction

18.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19.      Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to their extensive business in this District, including by reason of their infringement alleged herein. Specifically, on information and belief, Defendants own and operate an infringing bitcoin mining facility in Rockdale, Texas. *See* Amended SEC Form S-1 at 1 (referring to Defendants' Rockdale location as the "initial Texas site"). Rockdale, Texas is located in Milam County, which is within the Western District of Texas. In addition, on information and belief, Defendants' "second Texas site" is currently under construction in Temple, Texas. This second location is scheduled to open in 2022, *see id*. at 4. Temple, Texas is located in Bell County, which is also within the Western District of Texas.

20.      On information and belief, Defendants have used, and are using, the claimed technology of the Asserted Patents within this District and within Texas, thereby committing acts of patent infringement. Defendants have derived revenues from these infringing activities within the District and state. Defendants regularly conduct business in this District and state, deriving

substantial revenue therefrom, and therefore have committed purposeful acts in this District and state such that they should reasonably anticipate being haled into this Court.

## Venue

21.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). All Defendants have at least two places of business in this District and in the Waco Division, i.e., in Rockdale, Texas and in Temple, Texas. On information and belief, Defendants have committed acts of infringement, or a portion thereof, at these two locations within this District and within this Division.

## The Asserted Patents

### A.   The '457 Patent

22.     U.S. Patent No. 10,405,457 (the '457 patent), entitled "Appliance Immersion Cooling System," was duly and legally issued on September 3, 2019 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 14/355,533, was filed on April 30, 2014. A true and correct copy of the '457 patent is attached as Exhibit A and incorporated by reference.

23.     MGT is the assignee of all right, title, and interest in the '457 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '457 patent. Accordingly, MGT possesses the exclusive right and has standing to prosecute the present action for infringement of the '457 patent by Immersion.

### B.       The '446 Patent

24.     U.S. Patent No. 10,820,446 (the '446 patent), entitled "Appliance Immersion Cooling System," was duly and legally issued on October 27, 2020 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 16/243,732, was filed on January 9, 2019, and is a continuation of the application which issued as the '457 patent

filed on April 30, 2014. A true and correct copy of the '446 patent is attached as Exhibit B and incorporated by reference.

25.     MGT is the assignee of all right, title, and interest in the '446 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '446 patent. Accordingly, MGT possesses the exclusive right and has standing to prosecute the present action for infringement of the '446 patent by Immersion.

**Rhodium and Its Infringement**

26.     According to the Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021, Rhodium is "an industrial-scale digital asset technology company" that "mine[s] bitcoin" with a "fully integrated" liquid cooling system. Amended SEC Form S-1 at 1. Rhodium's "founders spent the previous four years developing, testing and collecting field operational data to optimize the application of [their] liquid-cooling technology to mining bitcoin." *Id.* Rhodium designs, builds, and operates data centers, also called "mining farms," consisting of "bitcoin miners" (i.e. high-powered computers) submerged in dielectric cooling fluid within specialized tank modules. *Id*. at 1, 22. The miners mine bitcoin and thus generate revenue. The liquid cooling system permits Rhodium to "predictably and consistently mine more bitcoin with fewer miners" by "optimiz[ing] the hash rate, or processing power" of the miners. *Id*. at 1.

27.     According to the foregoing SEC filing, Rhodium does not sell immersion cooling products to third parties, but instead is a fully integrated bitcoin mining operation that designs, builds, and then operates its own immersion cooling systems to mine bitcoin and generate revenue. *Id.* at 1. On information and belief, Rhodium operates as a common enterprise controlled by Rhodium Enterprises and/or by Rhodium Technologies, and/or by their officers and primary shareholders, Defendants Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

28.     On information and belief, Rhodium operates a bitcoin mining facility in Rockdale, Texas. That facility includes liquid immersion cooling systems and tank modules that infringe the '457 and '446 patents. Below are images from Rhodium's Rockdale facility showing the infringing liquid immersion cooling systems and tank modules:

 

*See, e.g., "*Investor Presentation 17.02.2020. In connection with proposed acquisition of Distributed Ledger Technologies Ireland, Ltd, Element ASA" (February 17, 2020), *available at* https://dltx.com/uploads/images/Reports-and-Documents/Presentations-and-Docs/Exemption-Doc/Element_Investor_Presentation_210217.pdf

29.     On information and belief, therefore, Defendants have directly and indirectly infringed at least claim 6 of the '457 patent and at least claim 6 of the '446 patent, as detailed in the claim charts attached as Exhibits C and D, respectively.

