UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC**, | |
| Plaintiff, | Civil Action No. 6:22-cv-00050-ADA |
| - vs. - | **Jury Trial Demanded** |
| **Rhodium Enterprises, Inc.**;<br>**Rhodium Technologies LLC;**<br>**Rhodium 10mw LLC**;<br>**Rhodium 2.0 LLC;**<br>**Rhodium 30mw LLC**;<br>**Rhodium Encore LLC**;<br>**Rhodium Industries LLC**;<br>**Rhodium JV LLC;**<br>**Rhodium Renewables LLC;**<br>**Rhodium Shared Services LLC;**<br>**Rhodium Shared Services PR Inc.**;<br>**Chase Blackmon;**<br>**Cameron Blackmon;** and<br>**Nathan Nichols**, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**THE FIRST AMENDED COMPLAINT**

**Introduction**

Plaintiff Midas Green Technologies, LLC ("Midas") respectfully opposes Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Patent Infringement (Dkt. 45) ("the MTD"). Midas brought this lawsuit on January 13, 2022, and Defendants moved to dismiss the original complaint on March 28, 2022. *See* Dkt. 39 (the original MTD, "OMTD"). Defendants' motion to dismiss was without merit. But, in an effort to avoid burdening the Court, Midas filed a First Amended Complaint ("FAC") on April 18, 2022 that sought to add certain allegations that Defendants' motion to dismiss purportedly sought. *See* Dkt. 44. For example, Midas added allegations concerning the undercapitalization of the Rhodium entities, after Defendants asserted in their motion that "undercapitalization is a critical factor in an alter ego analysis," OMTD at 6–7. Indeed, Midas added factual allegations as to all twelve alter ego factors. As to induced infringement, Defendants purportedly sought more allegations that Defendants "knew or should have known that the use of the accused immersion cooling system amounted to infringement of either Asserted Patent," OMTD at 14.  So Midas added voluminous factual allegations as to Defendants knowledge of the patents and, specifically, the infringement. Midas hoped the amendment, at the very least, would narrow the issues for this Court to decide.

No luck. Defendants instead filed another motion to dismiss, raising all of the exact same arguments. Each argument continues to be meritless. Indeed, several, especially including Defendants' arguments as to willful infringement, have been expressly and repeatedly rejected by this Court. Many of Defendants' arguments also are disingenuous, glossing over or mischaracterizing the actual factual allegations in the FAC. The FAC more than satisfies the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure for its claims of direct, induced, and willful infringement, and the FAC establishes a *prima facie* case of personal jurisdiction and venue as to all entities.

This Court should deny the motion to dismiss. In the alternative, if the Court identifies any deficiencies, it should grant Midas leave to amend to address such deficiencies.

## Legal standard

Courts deny motions to dismiss if the complaint "state[s] a claim for relief that is plausible on its face." *Voip-Pal.com, Inc. v. Facebook, Inc.*, 2022 WL 1394550, at *1 (W.D. Tex. May 3, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing plausibility, the Court must "accept[] all well-pleaded facts as true, view[] them in the light most favorable to the plaintiff, and draw[] all reasonable inferences in the plaintiff's favor." *BillJCo, LLC v. Apple, Inc.*, 2022 WL 299733, at *1 (W.D. Tex. Feb. 1, 2022) (quoting *Johnson v. BOKF Nat'l Ass'n*, 15 4th 356, 361 (5th Cir. 2021)). A claim is facially plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, based on more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 550 U.S. at 570) (internal quotation marks omitted). "The court's task is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Id.* (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Detailed factual allegations are not required. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In general, motions to dismiss "are viewed with disfavor and are rarely granted." *Id*.

## Argument

### A.  The FAC does not improperly lump all Defendants together.

Defendants' argument that the FAC "impermissibly lumps all fourteen Defendants together" (and somehow fails to provide fair notice) is without merit. MTD at 4. Indeed, it is difficult to imagine what more Midas could plead without the benefit of formal discovery.

1. *The FAC distinguishes between three groups of Defendants and puts each on notice of the allegations against them.*

