FILED

NOV 0 7 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

Midas Green Technologies, LLC,

Plaintiff,

- vs. -

Rhodium Enterprises, Inc.;
Rhodium Technologies LLC;
Rhodium 10mw LLC;
Rhodium 2.0 LLC;
Rhodium 30mw LLC;
Rhodium Encore LLC;
Rhodium Industries LLC;
Rhodium JV LLC;
Rhodium Renewables LLC;
Rhodium Shared Services LLC;
Rhodium Shared Services PR Inc.;
Chase Blackmon;
Cameron Blackmon;
Nathan Nichols, and
Rhodium 2.0 Sub LLC;
Rhodium Encore Sub LLC;
Rhodium Renewables Sub LLC;
Rhodium Ready Ventures LLC;
Rhodium 10MW Sub LLC;
Rhodium 30MW Sub LLC;
i Ventures Enterprises LLC (fka Energy
Tech LLC);
Air HPC LLC;
Jordan HPC LLC; and
Jordan HPC Sub LLC.

Defendants.

Civil Action No. 6:22-cv-00050-ADA

**Jury Trial Demanded**

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Midas Green Technologies, LLC ("Midas" or "Plaintiff") hereby brings this action for

patent infringement against each of Rhodium Enterprises, Inc., Rhodium Technologies LLC,

1

Rhodium 10mw LLC, Rhodium 2.0 LLC, Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium Industries LLC, Rhodium JV LLC, Rhodium Renewables LLC, Rhodium Shared Services LLC, and Rhodium Shared Services PR Inc., Rhodium 2.0 Sub LLC, Rhodium Encore Sub LLC, Rhodium Renewables Sub LLC, Rhodium Ready Ventures LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, i Ventures Enterprises LLC (fka Energy Tech LLC), Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC (together "Rhodium"), as well as against each of Chase Blackmon, Cameron Blackmon, and Nathan Nichols in their individual capacities (together "the Individual Defendants").

Midas alleges infringement of U.S. Patent No 10,405,457, entitled "Appliance Immersion Cooling System" (the '457 patent) and U.S. Patent No. 10,820,446, entitled "Appliance Immersion Cooling System" (the '446 patent), at least by reason of Defendants' continued operation of their infringing bitcoin mining facilities in Rockdale, Texas, and elsewhere, including without limitation their contemplated operation of their second bitcoin mining facility presently under construction in Temple, Texas.

True and correct copies of the '457 and '446 patents (together "Patents-in-Suit" or "Asserted Patents") are attached as Exhibits A and B, respectively.

## Parties

1.     Plaintiff Midas Green Technologies, LLC is a Texas limited liability company with its principal place of business at 8107 Springdale Road, Austin, Texas 78724. Midas designs and builds immersion cooling solutions for use in data centers including cryptocurrency mining facilities. Midas has been an innovative pioneer in the application of immersion cooling technology.

2.     On information and belief, Defendant Rhodium Enterprises, Inc. is a Delaware corporation formed on April 22, 2021. On information and belief, Rhodium Enterprises, Inc. conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to its most recent SEC filing,

Rhodium Enterprises, Inc. is a holding company and the sole managing member of Defendant Rhodium Technologies LLC. *See* SEC Amendment No. 6 to Form S-1 at F-16, Rhodium Enterprises, Inc. (Jan. 18, 2022), *available at* https://www.sec.gov/Archives/edgar/data/0001874985/000121390022002442/fs12022a6_rhodium.htm.

3.      On information and belief, Defendant Rhodium Technologies LLC is a Delaware limited liability company formed on October 23, 2020. On information and belief, Rhodium Technologies LLC was formerly known as Rhodium Enterprises LLC. On information and belief, Rhodium Technologies LLC is a subsidiary of Defendant Rhodium Enterprises, Inc. On information and belief, Rhodium Technologies LLC conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is a holding company. In the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is known as "Rhodium Holdings."

4.      On information and belief, Defendant Rhodium 10mw LLC is a Delaware limited liability company formed on March 12, 2021. On information and belief, Rhodium 10mw LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 10mw LLC conducts business in Texas, including in this District, and including in the Waco Division.

5.      On information and belief, Defendant Rhodium 2.0 LLC is a Delaware limited liability company formed on December 17, 2020. On information and belief, Rhodium 2.0 LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 2.0 LLC conducts business in Texas, including in this District, and including in the Waco Division.

6.      On information and belief, Defendant Rhodium 30mw LLC is a Delaware limited liability company formed on April 1, 2020. On information and belief, Rhodium 30mw LLC is

3

an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium 30mw LLC conducts business in Texas, including in this District, and including in the Waco Division.

7.      On information and belief, Defendant Rhodium Encore LLC is a Delaware limited liability company formed on January 1, 2021. On information and belief, Rhodium Encore LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Encore LLC conducts business in Texas, including in this District, and including in the Waco Division.

8.      On information and belief, Defendant Rhodium Industries LLC is a Delaware limited liability company formed on May 17, 2021. On information and belief, Rhodium Industries LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Industries LLC conducts business in Texas, including in this District, and including in the Waco Division.

9.      On information and belief, Defendant Rhodium JV LLC is a Delaware limited liability company formed on April 1, 2020. On information and belief, Rhodium JV LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium JV LLC conducts business in Texas, including in this District, and including in the Waco Division.

10.      On information and belief, Defendant Rhodium Renewables LLC is a Delaware limited liability company formed on March 17, 2021. On information and belief, Rhodium Renewables LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Renewables LLC conducts business in Texas, including in this District, and including in the Waco Division.

11.      On information and belief, Defendant Rhodium Shared Services LLC is a Delaware limited liability company formed on December 23, 2020. On information and belief, Rhodium Shared Services LLC is an operating company and a subsidiary of Defendant Rhodium

Technologies LLC. On information and belief, Rhodium Shared Services LLC conducts business in Texas, including in this District, and including in the Waco Division.

