# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **Midas Green Technologies, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:22-cv-00050-ADA |
| | ) | |
| - vs. - | ) | **Jury Trial Demanded** |
| | ) | |
| **Rhodium Enterprises, Inc.;** | ) | |
| **Rhodium Technologies LLC;** | ) | |
| **Rhodium 10mw LLC;** | ) | **ORAL ARGUMENT** |
| **Rhodium 2.0 LLC;** | ) | **REQUESTED** |
| **Rhodium 30mw LLC;** | ) | |
| **Rhodium Encore LLC;** | ) | |
| **Rhodium Industries LLC;** | ) | |
| **Rhodium JV LLC;** | ) | |
| **Rhodium Renewables LLC;** | ) | |
| **Rhodium Shared Services LLC;** | ) | |
| **Rhodium Shared Services PR Inc.;** | ) | |
| **Chase Blackmon;** | ) | |
| **Cameron Blackmon;** | ) | |
| **Nathan Nichols;** | ) | |
| **Rhodium 2.0 Sub LLC;** | ) | |
| **Rhodium Encore Sub LLC;** | ) | |
| **Rhodium Renewables Sub LLC;** | ) | |
| **Rhodium Ready Ventures LLC;** | | |
| **Rhodium 10MW Sub LLC;** | | |
| **Rhodium 30MW Sub LLC;** | | |
| **I Ventures Enterprises LLC (fka Energy Tech LLC);** | | |
| **Air HPC LLC;** | | |
| **Jordan HPC LLC; and** | | |
| **Jordan HPC Sub LLC.** | | |

_____ Defendants. _____

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

# TABLE OF CONTENTS[1]

I.     **INTRODUCTION** ...................................................................1

II.    **STATEMENT OF FACTS** ...............................................2

III.   **LEGAL STANDARD** .....................................................3

IV.   **ARGUMENT**....................................................................4

      A.    The SAC Improperly Fails To Differentiate Between The Defendants .4

      B.    The Court Lacks Jurisdiction Over Rhodium Shared Services PR Inc. .9

      C.    Venue Is Improper As To Rhodium Shared Services PR Inc. ...............11

      D.    Direct Infringement As To The Individual Defendants Is Insufficiently Pled ...................................................................12

      E.    Midas's Induced Infringement Claims Should Be Dismissed ...............13

      F.    The SAC Fails to Adequately Plead Either Willful Infringement or Enhanced Damages .................................................18

V.     **CONCLUSION** ..............................................................**20**

---

[1]   All emphasis added throughout unless otherwise noted.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*,
   450 F. App'x 326 (5th Cir. 2011) ........................................................................6

*Aeritas, LLC v. Darden Corp.*,
   2021 WL 4868430 ...............................................................6, 8, 11, 13

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) ...............................................18

*Affinity Labs of Texas, LLC v. Toyota Motor N.A., Inc.*,
   2014 WL 2892285 (W.D. Tex. May 12, 2014) .....................................16, 17, 18

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) .............................................................19

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ...................................................................8, 11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................3, 4

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   447 F.3d 411 (5th Cir. 2006) ................................................................................6

*Callier v. Nat'l United Grp., LLC*,
   2021 WL 5393829 (W.D. Tex. Nov. 17, 2021) ........................................4, 5, 13

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................................3

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
   2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ...........................................17, 18

*Ergo Licensing LLC v. Cardinal Health, Inc.*,
   2009 WL 2021926 (D. Me. July 13, 2009), *report and
   recommendation adopted*, 2009 WL 2591360 (D. Me. Aug. 19,
   2009) ....................................................................................................................7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016) ............................................................................................20

*In re Google*,
    949 F.3d 1338 (Fed. Cir. 2020) ......................................................................11

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................................4

*Inhale, Inc. v. Gravitron, LLC*,
    2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) .................................................14

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ...........................................17, 18

*Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*,
    2021 WL 4555608 (W.D. Tex. Oct. 4, 2021) .....................................................3

*Lubby Holdings LLC v. Chung*,
    11 F.4th 1355 (Fed. Cir. 2021) ........................................................................12

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
    2018 WL 4620713 (S.D. Tex. July 31, 2018) ..................................................20

*Magnum Oil Tools Int'l, L.L.C. v. McClinton*,
    2014 WL 468839 (S.D. Tex. Feb. 5, 2014) ......................................................13

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990) ........................................................................12

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    2018 WL 8261315 (W.D. Tex. Nov. 30, 2018) ................................................19

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen)
Tech., Ltd.*,
    2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ...........................................16, 19

*Nat'l Steel Car Ltd. v. Greenbrier Companies, Inc.*,
    2020 WL 4289388 (W.D. Tex. July 27, 2020) ..................................................6

*Synergy Drone LLC v. Parrot S.A.*,
    2018 WL 11361758 (W.D. Tex. Apr. 17, 2018) .................................................9

*Taylor v. Books A. Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) ................................................................4, 5

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ...........................................................................11

*TIP Sys., LLC v. SBC Operations, Inc.*,
  536 F. Supp. 2d 745 (S.D. Tex. 2008) ..................................................6, 7

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
  2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) ............................17, 18, 19

*Wapp Tech Ltd. v. Micro Focus Int'l, PLC*,
  406 F. Supp. 3d 585 (E.D. Tex. 2019)..................................................6, 10

**Statutes**

28 U.S.C. § 1400(b) ......................................................................................11

35 U.S.C.
  § 271(a) ....................................................................................................5
  § 284.........................................................................................................19

**Rules**

Fed. R. Civ. Proc. Rule 8 ............................................................................4, 5

