# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC,** | ) |
| Plaintiffs, | ) ) Case No. 6:22-cv-00050-ADA |
| - vs. - | ) ) **Jury Trial Demanded** |
| **Rhodium Enterprises, Inc.;** **Rhodium Technologies LLC;** **Rhodium 10mw LLC;** **Rhodium 2.0 LLC;** **Rhodium 30mw LLC;** **Rhodium Encore LLC;** **Rhodium Industries LLC;** **Rhodium JV LLC;** **Rhodium Renewables LLC;** **Rhodium Shared Services LLC;** **Rhodium Shared Services PR Inc.;** **Chase Blackmon;** **Cameron Blackmon;** **Nathan Nichols**, and **Rhodium 2.0 Sub LLC;** **Rhodium Encore Sub LLC;** **Rhodium Renewables Sub LLC;** **Rhodium Ready Ventures LLC;** **Rhodium 10MW Sub LLC;** **Rhodium 30MW Sub LLC;** **i Ventures Enterprises LLC (fka Energy Tech LLC);** **Air HPC LLC;** **Jordan HPC LLC;** and **Jordan HPC Sub LLC.** | ) |
| Defendants. | ) |

## ORDER REGARDING E-MAIL AND ELECTRONIC CHAT DISCOVERY

Midas Green Technologies, LLC ("Midas") and Rhodium Enterprises, Inc.; Rhodium Technologies LLC; Rhodium 10mw LLC; Rhodium 2.0 LLC; Rhodium 30mw LLC; Rhodium Encore LLC; Rhodium Industries LLC; Rhodium JV LLC; Rhodium Renewables LLC; Rhodium Shared Services LLC; Rhodium Shared Services PR Inc.; Chase Blackmon; Cameron Blackmon; Nathan Nichols; Rhodium 2.0 Sub LLC; Rhodium Encore Sub LLC; Rhodium Renewables Sub LLC; Rhodium Ready Ventures LLC; Rhodium 10MW Sub LLC; Rhodium 30MW Sub LLC; i Ventures Enterprises LLC (fka Energy Tech LLC); Air HPC LLC; Jordan HPC LLC; and Jordan HPC Sub LLC ("Rhodium Defendants") (collectively "the Parties") by and through their undersigned counsel, and subject to the approval of the Court, hereby agree as follows regarding the production of e-mail:

1. This Order supplements all other discovery rules and orders relating to e-mail discovery. It streamlines e-mail production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified upon a stipulation of the parties filed with and approved by the Court, or by a contested motion for good cause shown.

3. By way of agreeing to this Order, no party waives any of its rights otherwise available under the Federal Rules, including under the cost shifting provisions of Federal Rule of Civil Procedure 26.

4. Requests for production under Federal Rules of Civil Procedure 34 and 45 shall not include electronic mail ("email" or "e-mail"). *See* Standing Order Governing Proceedings – Patent Cases (Ver. 4.2) at 3 (Sept. 16, 2022). For the purposes of this stipulation, email shall not include text messages or electronic messages sent via mobile phone applications or other applications, *e.g.* Facebook, Instagram, WhatsApp.

5. E-mail productions shall be accompanied with an appropriate load file. For e-mail production requests, the following information fields shall be produced as part of the load file accompanying the production: a custodian field, which shall provide the name of the individual(s) who is(are) the custodian(s) of the document or e-mail; the date and time that the document was sent and received; the sender of the email, as well as the complete distribution list (i.e. including direct recipients, CCs, and BCCs); and any attachments to the email, shall generally be included in the production.

6. E-mail production requests shall be in the form of an identification of the requested custodian(s), search term(s) per custodian, and time frame per custodian. Such requests shall be reasonably specific and identify a reasonable time frame for responsive e-mails for each custodian. The parties shall cooperate to identify the proper custodian(s), proper search term(s), and proper timeframe(s).

7. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed in advance of any use of such techniques. For example, the parties may use software to identify email threads. If the parties agree to the use of email threading software, the parties must agree on the reasonable reduction of lesser inclusive email threads prior to the commencement of document review. Further, if the parties agree to the reasonable reduction of lesser inclusive email threads from document review and/or production, the parties will be required to maintain all parent child relationships (i.e., if a lesser inclusive email has attachments that are not part of the more inclusive email, then the lesser inclusive email and attachments must be produced in their entirety).

8. If, at any time, the producing party contends that any of the requests, either individually or collectively, will incur costs that are disproportionate to the needs of the case, then the producing party shall inform the other parties of such contention before the producing party incurs costs relating to such requests and the parties agree to meet and confer in good faith to reach a resolution. Before a producing party incurs costs relating to e-mail production requests that it believes are disproportionate, the producing party shall inform the requesting party that it believes such e-mail production requests are disproportionate, identifying the specific e-mail production requests contended to be disproportionate and explaining the basis for that position, including providing any related quotes or estimates. The parties shall then meet and confer in good faith regarding the identified e-mail production requests.

9. Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work product protected e-mail and/or attachments whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Rule 502(b) do not apply. The receiving party shall not use e-mail and/or attachments that the producing party asserts are attorney-client privileged or work product protected to challenge the privilege or protection. The foregoing provisions do not otherwise modify the treatment of inadvertently produced material under the Protective Order.

