# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC,** ) | |
| ) | |
| Plaintiff, ) | Case No. 6:22-cv-00050-ADA |
| ) | |
| - vs. - ) | |
| ) | **Jury Trial Demanded** |
| **Rhodium Enterprises, Inc.;** ) | |
| **Rhodium Technologies LLC;** ) | |
| **Rhodium 10MW LLC;** ) | |
| **Rhodium 2.0 LLC;** ) | |
| **Rhodium 30MW LLC;** ) | |
| **Rhodium Encore LLC;** ) | |
| **Rhodium Renewables LLC;** ) | |
| **Rhodium Renewables Sub LLC; and** ) | |
| **Rhodium Ready Ventures LLC;** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Midas Green Technologies, LLC ("Midas" or "Plaintiff') hereby brings this action for patent infringement against the following: (1) Rhodium Enterprises, Inc., (2) Rhodium Technologies LLC, (3) Rhodium 10MW LLC, (4) Rhodium 2.0 LLC, (5) Rhodium 30MW LLC, (6) Rhodium Encore LLC, (7) Rhodium Renewables LLC, (8) Rhodium Renewables Sub LLC; and (9) Rhodium Ready Ventures LLC. (collectively, "Rhodium" or "Defendants").

Midas alleges infringement of U.S. Patent No 10,405,457, entitled "Appliance Immersion Cooling System" (the "'457 Patent") and U.S. Patent No. 10,820,446, entitled "Appliance Immersion Cooling System" (the "'446 Patent"), at least by reason of Defendants' continued operation of their infringing bitcoin mining facilities in Rockdale, Texas, Temple, Texas and a third location[1] in Texas.

True and correct copies of the '457 and '446 Patents (collectively, the "Asserted Patents") are attached as **Exhibits A and B**, respectively.

## I. PARTIES

1.      Plaintiff Midas Green Technologies, LLC is a Texas limited liability company with its principal place of business at 7801 N Capital of Texas Hwy # 230, Austin, TX 78731. Midas designs and builds immersion cooling solutions for use in data centers including cryptocurrency mining facilities. Midas has been an innovative pioneer in the application of immersion cooling technology.

2.      Defendant Rhodium Enterprises, Inc. is a Delaware corporation formed on April 22, 2021. Rhodium Enterprises, Inc. conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to its most recent SEC filing, Rhodium Enterprises, Inc. is a holding company and the sole managing member of Defendant Rhodium Technologies LLC. *See* SEC Amendment No. 6 to Form S-1 at F-16, Rhodium Enterprises, Inc. (Jan. 18, 2022), *see*

---

[1] The third location is information learned from Defendants' Further Supplemental Responses, of which is Attached as Exhibit D, page 9.  The full text of Defendants' Further Supplemental Responses is not included in the body of the Complaint as they are marked Confidential-Outside Attorneys' Eyes Only and therefore filed under seal.

https://www.sec.gov/Archives/edgar/data/0001874985/000121390022002442/fs12022a6_rhodium.htm.

3.      Defendant Rhodium Technologies LLC is a Delaware limited liability company formed on October 23, 2020. Rhodium Technologies LLC was formerly known as Rhodium Enterprises LLC. Rhodium Technologies LLC is a subsidiary of Defendant Rhodium Enterprises, Inc. Rhodium Technologies LLC conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is a holding company. In the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is known as "Rhodium Holdings."

4.      Defendant Rhodium 10MW LLC is a Delaware limited liability company formed on March 12, 2021. Rhodium 10MW LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 10MW LLC conducts business in Texas, including in this District, and including in the Waco Division.

5.      Defendant Rhodium 2.0 LLC is a Delaware limited liability company formed on December 17, 2020. Rhodium 2.0 LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 2.0 LLC conducts business in Texas, including in this District, and including in the Waco Division.

6.      Defendant Rhodium 30MW LLC is a Delaware limited liability company formed on April 1, 2020. Rhodium 30MW LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 30MW LLC conducts business in Texas, including in this District, and including in the Waco Division.

7.      Defendant Rhodium Encore LLC is a Delaware limited liability company formed on January 1, 2021. Rhodium Encore LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Encore LLC conducts business in Texas, including in this District, and including in the Waco Division.

8.      Defendant Rhodium Renewables LLC is a Delaware limited liability company formed on March 17, 2021. Rhodium Renewables LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Renewables LLC conducts business in Texas, including in this District, and including in the Waco Division.

9.      Defendant Rhodium Renewables Sub LLC is a Delaware limited liability company formed on April 25, 2022, with a principal office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. Rhodium Renewables Sub LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Renewables Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

10.     Defendant Rhodium Ready Ventures LLC is a Delaware limited liability company formed on August 23, 2022, with a principal office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. Rhodium Ready Ventures LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Ready Ventures LLC conducts business in Texas, including in this District, and including in the Waco Division.

