# EXHIBIT H

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MIDAS GREEN TECHNOLOGIES, LLC, § § § Plaintiff/Counter-Defendant, § § v. § § IMMERSION SYSTEMS, LLC, § § Defendant/Counter-Claimant. § | Civil Action No. 4:20-cv-00555-O |

## ORDER

Before the Court are Defendant Immersion Systems LLC's Opening Claim Construction Brief (ECF No. 74), filed September 24, 2021; Plaintiff Midas Green Technologies, LLC's Opening Claim Construction Brief (ECF No. 76), filed September 24; Immersion's Response (ECF No. 78), filed October 8; Midas's Response (ECF No. 80), filed October 8; and the Joint Claim Construction Chart (ECF No. 82), filed October 15.

Midas filed this lawsuit against Immersion, alleging infringement of two patents. Immersion denies that it has infringed any patents and argues that Midas's patents are invalid and unenforceable. Before reaching those issues, the parties ask the Court to resolve a dispute over the construction of two terms in the patent claims. The Court will also take this opportunity to adopt the agreed-upon constructions of the nineteen terms listed in the Joint Claim Construction Chart.

### I. BACKGROUND

Midas is the assignee of two patents that concern the liquid cooling of electronic appliances. The first patent is registered as U.S. Patent No. 10,405,457 ("the '457 Patent"). Def.'s App. 6, ECF No. 75. The second patent is a continuation of the '457 Patent and is registered as U.S. Patent No. 10,820,446 ("the '446 Patent"). *Id.* at 22.

The patents describe a tank in which electronic appliances are immersed in a cooling fluid. *Id.* at 16, 32. A device on the bottom of the tank dispenses the fluid, which travels upward to the top of the tank. *Id.* When the fluid approaches the top, it reaches a horizontal slot called a "weir." *Id.* The fluid flows through the weir into a reservoir so that it can be repressurized, cooled, and recirculated through the system. *Id.* The technology has applications in data centers and cryptocurrency farming operations. *See* Pl.'s Br. 5, ECF No. 76.

On May 29, 2020, Midas sued Immersion for infringement of its patents. It asserts infringement of Claims 1, 6, and 11 of the '457 Patent, and Claims 1 and 6 of the '446 Patent. Compl. 7–8, ECF No. 1. Immersion responded by denying that it infringed any patents and asserting that the patents are invalid and unenforceable under 35 U.S.C. §§ 102, 103, and 112. Answer 11–13, ECF No. 17.

Following the Court's Scheduling Order, the parties submitted briefs regarding the construction of terms and phrases in both patents. They agree on the construction of nineteen terms and phrases. *See* Joint Claim Construction Chart 1–4, ECF No. 82-1. They dispute, however, the proper construction of two phrases:

1) "a weir . . . adapted to facilitate substantially uniform recovery,"[1] and

2) "a weir . . . having an overflow lip adapted to facilitate substantially uniform recovery."[2]

The parties agree that a "weir" is "an overflow structure or barrier that determines the level of liquid." *Id.* at 1. They also agree that "substantially uniform recovery" should be given its plain and ordinary meaning. *Id.*

---

[1] The first phrase appears in Claim 11 of the '457 Patent and Claims 1 and 6 of the '446 Patent. *See* Def.'s App. 15–16, 31, ECF No. 75.
[2] The second phrase appears in Claims 1 and 6 of the '457 Patent. *See id.* at 15.

2

The dispute comes down to the meaning of "an overflow lip." The '457 Patent describes "a weir . . . *having an overflow lip* adapted to facilitate substantially uniform recovery" of the fluid. Def.'s App. 19, ECF No. 75 (emphasis added). The '446 Patent, which followed the '457 Patent, omits the phrase "having an overflow lip," and instead describes "a weir . . . adapted to facilitate substantially uniform recovery" of the fluid. *Id.* at 35. The issue is whether there is a difference between a "weir" and a "weir having an overflow lip."

Immersion contends there must be a difference between the two phrases. It begins with the premise that different terms are presumed to have different meanings. *See* Def.'s Br. 15, ECF No. 74. So, Immersion argues, there must be a difference between the claims that include the phrase "having an overflow lip" and those that do not. And because the patents do not define what that difference is, Immersion argues the patents are indefinite under 35 U.S.C. § 112(b) and, thus, invalid.