### Defendants' Knowledge of the Asserted Patents, Their Infringements, and the Prior Claim Construction Order

30.     All Defendants have had actual notice of the Asserted Patents and their own infringements for some time. On information and belief, the Individual Defendants became

aware of the '457 patent at least as early as February 2020. At that time, on information and belief, the Individual Defendants were active officers and shareholders of a company called Immersion Systems LLC. According to the Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021, Immersion Systems was founded in 2018 to sell immersion cooling systems as a product to third parties, and Immersion Systems is majority owned by Defendants Cameron Blackmon and Chase Blackmon.

31.     On or about February 7, 2020, MGT sent Immersion Systems a letter explaining how the immersion cooling systems products of Immersion Systems were infringing the '457 patent, including with a detailed claim chart. On information and belief, each of the Individual Defendants received and actually read MGT's February 7, 2020 letter around the time that it was sent. On information and belief, each of the Individual Defendants had actual knowledge of the '457 patent, as of February 2020. On information and belief, each of the Individual Defendants had actual notice that the immersion cooling systems products of Immersion Systems infringed the '457 patent, as of February 2020.

32.     Because of the similarity between the immersion cooling systems products of Immersion Systems and the immersion cooling systems used by Rhodium, each of the Individual Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '457 patent, as of February 2020.

33.     On information and belief, all of the Rhodium defendants in existence as of February 2020 had actual and constructive notice of the '457 patent, at least by virtue of the actual notice of the '457 patent possessed by the Individual Defendants.

34.     On information and belief, all of the Rhodium defendants in existence as of February 2020 had actual notice that the immersion cooling systems of Rhodium infringed the '457 patent, as of February 2020.

35.     After Immersion Systems did not respond to a second letter from MGT, MGT filed suit against Immersion Systems on May 29, 2020 in the Northern District of Texas, *Midas Green Technologies, LLC v. Immersion Systems LLC,* No. 4:20-cv-00555-O (hereafter, "the

Immersion Systems Lawsuit."). According to the Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021, Immersion Systems shut down its operations shortly after being sued by MGT, and Immersion Systems is no longer operational as of 2020.

36.     Still, the Immersion Systems Lawsuit continued, and on November 24, 2020, MGT filed an amended complaint which added allegations of infringement against Immersion Systems of MGT's then recently-issued '446 patent. On information and belief, each of the Defendants gained actual notice of the '446 patent in November of 2020, by virtue of the filing by MGT of its amended complaint. On information and belief, each of the Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '446 patent, by virtue of the filing by MGT of its amended complaint.

37.     During the course of the Immersion Systems Lawsuit, MGT and Immersion Systems submitted a Joint Claim Construction Chart (Dkt. 82 & 82-1) in which the parties agreed to the proper construction of two claim terms, i.e., "weir" and "plenum," and in which the parties further agreed that seventeen other claim terms should be afforded their plain and ordinary meaning. A true and correct copy of that filing is attached as Exhibit E.

38.      On November 22, 2021, the Court in the Immersion Systems Litigation issued its claim construction order, rejecting arguments from Immersion System that the '457 and '446 patents were invalid as indefinite, and adopting MGT's proposed constructions as plain and ordinary meaning, with regard to two disputed claim terms. A true and correct copy of the Court's claim construction order is attached as Exhibit F. In its claim construction order, the Court also adopted the proposed constructions for nineteen agreed-upon terms and phrases as set forth in the parties' Joint Claim Construction Chart (Dkt. 82 & 82-1).