The FAC makes distinct allegations against three groups of Defendants: (1) the Individual Defendants[1]; (2) Rhodium Enterprises and Rhodium Technologies; and (3) the Rhodium Operating Subsidiaries. Each Defendant has notice of the allegations against it. No more is required. This is because "[m]ultiple defendants' conduct may be 'lumped together' if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role." *Monitronics Int'l, Inc. v. Skyline Seec. Mgmt., Inc.*, 2017 WL 2882624, at *4 (N.D. Tex. July 5, 2017) (quoting *Rhatia v. Dischino*, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011)). And it is permissible to use "collective allegations to describe the actions of two or more defendants who are alleged to have engaged in the same conduct." *Id.; see also Lasslet v. Tetra Tech, Inc.*, 2015 WL 13805125, at *3 (W.D. Tex. Feb. 20, 2015) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do.") (quoting *Howard v. Mun. Credit Union*, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008)); *SEC v. Couch*, 2014 WL 7404127, at 5 (N.D. Tex. Dec. 31, 2014) (holding complaint satisfied heightened Rule 9(b) standard, despite "lumping defendants together," where it detailed the parties' relationship and alleged their joint misconduct). A "hyper-technical" application of the pleading standard is not necessary particularly when the defendants employ a complex corporate structure and "factual information is peculiarly within the defendant[s'] knowledge or control." *In re Enron Corp. Sec., Derivative, and Erisa Litig.*, 2005 WL 3504860, at *8 (S.D. Tex. Dec. 22, 2005); *see also Lasslett*, 2015 WL 13805125 at *3 (denying motion to dismiss where "only discovery can shed light on the proper party" that is "responsible for the acts in question" because "[a]t the complaint stage, plaintiffs are not expected to know or allege

---

[1] The Individual Defendants are addressed further below in Section C, addressing their individual liability. The FAC contains numerous specific factual allegations as to the actions of the Individual Defendants.

the complete details of each defendant's precise role in the complex transactions that supposedly took place. It is sufficient to state that the group of named defendants was responsible for the alleged misconduct specified in the complaint.") (quoting *Howard*, 2010 WL 148643, at *4).

As to Rhodium Enterprises and Rhodium Technologies, the two parent companies, the FAC alleges they committed direct infringement "by way of directing and controlling the activities of the Rhodium Operating Entities." *Id.* ¶ 74, 90. In addition, the FAC alleges they committed indirect infringement by "willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to among other parties, the Rhodium Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue." *Id.* ¶ 81, 97. This again satisfies Midas' pleading obligation of putting Rhodium Enterprises and Rhodium Technologies on notice of the allegations against them.

As to the Rhodium Operating Subsidiaries, Midas has likewise sufficiently put them on notice of the allegations against them. Here, the FAC defines the nature of the Rhodium Operating Subsidiaries' relationship and their role in the infringing conduct. The FAC alleges the Rhodium Operating Subsidiaries are affiliate entities under the control of their parent companies and, ultimately, the Individual Defendants. FAC ¶ 29. It further alleges they collectively engaged in the wrongful conduct of patent infringement by "at least making, having made, using, selling, and/or offering for sale" infringing products. *Id.* 73, 89. This puts the Rhodium Operating Subsidiaries on notice of the allegations against them, and Midas need not plead more. This is particularly true because the Rhodium entities were intentionally designed to have a convoluted and opaque corporate structure, and are alleged to "exist for the purpose of illegitimately shielding Defendant Rhodium Enterprises, Inc. and Rhodium Technologies LLC, and in turn the Individual Defendants, from liability." *Id.* ¶ 22. And all information as to which alleged acts were committed by which specific operating subsidiary are fully within Defendants' possession. Without the benefit of discovery, Midas cannot be expected to plead more about their individual role in the alleged misconduct.

The case cited in the MTD is distinguishable. In *Callier v. Nat'l United Grp.*, 2021 WL 5393829, at *1 (W.D. Tex. Nov. 17, 2021), and all of the cases cited by *Callier*, the plaintiff brought claims against *unrelated* defendants. The court held under these circumstances, the plaintiff was required to identify each defendant's specific actions because without such allegations the defendants did not have fair notice under Rule 8. *Id.* at *4. This same does not apply here, where the Rhodium Operating Subsidiaries, and the parent Defendants, are closely interconnected affiliate entities engaged in the same infringement scheme. *Lasslett* is instructive. There the Court rejected similar arguments, contrasting the cases relied upon by *Callier* as involving as many as "sixteen different defendants, lumping tortious acts together that were 'entirely different in character' and therefore 'mistakenly grouped in a single allegation,'" whereas the complaint in *Lasslett* involved "only two named defendants who are allegedly responsible for the exact same acts." 2015 WL 13805125 at *3.

2.   *The FAC sufficiently pleads the Rhodium entities are alter egos of each other.*

Even if dismissal were warranted on the grounds that the FAC does not sufficiently differentiate the actions of the Rhodium defendants, the MTD still should be denied because the FAC alleges that the Rhodium entities are alter egos of each other. Allegations directed to multiple defendants satisfy pleading standards when the complaint "elsewhere also contains adequate allegations that the defendants are alter egos of each other." *Sparling v. Doyle*, 2014 WL 12489990 (W.D. Tex. 2014); *see also Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, 2005 WL 292433, at *4 (N.D. Tex. 2005) (rejecting argument that pleading impermissibly lumps defendants together where plaintiff alleged defendants are alter egos of each other).

To determine whether corporations are alter egos of each other, the Fifth Circuit examines whether: (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors and officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7)

the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985). Courts consider the "totality of the facts." *Id.* at 692. "[N]o single factor is sufficient or necessary." *Sparling*, 2014 WL 12489990, at \*6.