12.     On information and belief, Defendant Rhodium Shared Services PR Inc. is a Puerto Rico corporation formed on November 24, 2021. On information and belief, Rhodium Shared Services PR Inc. is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Shared Services PR Inc. conducts business in Texas, including in this District, and including in the Waco Division. On information and belief, the business of Defendant Rhodium Shared Services PR Inc. includes facilitating the employment of personnel for Rhodium Enterprises, Inc. and its subsidiaries.

13.     On information and belief, Defendant Rhodium 2.0 Sub LLC is a Delaware limited liability company formed on April 25, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium 2.0 Sub LLC is an operating company and a subsidiary of Defendant Rhodium JV LLC. On information and belief, Rhodium 2.0 Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

14.     On information and belief, Defendant Rhodium Encore Sub LLC is a Delaware limited liability company formed on April 25, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium Encore Sub LLC is an operating company and a subsidiary of Defendant Rhodium JV LLC. On information and belief, Rhodium Encore Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

15.     On information and belief, Defendant Rhodium Renewables Sub LLC is a Delaware limited liability company formed on April 25, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium Renewables Sub LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Renewables Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

16.     On information and belief, Defendant Rhodium Ready Ventures LLC is a Delaware limited liability company formed on August 23, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium Ready Ventures LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Rhodium Ready Ventures LLC conducts business in Texas, including in this District, and including in the Waco Division.

17.     On information and belief, Defendant Rhodium 10MW Sub LLC is a Delaware limited liability company formed on April 6, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium 10MW Sub LLC is an operating company and a subsidiary of Defendant Rhodium JV LLC. On information and belief, Rhodium 10MW Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

18.     On information and belief, Defendant Rhodium 30MW Sub LLC is a Delaware limited liability company formed on April 6, 2022, with a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Rhodium 30MW Sub LLC is an operating company and a subsidiary of Defendant Rhodium JV LLC. On information and belief, Rhodium 30MW Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

19.     On information and belief, Defendant i Ventures Enterprises LLC, formerly known as Energy Tech LLC, is a Delaware limited liability company formed on October 22, 2020. On information and belief, i Ventures Enterprises LLC has a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. According to its Public Information Report, Defendants Chase Blackmon and Nathan Nichols, and Rhodium Chief Financial Officer Nicholas Cerasuolo, are directors of i Ventures Enterprises LLC. On information and belief, i Ventures Enterprises LLC is owned and controlled by Defendants Chase Blackmon, Cameron Blackmon, and Nathan Nichols, and by Rhodium Chief Financial Officer Nicholas Cerasuolo, by way of the investment entity of Chase Black and Cameron Blackmon known as Imperium

Investment Holdings LLC. On information and belief, i Ventures Enterprises LLC conducted business in Texas, including in this District, and including in the Waco Division.

20.     On information and belief, Defendant Air HPC LLC is a Delaware limited liability company formed on October 23, 2020. On information and belief, Air HPC LLC has a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Air HPC LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Air HPC LLC conducts business in Texas, including in this District, and including in the Waco Division.

21.     On information and belief, Defendant Jordan HPC LLC is a Delaware limited liability company formed on October 23, 2020. On information and belief, Jordan HPC LLC has a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Jordan HPC LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. On information and belief, Jordan HPC LLC conducts business in Texas, including in this District, and including in the Waco Division.

22.     On information and belief, Defendant Jordan HPC Sub LLC is a Delaware limited liability company formed on April 6, 2022. On information and belief, Jordan HPC Sub LLC has a principle office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. On information and belief, Jordan HPC Sub LLC is an operating company and a subsidiary of Defendant Technologies LLC. On information and belief, Jordan HPC LLC conducts business in Texas, including in this District, and including in the Waco Division.

23.     The foregoing SEC filing describes each of Defendants Rhodium 10mw LLC, Rhodium 2.0 LLC, Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium Industries LLC, Rhodium JV LLC, Rhodium Renewables LLC, Rhodium Shared Services LLC, Rhodium Shared Services PR Inc., Air HPC LLC, Jordan HPC LLC, as operating subsidiaries of Rhodium Technologies LLC. This SEC filing (dated January 18, 2022) also refers to i Ventures Enterprises LLC (then doing business as Energy Tech LLC) as a related party. Accordingly,

these defendants will be collectively be referenced herein as "the Rhodium Operating Subsidiaries."

24.     After Midas filed this case on January 13, 2022, and after the January 18, 2022 date of the aforementioned SEC filing, Defendants Jordan HPC Sub LLC, Rhodium Renewables Sub LLC, and Rhodium Ready Ventures LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium Technologies LLC. After the filing of this case and of the aforementioned SEC filing, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, Rhodium Encore Sub LLC, and Rhodium 2.0 Sub LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium JV LLC. Accordingly, these defendants will be collectively referenced herein as "the Rhodium Post-Filing Operating Subsidiaries."

25.     On information and belief, Defendant Chase Blackmon is a Texas resident and is a co-founder and the Chief Operating Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Chase Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Chase Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies by way of an entity called Imperium Investment Holdings LLC. Imperium is the majority and controlling owner of both Rhodium entities. According to the foregoing SEC filing, Chase Blackmon controls 25% of the voting interests in Imperium. On information and belief, Defendant Chase Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. For example, on information and belief, Defendant Chase Blackmon helped design Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

26.     On information and belief, Defendant Cameron Blackmon is a Texas resident and is a co-founder and the Chief Technology Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Cameron Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Cameron Blackmon also owns shares of both Rhodium Enterprises and

Rhodium Technologies through Imperium Investment Holdings LLC. According to the foregoing SEC filing, Cameron Blackmon controls 25% of the voting interests in Imperium. On information and belief, Defendant Cameron Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. For example, on information and belief, Defendant Cameron Blackmon helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

27.     On information and belief, Defendant Nathan Nichols is a Texas resident and is a co-founder and the Chief Executive Officer of both Rhodium Enterprises, Inc. and Rhodium Technologies LLC. Nathan Nichols serves on the board of directors for Rhodium Enterprises. Nathan Nichols also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium Investment Holdings LLC. According to the foregoing SEC filing, Nathan Nichols controls 25% of the voting interests in Imperium. On information and belief, Defendant Nathan Nichols personally directed, participated in, authorized, and/or ratified the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. For example, on information and belief, Defendant Nathan Nichols helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