## I.     INTRODUCTION

Midas accuses 24 different Defendants of direct, indirect, and willful infringement of two patents, along with a request for enhanced damages.  After Defendants filed a motion to dismiss the original complaint, Midas amended its complaint to try to cure the pleading deficiencies Defendants identified.  Midas then filed a Second Amended Complaint ("the SAC"), adding 10 new defendants without new substantive allegations.  Despite the amendments, the SAC still levels its accusations against Defendants by making conclusory allegations devoid of the necessary factual underpinnings to plausibly support a reasonable inference that any of the Defendants, much less all 24, are liable.  The SAC's attempt to plead piercing the corporate veil fairs no better.  While Midas now devotes more than a single paragraph to plead piercing the corporate veil, the SAC relies almost exclusively on conclusory allegations made "on information and belief," falling short of overcoming the heavy burden needed to treat the corporate Defendants as a single entity. Pleading in this manner is impermissible, and the SAC should be dismissed for myriad reasons.

First, the SAC improperly lumps all 24 Defendants together without any specific factual allegations alleged against any particular Defendant.  Pleading in this manner fails to put the Defendants on notice of what specific acts are attributable to each, warranting dismissal.

Second, the SAC fails to plead personal jurisdiction over Defendant Rhodium Shared Services PR Inc., which is unsurprising as it has no contacts with Texas and has never had any employees or agents there.  Third, the SAC also fails to plead venue as to Defendant Rhodium Shared Services PR Inc.  This entity is not incorporated in Texas, so it does not reside in the state. And, because Defendant Rhodium Shared Services PR Inc. does not have any employees or other agents conducting its business, it lacks a regular, physical presence in the Western District of Texas.

Fourth, the SAC's allegations of direct infringement against the three individual Defendants, who are sued here in their personal capacity, are not adequately pled.  To plead such

claims against corporate officers, the SAC must plead either (1) that the individual Defendants' own acts infringed the Asserted Patents; or (2) that piercing the corporate veil is warranted. But, the SAC's conclusory allegations made "on information and belief" without any factual support are insufficient to adequately plead that the individual Defendants' own acts infringed the Asserted Patents. With respect to piercing the corporate veil, the SAC does not even allege that the individual Defendants are alter egos of any corporate Defendant. As such, the SAC's claims for direct infringement against the individual Defendants should be dismissed.

Finally, at least because the SAC fails to adequately plead knowledge of infringement of the Asserted Patents by any of the Defendants, the SAC's claims for induced infringement, willful infringement, and enhanced damages should be dismissed.

## II.   STATEMENT OF FACTS

Midas filed suit on January 13, 2022. Dkt. 1. Defendants filed a motion to dismiss Midas' claims on March 28, 2022. Dkt. 39. Rather than defend the sufficiency of its original complaint, Midas filed an amended complaint. Dkt. 44 (FAC). As with the original complaint, the FAC alleged patent infringement against eleven Rhodium entities (collectively the "Rhodium Defendants") and three individuals (collectively the "Individual Defendants"). Defendants filed a motion to dismiss on May 2, 2022. Dkt. 45. On November 7, 2022, Midas filed the SAC. Dkt. 62. The SAC is substantively identical to the FAC, except for adding 10 new defendants.[2] *See id.*

The SAC, like the original complaint, includes two counts, which contain mirror image allegations. The first alleges (1) direct infringement of U.S. Patent No. 10,405,457 (the "'457 patent") against all Defendants, and (2) induced infringement against all Defendants. SAC ¶¶ 53–63. The second count, using identical language, makes the same allegations with respect to U.S.

---

[2]   Out of an abundance of caution, Defendants file this motion to dismiss the SAC, despite the fact that it is substantively identical to its pending, fully briefed motion to dismiss (Dkt. 45).

Patent No. 10,820,446 (the "'446 patent").  SAC ¶¶ 64–74.  The SAC also alleges Defendants'

alleged infringement was willful and that Midas is entitled to enhanced damages.  *E.g.*, SAC ¶¶

113–116.  In an attempt to address the deficiencies identified by Defendants in their Motion to

Dismiss, Midas added several paragraphs to the FAC.  *E.g.*, FAC ¶¶ 14–16, 18–29, 33, 73–76, 79,

89–92, 95, 99–103; *see also* SAC ¶¶ 25–27, 29–40, 44, 84–87, 90, 101–104, 107, 112–116.  Nearly

all of these allegations, however, are based only on Midas's "information and belief" and/or are

conclusory, without factual support.  *See id.*

Each of the Rhodium Defendants is a separate corporate entity.  Rhodium Enterprises, Inc.

was formed on April 1, 2021, as a Delaware Corporation to become a holding corporation for

Rhodium Technologies LLC and its subsidiaries.  *See* Dkt. 45, Ex. 1 (Declaration of Nathan

Nichols in Support of Defendants' Motion to Dismiss Plaintiff's FAC) (hereinafter "Nichols

Decl."), Ex. A at F-16.[3]  Defendants Rhodium 10mw LLC; Rhodium 2.0 LLC; Rhodium 30mw

LLC; Rhodium Encore LLC; Rhodium Industries LLC; Rhodium JV LLC; Rhodium Renewables

LLC; Rhodium Shared Services LLC are all separate Delaware LLCs.  *Id.*  Defendant Rhodium

Shared Services PR Inc. is a separate Puerto Rican corporation.  *Id.*  It was created for use only

after Rhodium Enterprises Inc.'s IPO, which has been postponed.  Nichols Decl. ¶ 4.  It neither

conducts business nor has any contacts anywhere in the State of Texas.  *Id.* ¶ 3.  And it does not

have—and never had—any employees, consultants, or agents.  *Id.* ¶ 5.