10. A party is only required to produce a single copy of a responsive document and a party may de-duplicate responsive e-mails or other documents (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. If responsive e-mails or other documents are de-

duplicated, the producing party shall include all deduplicated metadata in the load file, including each custodian, path, or filename of deduplicated copies, with each such entry separated by an appropriate delimiter. All email documents shall be produced as a full document family, (e.g., a parent email and all its attachments). For any email documents that contain an attachment, the metadata fields should be produced as part of the metadata load file for both the parent and child documents to the extent available.  To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, or to the extent that population of the above fields is not possible or practicable, the parties shall meet and confer to discuss any other proposed method of de-duplication.

11. A party need include only one entry on the log (including the names of all of the recipients of the communications) to identify e-mails subject to discovery under this Order but withheld as privileged or work-product protected that constitute an uninterrupted dialogue between or among individuals, provided that all participants to any portion of such dialogue shall be included in the log entry if the log entry reflects more than one e-mail. The parties need not log any redacted documents, so long as the redacted document shall identify the basis for the redaction.

12. Midas agrees to collect e-mails from the following custodians: Jim Koen, Chris Boyd, Mario Conti, Scott Sickmiller, Francisco Conti, Jon Shepard, and Ken Tooke ("the Midas Custodians").

13. Midas shall attempt to collect and search e-mails to or from Jim Koen on the damaged hard drive identified by Midas in correspondence to the Rhodium Defendants on October 31, 2022. Defendants will agree to cover the costs of e-mail recovery from this hard drive up front based on Midas's estimate that the cost will be approximately $3,600.  Defendants will not cover any

costs associated with the hosting of any recovered emails. Defendants reserve all rights to seek repayment of that expenses associated with this recovery at a later date.

14. Midas agrees to search and produce all non-privileged e-mails from the Midas Custodians prior to the filing of this litigation that hit on the following search terms:

 (a) !0211412 or "14/237,100" or 14237100

 (b) manifold

 (c) Rainone OR Presley or Talbot or Turner

 (d) Christiaan or (Christian /5 Best)

 (e) GRC

 (f) Green Revolution Cooling

 (g) Deaton

 (h) license or licensing

 (i) patent

 (j) marking or marked

 (k) Blackmon

15. The Rhodium Defendants agree to collect e-mails from the following custodians: Chase Blackmon, Cameron Blackmon, Nathan Nichols, Nicholas Cerasuolo, Matt Smith, and Marshall Long ("the Rhodium Custodians").

16. The Rhodium Defendants agree to search and produce all non-privileged emails prior to the filing of this litigation that hit on the following search terms:

 (a) ".stp" or ".step"

 (b) tank

 (c) GRC or "Green Revolution Cooling"

 (d) "Christiaan Best" or Christiaan or "Christian Best"

  (e) profit!

  (f) cost w/10 manufactur!

  (g) "Engineered Fluids"

  (h) "R70"

  (i) "R30"

  (j) Invoice or "purchase order"

  (k) weir

  (l) plenum

  (m) "coarse filter"

  (n) Midas

  (o) "immersion-cooling" or "immersion cooling" or "immersion-cooled" or "immersion cooled"

17. For each email custodian above, nothing herein shall require the parties to collect emails from an individual custodian's personal email account(s), such as an individual's Gmail or Yahoo account, unless a party has reason to know that responsive emails are likely to reside in such account(s). However, for each custodian above, the respective party shall collect emails from all email accounts used to conduct business on behalf of a party within a party's possession, custody or control. Defendants will collect emails from Imperium Investments and Black Developments. Defendants do not need to collect or produce additional emails from Immersion Systems beyond those previously produced.

18. For purposes of the limitations set forth herein, an e-mail that has one or more search term is considered a "hit".

19. With respect to search terms above, each side shall produce responsive emails by or before February 10, 2023. With respect to any documents withheld on the basis of privilege, each party shall produce a privilege log for such withheld emails by February 21, 2023.

20. Each party shall inquire with each of their above-listed custodians as to whether, from 2018 until the filing of this lawsuit they utilized a chat method[1] to discuss anything that is involved in this lawsuit and, if the custodian indicates that they did, that party shall run the search terms listed for that party on the services the custodian indicates they have used, provided however, that any party may object pursuant to paragraph 8 above. The deadline to meet and confer pursuant to paragraph 8 is February 17, 2023, and the deadline to complete production (or submit disputes to the Court) is February 24, 2023.

21. Either side may propose up to five additional search terms, so long as such proposal is made by March 3, 2023.  Each side reserves all rights to object to any of the additional terms as imposing an undue burden, pursuant to Paragraph 8 above.  With respect to such additional search terms, each side shall produce responsive emails within 21 days after agreement is reached as to the acceptability of the additional terms.  Each side shall produce a privilege log for any emails withheld for these search terms a week after producing any such responsive emails.

SIGNED this 9th day of February, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[1] For clarity, the term "chat method" presumptively includes messages sent via SMS/MMS/iMessage, provided that either party may object to searching SMS/MMS/iMessage or any other messaging service pursuant to paragraph 8.