11.     The foregoing SEC filing describes each of Defendants Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, Rhodium Encore LLC, Rhodium Industries LLC, and Rhodium Renewables LLC, as operating subsidiaries of Rhodium Technologies LLC. This SEC filing (dated January 18, 2022) also refers to i Ventures Enterprises LLC (then doing business as Energy Tech LLC) as a related party. Accordingly, these defendants will be collectively be referenced herein as "the Rhodium Operating Subsidiaries."

12.     After Midas filed this case on January 13, 2022, and after the January 18, 2022 date of the aforementioned SEC filing, Jordan HPC Sub LLC, Rhodium Renewables Sub LLC, and Rhodium Ready Ventures LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium Technologies LLC. After the filing of this case and of the aforementioned SEC filing, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, Rhodium Encore Sub LLC, and Rhodium 2.0 Sub LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium JV LLC. Accordingly, these companies, whether a

defendant or not, will be collectively referenced herein as "the Rhodium Post-Filing Operating Subsidiaries."

13.     Chase Blackmon is a Texas resident, is a co-founder and the Chief Operating Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Chase Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Chase Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies by way of an entity called Imperium Investment Holdings LLC ("Imperium"). Imperium is the majority and controlling owner of both Rhodium entities. According to the foregoing SEC filing, Chase Blackmon controls 25% of the voting interests in Imperium. Chase Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Chase Blackmon helped design Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

14.     Cameron Blackmon is a Texas resident, is a co-founder and the Chief Technology Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Cameron Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Cameron Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium.  According to the foregoing SEC filing, Cameron Blackmon controls 25% of the voting interests in Imperium. On information and belief, Cameron Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Cameron Blackmon helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

15.     Nathan Nichols is a Texas resident, is a co-founder and the Chief Executive Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Nathan Nichols serves on the board of directors for Rhodium Enterprises. Nathan Nichols also owns

shares of both Rhodium Enterprises and Rhodium Technologies through Imperium. According to the foregoing SEC filing, Nathan Nichols controls 25% of the voting interests in Imperium. On information and belief, Nathan Nichols personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Nathan Nichols helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

16.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Defendant Rhodium Operating Subsidiaries have common stock ownership. Each of Chase Blackmon, Cameron Blackmon, and Nathan Nichols (the "Individuals") owns shares of both Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC through Imperium. See SEC Amendment No. 6 to Form S-1 at 102. Rhodium Technologies LLC in turn directly or indirectly owns all of the outstanding equity interests in the Rhodium Operating Subsidiaries. *Id*. at 103-05. Rhodium Technologies LLC also directly or indirectly owns all of the outstanding equity interests in the Rhodium Post-Filing Operating Subsidiaries.

17.     The Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, share common directors and officers with Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC.

18.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries file consolidated financial statements. *Id.* at F-17 ("The condensed consolidated financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries.")

19.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries were incorporated by Cameron Blackmon, acting on behalf of Imperium, a third party under the control of the Individuals.

20.     The Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, are presently undercapitalized and exist for the purposes of illegitimately shielding Defendant Rhodium Enterprises, Inc., and Rhodium Technologies LLC, and in turn the Individuals, from liability. On information and belief, the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, would be unable to satisfy any money judgement levied against them because of their undercapitalization and because their revenues flow directly to Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC.

21.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC finance the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries.

22.     Rhodium Shared Services LLC directly pays the salaries of all Rhodium officers and employees, with the exception that Rhodium Shared Services LLC indirectly pays the salary of Rhodium Chief Financial Officer Nicholas Cerasuolo by way of its subsidiary, Rhodium Shared Services PR Inc.

23.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, use each other's properties as their own. For example, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities.

24.     The daily operations of Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries are not kept separate. For example, they collectively operate the same bitcoin mining operation. *Id.* At F-16 ("The Company, together with its subsidiaries, operates a digital mining operation"). As discussed above, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities. On information and belief, they also have common

business departments.

25.     The Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, receive no business except through that allocated and arranged by Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC. For example, Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC negotiate contracts on behalf of the Defendant Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries, or vice versa.

26.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Defendant Rhodium Operating Subsidiaries do not observe corporate formalities, including keeping separate books. See *Id*. at F-17 ("The condensed financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries. All inter-company accounts, balances, and transactions have been eliminated.")  (emphasis added). On information and belief, the same is true with respect to the Rhodium Post-Filing Operating Subsidiaries.

27.     Each Rhodium Operating Subsidiary and Rhodium Post-Filing Operating Subsidiary is an agent of Defendants Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC (aka Rhodium Holdings) and their owners and operators, Chase Blackmon, Cameron Blackmon, and Nathan Nichols. Defendant Rhodium Enterprises, Inc. Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries therefore act as a common enterprise, their actions ultimately being directed by the Individuals. Specifically, the Individuals direct and control the activities of Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC, and those Defendants in turn direct and control the activities of the operating subsidiaries. The operating subsidiaries do not function as separate entities, but rather as controlled agents of the parent entities and the operating subsidiaries act on behalf of the parent entities. See, e.g., SEC Amendment No. 6 to Form S-1 at F-17 (referring to the operating subsidiaries as "the subsidiaries through which the Company operates its assets").