Midas rejects Immersion's premise that the two phrases have different meanings. According to Midas, the inclusion of the phrase "having an overflow lip" is a redundancy; a "weir" and "a weir having an overflow lip" are the same thing. *See* Pl.'s Resp. Br. 7, ECF No. 80. Midas therefore argues that the two phrases need no construction because their meanings are plain. *See* Pl.'s Br. 1, ECF No. 76. In the alternative, Midas suggests that the meaning of the two phrases can be simplified by construing "adapted to facilitate" to mean "capable of easing or helping." *Id.*

## II.   LEGAL STANDARDS

In a patent infringement case, a court first determines the proper construction of the patent claims as a matter of law, establishing the scope of the patentee's rights. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015). The trier of fact may then be called upon to compare the properly construed claims to the allegedly infringing devices to determine whether there has been an infringement. *Id.*

3

Claim construction is the process of identifying the proper meaning of the claim language. "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation omitted). That is, a claim term is given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

Courts begin the plain-meaning analysis by looking at the patent's intrinsic record, which consists of the claims, specification, and prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The words of the claims are generally given their ordinary meaning, but "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Id.* "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* A court may also consider the patent's prosecution history, if in evidence. *Id.*

Usually, the intrinsic evidence resolves any ambiguity in a term's meaning. When it does not, courts look to extrinsic evidence. *Vitronics*, 90 F.3d at 1583. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citation omitted). Though these sources may be useful, "a court should discount any expert

4

testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history.'" *Id.* at 1318 (citation omitted).

Sometimes, neither intrinsic nor extrinsic evidence can resolve a term's ambiguity. In those circumstances, the claim may be indefinite and thus invalid. *See* 35 U.S.C. § 112. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Although the definiteness requirement mandates clarity, courts recognize that "absolute precision is unattainable." *Id.* at 910. The level of certainty regarding a patent's definiteness "is not greater than is reasonable," considering the patent's subject matter. *Id.* "[T]he party challenging the patent bears the burden of proving invalidity by clear and convincing evidence." *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

### III.   ANALYSIS

The lynchpin of Immersion's argument is the doctrine of claim differentiation. The doctrine holds that "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (citation and internal quotation marks omitted). Claim differentiation, however, "is not a hard and fast rule of construction." *Id.* at 1369 (citation and internal quotation marks omitted). "The doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence. Claims that are written in different words may ultimately cover substantially the same subject matter." *Id.* (cleaned up).

5

The Court does not construe the claim language in isolation. "Claim language must always be read in view of the written description, and any presumption created by the doctrine of claim differentiation 'will be overcome by a contrary construction dictated by the written description or prosecution history.'" *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (citation omitted) (quoting *Seachange Int'l*, 413 F.3d at 1369). Finally, the presumption is "not as strong across related patents." *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1330 (Fed. Cir. 2016).

Immersion relies too heavily on the presumption of claim differentiation. The intrinsic evidence overcomes the presumption that a "weir" and a "a weir having an overflow lip" mean different things. Moreover, because the intrinsic evidence resolves the dispute over the meaning of the two phrases, the Court need not consult extrinsic evidence. *See Vitronics*, 90 F.3d at 1583. In sum, Immersion has not provided clear and convincing evidence that the patents fail to inform "those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901; *see also Takeda Pharm.*, 743 F.3d at 1366.

### A.   The Claims

The parties' stipulated claim terms resolve any ambiguity in the disputed terms. As already noted, the parties agree that a "weir" is "an overflow structure or barrier that determines the level of liquid." Joint Claim Construction Chart 1, ECF No. 82-1. They also agree that "substantially uniform recovery" should be afforded its plain and ordinary meaning. *Id.* A person of ordinary skill in the art would understand that a weir, as "an overflow structure or barrier," determines the level of a liquid by having an edge over which the liquid flows. The parties' agreements therefore provide reasonable certainty as to the scope of the claim. *See Phillips*, 415 F.3d at 1312.

The question is whether adding the phrase "having an overflow lip" injects ambiguity into the claims. It does not. As Midas points out, the overflow lip is simply the bottom edge of the weir.