39.     On information and belief, as of their receipt of the foregoing claim construction ruling from the Immersion Systems Litigation in late November 2021, the Defendants knew or should have known that the Asserted Patents were valid and infringed by Defendants.

40.     The Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021 discloses the existence of the Immersion Systems Litigation, as well as

acknowledging the possibility that MGT might file a patent infringement lawsuit against Rhodium. Notably, the SEC does *not* state that the Rhodium systems or tanks are different in any material respect from the accused Immersion Systems systems or tanks, amounting to a tacit admission that they are the same or similar in all material respects.

41.     On information and belief, as of the filing of this suit, each of the Defendants is well aware of the Asserted Patents, and each of the Defendants is well aware of their infringements thereof.

## Count 1: Infringement of U.S. Patent No. 10,405,457

42.     MGT incorporates by reference the preceding paragraphs, as if set forth herein.

43.     The '457 patent was filed April 30, 2014, and legally issued by the United States Patent and Trademark Office on September 3, 2019. The '457 patent is valid and enforceable, and presumed as such pursuant to 35 U.S.C. § 282.

44.     Without a license or permission from MGT, Defendants have infringed and continue to infringe one or more claims of the '457 patent, directly, contributorily, or by inducement, by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

45.     Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning February 7, 2020, with the delivery of MGT's notice letter to Immersion Systems, of which the Individual Defendants had contemporaneous notice.

46.     Defendants' acts of infringement of the '457 patent have caused and will continue to cause MGT damages for which MGT is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '457 patent have caused and will continue to cause MGT immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. MGT has no adequate remedy at law.

### A.     *Direct Infringement*

13

47.     On information and belief, Defendants have directly infringed one or more claims of the '457 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and offering for sale an appliance immersion cooling system that satisfies every limitation of at least claim 6 of the '457 patent. If any limitation of claim 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

48.     Attached as Exhibit C is an exemplary claim chart detailing representative infringement of claim 6 of the '457 patent.

### B.     Induced Infringement

49.     On information and belief, Defendants have been and are inducing infringement of the '457 patent by actively and knowingly inducing others (including each other) to make, have made, use, sell, offer for sale, or import the infringing immersion cooling systems and tank modules that embody or use the invention claimed in the '457 patent in violation of 35 U.S.C. § 271(b).

50.     On information and belief, Defendants have induced infringement by providing designs and instructions to third party manufacturers and contractors to have made infringing immersion cooling systems and tank modules.

51.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and Individual Defendants have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to among other parties, the Rhodium Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue.

52.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and the Individual Defendants have also induced infringement by willfully directing and controlling the infringing activities of the Rhodium Operating Subsidiaries.

**Count 2: Infringement of U.S. Patent No. 10,820,446**

53.     MGT incorporates by reference the preceding paragraphs, as if set forth herein.

54.     The '446 patent was filed January 9, 2019, and legally issued by the United States Patent and Trademark Office on October 27, 2020. The '446 patent is valid and enforceable, and presumed as such pursuant to 35 U.S.C. § 282.

55.     Without a license or permission from MGT, Defendants have infringed and continue to infringe one or more claims of the '446 patent, directly, contributorily, or by inducement, by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

56.     Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning November 24, 2020, with the filing of MGT's amended complaint against Immersion Systems, of which the Individual Defendants had contemporaneous notice.

57.     Defendants' acts of infringement of the '446 patent have caused and will continue to cause MGT damages for which MGT is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '446 patent have caused and will continue to cause MGT immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. MGT has no adequate remedy at law.

### C.     Direct Infringement

58.     On information and belief, Defendants have directly infringed one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and offering for sale an appliance immersion cooling system that satisfies every limitation of at least claim 6 of the '446 patent. If any limitation of claim 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

59.     Attached as Exhibit D is an exemplary claim chart detailing representative infringement of claim 6 of the '446 patent.

### D.  Induced Infringement

60.     On information and belief, Defendants have been and are inducing infringement of the '446 patent by actively and knowingly inducing others to make, have made, use, sell, offer for sale, or import the infringing immersion cooling systems and tank modules that embody or use the invention claimed in the '446 patent in violation of 35 U.S.C. § 271(b).