Here, the FAC pleads that *all* twelve alter ego factors are present here, supported by specific factual allegations.

- **Common stock ownership**: Citing to Rhodium Enterprise's Amended SEC Form S-1, the FAC alleges "[e]ach Individual Defendant owns shares of both Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC through Imperium Investment Holdings LLC" and "Rhodium Technologies LLC in turn directly or indirectly owns all of the outstanding equity interests in the Rhodium Operating Subsidiaries." FAC ¶ 18.

- **Common directors and officers**: The FAC alleges "the Rhodium Operating Subsidiaries share common directors and officers with Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC." *Id.* ¶ 19.

- **Common business departments**: The FAC alleges the Rhodium entities operate the same bitcoin mining operation, out of the same Rockdale facility, and "have common business departments." *Id.* ¶ 26.

- **Consolidated financial statements**: The FAC quotes Rhodium Enterprise's Amended SEC Form S-1, which states "The condensed consolidated financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries." *Id.* ¶ 20.

- **Parent finances the subsidiaries**: The FAC alleges "Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC finance the Rhodium Operating Subsidiaries." *Id.* ¶ 23.

- **Parent caused incorporation**: The FAC alleges "Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries (except for Rhodium Shared Services PR LLC) were incorporated by Defendant Cameron Blackmon, acting on behalf of Imperium Investment Holdings LLC, a third party under the control of the Individual Defendants." *Id.* ¶ 21.

- **Inadequate capital**: The FAC alleges "the Rhodium Operating Subsidiaries are presently undercapitalized and exist for the purposes of illegitimately shielding Defendant Rhodium Enterprises, Inc. and Rhodium Technologies LLC, and in turn the Individual Defendants, from liability." *Id.* ¶ 22. The FAC further alleges "the Rhodium Operating Subsidiaries would be unable to satisfy any money judgement levied against them because of their undercapitalization and because their revenues flow directly to Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC."

- **Parent pays salary of subsidiaries**: The FAC alleges "Defendant Rhodium Shared Services LLC directly pays the salaries of all Rhodium officers and employees, with the exception that Defendant Rhodium Shared Services LLC indirectly pays the salary of Rhodium Chief Financial Officer Nicholas Cerasuolo by way of its subsidiary, Defendant Rhodium Shared Services PR Inc." *Id.* ¶ 24.

- **No business except through parent**: The FAC alleges "the Rhodium Operating Subsidiaries receive no business except through that allocated and arranged by Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC." As an example, the FAC alleges "Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC negotiate contracts on behalf of the Rhodium Operating Subsidiaries, or vice versa." *Id.* ¶ 27.

- **Parent uses subsidiary's property as its own**: The FAC alleges Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries use each other's properties as their own, including "operat[ing] out of the same Rockdale, Texas bitcoin mining facility, among other facilities." *Id.* ¶ 25.

- **Daily operations not kept separate**: The FAC alleges Rhodium Enterprises, Rhodium Technologies, and the Rhodium Operating Subsidiaries "collectively operate the same bitcoin mining operation" and "some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities." *Id.* ¶ 26.

- **Lack of corporate formalities**: The FAC alleges the Rhodium entities do not observe corporate formalities, including keeping separate books. *Id.* ¶ 28. The FAC cites to Rhodium Enterprise's Amended SEC Form S-1, which states "All inter-company accounts, balances, and transactions have been eliminated."[2] *Id.*

These detailed factual allegations, as to all twelve factors, more than satisfy the alter ego pleading requirement. *See also* OMTD at 6–7 ("undercapitalization is a critical factor in an alter ego analysis because 'the alter ego doctrine is an equitable remedy which prevents a company from avoiding liability by abusing the corporate form'") (quoting *Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*, 2020 WL 4289388, at *4 (W.D. Tex. July 27, 2020)).

The MTD first erroneously claims that the Court should wholesale disregard allegations made on information and belief. MTD at 6, 8. This is not the law. "[A]fter *Iqbal* and *Twombly*, pleading 'upon information and belief' remains permissible so long as the allegations in the pleading raise a facially plausible claim." *O'Malley v. Brown Brothers Harriman & Co.*, 2020 WL 1033658, at *8 (W.D. Tex. Mar. 3, 2020) (quoting *Barnett v. Patwardhan*, 2013 WL 1290201, at *2 (W.D. La. Mar. 28, 2013). This is especially true where—as here—"the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* (quoting *Innova Hosp.*

---

[2] From this statement, Midas drew the reasonable inference that Rhodium does not maintain separate books and accounts, having eliminated the practice. Defendants offer a competing explanation: that the Amended SEC Form S-1 refers to Rhodium Enterprises eliminating inter-company accounts only for purposes of "preparing" the filing, and that this "represents a departure from the actual organization of the entities." MTD at 8. At the pleading stage, however, courts "are not authorized or required to determine whether the plaintiff's plausible inference . . . is equally or more plausible than other competing inferences . . . ." *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019).