28.     On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries operate in actuality as a single operating entity and are *alter egos* of each other. For example, throughout the previously referenced SEC filings of Defendant Rhodium Enterprises, references to "we" and "our" describe the operations of the various operating subsidiaries as a collective entity, "Rhodium." *See id.* at 62 ("'Rhodium,' 'we,' and 'us' refers to

(i) each of Rhodium Holdings and Rhodium JV's wholly and majority-owned subsidiaries as of the period from April 1, 2020 to December 31, 2020 and (ii) Rhodium and its subsidiaries for the nine months ended September 30, 2021. During the period ended December 31, 2020, Rhodium operated through its wholly and majority-owned subsidiaries."); F-2 ("Rhodium Enterprises, Inc., the issuer in this offering (together with its wholly owned subsidiaries, "Rhodium Enterprises" or the "Company"); F-16 ("The Company, together with its subsidiaries, operates a digital asset mining operation, which utilizes specialized computers (also known as "miners") using application-specific integrated circuit ("ASIC") chips to solve complex cryptographic algorithms in order to support the Bitcoin blockchain (in a process known as "solving a block"), in exchange for digital asset (Bitcoin) rewards."). Specifically, "Rhodium Enterprises is the sole managing member of Rhodium Holdings, controls, and is responsible for all operational, management and administrative decisions related to Rhodium Holdings' business and consolidates the financial results of Rhodium Holdings and its subsidiaries." *Id.* at F-16.

29.     On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries have common stock ownership. Each Individual Defendant owns shares of both Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC through Imperium Investment Holdings LLC. *See* SEC Amendment No. 6 to Form S-1 at 102. Rhodium Technologies LLC in turn directly or indirectly owns all of the outstanding equity interests in the Rhodium Operating Subsidiaries. *Id.* at 103–05. On information and belief, Rhodium Technologies LLC also directly or indirectly owns all of the outstanding equity interests in the Rhodium Post-Filing Operating Subsidiaries.

30.     On information and belief, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, share common directors and officers with Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC.

31.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries file consolidated financial statements. *Id.* at F-17 ("The

condensed consolidated financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries.")

32.     On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries (except for Rhodium Shared Services PR LLC) were incorporated by Defendant Cameron Blackmon, acting on behalf of Imperium Investment Holdings LLC, a third party under the control of the Individual Defendants.

33.     On information and belief, the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, are presently undercapitalized and exist for the purposes of illegitimately shielding Defendant Rhodium Enterprises, Inc. and Rhodium Technologies LLC, and in turn the Individual Defendants, from liability. On information and belief, the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, would be unable to satisfy any money judgement levied against them because of their undercapitalization and because their revenues flow directly to Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC.

34.     On information and belief, Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC finance the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries.

35.     On information and belief, Defendant Rhodium Shared Services LLC directly pays the salaries of all Rhodium officers and employees, with the exception that Defendant Rhodium Shared Services LLC indirectly pays the salary of Rhodium Chief Financial Officer Nicholas Cerasuolo by way of its subsidiary, Defendant Rhodium Shared Services PR Inc.

36.     On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, use each other's properties as their own. For example, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities.

37.    On information and belief, the daily operations of Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries are not kept separate. For example, on information and belief, they collectively operate the same bitcoin mining operation. *Id.* At F-16 ("The Company, together with its subsidiaries, operates a digital mining operation . . . ."). As discussed above, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities. On information and belief, they also have common business departments.

38.    On information and belief, the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, receive no business except through that allocated and arranged by Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC. For example, on information and belief, Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC negotiate contracts on behalf of the Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries, or vice versa.

39.    On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries do not observe corporate formalities, including keeping separate books. *See id.* at F-17 ("The condensed financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries. **All inter-company accounts, balances, and transactions have been eliminated.**") (emphasis added). On information and belief, the same is true with respect to the Rhodium Post-Filing Operating Subsidiaries.

40.    Each Rhodium Operating Subsidiary and Rhodium Post-Filing Operating Subsidiary is an agent of Defendants Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC (aka Rhodium Holdings) and their owners and operators, Chase Blackmon, Cameron Blackmon, and Nathan Nichols. On information and belief, Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries therefore act as a common enterprise, their

actions ultimately being directed by the Individual Defendants. Specifically, the Individual

Defendants direct and control the activities of Defendant Rhodium Enterprises, Inc. and

Defendant Rhodium Technologies LLC, and those Defendants in turn direct and control the

activities of the operating subsidiaries. The operating subsidiaries do not function as separate

entities, but rather as controlled agents of the parent entities and the operating subsidiaries act on

behalf of the parent entities. *See, e.g.*, SEC Amendment No. 6 to Form S-1 at F-17 (referring to

the operating subsidiaries as "the subsidiaries through which the Company operates its assets").

## Jurisdiction

41.     This is a civil action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. § 101 et seq. The Court therefore has subject matter jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1338(a).

42.     Defendants are subject to this Court's specific and general personal jurisdiction,

pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to their

extensive business in this District, including by reason of their infringement alleged herein.

Specifically, and for example, on information and belief, Defendants own and operate an

infringing bitcoin mining facility in Rockdale, Texas. *See* SEC Amendment No. 6 to Form S-1 at

1 (referring to Defendants' Rockdale location as the "initial Texas site"). Rockdale, Texas is

located in Milam County, which is within the Western District of Texas. In addition, on

information and belief, Defendants' "second Texas site" is currently under construction in

Temple, Texas. This second location is scheduled to open in 2022. *See id*. at 4. Temple, Texas is

located in Bell County, which is also within the Western District of Texas. On information and

belief, as of the time of the filing of this amended complaint, at least some of Defendants'

infringing immersion cooling systems originally intended for use at the "second Texas site" are

presently operating either at the "second Texas site" in Temple, Texas, or at an alternative

remote location.