## III.    LEGAL STANDARD

Midas's SAC cannot survive a motion to dismiss if it fails to plead enough facts "to state

a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[3]  Because this SEC filing is cited in the SAC and central to Plaintiff's claims, it is permissible
for the Court to rely on it in its entirety in deciding Defendants' motion.  *See Collins v. Morgan
Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

(citation omitted).  Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kirsch Rsch. & Dev., LLC v. IKO Indus., Inc.*, 2021 WL 4555608, at *2 (W.D. Tex. Oct. 4, 2021).  Well-pleaded facts are taken as true, viewing them in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  However, a court need not blindly accept each and every allegation of fact; properly pleaded factual allegations must amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A. Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also Iqbal,* 556 U.S. at 678–81 (allegations that an individual was the "principal architect" of a policy or was "instrumental" in adopting it were conclusory and not entitled to the presumption of truth).

## IV.    ARGUMENT

### A.    The SAC Improperly Fails To Differentiate Between The Defendants

The SAC impermissibly lumps all fourteen Defendants together without any specific factual allegations relating to any particular Defendant, failing to put any Defendant on notice of what specific acts, if any, are attributable to each individually.  "General allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant." *Callier v. Nat'l United Grp., LLC*, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021).  "A pleading must provide specific factual allegations of violations against specific defendants to suffice." *Id.*  Accordingly, "[u]sing the 'collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom' fails to meet the fair notice standard under Rule 8." *Id.*

By failing to set out specific factual allegations relating to any particular Defendant, it is impossible for the Defendants to know what specific acts are attributed to each individually.  For example, the SAC lumps all Defendants together in each of its allegations of direct infringement,

but fails to allege any acts of infringement anywhere in the SAC attributable to any individual Defendant.  *See* SAC ¶¶ 80–88, 96–100.[4]  The SAC requires each Defendant to blindly guess whether they are accused of all of the supposedly infringing conduct, including making, having made,[5] using, offering to sale, or selling products and devices that embody the patented invention, inducing infringement, willful infringement, or only some unknown subset.  Accordingly, because the SAC fails to meet the fair notice standard of Rule 8, the Court should "disregard any mere global assertions of fault" and treat "[s]uch statements . . . as 'naked assertions devoid of further factual enhancement.'"  *Callier*, 2021 WL 5393829, at *3.  When all such global assertions of fault are stripped away, nothing remains and the SAC does not adequately plead any claims of infringement against any Defendant, warranting dismissal.

Nor is the SAC's treatment of the Rhodium Defendants as a single entity based on an alter ego theory permissible.[6]  The SAC alleges that "Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing

---

[4]  With respect to direct infringement of both patents, the SAC also makes three mirror image allegations directed at (1) the "Rhodium Operating Entities" and "Rhodium Post-Filing Operating Subsidiaries"; (2) Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC; and (3) the Individual Defendants.  *See* SAC ¶¶ 84–86, 101–103.  While these paragraphs are not directed at all Defendants, each paragraph still improperly groups together a subset of Defendants.  Moreover, these paragraphs are conclusory and fail to identify any specific acts that can be attributed to each Defendant individually.  As such, the Court can disregard these allegations.  *See Callier*, 2021 WL 5393829, at *4; *Taylor*, 296 F.3d at 378–79.  With respect to induced infringement, the SAC makes two mirror-image allegations directed at Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Individual Defendants.  *See* SAC ¶¶ 92, 94, 109, 111.  But, as discussed above, these allegations are conclusory and fail to identify any specific acts that can be attributed to each Defendant individually and are not entitled to be taken as true.

[5]  The Court should dismiss any allegation that any Defendant directly infringed the Accused Patents by having a third party make its product.  *See, e.g.*, SAC ¶¶ 83, 100.  "Having made" is not a basis for direct infringement.  *See* 35 U.S.C. § 271(a).

[6]  As discussed in Section IV.D, the SAC does not allege piercing the corporate veil with respect to the Individual Defendants.  As such, there is no basis for Midas to even argue that the SAC properly treats the Individual Defendants as one and the same with the Rhodium Defendants.

Operating Subsidiaries operate in actuality as a single operating entity and are *alter egos* of each other," (SAC ¶ 28), but fails to allege sufficient factual allegations to meet the heavy burden necessary to cast aside the corporate form and treat the separate corporate entities as one.  "In deciding whether to pierce the corporate veil, a court 'must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.'"  *TIP Sys., LLC v. SBC Operations, Inc.*, 536 F. Supp. 2d 745, 754 (S.D. Tex. 2008); *see also Wapp Tech Ltd. v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019) ("As a general matter, the corporate form should not be lightly disregarded.").  "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."  *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011).  In determining whether a subsidiary is an alter ego, the Fifth Circuit considers twelve factors.  *Nat'l Steel Car Ltd. v. Greenbrier Companies*, Inc., 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006)).

The SAC fails to provide any factual support for its conclusory allegations relating to the factors considered by the Fifth Circuit, falling far short of carrying the heavy alter ego burden.  ***First***, "[u]ndercapitalization is often a critical factor in alter ego analysis."  *Nat'l Steel Car Ltd.*, 2020 WL 4289388, at *4.  Yet the SAC only alleges "*[o]n information and belief*, [that] the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, are presently undercapitalized and exist for the purposes of illegitimately shielding Defendant Rhodium Enterprises, Inc. and Rhodium Technologies LLC, and in turn the Individual Defendants, from liability."  SAC ¶ 33.  This is insufficient because it lacks factual support, so the Court need not accept it as true.  *See Aeritas, LLC v. Darden Corp.*, 2021 WL 4868430, at *2 (court need not

consider "allegations made on information and belief" where there is no factual support for those allegations, because such allegations "are legal conclusions disguised as factual allegations").