8

## II. JURISDICTION

28.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

29.     Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to their extensive business in this District, including by reason of their infringement alleged herein. Specifically, and for example, Defendants own and operate an infringing bitcoin mining facility in Rockdale, Texas. See SEC Amendment No. 6 to Form S-1 at 1 (referring to Defendants' Rockdale location as the "initial Texas site"). Rockdale, Texas is located in Milam County, which is within the Western District of Texas. In addition, Defendants' second Texas site is in Temple, Texas. Temple, Texas is located in Bell County, which is also within the Western District of Texas. Further, Defendants' third Texas site[2] is within the Northern District of Texas.

30.     Jurisdiction is also found as Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC direct and control the infringing activities of the other Defendants.  Further, Rhodium Enterprises, Inc. and Rhodium Technologies LLC purchase immersion cooling system tanks and other components, and then provide those infringing tanks for other Defendants to use.  *See*, for example, **Exhibit C**, which is a manufacturing and purchase agreement whereby Rhodium Enterprises, Inc. purchases tanks and other immersion cooling products that infringe the Midas Asserted Patents, which Rhodium Enterprises, Inc. then provides either directly or indirectly to other Defendants. The entirety of the purchase agreement is marked Confidential-Outside Attorneys' Eyes Only and therefore filed under seal.

31.     In further support of jurisdiction, each of the Defendant subsidiaries infringes

---

[2] The third location is information learned from Defendants' Further Supplemental Responses, the relevant portion of which is Attached as Exhibit D, page 9.  The full text of Defendants' Further Supplemental Responses is not included in the body of the Complaint as they are marked Confidential-Outside Attorneys' Eyes Only and therefore are filed under seal.

the Midas patented immersion cooling system as claimed in the Assert Patents.  The use of the tanks is admitted in Defendants' Further Supplemental Responses of which is Attached as **Exhibit D**.  The entirety of the Defendants' Further Supplemental Responses is not included below as they are marked Confidential-Outside Attorneys' Eyes Only.  Instead, citations are provided to where Rhodium admits use of the tanks.

Defendant Rhodium Operating Subsidiaries

> Rhodium 10MW LLC - - page 8, at paragraph labeled "2"
>
> Rhodium 2.0 LLC - - page 8, at paragraph labeled "2"
>
> Rhodium 30MW LLC - - page 7, at paragraph labeled "1"
>
> Rhodium Encore LLC - - page 8, at paragraph labeled "2"
>
> Rhodium Renewables LLC - - page 8, at paragraph labeled "2"

Defendants also Identified as Rhodium Post-Filing Operating Subsidiaries

> Rhodium Renewables Sub LLC - - page 9, first indented paragraph
>
> Rhodium Ready Ventures LLC - - page 9, second indented paragraph

### III. VENUE

32.     Venue is proper in this district under 28 U.S.C. §§ 139l(b) and 1400(b). All Defendants have at least two places of business in this District and in the Waco Division, i.e., in Rockdale, Texas and in Temple, Texas. Defendants have committed acts of infringement, or a portion thereof, at these two locations within this District and within this Division.

### IV. THE ASSERTED PATENTS

#### *A. The '457 Patent*

33.     U.S. Patent No. 10,405,457, entitled "Appliance Immersion Cooling System," was duly and legally issued on September 3, 2019 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 14/355,533, was filed on April 30, 2014. A true and correct copy of the '457 Patent is attached as **Exhibit A** and incorporated by reference.

34.     Midas is the assignee of all right, title, and interest in the'457 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the'457 Patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '457 Patent by Defendants.

### B. The'446 Patent

35.     U.S. Patent No. 10,820,446 entitled "Appliance Immersion Cooling System," was duly and legally issued on October 27, 2020 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 16/243,732, was filed on January 9, 2019, and is a continuation of the application which issued as the '457 Patent filed on April 30, 2014. A true and correct copy of the '446 Patent is attached as **Exhibit B** and incorporated by reference.

36.     Midas is the assignee of all right, title, and interest in the'446 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the'446 Patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '446 Patent by Defendants.

### V. RHODIUM AND ITS INFRINGEMENTS

37.     Rhodium Defendants are part of "an industrial-scale digital asset technology company" that "mine[s] bitcoin" with a "fully integrated" liquid cooling system. *See* SEC Amendment No. 6 to Form S-1 at 1.