*See* Pl.'s Resp. Br. 8–9, ECF No. 80. The Court agrees that specifying that a weir has an overflow lip is redundant. And redundancies do not necessarily render a claim indefinite. For example, one court rejected an argument that the phrase "inner shell" used in one patent and the phrase "inner shell that is a rigid shell" used in a related patent must have different meanings. *Kranos IP Corp. v. Riddell, Inc.*, No. 17-C-6802, 2019 WL 1915366, at *2 (N.D. Ill. Apr. 24, 2019) (cleaned up). The Court reasoned that "the fact that a related patent contained different claim language has little probative value in light of the clear indications in the [other] patent that the inner shell must be rigid or hard." *Id.* Likewise, that the later '446 Patent omitted the phrase "having an overflow lip" is simply confirmation that the applicants recognized the redundancy. *See Shire LLC v. Abhai, LLC*, 219 F. Supp. 3d 241, 245 (D. Mass. 2016) ("Differently worded but similar claims in related patents, however, may still be construed identically where those patents share a specification and other technical details.").

### B.     The Specification

The specification reinforces the plain meaning of the disputed terms. The '457 Patent describes how the fluid flows into the reservoir: "One further shared component is the dielectric fluid recovery facility comprising a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted smoothly to receive the dielectric fluid as it flows over the weir." Def.'s App. 16, ECF No. 75 (references omitted). Figures 1, 5, and 6 show that the overflow lip is simply the bottom edge of the weir. *Id.* at 8, 10. The specification reinforces the conclusion that a "weir" and a "weir having an overflow lip" are precisely the same thing.

Immersion's argument to the contrary misses the point. Immersion argues that "[n]owhere in the specification or claims is there any suggestion as to how the terms differ." Def.'s Br. 17, ECF No. 74. But Midas's position—and the plain language of the claims—is that the terms do *not* differ. Again, Immersion relies too heavily on claim differentiation in assuming that "weir" and

7

"weir having an overflow lip" must mean different things. The claims and specification demonstrate that the most reasonable interpretation is that "weir" and "weir having an overflow lip" are identical in meaning. *See Retractable Techs., Inc.*, 653 F.3d at 1305. Immersion does not rebut that reasonable interpretation.

### C.     The Prosecution History

The prosecution history resolves any remaining uncertainty about the meaning of the disputed terms. An examiner rejected the initial application for the '457 Patent because it was too similar to an already-patented air cooling system. *See* Def.'s App. 39–42, ECF No. 75. The applicants then added the phrase "having an overflow lip" to Claims 1 and 6 to clarify that the '457 Patent concerned liquid cooling, not air cooling. *Id.* at 45–48. The examiner again rejected the application, observing that "the 'weir' structure . . . merely amounts to an opening in a wall and its 'lip' is never defined as more than the bottom surface of that opening." *Id.* at 88. So the applicants submitted another revised application, explaining in detail the difference between gas and liquid fluid dynamics. *Id.* at 100–01. After that final explanation, the examiner dropped the air cooling system as a prior-art reference and approved the '457 Patent. *See* Pl.'s Supp. App. 348–50, ECF No. 81.

The prosecution history confirms several points. First, stating that a weir has an overflow lip is redundant. As the examiner observed, the lip is merely "the bottom surface of [the weir's] opening." Def.'s App. 88, ECF No. 75. Or, as Midas says, "All weirs have overflow lips." Pl.'s Resp. Br. 8, ECF No. 80. Second, the '457 Patent applicants added the phrase "having an overflow lip" to underscore that the patent concerned a liquid cooling system rather than an air cooling system. As it turned out, adding the phrase did not help—the examiner required more explanation to distinguish the liquid and air cooling systems. Once the applicants provided that explanation, the patent was approved. Third, the omission of the phrase "having an overflow lip" from the

8

subsequent '446 Patent did not change the claims' meaning. The applicants for the '446 Patent simply acknowledged the examiner's conclusion that the phrase was redundant. They omitted the phrase because it added nothing to the description of a weir. The prosecution's history confirms that a personal of ordinary skill in the art would understand the scope of the disputed phrases according to their plain meaning.

### IV. CONCLUSION

The intrinsic evidence demonstrates that the disputed terms should be afforded their plain and ordinary meanings. The Court therefore need not consult any extrinsic evidence. *See Vitronics*, 90 F.3d at 1583. The Court also **DENIES** Immersion's invalidity claim because Immersion has not shown by clear and convincing evidence that the patents are indefinite. Accordingly, the Court **ORDERS** the following:

1) The Court construes the nineteen agreed-upon terms and phrases in the Joint Claim Construction Chart (ECF No. 82-1) in accordance with the parties' agreed constructions.

2) The Court construes the two disputed phrases (a) as not indefinite and (b) in accordance with their plain and ordinary meaning.

3) The Court refers the parties to the Amended Scheduling Order (ECF No. 64) regarding future litigation deadlines.

**SO ORDERED** this **22nd day** of **November 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

9