61.     On information and belief, Defendants have induced infringement by providing designs and instructions to third party manufacturers and contractors to have made infringing immersion cooling systems and tank modules.

62.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and Individual Defendants have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to among other parties, the Rhodium Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue.

63.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and the Individual Defendants have also induced infringement by willfully directing and controlling the infringing activities of the Rhodium Operating Subsidiaries.

### Additional Allegations Relating to the Asserted Patents

64.     The '457 patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '457 patent seeks to solve at least two problems in the prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '457 patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow

patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The '457 patent accomplishes these improvements through a unique, innovative design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly through the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The '457 patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

65.     The '457 patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. The appliance immersion cooling system also, in some embodiments, includes a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted. The appliance immersion cooling system also includes a control facility adapted to coordinate the operation of the primary and, if included, the secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

66.     The '457 patent also claims, among other things, a tank module adapted for use in
an appliance immersion cooling system. The tank module includes a tank adapted to immerse in
a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot
distributed vertically along, and extending transverse to, a long wall of the tank. The tank
includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots,
having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid
flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned
vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it
flows over the weir. The tank module also includes a primary circulation facility adapted to
circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom
of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through
each appliance slot, and a control facility adapted to control the operation of the primary fluid
circulation facility as a function of the temperature of the dielectric fluid in the tank.

67.     The '446 patent is directed to an improved appliance immersion cooling system
and method of operation. Specifically, the '446 patent seeks to solve at least two problems in the
prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to
the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the
cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric
fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven
cooling and unnecessarily high fluid flow velocities. The invention of the '446 patent is an
improvement over the prior art and provides greater efficiency and effectiveness through ease of
access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow
patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow
velocities. The '446 patent accomplishes these improvements through a unique, innovative
design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly
through the tank, beginning from a plenum that substantially uniformly distributes the dielectric
fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially

uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The '446 patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

68.     The '446 patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. The appliance immersion cooling system also includes, in at least one embodiment, a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulation in the primary circulation facility, and to dissipate to the environment the heat so extracted, and a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

69.     The '446 patent also claims, among other things, a tank module adapted for use in an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically long, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance

slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MGT respectfully requests a trial by jury of any issues so triable by right.

## Prayer for Relief

Wherefore, MGT requests judgment against Defendants as follows:

A.      Adjudging that Defendants have directly infringed, and actively induced infringement of, the '457 patent, in violation of 35 U.S.C. § 271(a) and (b);

B.      Adjudging that Defendants have directly infringed, and actively induced infringement of the '446 patent, in violation of 35 U.S.C. § 271(a) and (b);

C.      Preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of, the '457 patent and of the '446 patent;

D.      Ordering Defendants to account for and pay damages adequate to compensate MGT for Defendants' infringement of, and inducement to infringe, the '457 patent and the '446 patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

E.      Ordering an accounting by Defendants for any infringing activity not presented at trial and an award by the court of additional damages for any such infringing activity to MGT;

F.      Ordering that the damages award by increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

G.       Declaring this case exceptional and ordering Defendants to pay the cost of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

H.       Awarding such other and further relief as this Court deems just and proper.


Dated: January 13, 2022

Respectfully submitted,

/s/ *Henry Pogorzelski*
Henry M. Pogorzelski
Texas Bar No. 24007852
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Telephone: (512) 482-6800
Fax: (512) 482-6859
henry.pogorzelski@klgates.com

Nicholas F. Lenning (*p.h.v.* to be filed)
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 370-6685
Fax: (206) 370-6006
nicholas.lenning@klgates.com

James A. Shimota (*p.h.v.* to be filed)
Gina A. Johnson (*p.h.v.* to be filed)
Benjamin E. Weed (*p.h.v.* to be filed)
K&L GATES LLP
70 WEST Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
gina.johnson@klgates.com
benjamin.weed@klgates.com

Counsel for Plaintiff
Midas Green Technologies, LLC