*San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018)); *see also Innova Health*, 892 at 730 ("[W]hen discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint.").

Defendants rely on this Court's opinion in *Aeritas, LLC v. Darden Corp.*, 2021 WL 4868430, at *2, which holds that the Court may disregard allegations made on information and belief *with no factual support* (i.e., "legal conclusions disguised as factual allegations"). MTD at 6, 8. Not so here. Many of Midas' alter ego allegations are based on Rhodium Enterprises' SEC filing, while others are based on specific factual allegations—which Defendants do not dispute—such as the Rhodium entities' common directors and officers, finances, common operation of the same bitcoin mining operation, one entity paying the wages of all employees, and sharing of the same Rockdale facility. *See* FAC ¶¶ 18–28. And, unlike in *Aeritas* where the plaintiff baldly alleged that Olive Garden's parent corporation and Texas subsidiary were alter egos by just reciting the legal factors, the allegations here are based on numerous factual allegations, such as the Defendants' history, ownership, and operations, that make the inference of the alter ego factors more than plausible.

Defendants also selectively attack a few cherry-picked alter ego factors. For example, Rhodium argues one-hundred percent ownership and identity of directors are "an insufficient basis" to apply the alter ego theory. MTD at 8–9 (citing *Synergy Drone LLC v. Parrot S.A.*, 2018 WL 11361758, at *4 (W.D. Tex. Apr. 17, 2018)). Similarly, Defendants cite to a case holding "consolidated SEC filings do not overcome the presumption of corporate separateness." MTD at 7–8 (citing *Ergo Licensing, LLC v. Cardinal Health, Inc.*, 2009 WL 2021926, at *5 (D. Me. Jul 13, 2009)). Defendants' selective attack completely ignores that while one or two factors, standing alone, may be insufficient to invoke the alter ego theory, courts may appropriately consider them in conjunction with other factors. *See Sparling*, 2014 WL 12489990, at *7 ("Plaintiffs['] claim is made up of a number of factors, that when considered together, rise above a conclusory description and are legally sufficient."). Defendants do not—and cannot—cite any support that Midas'

detailed allegations, as to *every* alter ego factor, somehow fall short of satisfying the alter ego test.

    *B.*  *This Court has personal jurisdiction and venue as to Rhodium Shared Services PR Inc., an alter ego of the other Corporate Defendants.*

    The FAC alleges sufficient facts to establish proper personal jurisdiction and venue as to Rhodium Shared Services PR Inc ("Rhodium PR"). "[A] close relationship between parent and subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries, or vice versa." *Diamond Offshore Servs.*, 2007 WL 9736215, at *6 (S.D. Tex. Jan. 5, 2007) (internal quotes omitted"); *see also Blanca Peak Resources, LLC v. Big Star Energy Ltd.*, 2020 WL 1445785, at *3 ("The citizenship of a subsidiary may be imputed to its parent corporation, however, when the subsidiary is not truly operating as a separate entity but is, instead, the alter ego of the parent corporation [and vice versa].") (citing *Bennett v. Steak 'n Shake Operations, Inc.*, 2010 WL 2400160, at *1 (N.D. Tex. June 14, 2010)); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 2017 WL 1476595, at *18–19 (E.D. La. Apr. 21, 2017) ("[T]he Fifth Circuit acknowledges that in some cases, the relationship between affiliated corporations requires the forum contacts of one entity to be imputed to another for the purpose of personal jurisdiction" and "Courts are not limited to imputing the jurisdictional contacts of sub-sidiaries to direct parent companies only, but may impute the contacts of any related entity if warranted by the facts.").

    "[T]he alter ego test for attribution of contact, i.e., personal jurisdiction, is less stringent than that for liability." *Windecker v. Hang Wei*, 2020 WL 4194017, at *3 (W.D. Tex. July 21, 2020) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)). This is because "[p]iercing the corporate veil is not necessary for imputing contacts of one affiliated corporation to another for purposes of *personal jurisdiction*, but rather is the test generally conducted for im-posing *liability* as between related corporations." *In re Chinese-Manufactured Drywall Prods.*

*Liability Litig.*, 2017 WL 1476595, at *19 (emphasis in original). So too with venue. *WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Canon, Inc.*, Case No. 6-20-CV-00980-ADA, ECF No. 137 (W.D. Tex. Feb. 11, 2022) ("Although courts often discuss alter ego in terms of jurisdictional issues, the same concerns are present when analyzing venue.") .