43.     On information and belief, Defendants have used, and are using, the claimed technology of the Asserted Patents within this District and within Texas, thereby committing acts of patent infringement. Defendants have derived revenues from these infringing activities within the District and state. Defendants regularly conduct business in this District and state, deriving substantial revenue therefrom, and therefore have committed purposeful acts in this District and state such that they should reasonably anticipate being hauled into this Court.

44.     For example, on information and belief, Defendant Rhodium Shared Services PR Inc., despite its relatively recent formation, has conducted business in this District and in Texas, and indeed conducts most if not all of its business in this District and in Texas. On information and belief, Defendant Rhodium Shared Services PR Inc. is a wholly owned subsidiary of Texas-based Defendant Rhodium Shared Services LLC. At least one purpose of Defendant Rhodium Shared Services PR Inc. is to receive funds from Texas-based Defendant Rhodium Shared Services LLC, and to transfer those funds to Rhodium's Chief Financial Officer Nicholas Cerasuolo, in return for Mr. Cerasuolo's provision of professional services to Rhodium Enterprises, to Rhodium Technologies, to the Rhodium Operating Subsidiaries, and to the Rhodium Post-Filing Operating Subsidiaries, while at the same time—because Defendant Rhodium Shared Services PR Inc. is nominally an entity formed in Puerto Rico—allowing Mr. Cerasuolo and potentially others to avoid federal income tax liability. On information and belief, Defendant Rhodium Shared Services has conducted business in this District and in Texas, by for example, negotiating and becoming a party to a number of Texas agreements. In fact, for example, Exhibit 10.14 of Rhodium's Amended SEC Form S-1 references an employment agreement between Mr. Cerasuolo and Defendant Rhodium Shared Services PR Inc. entitled "FORM OF EMPLOYMENT AGREEMENT, BY AND BETWEEN RHODIUM SHARED SERVICES PR INC. AND NICHOLAS CERASUOLO." On information and belief, Mr. Cerasuolo and Defendant Rhodium Shared Services PR Inc. have executed that agreement, or shortly will execute that agreement, or at least, Mr. Cerasuolo and Defendant Rhodium Shared Services PR Inc. are operating under that agreement, such that Mr. Cerasuolo is being paid for

his professional services by Texas-based Rhodium by way of Defendant Rhodium Shared Services PR Inc. Moreover, according to Rhodium's Amended SEC Form S-1, the foregoing agreement includes a second agreement entitled "Confidentiality, Proprietary Rights and Protective Covenants Agreement," included as "Exhibit A to Offer Letter." In this second agreement, Defendant Rhodium Shared Services PR Inc. purports to act "on behalf of itself and for the benefit of its corporate parents, subsidiaries, members, managers, and other entities under common control with [Defendant Rhodium Shared Services PR Inc.]" In other words, Defendant Rhodium Shared Services PR Inc. is purporting to act on behalf of the Texas-based Rhodium Enterprises, Texas-based Rhodium Technologies and Texas-based Rhodium Operating Subsidiaries and Rhodium Post-Filing Operating Subsidiaries. This second agreement provides for (1) mandatory arbitration of disputes in Texas; (2) venue for legal proceedings to be held in Texas; and (3) interpretation of its provisions under Texas law. On information and belief, Mr. Cerasuolo and Defendant Rhodium Shared Services PR Inc. have executed this second agreement, or shortly will execute this agreement, or at least, Mr. Cerasuolo and Defendant Rhodium Shared Services PR Inc. are operating under this second agreement. On information and belief, discovery will show additional purposeful contacts on the part of Defendant Rhodium Shared Services PR Inc. with Texas.

## Venue

45.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). All Defendants have at least two places of business in this District and in the Waco Division, i.e., in Rockdale, Texas and in Temple, Texas. On information and belief, Defendants have committed acts of infringement, or a portion thereof, at these two locations within this District and within this Division.

## The Asserted Patents

### A.  The '457 Patent

15

46.     U.S. Patent No. 10,405,457 (the '457 patent), entitled "Appliance Immersion Cooling System," was duly and legally issued on September 3, 2019 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 14/355,533, was filed on April 30, 2014. A true and correct copy of the '457 patent is attached as Exhibit A and incorporated by reference.

47.     Midas is the assignee of all right, title, and interest in the '457 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '457 patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '457 patent by Defendants.

### B.     The '446 Patent

48.     U.S. Patent No. 10,820,446 (the '446 patent), entitled "Appliance Immersion Cooling System," was duly and legally issued on October 27, 2020 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 16/243,732, was filed on January 9, 2019, and is a continuation of the application which issued as the '457 patent filed on April 30, 2014. A true and correct copy of the '446 patent is attached as Exhibit B and incorporated by reference.

49.     Midas is the assignee of all right, title, and interest in the '446 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '446 patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '446 patent by Defendants.

### Rhodium and Its Infringements

50.     Rhodium is "an industrial-scale digital asset technology company" that "mine[s] bitcoin" with a "fully integrated" liquid cooling system. SEC Amendment No. 6 to Form S-1 at 1. Rhodium's "founders spent the previous four years developing, testing and collecting field operational data to optimize the application of [their] liquid-cooling technology to mining bitcoin." *Id.* Rhodium designs, builds, and operates data centers, also called "mining farms,"

consisting of "bitcoin miners" (i.e. high-powered computers) submerged in dielectric cooling fluid within specialized tank modules. *Id.* at 1, 22. The miners mine bitcoin and thus generate revenue. The liquid cooling system permits Rhodium to "predictably and consistently mine more bitcoin with fewer miners" by "optimiz[ing] the hash rate, or processing power" of the miners. *Id.* at 1.

51.     According to the foregoing SEC filing, Rhodium does not sell immersion cooling products to third parties, but instead is a fully integrated bitcoin mining operation that designs, builds, and then operates its own allegedly-proprietary immersion cooling systems to mine bitcoin and generate revenue. *Id.* at 1. On information and belief, Rhodium operates as a common enterprise controlled by Rhodium Enterprises and/or by Rhodium Technologies, and/or by their officers and primary shareholders, Defendants Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

52.     On information and belief, Rhodium owns and operates a bitcoin mining facility in Rockdale, Texas. Below are images from Rhodium's Rockdale facility showing the infringing liquid immersion cooling systems and tank modules:

 

*See, e.g.,* "Investor Presentation 17.02.2020. In connection with proposed acquisition of Distributed Ledger Technologies Ireland, Ltd, Element ASA" (February 17, 2020), *available at* https://dltx.com/uploads/images/Reports-and-Documents/Presentations-and-Docs/Exemption-Doc/Element_Investor_Presentation_210217.pdf.