**Second**, the SAC alleges that "throughout the previously referenced SEC filings of Defendant Rhodium Enterprises, references to 'we' and 'our' describe the operations of the various operating subsidiaries as a collective entity, 'Rhodium.'"  SAC ¶ 28.  This is irrelevant to any of the Fifth Circuit's factors.  *See Ergo Licensing LLC v. Cardinal Health, Inc.*, 2009 WL 2021926, at *6 (D. Me. July 13, 2009), *report and recommendation adopted*, 2009 WL 2591360 (D. Me. Aug. 19, 2009) (piercing cannot be premised on the parent corporation "referring to itself in public as a single corporation that produces the product actually produced by the subsidiary.").

**Third**, the SAC—relying on Rhodium's Amended SEC Form S-1—alleges that the Rhodium Defendants "do not observe corporate formalities, including keeping separate books."  SAC ¶ 39; *see also id.* ¶¶ 31.  The relevant inquiry is how the Rhodium Defendants are actually organized, *i.e.*, whether they maintain corporate separateness.  But, Rhodium's Amended SEC Form S-1 never speaks to this issue.  *See id*.  Rather, Rhodium's Amended SEC Form S-1 indicates that the filing represents a departure from the actual organization of the entities, explaining that in ***preparing*** the consolidated and combined financial statements ***for the Amended SEC Form S-1 filing***, Rhodium Enterprises, Inc. included the accounts of Rhodium Enterprises, Inc. and Rhodium JV LLC, and, significantly, ***eliminated*** all inter-company accounts, balances, and transactions.  *See* Nichols Decl., Ex. A at F-17, F-36.  These allegations do not amount to a "specific, unusual circumstance[]" calling for an exception to the general rule of recognizing the corporate form.  *See TIP Sys., LLC*, 536 F. Supp. 2d at 754; *see also Ergo Licensing LLC*, 2009 WL 2021926, at *5 (refusing to pierce the corporate veil and noting that "consolidated SEC filings do not overcome the presumption of corporate separateness.").  Thus, the SAC fails to plead sufficient factual

allegations to establish that the Rhodium Defendants operate in actuality as a single entity and are alter egos of each other.[7]

**_Finally,_** the SAC makes several allegations allegedly showing that the Rhodium Defendants "operate in actuality as a single operating entity and are _alter egos_ of each other," including that (1) "Rhodium Enterprises' is the sole managing member of Rhodium Holdings, controls, and is responsible for all operational, management and administrative decisions related to Rhodium Holdings' business . . ." (SAC ¶ 28); (2) many of the Rhodium Defendants were incorporated by Defendant Cameron Blackmon (SAC ¶ 32); (3) Defendants Rhodium Enterprises, Inc. and Rhodium Technologies LLC finance the "Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries" (SAC ¶ 34); (4) Defendant Rhodium Shared Services LLC pays the salaries of all Rhodium officers and employees (SAC ¶ 35); (5) the Rhodium Defendants, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries use each other's properties as their own and daily operations are not kept separate (SAC ¶¶ 36, 37); (6) there is common stock ownership and common directors and officers[8] (SAC ¶¶ 29, 30); and (7) the "Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries" receive their business through Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC (SAC ¶ 38). Not so.

As an initial matter, these allegations are conclusory and based only "on information and

---

[7]   To the extent Midas intends to rely on an agency theory to justify its improper lumping of all the Defendants together, the SAC makes a solitary, conclusory allegation that "[e]ach Rhodium operating subsidiary and Rhodium Post-Filing Operating Subsidiary is an agent of Rhodium Holdings and Rhodium Holdings' owners and operators, Chase Blackmon, Cameron Blackmon, and Nathan Nichols." SAC ¶ 40. This bare allegation is insufficient. _See Andra Grp., LP v. Victoria's Secret Stores, L.L.C._, 6 F.4th 1283, 1287 (Fed. Cir. 2021).

[8]   That these entities have separate boards and directors actually confirms that the Rhodium Defendants observe corporate formalities.

belief," so the Court need not accept them as true.  *See Aeritas, LLC*, 2021 WL 4868430, at *2.

Nevertheless, "one-hundred percent ownership and identity of directors and officers are, even

together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."

*Synergy Drone LLC v. Parrot S.A.*, 2018 WL 11361758, at *4 (W.D. Tex. Apr. 17, 2018).  These

allegations, moreover, are consistent with normal operations in a parent-subsidiary relationship

where the subsidiary is a wholly-owned subsidiary.  And, "where, as here, a 'subsidiary is wholly-

owned by the parent,' courts must exercise caution in inferring an alter ego relationship based on

a normal parent-subsidiary relationship as in the case of a wholly-owned subsidiary, 'operating the

subsidiary independently of the parent company has little practical meaning.'"  *Synergy Drone*

*LLC*, 2018 WL 11361758, at *4.  Thus, the SAC's allegations are insufficient to overcome Midas's

heavy burden of establishing the degree of control necessary to pierce the corporate veil.

In sum, because the SAC impermissibly lumps all of the Defendants together, it does not

adequately plead any claims and should be dismissed.

## B.     The Court Lacks Jurisdiction Over Rhodium Shared Services PR Inc.

Notwithstanding the SAC's conclusory allegation to the contrary, (*see* SAC ¶ 12),

Defendant Rhodium Shared Services PR Inc. is not subject to this Court's specific or general

personal jurisdiction and should be dismissed from the suit.   For a defendant to be subject to a

court's general jurisdiction, the "defendant must be essentially at home in the forum state."