38.     Rhodium's "founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of [their] liquid-cooling technology to mining bitcoin." *Id.* Rhodium designs, builds, and operates data centers, also called "mining farms" consisting of "bitcoin miners" (i.e. high-powered computers) submerged in dielectric cooling fluid within specialized tank modules. *Id.* at 1, 22. The miners mine bitcoin and thus generate revenue. The liquid cooling system permits Rhodium

to "predictably and consistently mine more bitcoin with fewer miners" by "optimize[ing] the hash rate, or processing power" of the miners. *Id.* at 1.

39.    According to the foregoing SEC filing, Rhodium does not sell immersion cooling products to third parties, but instead is a fully integrated bitcoin mining operation that designs, builds, and then operates its own allegedly proprietary immersion cooling systems to mine bitcoin and generate revenue. *Id.* at 1. Rhodium and its non-defendant subsidiaries operate as a common enterprise controlled by Rhodium Enterprises and/or by Rhodium Technologies, and/or by their officers and primary shareholders the Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

40.    Rhodium Defendants own and operate a bitcoin mining facility in Rockdale, Texas. Below are images from Rhodium's Rockdale facility showing the infringing liquid immersion cooling systems and tank modules:



See, e.g., "Investor Presentation 17.02.2020. In connection with proposed acquisition of Distributed Ledger Technologies Ireland, Ltd, Element ASA" (February 17, 2020), downloaded from [https://dltx.com/uploads/images/Reports-and-Documents/Presentations-and-Docs/Exemption-Doc/Element_Investor_Presentation_210217.pdf.](https://dltx.com/uploads/images/Reports-and-Documents/Presentations-and-Docs/Exemption-Doc/Element_Investor_Presentation_210217.pdf.)

41.    Accordingly, Defendants have directly infringed at least claims 1, 2, 5-7, 10,

11, 14 and 15 of the '457 Patent and at least claims 1, 2, 5-7 and 10 of the '446 Patent. Attached as **Exhibit E** is the claim chart for independent claims 1 and 6 of the '457 Patent. Attached as **Exhibit F** is the claim chart for independent claims 1 and 6 of the '446 Patent. These claim charts are excerpts from Midas' Final Infringement Contentions, which were served on Defendants on November 21, 2022. Midas provided claim charts for all asserted claims in its Final Infringement contentions. Exhibits E and F are designated Confidential-Outside Attorneys' Eyes Only and therefore filed under seal.

## VI. DEFENDANTS' KNOWLEDGE OF THE ASSERTED PATENTS, THEIR INFRINGEMENTS, AND THE PRIOR CLAIM CONSTRUCTION ORDER

42.     As detailed below, all Defendants have had actual notice of the Asserted Patents and their own infringements for some time. For example, the Individuals became aware of the '457 Patent and their infringements thereof no later than February 2020, when they received a notice letter from Midas addressed to another entity founded by the Individuals, i.e., Immersion Systems LLC. Further, the Individuals became aware of the '457 Patent and their infringements thereof, no later than November 24, 2020, when Midas amended its lawsuit against Immersion Systems to assert the '457 Patent.

43.     Before founding any of their Rhodium entities, Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols began to commercialize certain liquid immersion cooling systems intended to be used in bitcoin mining operations. To sell those liquid immersion cooling systems to third parties, the Individuals formed an entity called Immersion Systems LLC in 2018. Exemplary YouTube videos show Chase Blackmon and Cameron Blackmon working on such immersion cooling systems. *See* AntMiner S9 - Immersion CoolingTest, Feb. 17, 2018. https://www.youtube.com/watch?v=DRck1Iegf2A (last accessed March 28, 2023); immersion Cooling- Beta Test 1, Feb. 17, 2018, https://www.youtube.com/watch?v=SzUO-PMtda4 (last accessed March 28, 2023); *see also* SEC Amendment No. 6 to F01m S-1 at 1 ("Our founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of our

liquid-cooling technology to mining bitcoin.").

**Cameron Blackmon**                    **Chase Blackmon**

          

44.     From Immersion Systems' YouTube channel and Twitter feed, numerous images and videos are available of these liquid immersion cooling systems. For example, below is a picture from a November 12, 2019 tweet, depicting a stack of immersion cooling tank modules, from Immersion System's Twitter feed with the caption "Another shipment out! Here was have [sic] 5 Bitmain S9 tanks, fitting 42 miners each." *See* https://twitter.com/ImmersionSystem/status/1194318079758610438 (last accessed on March 28, 2023)



45.     In another example, below is a picture from an October 15, 2019 tweet, with the caption "Another shipment ready to go at Immersion Systems! We deploy, at industrial scale, liquid immersion crypto-mining solutions. We provide free fluid extraction and tech replacement if you want to upgrade your miners on site. Contact us at sales@immersionsystems.io for more info."



46.     In another example, below is a picture from a July 21, 2019 tweet, with the caption "Preparing another order for shipping out this week! All of our systems are thoroughly tested prior to shipping. @ourbcma @MiningDisrupt #immersioncooling #mining #bitcoin."