As discussed above, Rhodium PR is the alter ego of the other Rhodium entities. All of the alter ego factors are alleged to present as to the Rhodium PR entity as well as the others. In the entire Rhodium corporate family, corporate lines are blurred. Other Rhodium entities conduct business in this District, have at least two places of business in this District, and have committed acts of infringement in this District (indeed, in this Division). FAC ¶¶ 1–11, 21. Defendants do not dispute that personal jurisdiction and venue is proper as to the other Rhodium entities. Because the FAC sufficiently alleges the Rhodium entities are alter egos of one another, the Court should impute the contacts and places of business of the other Rhodium entities to Rhodium Shared Services PR Inc. and find personal jurisdiction and venue satisfied.

In addition, this Court has personal jurisdiction over Rhodium PR based on its Texas contacts. Personal jurisdiction exists if the defendant purposefully "established minimum contacts with the forum state, invoking the benefits and protections of the state's laws and, therefore, reasonably could anticipate being haled into court here." *York v. Tropic Air, Ltd.*, 2012 WL 1077198, at *1 (S.D. Tex. Mar. 28, 2012) (quoting *Command-Aire v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992)). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." *Id.*, at *2.

Here, the FAC plausibly alleges Rhodium PR derives its business exclusively or nearly exclusive from Texas, acts for the benefit of its Texas parents and affiliates, and invokes Texas' venue and law in its contracts. The FAC alleges Rhodium PR "conducts most if not all of its business in this District and in Texas." FAC. ¶ 33. It is the wholly owned subsidiary of Texas-based Defendant Rhodium Shared Services LLC. *Id.* One of the purposes of Rhodium PR is to receive funds from its Texas-based parent so it can pay Rhodium's Chief Financial Officer Nich-

olas Cerasuolo. *Id.* Because Rhodium PR is nominally an entity formed in Puerto Rico, this arrangement may provide tax benefits to Mr. Cerasuolo. *Id.* The FAC further alleges Rhodium PR conducts business in Texas including by "negotiating and becoming a party to a number of Texas agreements." *Id.* For example, it cites to an agreement attached to Rhodium Enterprises' Amended SEC Form S-1, in which Rhodium PR states it acts for the benefit of its corporate parents and affiliates—who are Texas-based entities. *Id.* The agreement provides for mandatory arbitration in Texas, venue for legal proceedings in Texas, and interpretation of its provisions under Texas law. *Id.* Defendants try to minimize these contacts by stating the agreements referenced in the FAC are not yet executed. But the fact remains—and the MTD does not deny—that Rhodium PR negotiated these Texas contracts, attached to Rhodium's public SEC filings, and that Rhodium PR and the other Defendants intend to operate under them. Midas' allegations in paragraph 33 of the FAC[3] support the Court's personal jurisdiction over Rhodium PR. *See York*, 2012 WL 1077198, at *14 (Holding court has personal jurisdiction over foreign corporation because "[b]y seeking benefit, advantage, and profit from Texas, [defendant] has impliedly consented to its laws.").

### C. The Individual Defendants are liable for their own acts of direct infringement.

Corporate officers may be personally liable for their acts of direct infringement, even if taken in their corporate capacity. In *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021), a corporate officer made, offered to sell, and sold devices accused of infringing the plaintiff's patent, including by "design[ing] the accused products," "[selling] the accused products through his company," and "[making] the decision to sell the accused products through his company." Based on this evidence, a jury found the officer personally liable for direct patent infringement. *Id.* The Federal Circuit affirmed, noting "[t]he fact that [the defendant] may have

---

[3] These allegations also provide additional support to show Rhodium PR is the alter ego of at least its direct parent Rhodium Shared Services LLC.

acted on behalf of his corporation does not excuse him from individual liability" and the "evidence that [he] sold the allegedly infringing products" supports the jury's verdict. *Id.*

The allegations here are indistinguishable from the facts in *Lubby Holdings*. The FAC alleges each of Chase Blackmon, Cameron Blackmon, and Chase Nichols "personally directed, participated in, authorized, and/or ratified the infringing conduct" of Rhodium. FAC ¶¶ 14–16. In addition, it alleges each of them "helped design Defendants' infringing immersion cooling systems" and "directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems." *Id.* The FAC further quotes from Rhodium Enterprises' Amended SEC Form S-1, which confirms the Individual Defendants' participation in the infringing design: "Our founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of our liquid-cooling technology to mining bitcoin." *Id.* ¶ 44; *see also rhdm.com* (last accessed May 12, 2022) (Rhodium Enterprises' own website touts the same: "Our founders spent years developing, testing, and collecting field operational data to optimize the application of our liquid-cooling tech for mining bitcoin."). The Individual Defendants are "founders." *See* FAC ¶¶ 14–16; *see also* SEC Amendment No. 6 to Form S-1 at 94, Rhodium Enterprises, Inc. (Jan. 18, 2022), *available at* https://www.sec.gov/Archives/edgar/data/0001874985/000121390022002442/fs12022a6_rhodium.htm. ("Mr. Nichols is our co-founder . . . ," "Mr. [Chase] Blackmon is our co-founder . . . ," and "Mr. [Cameron] Blackmon is our co-founder . . . ."). As in *Lubby Holdings*, the Individual Defendants designed the accused instrumentalities and made decisions to commit infringement by making and using the accused instrumentalities, and to induce infringement by others.