53.     On information and belief, therefore, Defendants have directly and indirectly infringed at least claim 6 of the '457 patent and at least claim 6 of the '446 patent, as detailed in the claim charts attached as Exhibits C and D, respectively.

**Defendants' Knowledge of the Asserted Patents, Their Infringements, and the Prior Claim Construction Order**

54.     As detailed below, all Defendants have had actual notice of the Asserted Patents and their own infringements for some time. For example, on information and belief, the Individual Defendants became aware of the '457 patent and their infringements thereof no later than February 2020, when they received a notice letter from Midas addressed to another entity founded by the Individual Defendants, *i.e.,* Immersion Systems LLC. Further, on information and belief, the Individual Defendants became aware of the '457 patent and their infringements thereof, no later than November 24, 2020, when Midas amended its lawsuit against Immersion Systems to assert the '457 patent.

55.     Before founding any of their Rhodium entities, Individual Defendants Chase Blackmon, Cameron Blackmon, and Nathan Nichols began to commercialize certain liquid immersion cooling systems intended to be used in bitcoin mining operations. To sell those liquid immersion cooling systems to third parties, the Individual Defendants formed an entity called Immersion Systems LLC in 2018. Exemplary YouTube videos show Chase Blackmon and Cameron Blackmon working on such immersion cooling systems. *See* AntMiner S9 – Immersion Cooling Test, Feb. 17, 2018, https://www.youtube.com/watch?v=DRck1Iegf2A&list=PL9DOPgDnAGCvxaMJFIGMDoQe-2f36jMqG&index=2 (last accessed Apr. 15, 2022); Immersion Cooling – Beta Test 1, Feb. 17,

2018, https://www.youtube.com/watch?v=SzUO-PMtda4 (last accessed Apr. 15, 2022); *see also* SEC Amendment No. 6 to Form S-1 at 1 ("Our founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of our liquid-cooling technology to mining bitcoin.").

**Cameron Blackmon**                    **Chase Blackmon**

   

56.    From Immersion Systems' YouTube channel and Twitter feed, numerous images and videos are available of these liquid immersion cooling systems.

57.    For example, below is a picture from a November 12, 2019 tweet, depicting a stack of immersion cooling tank modules, from Immersion System's Twitter feed with the caption "Another shipment out! Here was have [sic] 5 Bitmain S9 tanks, fitting 42 miners each."

*See* https://twitter.com/ImmersionSystem/status/1194318079758610438 (last accessed on Apr. 15, 2022).



58.     In another example, below is a picture from an October 15, 2019 tweet, with the caption "Another shipment ready to go at Immersion Systems! We deploy, at industrial scale, liquid immersion crypto-mining solutions. We provide free fluid extraction and tech replacement



if you want to upgrade your miners on site. Contact us at <u>sales@immersionsystems.io</u> for more info."

59.    In another example, below is a picture from a July 21, 2019 tweet, with the caption "Preparing another order for shipping out this week! All of our systems are thoroughly tested prior to shipping. @ourbcma @MiningDisrupt #immersioncooling #mining #bitcoin."



60.    In another example, Immersion System's YouTube channel loaded a five-minute video entitled "Introduction" on December 10, 2018. *See* https://www.youtube.com/watch?v=kQ6cycss5ds (last accessed Apr. 15, 2022). That video features individual Defendant Chase Blackmon and contains detailed explanations and videos



clips of Immersion Systems' "flagship" immersion cooling system, designed by Defendants Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

61.     The exemplar video shows the structure of the immersion cooling systems designed by Chase Blackmon, Cameron Blackmon, and Nathan Nichols, including its central area with appliance slots, holed weir design, winged fluid recovery chambers on either side of the central area, the dielectric fluid flowing up through the central area and the appliance slots, and the pump system sending the heated dielectric fluid to a dry cooler and then back. *See id.* at 0:44 ("In here, you can see this is BitCool that we use to pump up through the miners and then it exits the sides in a fluid recovery chamber.").



I'm looking down into the fluid recovery chamber where



62.     From approximately 2018 to 2020, Immersion Systems promoted infringing immersion cooling systems with this design to third parties for use in bitcoin mining operations.

63.     On the basis of these videos and photos, Midas sent a detailed letter and claim chart to Immersion Systems on February 7, 2020, explaining that Immersion Systems' immersion cooling systems infringed the '457 patent. On information and belief, each of the Individual Defendants received and actually read Midas' February 7, 2020 letter around the time that it was sent. Immersion did not respond to that letter, or a second sent shortly thereafter.

64.     After Immersion Systems did not respond to the second letter from Midas, Midas filed suit against Immersion Systems on May 29, 2020 in the Northern District of Texas, *Midas Green Technologies, LLC v. Immersion Systems LLC,* No. 4:20-cv-00555-O (hereafter, "the Immersion Systems Litigation."). On November 24, 2020, Midas amended its complaint to include detailed allegations of patent infringement for the '446 patent.

65.     On information and belief, the Individual Defendants decided to shut down Immersion Systems in 2020, shortly after receiving Midas' first letter on February 7, 2020. On information and belief, the Individual Defendants made this decision to cease conducting business under Immersion Systems because they then knew that their particular immersion cooling systems infringed the '457 patent.

66.     Around this time, as detailed further below, Individual Defendants Chase
Blackmon, Cameron Blackmon, and Nathan Nichols formed their first Rhodium entity in
April 2020, *i.e.*, Defendant Rhodium 30MW LLC. The purpose of this entity (and of the other
Rhodium Operating Subsidiaries and Rhodium Post-Filing Operating Subsidiaries) was not to
sell immersion cooling systems to third parties, but rather to use immersion cooling systems to
mine bitcoin.