*Synergy Drone LLC*, 2018 WL 11361758, at *3.  At the other end of the spectrum, a court may

exercise specific personal jurisdiction over a defendant where, *inter alia*, "the defendant

purposefully directed its activities at residents of the forum and the claim arises out of or relates to

those activities with the forum."  *Id.*  Here, Defendant Rhodium Shared Services PR Inc. does not

conduct business anywhere in Texas, and therefore is not "essentially at home" in the state of

Texas.  *See* Nichols Decl. ¶¶ 3–5.  Indeed, it has no contacts with the State of Texas.  *Id.*  Defendant

Rhodium Shared Services PR Inc., moreover, does not have—and never had—any employees, agents, or consultants.  *Id.* ¶ 5.  Rather, the entity was created for use only after Rhodium Enterprises Inc.'s IPO, which has been postponed.  *Id.* ¶ 4.  Accordingly, there are no activities from which specific jurisdiction over Rhodium Shared Services PR Inc. could arise, let alone any affiliations with Texas that are so constant and pervasive to justify general jurisdiction.

Nor do the two agreements referenced in the SAC give rise to contacts with Texas.  SAC ¶ 44.  Rhodium's Amended SEC Form S-1 makes clear that Mr. Cerasuolo is not an employee of Defendant Rhodium Shared Services PR Inc., or any other Defendant.  Instead, Mr. Cerasuolo is a consultant and only following the IPO, will he become an employee.   Nichols Decl., Ex. A at 158.  Because the IPO referenced in Rhodium's Amended SEC Form S-1 has been postponed, Mr. Cerasuolo has not entered into an employment agreement with any Rhodium entity.  Nichols Decl. ¶¶ 4, 6–8.  As such, neither Rhodium Shared Services PR Inc. nor Mr. Cerasuolo have executed the agreements referenced in the SAC and neither party is "operating under th[ose] agreement[s]," nor is Mr. Cerasuolo "being paid for his professional services by Texas-based Rhodium by way of Defendant Rhodium Shared Services PR Inc."  *See id.* at ¶¶ 7–9; SAC ¶ 44.

Finally, while "the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory" for purposes of specific personal jurisdiction, *Wapp Tech Ltd. P'ship*, 406 F. Supp. 3d at 595, that is not the case here.  The SAC fails to allege facts sufficient to impute the Texas contacts of any Rhodium Defendant or any Individual Defendant to Rhodium Shared Services PR Inc. under either an agency theory,[9] or an alter ego theory.  The former requires a

---

[9]   Indeed, the SAC does not even allege that any of the other Rhodium Defendants are agents of Rhodium Shared Services PR Inc.  Rather, the SAC alleges that each "Rhodium Operating Subsidiary," *e.g.*, Rhodium Shared Services PR Inc., "is an agent of Rhodium Holdings and Rhodium Holdings' owners and operators. . . ."  SAC ¶ 40; *see also id.* ¶ 44.

showing of "(1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Andra Grp.*, 6 F.4th at 1287.  Because Defendant Rhodium Shared Services PR Inc. does not conduct any activities, however, there are no activities for the other Defendants to control.  *See* Nichols Decl. ¶¶ 3–5.  Moreover, as discussed in Section IV.A, the SAC fails to plead facts sufficient to establish any Rhodium Defendant is the alter ego of Defendant Rhodium Shared Services PR Inc. or vice versa.  Accordingly, Defendant Rhodium Shared Services PR Inc. should be dismissed for lack of personal jurisdiction.

### C.     Venue Is Improper As To Rhodium Shared Services PR Inc.

Venue is proper for a patent infringement suit "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Neither applies here.  ***First***, a "domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).  Because Defendant Rhodium Shared Services PR Inc. is a Puerto Rican corporation (SAC ¶ 12), it does not "reside" in Texas for the purpose of venue under § 1400(b).  *See Andra Grp., LP* 6 F.4th at 1287.

***Second***, the Federal Circuit has interpreted a "regular and established place of business" to require "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).  The SAC alleges that each Rhodium Defendant, on information and belief, "conducts business in Texas, including in this District, and including in the Waco Division."  SAC ¶¶ 2–12; *see also id.* ¶ 44.  These are conclusory allegations devoid of factual support, however, that the Court need not accept as true.  *See Aeritas, LLC*, 2021 WL 4868430, at *2.

Midas cannot, moreover, establish proper venue over Rhodium Shared Services PR Inc.

because it does not have any employees, consultants, or agents,[10] let alone a "regular, physical presence of an employee or other agent" conducting Rhodium Shared Services PR Inc.'s business in Texas or the Western District thereof. *See Andra Grp., LP* 6 F.4th at 1287. Indeed, Defendants Rhodium Enterprises, Inc., Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium 10mw LLC, Rhodium 2.0 LLC, and Rhodium Renewables LLC have places of business in Rockdale, Texas and in Temple, Texas, not Defendant Rhodium Shared Services PR Inc. Nichols Decl. ¶¶ 3–4, 10–11. And the SAC fails to allege facts sufficient to plead an alter ego relationship between the Rhodium Defendants. *See supra* Section IV.A. Because Defendant Rhodium Shared Services PR Inc. is a separate, distinct corporate entity, the presence of any other Defendant in this District is irrelevant. *Id.* Thus, venue is improper as to Rhodium Shared Services PR Inc.