47.     In another example, Immersion System's YouTube channel 1oaded a five-minute video entitled "Introduction" on December 10, 2018. See https://www.youtube.com/watch?v=kQ6cycss5ds (last accessed March 28, 2023). That video features Individual Chase Blackmon and contains detailed explanations and videos clips of Immersion Systems' "flagship" immersion cooling system, designed by Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

48.     The exemplar video shows the structure of the immersion cooling systems designed by Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols, including its central area with appliance slots, holed weir design, winged fluid recovery chambers on either side of the central area, the dielectric fluid flowing up through the central

area and the appliance slots, and the pump system sending the heated dielectric fluid to a dry cooler and then back. *See id.* at 0:44 ("In here, you can see this is BitCool that we use to pump up through the miners and then it exits the sides in a fluid recovery chamber.").







49.     From approximately 2018 to 2020, Immersion Systems promoted infringing immersion cooling systems with this design to third parties for use in bitcoin mining operations.

50.     On the basis of these videos and photos, Midas sent a detailed letter and claim chart to Immersion Systems on February 7, 2020, explaining that Immersion Systems' immersion cooling systems infringed the'457 Patent. On information and belief, each of the Individuals received and actually read Midas' February 7, 2020 letter around the time that it was sent. Immersion did not respond to that letter, or a second letter sent shortly  thereafter.

51.     After Immersion Systems did not respond to the second letter from Midas, Midas filed suit against Immersion Systems on May 29, 2020 in the Northern District of Texas, *Midas Green Technologies, LLC v. Immersion Systems LLC,* No. 4:20-cv-00555-O (hereafter, "the Immersion Systems Litigation."). On November 24, 2020, Midas amended its complaint to include detailed allegations of patent infringement for the'446 Patent.

52.     The individuals decided to shut down Immersion Systems in 2020, shortly

after receiving Midas' first letter on February 7, 2020. On information and belief, the Individuals made this decision to cease conducting business under Immersion Systems because they then knew that their particular immersion cooling systems infringed the'457 Patent.

53.     Around this time, as detailed further below, the Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols formed their first Rhodium entity in April 2020, *i.e.,* Defendant Rhodium 30MW LLC. The purpose of this entity (and of the other Defendant Rhodium Operating Subsidiaries and Rhodium Post-Filing Operating Subsidiaries) was not to sell immersion cooling systems to third parties, but rather to use immersion cooling systems to mine bitcoin.

54.     During the pendency of the Immersion Systems Litigation, the Individuals caused Immersion Systems to take steps to conceal the existence of the Individuals' new Rhodium businesses.

55.     Exemplary photos from Defendants' Rockdale, Texas facility (see above), and as well as photos from Rhodium's website (rhdm.com, see below), appear to suggest that the immersion cooling systems of Rhodium are materially identical to the immersion cooling systems previously promoted by the Individuals by way of Immersion Systems.

56.     Because the immersion cooling systems products previously promoted by Immersion Systems and the immersion cooling systems used by Rhodium appear to be materially identical, each of the Individuals had actual notice that the immersion cooling systems



of Rhodium infringed the '457 Patent, as of February 2020. Despite this knowledge, on information and belief, the Individuals acting through one or more of the Defendants, decided to utilize the particular immersion cooling systems that they had previously promoted via Immersion Systems, in the Defendants' new Rhodium-labelled bitcoin mining business ventures.



57.     On information and belief, all of the Rhodium Defendants had actual and constructive notice and knowledge of the '457 Patent as of their founding, at least by virtue of the actual notice of the '457 Patent possessed by the Individuals.

58.     On information and belief, all of the Rhodium Defendants had actual knowledge that their immersion cooling systems would infringe the '457 Patent as of their founding, at least by virtue of the knowledge of infringement possessed by the Individuals.

59.     On information and belief, each of the Defendants gained actual notice of the '446 Patent in November of 2020, by virtue of the filing by Midas of its amended complaint in the Immersion Systems Litigation. Each of the Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '446 Patent, by virtue of the filing by Midas of its amended complaint.

60.     During the course of the Immersion Systems Litigation, Midas and Immersion Systems submitted a Joint Claim Construction Chart (Dkt. 82) in which the parties agreed to the

proper construction of two claim terms, i.e., "weir" and "plenum," and in which the parties
further agreed that seventeen other claim terms should be afforded their plain and ordinary
meaning. A true and correct copy of that filing is attached as **Exhibit  G**.

61.     On November 22, 2021, the Court in the Immersion Systems Litigation issued its
claim construction order, rejecting arguments from Immersion System that the '457 and '446
Patents were invalid as indefinite, and adopting Midas' proposed constructions as plain and
ordinary meaning, with regard to two disputed claim terms. A true and correct copy of the
Court's claim construction order is attached as **Exhibit H**. In its claim construction order, the
Court also adopted the proposed constructions for nineteen agreed-upon terms and phrases as set
forth in the parties' Joint Claim Construction Chart (Dkt. 82).