Defendants' Motion attempts to gloss over Midas' allegations by calling them "conclusory" and, again, incorrectly asking the Court to disregard them. MTD at 12–13; *see supra* at 8–9. Defendants do not substantively address Midas' allegations of the Individual Defendants' direct infringement—this omission is fatal. Midas' specific factual allegations, including information pulled from Rhodium Enterprises' SEC filing as well as publicly available sources, amply satisfy Midas' pleading obligations.

D. *The FAC sufficiently alleges induced infringement.*

To allege induced infringement, the plaintiff must allege direct infringement, as well as that the defendant (1) knew of the patent; (2) knew or should have known the induced acts constitute patent infringement; and (3) possessed specific intent to encourage another's infringement. *Bio-Rad Labs, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021). "[K]nowledge of infringement can be inferred from circumstantial evidence." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)). Here, Defendants do not challenge that Midas pleads direct infringement and that Defendants had knowledge of Midas' patents. They dispute, however, that Midas pleads Defendants knew or should have known their induced acts constituted patent infringement or that they possessed specific intent to encourage infringement. MTD at 13. These arguments are without merit.

### 1. *Defendants had abundant and detailed knowledge of their infringement.*

The FAC contains detailed allegations supporting the inference Defendants knew they induced others to engage in conduct amounting to infringement. Specifically, the FAC alleges that while selling their immersion cooling systems through their previous company, the Individual Defendants received a detailed letter from Midas, including a claim chart, informing them their product infringed the '457 patent. FAC ¶ 52. Then, after filing suit, Midas amended its complaint to allege the Individual Defendants' products also infringed the '446 patent, including a claim chart. *Id.* ¶ 53. Immersion Systems (under the control and at the direction of the Individual Defendants) actively litigated that lawsuit through claim construction for almost two years and filed two PTAB petitions. Through these events, the Individual Defendants had actual knowledge that (and how) their immersion cooling system infringed Midas' patents. *Id.* ¶¶ 58–61; *see Voip-Pal.com, Inc. v. Facebook, Inc.*, 2022 WL 1394550, at *2 (W.D. Tex. May 2, 2022) (finding pre-suit knowledge of infringement based on notice letter and ongoing litigation between the parties). And Rhodium had the same actual knowledge from its founders from the get-go. *Id.* Yet, despite

14

their knowledge, Defendants induced others to make, have made, use, sell, offer for sale, or import immersion cooling systems materially identical to those at issue in the Immersion Systems litigation. *Id.* ¶¶ 57–58.

Defendants' arguments to the contrary fall flat. First, Defendants disingenuously try to distance themselves from the detailed letter, claim chart, and litigation by stating they involved "different products sold by that other company." MTD at 14. This ignores the fact that the "other company" was the *Individual Defendants'* previous company, running a similar business (developing and selling immersion cooling systems for bitcoin mining to third parties, as opposed to developing and operating immersion cooling systems for bitcoin mining for internal use), and the FAC contains numerous specific factual allegations that the immersion cooling systems sold by the previous company appear to be *materially identical* to those used by Rhodium. The FAC includes photos from publicly available sources showing the structure of both the Immersion Systems' products and Rhodium's products. *See id.* ¶¶ 41, 44–51, 57. And the FAC alleges that the Individual Defendants apparently decided to use materially the same immersion cooling system design at Rhodium as they had at Immersion Systems, *id.* at ¶ 58, and that "the immersion cooling systems of Rhodium are materially identical to the immersion cooling systems previously promoted by the Individual Defendants by way of Immersion Systems," *id.* ¶ 57. In addition, the FAC cites to Rhodium Enterprises' Amended SEC Form S-1 filed on December 14, 2021, which discloses the Immersion Systems litigation and acknowledges the possibility that Midas may file a lawsuit against Rhodium. *Id.* ¶ 65. Notably, Rhodium does *not* state the Rhodium products differ from the Immersion Systems products in any material respect. *Id.* The FAC also cites to Rhodium Enterprises' post-complaint Amended SEC Form S-1 filed on January 18, 2022, which discloses this action but again makes no statement that the Rhodium products differ from the Immersion Systems products in any material respect. *Id.* Rhodium's silence amounts to a tacit admission that the products are the same or similar in all material respects. *Id.* These allegations sufficiently plead Defendants' knowledge that their products infringed Midas' patents.

Second, Defendants attempt to argue the Immersion Systems products and Rhodium products are not materially identical because the former has a long bar above the tank while the latter does not. MTD at 15. But the MTD does not explain how this alleged difference is material to infringement of the patents—and indeed, it is not. And it therefore does not impact Defendants' knowledge that the Immersion Systems and Rhodium products appear to be materially identical and infringe Midas' patents in materially the same way. In any case, Defendants' argument is inappropriate at the pleading stage, where Midas' allegation that the two products are materially identical must be accepted as true.