67.     During the pendency of the Immersion Systems Litigation in the Northern District
of Texas litigation, the Individual Defendants caused Immersion Systems to take steps to conceal
the existence of the Individual Defendants' new Rhodium businesses.

68.     Exemplary photos from Defendants' Rockdale, Texas facility (see above), and as
well as photos from Rhodium's website (rhdm.com, see below), appear to suggest that the
immersion cooling systems of Rhodium are materially identical to the immersion cooling
systems previously promoted by the Individual Defendants by way of Immersion Systems.



69.     Because the immersion cooling systems products previously promoted by Immersion Systems and the immersion cooling systems used by Rhodium appear to be materially identical, each of the Individual Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '457 patent, as of February 2020. Despite this knowledge, on information and belief, the Individual Defendants decided to utilize the particular immersion cooling systems that they had previously promoted via Immersion Systems, in the Individual Defendants' new Rhodium-labelled bitcoin mining business ventures.

70.     On information and belief, all of the Rhodium defendants had actual and constructive notice and knowledge of the '457 patent as of their founding, at least by virtue of the actual notice of the '457 patent possessed by the Individual Defendants.

71.     On information and belief, all of the Rhodium defendants had actual knowledge that their immersion cooling systems would infringe the '457 patent as of their founding, at least by virtue of the knowledge of infringement possessed by the Individual Defendants.

72.     On information and belief, each of the Defendants gained actual notice of the '446 patent in November of 2020, by virtue of the filing by Midas of its amended complaint in the Immersion Systems Litigation. On information and belief, each of the Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '446 patent, by virtue of the filing by Midas of its amended complaint.

73.     During the course of the Immersion Systems Litigation, Midas and Immersion Systems submitted a Joint Claim Construction Chart (Dkt. 82 & 82-1) in which the parties agreed to the proper construction of two claim terms, i.e., "weir" and "plenum," and in which the parties further agreed that seventeen other claim terms should be afforded their plain and ordinary meaning. A true and correct copy of that filing is attached as Exhibit E.

74.     On November 22, 2021, the Court in the Immersion Systems Litigation issued its claim construction order, rejecting arguments from Immersion System that the '457 and '446 patents were invalid as indefinite, and adopting Midas' proposed constructions as plain and ordinary meaning, with regard to two disputed claim terms. A true and correct copy of the

Court's claim construction order is attached as Exhibit F. In its claim construction order, the Court also adopted the proposed constructions for nineteen agreed-upon terms and phrases as set forth in the parties' Joint Claim Construction Chart (Dkt. 82 & 82-1).

75.     On information and belief, as of their receipt of the foregoing claim construction ruling from the Immersion Systems Litigation in late November 2021, the Defendants knew or should have known that the Asserted Patents were valid and infringed by Defendants, to the extent they did not already possess such knowledge.

76.     The Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021 discloses the existence of the Immersion Systems Litigation, as well as acknowledging the possibility that Midas might file a patent infringement lawsuit against Rhodium. *See* SEC Amendment No. 4 to Form S-1 at 29, Rhodium Enterprises, Inc. (Dec. 14, 2021), *available at* https://sec.report/Document/0001213900-21-065116/fs12021a4_rhodium.htm Notably, the Form S-1 does *not* state that the Rhodium systems or tanks are different in any material respect from the accused Immersion Systems systems or tanks, amounting to a tacit admission that they are the same or similar in all material respects. *Id.* Even after Midas filed the Original Complaint in this action, Rhodium filed an amended Form S-1 acknowledging the lawsuit but not containing any statements that the Rhodium systems or tanks differ in any material respect from the infringing Immersion Systems systems or tanks. SEC Amendment No. 6 to Form S-1 at 4. Defendants' disclosure of the Immersion Systems Litigation, and a corresponding litigation risk to the Rhodium entities, in its Form S-1 further demonstrates its knowledge of the asserted patents and of its infringement.

77.     On information and belief, as of the filing of this suit on January 13, 2022, each of the Defendants is well aware of the Asserted Patents, and each of the Defendants is well aware of their infringements thereof.

## Count 1: Infringement of U.S. Patent No. 10,405,457

78.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

79.     The '457 patent was filed April 30, 2014, and legally issued by the United States

Patent and Trademark Office on September 3, 2019. The '457 patent is valid and enforceable,

and presumed as such pursuant to 35 U.S.C. § 282.

80.     Without a license or permission from Midas, Defendants have infringed and

continue to infringe one or more claims of the '457 patent, directly, contributorily, or by

inducement, by making, having made, using, offering for sale, or selling products and devices

that embody the patented invention in violation of 35 U.S.C. § 271.

81.     Defendants' infringement has been, and continues to be, knowing, intentional, and

willful, at least beginning February 7, 2020, with the delivery of Midas' notice letter to

Immersion Systems, of which the Individual Defendants had contemporaneous notice.

82.     Defendants' acts of infringement of the '457 patent have caused and will continue

to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284.

Defendants' acts of infringement of the '457 patent have caused and will continue to cause

Midas immediate and irreparable harm unless such infringing activities are enjoined by this

Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

### A.      Direct Infringement

83.     On information and belief, Defendants (excluding i Ventures Enterprises LLC)

have directly infringed one or more claims of the '457 patent in the Western District of Texas,

the State of Texas, and elsewhere in the United States, by at least making, having made, using,

selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation

of at least claim 6 of the '457 patent. If any limitation of claim 6 is not practiced in a literal

sense, then that limitation is present under the doctrine of equivalents.

84.     In particular, on information and belief, the Rhodium Operating Entities and the

Rhodium Post-Filing Operating Entities (excluding i Ventures Enterprises LLC), have directly

infringed one or more claims of the '457 patent in the Western District of Texas, the State of

Texas, and elsewhere in the United States, by at least making, having made, using, selling,

and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at

least claim 6 of the '457 patent. To the extent that Defendants Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC may not *per se* directly infringe, these entities directly infringe because they are *alter egos* of the other Rhodium entities.

85.     On further information and belief, the Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have directly infringed one or more claims of the '457 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of directing and controlling the activities of the Rhodium Operating Entities and the Rhodium Post-Filing Operating Subsidiaries.