### D.    Direct Infringement As To The Individual Defendants Is Insufficiently Pled

Midas fails to plead facts sufficient to establish direct infringement as to the Individual Defendants. A corporate officer may be liable for direct infringement in two circumstances. First, a corporate officer may be "personally liable for his own tortious actions, even if committed as a corporate officer." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021). Second, a corporate officer may be personally liable for a corporation's direct infringement where evidence warrants piercing the corporate veil. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). The SAC fails to adequately plead either circumstance is present here.

With respect to the first, the SAC relies on conclusory allegations that the Individual Defendants "helped design and develop the Defendants' infringing immersion cooling system" and they "direct[], participate[] in, and make[] decisions regarding the making and use of the infringing immersion cooling system." SAC ¶ 26; *see also id.* ¶¶ 25, 27. The SAC, however,

---

[10]    As discussed above, *supra* notes 7, 9, the SAC relies on a single conclusory allegation that fails to adequately plead an agency relationship between any of the Defendants.

makes these allegations only "on information and belief" and provides no factual support for them. These conclusory allegations are not entitled to the assumption of truth and are insufficient to allege that the Individual Defendants personally committed acts of infringement.  *See*, A*eritas, LLC*, 2021 WL 4868430, at *2; *Callier*, 2021 WL 5393829, at *4.

The SAC also fails to sufficiently allege piercing the corporate veil.  As already noted above, "a court may exert its equitable powers and disregard the corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a contravention of public policy. . . ." *Id.* "The court, however, must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.'" *Id.* "Moreover, unless there is at least 'specific intent to escape liability for a specific tort . . . the cause of justice does not require disregarding the corporate entity.'" *Id.*  The SAC is **silent** as to any allegation that the Individual Defendants are alter egos of any of the Rhodium Defendants, let alone allege any facts tending to show a "unity between the individual and corporation such that the separateness of the corporation has ceased, [or] an injustice if the corporate form is upheld." *See Magnum Oil Tools Int'l, L.L.C. v. McClinton*, 2014 WL 468839, at *2 (S.D. Tex. Feb. 5, 2014) (not observing corporate formalities, using corporate funds for personal use, and using the different business entities "fairly indiscriminately in the overall business that [the defendant] conducted" was **insufficient** to pierce the corporate veil) (citation omitted).  Moreover, the SAC fails to make any non-conclusory factual allegations that, even taken as true, would allow the Court to conclude that piercing the veil will "prevent fraud, illegality, injustice, a contravention of public policy. . . ." *Id.*  Thus, the SAC fails to adequately plead that the Individual Defendants, as corporate officers, are personally liable for direct infringement and these claims against them should be dismissed.

### E.    Midas's Induced Infringement Claims Should Be Dismissed

"To state a claim for induced infringement, a complaint must plead facts plausibly showing

that the accused infringer 'specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.'" *Inhale, Inc. v. Gravitron, LLC*, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018). Midas' induced infringement claims should be dismissed because the SAC fails to plausibly plead that any Defendant (1) knew that its acts would result in infringement by another party; or (2) specifically intended to induce infringement.

   ***First***, the SAC fails to plead facts that plausibly establish that any Defendant knew or should have known that its conduct would result in infringement by another party because the SAC fails to adequately plead that Defendants knew or should have known that the use of Rhodium's accused product amounted to infringement of the Asserted Patents. To establish knowledge of infringement of the '457 patent, the SAC relies on a letter and a claim chart allegedly sent to the Individual Defendants. Critically, that letter—addressed to a different company (Immersion Systems LLC)—alleges that different products sold by that other company infringe the '457 patent. *See* SAC ¶ 54, 63. The SAC then states that the "products previously promoted by Immersion Systems and the immersion cooling systems used by Rhodium ***appear to be*** materially identical. . . ." *Id.* ¶ 69; *see also* ¶ 68 (Exemplary photos "***appear to suggest*** that the immersion cooling systems of Rhodium are materially identical to the immersion cooling systems" of Immersion Systems LLC.). But by alleging only that the Rhodium Defendants' product "appears to" be materially identical to Immersion Systems' products from a prior litigation,[11] the SAC fails to even allege, much less plausibly allege, that the products are identical such that Defendants knew the Rhodium Defendants' product was infringing. For good reason. The only images the SAC contains of Immersion Systems' products in operation show a long bar above the tank that

---

[11]   While the SAC relies heavily on this prior litigation, it does not disclose that on March 5, 2022, the parties filed a Joint Stipulation of Dismissal agreeing to voluntarily dismiss the case with prejudice prior to any findings of infringement. The Court terminated the case the same day.

runs down the middle of the tank with pipes going into the fluid in the tank.  *See* SAC ¶¶ 60, 61.
The only images the SAC contains of the Rhodium Defendants' product in operation, on the other
hand, do not include the same long bar above the tank.  *See* SAC ¶¶ 63, 79.  Rhodium's Amended
SEC Form S-1, moreover, states that Rhodium "believe[s] that the patents in suit in the
Midas/Immersion Lawsuit are invalid, and in any case that ***none of our liquid cooling technology
would infringe upon the claims of such patents*.**"  Nichols Decl., Ex. A at 54.  As such, the SAC
fails to allege that Defendants had knowledge of the infringement, rather it alleges that Defendants
had knowledge that ***Midas believed*** Immersion Systems' products infringed the Asserted Patents.
The allegations for the '446 patent are even more threadbare.  The SAC relies solely on "the filing
by [Midas] of its amended complaint" against Immersion Systems LLC without even alleging that
the products are materially identical.  *See* SAC ¶ 47.