62.     As of their receipt of the foregoing claim construction ruling from the Immersion
Systems Litigation in late November 2021, the Defendants knew or should have known that the
Asserted Patents were valid and infringed by Defendants, to the extent they did not already
possess such knowledge.

63.     The Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on
December 14, 2021 discloses the existence of the Immersion Systems Litigation, as well as
acknowledging the possibility that Midas might file a patent infringement lawsuit against
Rhodium. *See* SEC Amendment No. 4 to Form S-1 at 29, Rhodium Enterprises, Inc. (Dec. 14,
2021), *available at* https://sec.report/Document/0001213900-21-
065116/fs12021a4_rhodium.htm.  Notably, the Form S-1 does *not* state that the Rhodium
systems or tanks are different in any material respect from the accused Immersion systems or
tanks, amounting to a tacit admission that they are the same or similar in all material respects. *Id.*
Even after Midas filed the Original Complaint in this action, Rhodium filed an amended Form S-
1 acknowledging the lawsuit but not containing any statements that the Rhodium systems or
tanks differ in any material respect  from the infringing Immersion systems or tanks. SEC
Amendment No. 6 to Form S-1 at 4. Defendants' disclosure of the Immersion Systems Litigation,
and a corresponding litigation risk to the Rhodium entities, in its Form S-1 further demonstrates

its knowledge of the Asserted Patents and of its infringement.

64.     As of the filing of this suit on January 13, 2022, each of the Defendants is well aware of the Asserted Patents, and each of the Defendants is well aware of their infringements thereof.

## VII. CAUSES OF ACTION

### Count 1: Infringement of U.S. Patent No. 10,405,457

65.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

66.     The '457 Patent was filed April 30, 2014, and legally issued by the United States Patent and Trademark Office on September 3, 2019. The '457 Patent is valid and enforceable and presumed as such pursuant to 35 U.S.C. § 282.

67.     Without a license or permission from Midas, Defendants have directly infringed  and continue to directly infringe one or more claims of the '457 Patent by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

68.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC directly infringe the '457 Patent under 35 USC §271(a) by (1) providing infringing immersion cooling systems to other Defendants; (2) controlling and directing the direct infringement of one or more of the other Defendants; and (3) benefitting and profiting from the infringement of one or more of the other Defendants. The other Defendants directly infringe the '457 Patent under 35 USC §271(a) by their admitted use of infringing immersion cooling systems.

69.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC further indirectly infringe the '457 Patent by (1) directing other third parties to design, build or install infringing products and devices; and (2) controlling and directing the direct infringement of one or more of the other Defendants.

70.     Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning February 7, 2020, with the delivery of Midas' noticed letter to Immersion Systems, of which the Individuals had contemporaneous notice.

71.     Defendants' acts of infringement of the '457 Patent have caused and will continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '457 Patent have caused and will continue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

### A.     Direct Infringement

72.     Defendants have directly infringed one or more claims of the '457 Patent in the Western  District  of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claims 1 and 6 of the'457 Patent. If any limitation of claim 1 or 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

73.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have directly infringed one or more claims of the '457 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of: (1) directing and controlling the activities of the Defendant Rhodium Operating Entities and the Defendants identified as Rhodium Post-Filing Operating Subsidiaries; and (2) benefiting and profiting from the other Defendants infringing actions. Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC also purchase infringing immersion cooling tanks and provided those infringing tanks to one or more of the other Defendants.

74.     See **Exhibit E** which is an exemplary claim chart detailing representative infringement of claims 1 and 6 of the'457 Patent.

### B.     Induced Infringement

75.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have been and are inducing infringement of the '457 Patent by actively and knowingly inducing others, including other Defendants, to make, have made and/or use, the infringing

immersion cooling systems and tank modules that embody the invention claimed in the '457 Patent in violation of 35 U.S.C. § 271(b). Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have also induced infringement by willfully directing and controlling the infringing activities of other third parties, such as manufacturers and installers, to make, have made, or use the infringing immersion cooling systems and tank modules.

76.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have possessed specific intent to induce infringement of the'457 Patent. Specifically, Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have long been aware of the '457 Patent and the specific manner in which their immersion cooling system design infringes the'457 Patent, by virtue of detailed claim charts provided to the Individuals and either shared with all other Defendants or that all other Defendants have knowledge of their infringement through the knowledge of the Individuals, who are officers, directors, and owners of the Rhodium Defendants. Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint. For example, Defendant Rhodium Enterprises, Inc. directed Ameritex Machine and Fabrication, LLC ("Ameritex") to make and sell its infringing immersion tanks. See Exhibit C.