Finally, Defendants make the absurd argument that they can somehow rebut their knowledge of infringement by pointing to a statement in their SEC filing that they *believe* Midas' patents are invalid, and their immersion cooling systems would not infringe upon the claims of such patents. MTD at 15–16. This argument is conspicuously devoid of case law support. Almost certainly because it is axiomatic that a defendant's "belief in patent invalidity is not a defense to inducement." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015)). Likewise, a defendant's asserted belief in non-infringement is an inadequate defense to inducement if the belief was unreasonable. *Id.* at 1351 n.2. Defendants' reliance on Rhodium Enterprise's purported *belief* that Midas' patents are invalid (notably unsupported by any actual facts or argument) is unsupported by law, and inappropriate at the motion to dismiss stage. Taken to its logical conclusion, Defendants' argument that they can rebut the knowledge element by simply stating they do not believe their product is infringing would eviscerate the induced infringement doctrine altogether, especially at the pleading stage.

> ### 2. *Defendants specifically intended to induce infringement by instructing and directing infringement.*

The FAC alleges that the Defendants specifically intended to induce infringement. FAC ¶¶ 79, 95. And Midas alleges at least two categories of acts that support such an inference. First,

Midas alleges that Defendants provided designs and instructions on infringing activity to third parties and to each other. Specifically, Midas alleges that Defendants provided "designs and instructions" to third party manufacturers and contractors to have made the infringing immersion cooling systems, while knowing that those designs and instructions infringed the Asserted Patents and that the third parties would infringe the Asserted Patents by following the designs and instructions. FAC ¶¶ 80, 96. Midas similarly alleges that Rhodium Enterprises, Rhodium Technologies, and the Individual Defendants induced infringement by providing "directions, instructions and designs" to the Rhodium Operating Subsidiaries to use the immersion cooling systems in an infringing manner. FAC ¶¶ 81, 97. Second, Midas alleges Rhodium Enterprises, Rhodium Technologies, and the Individual Defendants induced infringement by "directing and controlling" the Rhodium Operating Subsidiaries' infringing activities. FAC ¶¶ 82, 98. Both categories of conduct offer sufficient bases to infer Defendants' specific intent at the pleading stage.

Courts have made clear that inducement may be inferred from "instructing how to engage in infringing use." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019); *see also Bill-JCo, LLC v. Apple Inc.*, 2022 WL 299733 at *7 (finding it "reasonable to infer [defendant]'s affirmative intent to encourage infringement post-suit" from defendant's "knowledge of the Asserted Patents since [plaintiff] filed suit" and "instructions in [defendant]'s developer guides" that the claim charts mapped to limitations); *Affinity Labs of Texas, LLC v. Blackberry Limited*, 2014 WL 12551207, at *3 (W.D. Tex. Apr. 30, 2014) ("Proof of a defendant's actual knowledge of a patent infringement clearly demonstrates induced infringement . . . ."). At the pleading stage, a plaintiff need only plead "classes of evidence" that "contain instructions on how to infringe." *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 832 (E.D. Tex. 2019). For instance, the court in *Motiva* held the plaintiff sufficiently pled facts to support induced infringement by alleging the defendant provided manuals, communications, and promotional materials that instructed on how to "use the [accused products] in an infringing manner." *Id.* at 831. Importantly, the court noted that the plaintiff "need not identify what the manuals specifically say" or "how the communications specifically instructed customers" because to "require such granular information

would effectively require [the plaintiff] to prove, pre-discovery, the facts necessary to win at trial." *Id.* at 832 (internal quotes and alterations omitted). Here, Midas pleads Defendants provide "designs and instructions" to third party manufacturers and contractors, and to each other, that instruct on carrying out infringing activity. FAC ¶¶ 80, 81, 96, 97. These "classes of evidence," which Midas expects to uncover in discovery, are sufficient to survive a motion to dismiss.

Defendants' cases are inapposite. Defendants rely on cases where the plaintiffs allege only that defendants sold products capable of infringement, and instructed on *how to use the products*, not how to conduct the *infringing activity*. *See Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, 2014 WL 2892285 (W.D. Tex. 2014) (granting motion to dismiss where complaint alleged defendant "induced customers to purchase its vehicles," not to use the vehicles in an infringing manner); *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) (granting motion to dismiss where complaint alleged customers who purchased defendant's systems and components and operated them "in accordance with [the defendant's] instructions" would infringe the plaintiff's patent); *Core Wireless Licensing S.A.R.L. v. Apple, Inc.*, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) (granting motion to dismiss where the plaintiff only alleged the defendant provided "instructive materials and information concerning operation and use of the accused products.").

*HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019) illustrates this distinction. In this case, the Federal Circuit held induced infringement was not supported where "not all patients who follow the [defendant's] instructions . . . will engage in infringing use . . . ." *Id.* at 702. Rather, the critical piece is that the instructions must "teach an infringing use of the device such that we are willing to infer from those instructions an affirmative intent to infringe the patent." *Id.* at 701. Here, Midas alleges Defendants provide designs and instructions on how to make infringing immersion cooling systems and use them in an infringing manner, with full knowledge that such making and use would constitute direct infringement. There is no other inference than that Defendants provided the designs and instructions with the intent to induce infringing acts.

As to the second category, controlling or directing infringing activity also creates an inference of specific intent. For instance, in *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017), the Court held the plaintiff sufficiently pled induced infringement where it alleged the defendant "assisted in or directed the installation of exactly the type of" product described by plaintiff's patent onto vehicles at one of the defendant's plants. Here, Midas' allegations that Rhodium Enterprises, Rhodium Technologies, and the Individual Defendants induced infringement by "directing and controlling" the Rhodium Operating Subsidiary's infringing activities form another basis for inferring specific intent.

E.   *The FAC Sufficiently Alleges Willful Infringement.*

Finally, the Court should reject Defendants' argument that the FAC fails to plead willful infringement, as it has done in many recent cases including *BillJCo* and *NXP USA Inc. v. MediaTek Inc*. To state a claim for willful infringement, the plaintiff must plead the defendant (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. *BillJCo, LLC v. Apple Inc.*, 2022 WL 299733, *3 (W.D. Tex. Feb. 1, 2022). Defendants do not dispute the FAC pleads the first two elements. For the reasons discussed above, the FAC sufficiently alleges the third element of Defendants' knowledge that their conduct amounted to infringement.

Defendants also argue the FAC is deficient because it "makes no allegations that plausibly show Defendants have engaged in egregious conduct." MTD at 20. This misstates the law (and is just wrong). This Court has declined to "impose an egregiousness pleading requirement" for willful infringement. *BillJCo, LLC v. Apple Inc.*, 2022 WL 299733, *6 (W.D. Tex. Feb. 1, 2022); *see also NXP USA Inc. v. MediaTek Inc.*, 2022 WL 799071, at *4 (E.D. Tex. Mar. 15, 2022) ("a plaintiff need not plead facts demonstrating egregious conduct to establish a claim for willful infringement at the 12(b)(6) stage."). Midas sufficiently pleads each of the three elements of willful infringement, and more is not needed.

19

Despite not being required to do so, the FAC in fact includes numerous factual allegations that Defendants engaged in egregious infringement behavior capable of supporting an award of enhanced damages. The FAC alleges that despite knowing their immersion cooling systems infringed Midas' patents, Defendants continued to operate their infringing immersion cooling systems, and aggressively sought to expand their operations—indeed, Defendants fired up an entirely new business based on the immersion cooling systems they knew infringed the Asserted Patents. FAC ¶ 100. In addition, in the prior Immersion Systems litigation, the Individual Defendants "actively sought to conceal the existence" of Rhodium, "despite clear discovery obligations to do so." *Id.* ¶ 101. Moreover, they "actively sought to conceal that Immersion Systems had ceased business operations" to continue the Immersion Systems litigation "for the true benefit of the Rhodium entities and the Individual Defendants." *Id.* Finally, the Defendants "bankrolled the filing and prosecution" of two post-grant review proceedings, "nominally in the name of Immersion Systems," in attempts to invalidate Midas' patents. In short, Defendants "knowingly and maliciously stole[] Midas' patented and innovative technology for their own profit without compensating the inventors of the technology." *Id.* ¶ 103. These allegations more than support an inference that Midas is entitled to enhanced damages in this case based on Defendants' egregious conduct. *See Tinnus Enter., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 726 (awarding enhanced damages based on defendant's deliberate infringement and litigation misconduct).

## Conclusion

For the foregoing reasons, the Court should deny the MTD in its entirety. In the alternative, to the extent the Court finds any of its claims are not sufficiently pled, Midas respectfully asks the Court for leave to amend its FAC.

Dated: May 16, 2022

Respectfully submitted,

/s/ *Henry Pogorzelski*
Henry M. Pogorzelski
Texas Bar No. 24007852
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Telephone: (512) 482-6800
Fax: (512) 482-6859
henry.pogorzelski@klgates.com

Nicholas F. Lenning
Ruby A. Nagamine
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 370-6685
Fax: (206) 370-6006
nicholas.lenning@klgates.com
ruby.nagamine@klgates.com

James A. Shimota
Gina A. Johnson
Benjamin E. Weed.
K&L Gates LLP
70 West Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
gina.johnson@klgates.com
benjamin.weed@klgates.com

Counsel for Plaintiff
Midas Green Technologies, LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who have appeared electronically in this case are being served on May 16, 2022 via the Court's ECF system.

<u>*/s/ Henry Pogorzelski*</u>
Henry Pogorzelski