86.     On further information and belief, each of the Individual Defendants has directly infringed one or more claims of the '457 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by personally committing some or all of the acts of direct infringement described above including by directing, participating in, authorizing, and/or ratifying the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021) (rejecting the view that piercing the corporate veil is required for officer liability and noting that "Corporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity.")

87.     In addition, each of the Defendants is liable for the direct infringement of one or more claims of the '457 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by reason of the direct infringement by one or more other Defendants, because the Defendants operate as a common enterprise and are *alter egos* of each other.

88.     Attached as Exhibit C is an exemplary claim chart detailing representative infringement of claim 6 of the '457 patent.

### B.    *Induced Infringement*

89.    On information and belief, Defendants (excluding Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC) have been and are inducing infringement of the '457 patent by actively and knowingly inducing others (including each other) to make, have made, use, sell, offer for sale, or import the infringing immersion cooling systems and tank modules that embody or use the invention claimed in the '457 patent in violation of 35 U.S.C. § 271(b).

90.    Defendants have possessed specific intent to induce infringement of the '457 patent. Specifically, Defendants have long been aware of the '457 patent and the specific manner in which their immersion cooling system design infringes the '457 patent, by virtue of detailed claim charts provided to the Individual Defendants and either shared with all other Defendants or that all other Defendants have knowledge of their infringement through the knowledge of the Individual Defendants, who are officers, directors, and owners of the Rhodium Defendants. Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint.

91.    On information and belief, Defendants have induced infringement by providing designs and instructions to third party manufacturers and contractors to have made infringing immersion cooling systems and tank modules.

92.    Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and Individual Defendants have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to among other parties, the Rhodium Operating Subsidiaries and Rhodium Post-Filing Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue.

93.    On information and belief, Defendant i Ventures Enterprises LLC (fka Energy Tech LLC) has induced infringement at least by willfully providing equipment and/or services to the Rhodium Operating Subsidiaries and/or the Rhodium Post-Filing Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue. *See* SEC Amendment

No. 6 to Form S-1 at F-16, Rhodium Enterprises, Inc. ("Energy Tech LLC, a related entity through common ownership and control, purchased on behalf of the Company $146 of dry coolers and related engineering services from the Company's third-party suppliers. The Company subsequently purchased the assets from Energy Tech LLC at cost without any markup.").

94.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and the Individual Defendants have also induced infringement by willfully directing and controlling the infringing activities of the Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries.

## Count 2: Infringement of U.S. Patent No. 10,820,446

95.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

96.     The '446 patent was filed January 9, 2019, and legally issued by the United States Patent and Trademark Office on October 27, 2020. The '446 patent is valid and enforceable, and presumed as such pursuant to 35 U.S.C. § 282.

97.     Without a license or permission from Midas, Defendants have infringed and continue to infringe one or more claims of the '446 patent, directly, contributorily, or by inducement, by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

98.     Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning November 24, 2020, with the filing of Midas' amended complaint against Immersion Systems, of which the Individual Defendants had contemporaneous notice.

99.     Defendants' acts of infringement of the '446 patent have caused and will continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '446 patent have caused and will continue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

### A.    *Direct Infringement*

100.    On information and belief, Defendants (excluding i Ventures Enterprises LLC) have directly infringed one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claim 6 of the '446 patent. If any limitation of claim 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

101.    In particular, on information and belief, the Rhodium Operating Entities and the Rhodium Post-Filing Operating Entities (excluding i Ventures Enterprises LLC), have directly infringed one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claim 6 of the '446 patent. To the extent that Defendants Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC may not *per se* directly infringe, these entities directly infringe because they are *alter egos* of the other Rhodium entities.

102.    On further information and belief, the Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have directly infringed one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of directing and controlling the activities of the Rhodium Operating Entities and the Rhodium Post-Filing Operating Subsidiaries.

103.    On further information and belief, the each of the Individual Defendants has directly infringed one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by personally committing some or all of the acts of direct infringement described above including by directing, participating in, authorizing, and/or ratifying the infringing conduct of Rhodium Enterprises, Inc., Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021) (rejecting the view that

31

piercing the corporate veil is required for officer liability and noting that "Corporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity.")

104.    In addition, each of the Defendants is liable for the direct infringement of one or more claims of the '446 patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by reason of the direct infringement by one or more other Defendants, because the Defendants operate as a common enterprise and are *alter egos* of each other.

105.    Attached as Exhibit D is an exemplary claim chart detailing representative infringement of claim 6 of the '446 patent.

## B.    *Induced Infringement*

106.    On information and belief, Defendants (excluding Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC) have been and are inducing infringement of the '446 patent by actively and knowingly inducing others (including each other) to make, have made, use, sell, offer for sale, or import the infringing immersion cooling systems and tank modules that embody or use the invention claimed in the '446 patent in violation of 35 U.S.C. § 271(b).

107.    Defendants have possessed specific intent to induce infringement of the '446 patent. Specifically, Defendants have long been aware of the '446 patent and the specific manner in which their immersion cooling system design infringes the '446 patent, by virtue of detailed claim charts provided to the Individual Defendants and either shared with all other Defendants or that all other Defendants have knowledge of their infringement through the knowledge of the Individual Defendants, who are officers, directors, and owners of the Rhodium Defendants. Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint.

108.     On information and belief, Defendants have induced infringement by providing designs and instructions to third party manufacturers and contractors to have made infringing immersion cooling systems and tank modules.

109.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and Individual Defendants have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to among other parties, the Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue.

110.     On information and belief, Defendant i Ventures Enterprises LLC (fka Energy Tech LLC) has induced infringement at least by willfully providing equipment and/or services to the Rhodium Operating Subsidiaries and/or the Rhodium Post-Filing Operating Subsidiaries, for knowing use in infringing activity to mine bitcoin and generate revenue. *See* SEC Amendment No. 6 to Form S-1 at F-16, Rhodium Enterprises, Inc. ("Energy Tech LLC, a related entity through common ownership and control, purchased on behalf of the Company $146 of dry coolers and related engineering services from the Company's third-party suppliers. The Company subsequently purchased the assets from Energy Tech LLC at cost without any markup.").