To bolster its inadequate allegations of knowledge of infringement, the SAC alleges
knowledge based on the Amended SEC Form S-1, which discloses the existence of the Immersion
Litigation.  SAC ¶ 76.  For example, the SAC alleges that the filing "does *not* state that the
Rhodium systems or tanks are different in any material respect from the accused Immersion
Systems systems or tanks, amounting to a tacit admission that they are the same or similar in all
material respects."  SAC ¶ 51 (emphasis in original).  Not so.  Even if the filing's silence amounted
to a "tacit admission," which it does not, the SAC's allegations based on the filing are irrelevant
because the SAC ignores this sentence in the same paragraph of the filing:  Rhodium Enterprises,
Inc. "believe[s] that the patents in suit in the Midas/Immersion Lawsuit are invalid, and in any case
that ***none of our liquid cooling technology would infringe upon the claims of such patents*.**"
Nichols Decl., Ex. A at 54.  Given this statement, the SAC cannot plausibly plead that any

Defendant knew or should have known of the infringement of the Asserted Patents.[12]  For these reasons alone, the SAC fails to adequately plead induced infringement.

*Second*, even assuming the SAC adequately pleads knowledge of infringement of the Asserted Patents—it does not—the SAC fails to sufficiently plead that any of the Defendants specifically intended to induce infringement by another party.  "Specific intent" is a "demanding" standard that requires more than unsubstantiated and generalized allegations of induced infringement.  *E.g.*, *Affinity Labs of Texas, LLC v. Toyota Motor N.A., Inc.*, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014).  A plaintiff must allege facts sufficient to show "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021).  The SAC alleges that Defendants possessed the specific intent to induce infringement because, despite the Defendants allegedly having been long aware of both the Asserted Patents and the specific manner in which their product's design infringes the same, "Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint."  SAC ¶¶ 90, 107.  Those "actions" include: (1) "providing designs and instructions to third party manufacturers and contractors to have made infringing immersion cooling systems and tank modules"; (2) "willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to" other parties "for knowing use in infringing activity to mine bitcoin and generate revenue"; and (3) "willfully directing and controlling the infringing activities of the Rhodium Operating Subsidiaries and the

---

[12]  For this same reason, the SAC's allegation that every Defendant is "well aware of their infringement" of the Asserted Patents based on the filing of the instant suit, (SAC ¶ 52), fails to plausibly plead knowledge of infringement.

Rhodium Post-Filing Operating Subsidiaries." SAC ¶¶ 91–92, 94, 108–109, 111.

These allegations fail to plausibly plead intent to induce infringement. They are nothing more than threadbare allegations that mirror the deficient allegations in *Affinity Labs*. There, the court found insufficient plaintiff's allegation that "Toyota encouraged and is encouraging its customers to infringe . . . by marketing and selling its automobiles with sound systems that are able to pair with portable electronic device[s]." 2014 WL 2892285, at *7. The SAC's allegations are similarly deficient because they fail to specify ***how*** the "activities of [the Defendants] actually induced third-parties to infringe the Asserted Patents." *Id*.; *see also U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,* 2013 WL 8482270, at *5 (E.D. Tex. Mar. 6, 2013) (complaint's allegations—that the defendant supplies "infringing systems and components to [its] customers;" and that defendant's "customers who purchase systems and components thereof and operate such systems and components thereof in accordance with [defendant's] instructions directly infringe one or more claims"—amounted to "naked assertions devoid of further factual enhancement" that were insufficient to create a reasonable inference of intent to induce infringement); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (insufficient where complaint failed "to allege any facts identifying, even at a basic level . . . how the instructions direct customers to use those products in an infringing manner. . . ."). Beyond these threadbare allegations, the SAC makes conclusory assertions that merely parrot the claim elements against all the Defendants lumped together. *E.g.*, SAC ¶¶ 89, 106. These allegations are legally insufficient. *See Iron Oak Techs., LLC v. Acer Am. Corp.*, 2017 WL 9477677, at *1 (W.D. Tex. Nov. 28, 2017) ("'[L]abels and conclusions, 'naked assertion[s] devoid of 'further factual enhancement,' or 'a formulaic recitation of the elements of a cause of action' will not suffice.").

In sum, the SAC fails to adequately plead knowledge of infringement by any of the

Defendants because it fails to explain **how** the Rhodium Defendants' product is similar to the products at issue in the Immersion Litigation, which is even more important here as the exemplary images in the SAC indicate that the products look different and are not the same design.  Moreover, the SAC's "generalized allegations" that the Defendants intended to induce others to infringe the Asserted Patents because Defendants provided "directions, instruction and designs" to others for use of or to manufacture the Rhodium Defendants' product are insufficient.  *See Affinity Labs*, 2014 WL 2892285, at *7; *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, 2014 WL 12551207, at *5 (W.D. Tex. Apr. 30, 2014) (Assertions "that [defendant] 'encouraged and is encouraging' its customers to infringe . . . 'by marketing and selling' its devices . . . do not adequately support the more demanding specific intent requirement" for induced infringement because the complaint "does not specify how the marketing and selling activities of [the defendant] actually induced third-parties to infringe the [asserted patent].");  *U.S. Ethernet Innovations*, 2013 WL 8482270, at *5; *Iron Oak Techs., LLC*, 2017 WL 9477677, at *1; *Core Wireless Licensing*, 2015 WL 4910427, at *4.  Hence, the SAC's induced infringement claims should be dismissed.