77.     Defendants have induced infringement by providing designs and instructions to third party manufacturers, such as Ameritex and contractors to have made infringing immersion cooling systems and tank modules. *Id.*

78.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to other Defendants, third party manufacturing companies, such as Ameritex and other contractors, for knowing use in infringing activity to mine bitcoin and generate revenue. *Id.*

**Count 2: Infringement of U.S. Patent No. 10,820,446**

79.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

80.     The '446 Patent was filed January 9, 2019, and legally issued by the United States Patent and Trademark Office on October 27, 2020. The '446 Patent is valid and enforceable, and presumed as such pursuant to 35 U.S.C. § 282.

81.     Without a license or permission from Midas, Defendants have directly infringed and continue to directly infringe one or more claims of the '446 Patent,  by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. §  271.

82.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC directly infringe the '446 Patent under 35 USC §271(a) by; (1) providing infringing immersion cooling systems to other Defendants; (2) controlling and directing the direct infringement of one or more of the other Defendants; and (3) benefitting and profiting from the infringement of one or more of the other Defendants. The other Defendants directly infringe the '446 Patent under 35 USC §271(a) by their admitted use of infringing immersion cooling systems.

83.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC further indirectly infringe the '446 Patent by; (1) directing other third parties to design, build or install infringing products and devices; and (2) controlling and directing the direct infringement of one or more of the other Defendants. Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning November 24, 2020, with the filing of Midas' amended complaint against Immersion Systems, of which the Individuals had contemporaneous notice.

84.     Defendants' acts of infringement of the '446 Patent have caused and will continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '446 Patent have caused and will

continue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

### C.      Direct infringement

85.     Defendants  have directly infringed one or more claims of the '446 Patent in the Western  District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claims 1 and 6 of the'446 Patent. If any limitation of claims 1 or 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

86.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have directly infringed one or more claims of the '446 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of (1) directing and controlling the activities of the Defendant Rhodium Operating Entities and the Defendants identified as Rhodium Post-Filing Operating Subsidiaries and (2) benefiting and profiting from the other Defendants infringing actions. Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC also purchase infringing immersion cooling tanks and provided those infringing tanks to one or more of the other Defendants.

87.     See **Exhibit F** which is an exemplary claim chart detailing representative infringement of claims 1 and 6 of the'446 Patent.

### D.      Induced Infringement

88.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have been and are inducing infringement of the '446 Patent by actively and knowingly inducing others, including other Defendants, to make, have made, and/or use,  the infringing immersion cooling systems and tank modules that embody the invention claimed in the '446 Patent in violation of 35 U.S.C. § 27l(b). Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have also induced infringement by willfully

directing and controlling the infringing activities of other third parties, such as manufacturers and installers, to make, have made, or use the infringing immersion cooling systems and tank modules.

89.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have possessed specific intent to induce infringement of the '446 Patent. Specifically, Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have long been aware of the '446 Patent and the specific manner in which their immersion cooling system design infringes the '446 Patent, by virtue of detailed claim charts provided to the Individuals and either shared with all other Defendants or that all other Defendants have knowledge of their infringement through the knowledge of the Individuals, who are officers, directors, and owners of the Rhodium Defendants.

90.     Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint. For example, Defendant Rhodium Enterprises, Inc. directed Ameritex Machine and Fabrication, LLC ("Ameritex") to make and sell it infringing immersion tanks.

91.     Defendants have induced infringement by providing designs and instructions to third party manufacturers, such as Ameritex, and contractors to have made infringing immersion cooling systems and tank modules.

92.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to other Defendants, third party manufacturing companies, such as Ameritex and other contractors, for knowing use in infringing activity to mine bitcoin and generate revenue.

### Count 3: Willfulness and Egregiousness

93.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

94.     Defendants have willfully and maliciously infringed the '457 and '446 Patents at least since the date of their actual notice of the patents and their infringement. Specifically, despite receiving detailed claim charts both in letters and having received such information through the Immersion Systems litigation showing that their immersion cooling systems designs infringes Midas' patents, Defendants have continued to operate their infringing immersion cooling systems. Indeed, Defendants have aggressively sought to expand their operations and add additional immersion cooling systems, knowing throughout their existence that they infringe Midas' patents.

95.     The Individuals (by way of Immersion Systems) actively sought to conceal the existence of their Rhodium business and did not reveal its existence during the course of the Immersion Systems litigation, despite clear discovery obligations to do so. The Individuals also actively sought to conceal that Immersion Systems had ceased business operations, continuing in the Northern District of Texas litigation for the true benefit of the Defendants.

96.     At the same time, on information and belief, the Individuals, and/or Rhodium directly or indirectly bankrolled the filing and prosecution, nominally in the name of Immersion Systems, of an *Inter parties* review proceeding directed to attempt to invalidate the '457 Patent, as well as a Post-Grant review proceeding directed to attempt to invalidate the '446 Patent.