111.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC and the Individual Defendants have also induced infringement by willfully directing and controlling the infringing activities of the Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries.

### Willfulness and Egregiousness

112.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

113.     All Defendants (excluding Air HPC LLC, Jordan HPC LLC, and Jordan HPC Sub LLC) have willfully and maliciously infringed the '457 and '446 patents at least since the date of their actual notice of the patents and their infringement. Specifically, despite receiving detailed claim charts both in letters and having received such information through the Immersion Systems

33

litigation showing that their immersion cooling systems designs infringes Midas' patents, Defendants have continued to operate their infringing immersion cooling systems. Indeed, Defendants have aggressively sought to expand their operations and add additional immersion cooling systems, knowing throughout their existence that they infringe Midas' patents.

114.    The Individual Defendants (by way of Immersion Systems) actively sought to conceal the existence of their Rhodium business and did not reveal its existence during the course of the Immersion Systems litigation, despite clear discovery obligations to do so. The Individual Defendants also actively sought to conceal that Immersion Systems had ceased business operations, continuing the Northern District of Texas litigation for the true benefit of the Rhodium entities and the Individual Defendants.

115.    At the same time, on information and belief, the Individual Defendants, and/or Rhodium directly or indirectly bankrolled the filing and prosecution, nominally in the name of Immersion Systems, of an *Inter parties* review proceeding directed to attempt to invalidate the '457 patent, as well as a Post-Grant review proceeding directed to attempt to invalidate the '446 patent.

116.    Defendants' infringement has been egregious, wanton, malicious, and in bad faith. The individual Defendants possessed full knowledge that their immersion cooling systems design infringed the '457 and '446 patents, knew these patents were valid, did not attempt to procure a license to these valid patents, and instead proceeded to start a new business using the same or substantially the same infringing design. As Rhodium advertises, this immersion cooling system design is critical to their business and a primary driver of their profitability, and yet Defendants have knowingly and maliciously stolen Midas' patented and innovative technology for their own profit without compensating the inventors of the technology.

### Additional Allegations Relating to the Asserted Patents

117.    The '457 patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '457 patent seeks to solve at least two problems in the

34

prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '457 patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The '457 patent accomplishes these improvements through a unique, innovative design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly through the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The '457 patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

118.    The '457 patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each

appliance slot. The appliance immersion cooling system also, in some embodiments, includes a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted. The appliance immersion cooling system also includes a control facility adapted to coordinate the operation of the primary and, if included, the secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

119.    The '457 patent also claims, among other things, a tank module adapted for use in an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

120.    The '446 patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '446 patent seeks to solve at least two problems in the prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '446 patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of

access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow

patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow

velocities. The '446 patent accomplishes these improvements through a unique, innovative

design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly

through the tank, beginning from a plenum that substantially uniformly distributes the dielectric

fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially

uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over

the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the

tank. The '446 patent therefore does not claim an abstract idea, law of nature, or natural

phenomenon, but instead to a tangible, patent-eligible invention.

121.    The '446 patent claims, among other things, an appliance immersion cooling

system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical

appliances, each in a respective appliance slot distributed vertically along, and extending

transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the

long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform

recovery of the dielectric fluid flowing through each appliance slot. The appliance immersion

cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid

through the tank. The primary circulation facility includes a plenum, positioned adjacent the

bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly

through each appliance slot. The appliance immersion cooling system also includes, in at least

one embodiment, a secondary fluid circulation facility adapted to extract heat from the dielectric

fluid circulation in the primary circulation facility, and to dissipate to the environment the heat so

extracted, and a control facility adapted to coordinate the operation of the primary and secondary

fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

122.    The '446 patent also claims, among other things, a tank module adapted for use in

an appliance immersion cooling system. The tank module includes a tank adapted to immerse in

a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot

distributed vertically long, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Midas respectfully requests a trial by jury of any issues so triable by right.

## Prayer for Relief

Wherefore, Midas requests judgment against Defendants as follows:

A.      Adjudging that Defendants have directly infringed, and actively induced infringement of, the '457 patent, in violation of 35 U.S.C. § 271(a) and (b);

B.      Adjudging that Defendants have directly infringed, and actively induced infringement of the '446 patent, in violation of 35 U.S.C. § 271(a) and (b);

C.      Preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of, the '457 patent and of the '446 patent;

D.      Ordering Defendants to account for and pay damages adequate to compensate Midas for Defendants' infringement of, and inducement to infringe, the '457 patent and the '446

patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C.
§ 284;

E.     Ordering an accounting by Defendants for any infringing activity not presented at
trial and an award by the court of additional damages for any such infringing activity to Midas;

F.     Ordering that the damages award by increased up to three times the actual amount
assessed, pursuant to 35 U.S.C. § 284;

G.     Declaring this case exceptional and ordering Defendants to pay the cost of this
action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together
with prejudgment interest; and

H.     Awarding such other and further relief as this Court deems just and proper.


Dated: November 7, 2022

Respectfully submitted,

*/s/ Henry Pogorzelski*
Henry M. Pogorzelski
Texas Bar No. 24007852
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Telephone: (512) 482-6800
Fax: (512) 482-6859
henry.pogorzelski@klgates.com
Nicholas F. Lenning (*p.h.v.*)
Ruby A. Nagamine (*p.h.v.*)
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: (206) 370-6685
Fax: (206) 370-6006
nicholas.lenning@klgates.com
ruby.nagamine@klgates.com

James A. Shimota (*p.h.v.*)
Gina A. Johnson (*p.h.v.*)
Benjamin E. Weed (*p.h.v.*)
K&L GATES LLP
70 WEST Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
gina.johnson@klgates.com
benjamin.weed@klgates.com

Counsel for Plaintiff
Midas Green Technologies, LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who have appeared electronically in this case are being served on November 7, 2022 via the email address that counsel provided to Court's ECF system.

/s/ *Henry Pogorzelski*
Henry Pogorzelski