F.   **The SAC Fails to Adequately Plead Either Willful Infringement or Enhanced Damages**

Plaintiff's claims for willful infringement and enhanced damages are grounded in facially insufficient allegations.  *First*, the SAC does not adequately plead willful infringement.  While the SAC alleges knowledge of the Asserted Patents—as discussed above, *supra* Section IV.E—the SAC fails to sufficiently allege that Defendants knew or should have known their conduct amounted to infringement—an essential element of willful infringement.  *See Monolithic Power,* 2021 WL 3931910, at *5.  Rather than pleading such factual allegations, the SAC merely jumps to the (incorrect) conclusion that the Defendants had actual notice of infringement of the Asserted Patents because of allegations of infringement Midas made against a third party's products in the

Immersion Litigation.  *See supra* Section IV.E; SAC ¶¶ 54, 72, 75, 77.  Such conclusory allegations are not sufficient to plead willful infringement, especially where the exemplary images the SAC relies upon show that the products at issue in the Immersion Litigation and the Rhodium Defendants' product look different and are not the same design, and the very document the SAC relies on states that Rhodium Enterprises, Inc. "believe[s] that the patents in suit in the Midas/Immersion Lawsuit are invalid, and in any case that ***none of our liquid cooling technology would infringe upon the claims of such patents***."[13]  *See* SAC ¶ 76; Nichols Decl., Ex. A at 54; *U.S. Ethernet Innovations*, 2013 WL 8482270, at \*5 (allegations that "Defendants have had actual or constructive knowledge of the [Patent], yet continue to infringe said patent" and that "[t]he infringement of the [Patent] by Defendants is willful and deliberate" were "conclusory assertion[s]" that, without more, are insufficient to plead willful infringement); *see also Meetrix IP, LLC v. Cisco Sys., Inc.*, 2018 WL 8261315, at \*3 (W.D. Tex. Nov. 30, 2018).  Therefore, Midas's willful infringement claims should be dismissed.[14]

***Second***, the SAC does not sufficiently plead Midas's entitlement to enhanced damages. Enhanced damages under 35 U.S.C. § 284 "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," namely, conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016).  But, the SAC makes no factual allegations that plausibly show

---

[13]   For this same reason, the SAC's allegation that each of the Defendants are "well aware of their infringement" of the Asserted Patents based on the filing of the instant suit, (SAC ¶ 52), fails to plausibly plead knowledge of infringement necessary for willful infringement.

[14]   The SAC's claims for willful infringement should also be dismissed because, as discussed above, the SAC fails to state a claim for direct or induced infringement.  *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1143 (N.D. Cal. 2019).

Defendants have engaged in egregious conduct.  Instead, the SAC relies on baseless, conclusory allegations without any factual support—even suggesting that a third party's decision to defend itself in court (in a case that was dismissed with prejudice) somehow amounts to impropriety on the part of the Defendants.  *See* SAC ¶¶ 114–116.

Giving Midas the benefit of the doubt, the SAC at most alleges that the Defendants continued as they had done before they became aware that another company's products allegedly infringed the Asserted Patents.  This falls far short of the sort of egregious conduct required for enhanced damages.  Indeed, it amounts to nothing more than a generic—and deficient— description of a "garden-variety" patent case where claims for enhanced damages based on willful infringement are routinely dismissed.  *See, e.g., M & C Innovations, LLC v. Igloo Prods. Corp*., 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (defendant continuing to manufacture the allegedly infringing product was insufficient because "this post-suit fact pattern characterizes every infringement action except for those in which an alleged infringer immediately ceases production following service of the complaint.").

Because the SAC fails to adequately allege elements necessary to state a claim for willful infringement and enhanced damages, both claims should be dismissed.

## V.    CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant this motion to dismiss.

DATED: November 21, 2022                    Respectfully submitted,


                                            */s/ Benjamin A. Herbert*

                                            Benjamin A. Herbert (*Admitted Pro Hac Vice*)
                                            California State Bar No. 277356
                                            KIRKLAND & ELLIS LLP
                                            555 S. Flower St.
                                            Los Angeles, CA 90071

Telephone:  (213) 680-8400
Facsimile: (213) 680-8500
benjamin.herbert@kirkland.com

Gianni Cutri (*Admitted Pro Hac Vice*)
Illinois State Bar No. 6272109
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
gianni.cutri@kirkland.com

Kat Li
State Bar No. 24070142
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  (512) 678-9100
Facsimile:  (512) 678-9101
kat.li@kirkland.com

*Attorneys for Defendants*
*Rhodium Enterprises, Inc., Rhodium*
*Technologies LLC, Rhodium 10mw LLC,*
*Rhodium 2.0 LLC, Rhodium 30mw LLC,*
*Rhodium Encore LLC, Rhodium Industries*
*LLC, Rhodium JV LLC, Rhodium Renewables*
*LLC, Rhodium Shared Services LLC,*
*Rhodium Shared Services PR Inc., Chase*
*Blackmon, Cameron Blackmon, and Nathan*
*Nichols*

CERTIFICATION OF COMPLIANCE

Pursuant to Standing Order Governing Proceedings (OGP) 4.1 - Patent Cases, I hereby certify that the foregoing DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT has been prepared and filed in compliance with OGP issued on September 16, 2022.  Specifically, pursuant to Section VI, the parties met and conferred to discuss dismissing the allegations of induced infringement and willful infringement without prejudice, but counsel for Plaintiff declined to dismiss those allegations.  This document was served via the Court's ECF system upon all counsel of record.

Kirkland & Ellis LLP

*/s/ Benjamin A. Herbert*
Benjamin A. Herbert (*Admitted Pro Hac Vice*)
California State Bar No. 277356
KIRKLAND & ELLIS LLP
555 S. Flower St.
Los Angeles, CA 90071
Telephone:  (213) 680-8400
Facsimile: (213) 680-8500
benjamin.herbert@kirkland.com