97.     Defendants' infringement has been egregious, wanton, malicious, and in bad faith.

98.     The Individuals, who are the officers, directors, and owners of the Defendants, possessed full knowledge that their immersion cooling systems design infringed the '457 and '446 Patents, knew these patents were valid, did not attempt to procure a license to these valid patents, and instead proceeded to start a new business using the same or substantially the same infringing design. As Rhodium advertises, this immersion cooling system design is critical to their business and a primary driver of their profitability, and yet Defendants have knowingly and maliciously stolen Midas' patented and innovative technology for their own profit without compensating the inventors of the technology.

**Additional Allegations Relating to the Asserted Patents**

99.     The '457 Patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '457 Patent seeks to solve at least two problems in the prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '457 Patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The '457 Patent accomplishes these improvements  through a unique, innovative design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly through the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The '457 Patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

100.    The '457 Patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned vertically beneath the

overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. The appliance immersion cooling system also, in some embodiments, includes a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted. The appliance immersion cooling system also includes a control facility adapted to coordinate the operation of the primary and, if included, the secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

101.    The '457 Patent also claims, among other things, a tank module adapted for use in an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir  positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

102.    The '446 Patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '446 Patent seeks to solve at least two

problems in the prior art of appliance immersion cooling systems: (1) the difficulty of
maintenance and access to the electrical equipment in prior art vertical-stack-type systems,
which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-
uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid
supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow
velocities. The invention of the '446 Patent is an improvement over the prior art and
provides greater efficiency and effectiveness through ease of access to the electrical
appliances in an open horizontal tank, substantially uniform fluid flow patterns through all
appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The
'446 Patent accomplishes these improvements through a unique, innovative design, as
described below, that achieves substantially uniform flow of dielectric fluid upwardly through
the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid
across the bottom of the tank and then a weir that is adapted to facilitate substantially
uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows
over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation
into the tank. The '446 Patent therefore does not claim an abstract idea, law of nature, or
natural phenomenon, but instead to a tangible, patent-eligible invention.

103.    The '446 Patent claims, among other things, an appliance immersion cooling
system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical
appliances, each in a respective appliance slot distributed vertically along, and extending
transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the
long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform
recovery of the dielectric fluid flowing through each appliance slot. The appliance immersion
cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid
through the tank. The primary circulation facility includes a plenum, positioned adjacent the
bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly
through each appliance slot. The appliance immersion  cooling system also includes,  in at least

one embodiment, a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulation in the primary circulation facility, and to dissipate to the environment the heat so extracted, and a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

104.    The '446 Patent also claims, among other things, a tank module adapted for use in an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically long, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Midas respectfully requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

Wherefore, Midas requests judgment against Defendants as follows:

A.    Adjudging that all Defendants have directly infringed, the '457 Patent, in violation of 35 U.S.C. § 271(a);

B.    Adjudging that Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have actively induced infringement of the '457 Patent, in violation of 35 U.S.C. § 271(b);

C.    Adjudging that all Defendants have directly infringed the '446 Patent, in

violation of 35 U.S.C. § 27l(a);

     D.     Adjudging that Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have actively induced infringement of the '446 Patent, in violation of 35 U.S.C. § 271(b);

     E.     Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of, the '457 Patent and of the '446 Patent;

     F.     Ordering Defendants to account for and pay damages adequate to compensate Midas for Defendants' infringement of, and inducement to infringe, the '457 Patent and the '446 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

     G.     Ordering an accounting by Defendants for any infringing activity not presented at trial and an award by the court of additional damages for any such infringing activity to Midas;

     H.     Ordering that the damages award by increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

     I.     Declaring this case exceptional and ordering Defendants to pay the cost of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

     J.     Awarding such other and further relief as this Court deems just and proper.

DATED: March 29, 2023          Respectfully submitted,

          */s/ Joseph E. Thomas*
          Joseph E. Thomas (*admitted p.h.v.*)
          William J. Kolegraff (*admitted p.h.v.*)
          Grant J. Thomas (*admitted p.h.v.*)
          THOMAS WHITELAW & KOLEGRAFF LLP
          18101 Von Karman Ave., Suite 230

Irvine, California 92612
Telephone: (949) 679-6400
Fax: (949) 679-6405
jthomas@twtlaw.com
bkolegraff@twtlaw.com
gthomas@twtlaw.com

Henry M. Pogorzelski
Texas Bar No. 24007852
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Telephone: (512) 482-6800
Fax (512) 482-6859
Henry.pogorzelski@klgates.com

Counsel for Plaintiff
Midas Green Technologies, LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who have appeared electronically in this case are being served on March 29, 2023 via the email address that counsel provided to Court's ECF system.

*/s/ Tierra Mendiola*
Tierra Mendiola

#415531v1