```
 1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                         WACO DIVISION

 3  MIDAS GREEN TECHNOLOGIES,) Docket No. WA 22-CA-050 ADA
    LLC                     )
 4                          )
    vs.                     ) Waco, Texas
 5                          )
    RHODIUM ENTERPRISES,    )
 6  INC, ET AL              ) February 27, 2023

 7

        TRANSCRIPT OF DISCOVERY HEARING VIA VIDEOCONFERENCE
 8           BEFORE THE HONORABLE DEREK T. GILLILAND

 9

10  APPEARANCES:

11  For the Plaintiff:       Mr. Michael C. Smith
                             Scheef & Stone, LLP
12                           113 East Austin Street
                             Marshall, Texas 75670
13
                             Mr. Henry Pogorzelski
14                           K&L Gates, LLP
                             2801 Via Fortuna, Suite 650
15                           Austin, Texas 78746

16                           Mr. Nicholas F. Lenning
                             K&L Gates, LLP
17                           925 Fourth Avenue, Suite 2900
                             Seattle, Washington 98104
18
                             Mr. Grant J. Thomas
19                           MR. Joseph E. Thomas
                             Thomas, Whitelaw & Kolegraff, LLP
20                           18101 Von Karman Avenue,
                             Suite 230
21                           Irvine, California 92612

22  For the Defendant:       Ms. Ashley Ross
                             Kirkland & Ellis, LLP
23                           601 Lexington Avenue
                             New York, New York 10022

24

25
```

```
 1   (Appearances Continued:)

 2   For the Defendant:        Mr. Gianni L. Cutri
                               Mr. Gregory M. Polins
 3                             Kirkland & Ellis, LLP
                               300 North La Salle
 4                             Chicago, Illinois 60654

 5                             Ms. Kathy H. Li
                               Kirkland & Ellis, LLP
 6                             401 Congress Avenue
                               Austin, Texas 78701

 7

 8   Transcriber:             Ms. Lily Iva Reznik, CRR, RMR
                              501 West 5th Street, Suite 4153
 9                            Austin, Texas 78701
                              (512)391-8792

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings reported by digital sound recording,
     transcript produced by computer-aided transcription.
```

```
 1              (Proceedings commence at 9:30 a.m.)

 2         THE COURT:  All right.  Good morning, everybody.

 3  We're here on a discovery dispute and I'm going to start

 4  by asking Ms. Copp to call the case.

 5         THE CLERK:  Yes, your Honor.

 6         Calling Case No. WA-22-CV-50, styled, Midas Green

 7  Technologies, LLC vs. Rhodium Enterprises, Incorporated,

 8  et al.  Called for a discovery hearing.

 9         THE COURT:  All right.  Could I get announcements

10  starting with the plaintiff.

11         MR. SMITH:  Yes, your Honor.

12         For the plaintiff, Michael Smith, Henry

13  Pogorzelski, Nick Lenning, Joe Thomas and Grant Thomas,

14  and we're ready to proceed.

15         THE COURT:  All right.  Very good.  Good to see

16  you, Mr. Smith, and team.

17         And for defendant.

18         MS. LI:  Good morning, your Honor.

19         Kat Li of Kirkland & Ellis on behalf of the

20  Rhodium defendants, and with me, I have Gianni Cutri, Greg

21  Polins and Ashley Ross.  And today, Ms. Ross will be our

22  primary speaker and it's her first time before your Honor.

23         THE COURT:  All right.  Excellent.  Well, great

24  to see you, Ms. Li, and team.  And welcome, Ms. Ross.  I

25  look forward to hearing your argument and presentation
```

 1   today.

 2          So I've got a dispute chart with a dispute over

 3   essentially three interrogatories; is that correct?

 4          MS. ROSS:  Yes, your Honor.

 5          THE COURT:  Okay.  Well, let me let you just

 6   start with, I guess, the first one.  The order I have them

 7   in is Interrogatory No. 8, followed by 10, followed by 14.

 8   And so, I assume you want to start with No. 8, but just

 9   you tell me what order you want to take them in and we'll

10   begin.  Oh, and --

11          MS. ROSS:  That works for us, your Honor.

12          THE COURT:  Okay.  Perfect.  And also, I have a

13   hard stop at 10:30.  We should have plenty of time but

14   just want to make everybody aware of that.

15          MS. ROSS:  Thank you, your Honor.

16          As you noted, we're going to take up

17   Interrogatory No. 8 first and that interrogatory seeks the

18   complete factual and legal bases for Midas' damages

19   theories.  And as of today, we haven't really gotten

20   anything out of that interrogatory.  And their Rule 26

21   disclosures, likewise, haven't given us anything but kind

22   of boilerplate language on the fact that they want actual

23   damages and other damages without any facts or support for

24   that, and that's really not putting us on notice of

25   anything.  So we're seeking a fulsome response to this

1    interrogatory request today.

2          And Midas knows how to provide such a fulsome

3    request.  And I'd like to refer the Court to Midas' Rule

4    26 disclosures from Immersion litigation, which was the

5    predecessor litigation to this one which Midas alleges

6    Immersion, the company, was a predecessor company to

7    Rhodium, which we don't necessarily agree with.  But I'd

8    like to take you through, if I could, a bit about that

9    Rule 26 disclosure because I think it bears on what Midas

10   could have given us here and haven't yet.

11         So if I might be permitted to share my screen on

12   that, your Honor.

13         THE COURT:  Certainly.

14         MS. ROSS:  I'm sorry, your Honor.

15         THE COURT:  It's all right.  I don't see anything

16   yet.  So -- oh, there we go.

17         MS. ROSS:  Okay.  So, your Honor, this was a case

18   that was filed back in May 29th of 2020.  And the Rule 26

19   disclosures were served on November 25th, 2020, which was

20   a full year before when Midas' expert reports were due in

21   that case.  And so, it was a year before expert discovery.

22   And I'd like to take you to where Midas actually provides

23   their disclosure as they're required to on the computation

24   of each category of damages.

25         And it's sufficient -- or it's relevant here

1   because of how much detail Midas provides at this early

2   stage of the litigation from that Midas case.  And this

3   was another -- same patents were at issue and they were

4   also accusing Immersion cooling tanks of infringement.  So

5   Midas alleges that that case has relevance here and they

6   actually have made accusations as to the relevance of

7   those tanks here.  So it's not like a totally different

8   litigation that we're dealing with in terms of the subject

9   matter.

10         So in paragraph 5A, Midas actually provided a

11   reasonable royalty rate.  They've provided five percent as

12   a rate and in support of that, they cite to two comparable

13   license agreements, as you can see here.  And I'm not sure

14   if you could see my cursor but I'm --

15         THE COURT:  I can.

16         MS. ROSS:  Okay.  Great.  And then, so they've

17   actually disclosed what those two license agreements are

18   by Bates number and then, they give a royalty base in the

19   next paragraph.  So already we're getting much more

20   information that we have here.  And then, in 5C, they give

21   an exemplary calculation as to what the running royalty

22   license would be.  And in this case, your Honor, I don't

23   believe they actually asserted lost profits, so this is

24   just really relevant to kind of how much detail they could

25   give us on a reasonable royalty.

1            And then, on paragraph -- actually, I apologize.

2    They actually gave us their actual damages, which they

3    estimated between 1.3 and $2.6 million.  So this was

4    several years ago and already, they had this sort of

5    information in front of them.  And if we skip down, they

6    give us a whole bunch of additional information.  As you

7    can see, it's still the 457 patent and the 446 patent that

8    were at issue here, and they talk about when that

9    infringement period begins for each of them.

10           And then, in paragraph 12 here, they actually

11   provide witnesses who would be willing to testify or

12   they're going to rely on to support their damages claims.

13   And then, in paragraph 13, they get to the hypothetical

14   negotiation date.  Again, all very relevant to -- sort of

15   information that we'd like here and haven't gotten.  And

16   then, they talk about apportionment in paragraph 14 here.

17           And then, your Honor, so I'm not belaboring the

18   point, although I'm sure I already have at this point,

19   they continue to talk about the royalty base.  And then,

20   at the bottom of this page, they start walking through the

21   Georgia Pacific factors and go so far as to actually talk

22   about the nature of the invention itself, as well, if I

23   can just get to that.  Sorry.  Keeps going.

24           All right.  So they're talking about the nature

25   of the patented invention here and kind of give an

1  overview of that, as well.  So the reason why I'm showing

2  this to your Honor is because this is a plaintiff who

3  clearly has the ability to tell the parties that they're

4  suing early in the case what their damages contentions are

5  and can actually walk through a legal analysis of the

6  Georgia Pacific factors to give their factual and legal

7  bases.

8         Now, Midas' factual contention is that this

9  Immersion company, as we said, was -- involved the same

10  technology, but they won't give us any of this sort of

11  information.  And why not?  It's because of this Stratus

12  Audio case that's what they relied on for this.  I think

13  it was before your Honor in November when we were before

14  your Honor last, and they raised it throughout each of the

15  interrogatories today.

16         But sticking with Interrogatory No. 8, they've

17  raised Stratus.  And I just -- before we even get to

18  Stratus, I just wanted to align kind of where we were in

19  this case because we were just talking about the Immersion

20  case.  So here, it's actually been over six months since

21  we served Interrogatory 8 that was served, I think, August

22  1st of last year.  And the Rhodium defendants have now

23  produced financial statements.  We've produced SEC filings

24  containing financial information.  We've responded to

25  interrogatories substantively telling Midas how many tanks

1  are in operation, how many miners are running in those

2  tanks, and how much wattage those miners are using.

3        And even setting aside what we have provided to

4  Midas, Midas clearly has plenty of information on their

5  own.  And if we take the Panduit factors kind of as a

6  outline for what they should be able to give us right now

7  for a lost profits analysis, you know, they should know

8  what the demand for their product is.  They claim they

9  have certain tanks that are embodiments of the

10 patents-in-suit, which is what we were before your Honor

11 on in November.  So they should know what the demand is.

12       They should be able to identify whether there are

13 non-infringing alternatives in the marketplace beyond

14 anything that defendants are going to produce to them.  I

15 mean, I think they should know that.  They should be able

16 to set forth their manufacturing and marketing abilities,

17 you know, which is another Panduit factor, as your Honor

18 knows.  And to the extent they've identified customers who

19 have foregone their products, they should be able to

20 identify those customers and the amount of lost profits as

21 of now.

22       Now, turning, your Honor, to that Stratus Audio

23 case, which is kind of the basis for why they're saying

24 they shouldn't have to give us anything, they say that's

25 the reason why you can just wait until expert discovery to

1   give us any information.  And as I said, they've given us

2   nothing at this point.  So I assume your Honor is familiar

3   with that case because it's been raised a couple of times

4   now such that you're aware there was no oral argument in

5   that case.  Judge Albright actually cancelled the oral

6   argument.  And the interrogatory that was mentioned in the

7   dicta that Midas cites to repeatedly had actually already

8   been answered by the plaintiff in that case, and it was an

9   interrogatory that concerned plaintiff's validity theories

10  there.

11          So that makes the character of that interrogatory

12  immediately kind of distinguishable from here where Midas

13  bears the burden of proof on these issues.  It's Midas who

14  has all the information on its damages theories that it

15  wants to set forth.  So not only did no party ever

16  actually raise the question of whether another must answer

17  interrogatories typically answered in expert reports, but

18  you know, the type of interrogatory was really different.

19          And there's no hardline rule that we've been able

20  to identify within the OGP that actually precludes

21  interrogatories whose response would include information

22  that an expert would also use in their reports.  And I've

23  spoken to Ms. Li, as well, who is very familiar with this

24  district, and we note that folks ask these types of

25  interrogatories all the time.  I think one thing that

1  plaintiff pointed out in the discovery dispute chart is

2  that we didn't have Fifth Circuit law on this issue, and I

3  think that's not surprising because people don't take such

4  a hardline position.  That's really kind of backwards

5  here, right?  So if Midas had its way and if Midas'

6  reading of Stratus was really as strong as they're reading

7  it to be, then we would reach expert discovery, Rhodium,

8  having lost any ability to conduct fact discovery to

9  pressure test Midas' damages theories and facts.

10         So, for instance, if Midas for the first time in

11  their expert report raises a license agreement that we

12  have not -- that they had not previously identified as a

13  comparable license, we will have lost the ability to

14  conduct any fact discovery after as to that license.  We

15  can't take any fact depositions.  We can't ask additional

16  RFPs.  We can't ask additional interrogatories.  And so,

17  we've had a -- we'd probably be back here again, your

18  Honor, either moving to strike this information or asking

19  for additional fact discovery, which I think is precisely

20  why courts don't take such a hardline approach.

21         And I also think that's the same reason, your

22  Honor, why this court's OGP requires early contentions as

23  to things like validity -- invalidity, excuse me, and

24  infringement because it provides the parties with a

25  framework and a structure under which they can conduct

1  additional discovery and so that the party that does not

2  bear the burden of proof is put on notice so they know the

3  sorts of things that they need to analyze during the

4  course of fact discovery.

5       So this is -- what I kind of set forth and what I

6  think is kind of the -- and what we think is the proper

7  procedure here, which is to require them to set forth

8  their factual bases now is actually consistent with your

9  ruling at the November 7th conference.  And there, you

10 might recall, we had sought from Midas to give us more

11 information on what products Midas contended practice the

12 claims.

13      And your Honor first said at page 18 of that

14 transcript that Midas was essentially going to be cabined

15 or limited to what they've charted when their expert

16 testifies, which I think is the right way to go about

17 this, right?  You start with your fact discovery and then,

18 based on that, you can go into your expert discovery.  And

19 the Court said additionally at page 20 there, whatever

20 makes it into plaintiff's expert report has to be

21 supported by evidence and statements made during

22 discovery.  And I think the same ruling should hold true

23 here and throughout kind of all of these issues and this

24 Stratus Audio defense is one that kind of pervades

25 everything.

1          This is also kind of consistent with Rule 26,

2   which requires a party at the outset of litigation before

3   anything else has happened, before expert discovery is

4   begun, to provide a computation of each category of

5   damages claimed by the disclosing party; and they have to

6   actually make available for inspection and copying the

7   documents that they're going to rely on there.

8          So I think this is all kind of consistent with

9   your prior ruling, the Court's OGP with respect to

10  contentions, and the Federal Rules of Civil Procedure.

11  And really, what we're trying to avoid here, your Honor,

12  is being ambushed at the last minute.  And for that

13  reason, as we noted in our discovery chart, what we're

14  asking is for the Court to, number one, overrule Midas'

15  objections with respect to Stratus Audio and, number two,

16  order Midas to respond by providing its damages theories

17  together with those factual bases underlying its theories.

18         And we really would request, your Honor, that we

19  receive this information within a couple of weeks, really

20  within a week if we can, because it's been -- as Judge

21  Albright said at the last hearing, this case is now long

22  in the tooth and we really need the ability to understand

23  what we're arguing about and understand, you know, where

24  we need to go next in fact discovery.  Thank you, your

25  Honor.

1    THE COURT:  Okay.  Let me ask you, Ms. Ross, how

2  -- I assume at this point, you're not wanting defendants

3  to provide you an expert report in response to the

4  interrogatory; is that fair?

5    MS. ROSS:  That's fair, your Honor.

6    THE COURT:  Okay.  So at what point would you --

7  and this is something that I kind of grapple with, so I'm

8  curious for your thoughts on it.  At what point is the

9  answer sufficient for discovery but it's not an expert

10  report?

11    MS. ROSS:  Well, your Honor, I think that the

12  rule of dis -- 26 disclosure that I just walked you

13  through from November of 2020 is a good guideline for that

14  because that was something that was prior to expert

15  discovery.  So I think if they have factual bases at this

16  point, as they did in that Rule 26 disclosure from

17  November 2020, they should set them forth now.  I think it

18  -- you know, it is a little challenging because you're

19  taking facts and applying them in an expert report, and

20  so, it might look similar.  But they have to give us

21  something and that's why I'm saying that Rule 26

22  disclosure seems like a good guideline for kind of the

23  level of detail they should be giving us.

24    THE COURT:  Okay.  All right.  Thank you, Ms.

25  Ross.

1          Who's going to respond for defendant?  Or, I'm

2    sorry, for plaintiff.  Mr. Lenning, okay.

3          MR. LENNING:  Nick Lenning for plaintiff, your

4    Honor.

5          I'll respond just briefly.  I don't think that we

6    really have a dispute here on factual bases.  Like you

7    were just saying there, your Honor, that -- I'm sorry, as

8    you said at the earlier hearing -- factual bases, all

9    evidence that's going to be used by experts and expert

10   reports is going to be disclosed in discovery.  So I don't

11   think there's any dispute there.  What there is a dispute

12   on here, your Honor, is providing an expert report, which

13   is what they're looking for.

14          When they're providing that Rule 26 report from

15   the prior case, which was information that was voluntarily

16   disclosed by prior counsel in a different court, that is

17   information that is typically included in an expert

18   report.  We're talking damages models, damages

19   calculations, that we do have an objection to providing at

20   this point because that is quintessentially expert report

21   material.

22          But we don't have an objection to providing

23   factual bases.  So the specific reasons that Rhodium asked

24   for this information now is so that it could seek

25   discovery.  There's no reason that it can't seek discovery

1  on these items.  It already has.  So they already --

2  Rhodium already has issued RFPs asking for lost profit

3  documents, already has issued RFPs asking for reasonable

4  royalty documents, comparable licenses.  We have been and

5  we will continue to produce that information in discovery.

6  And the information that's in an expert report is going to

7  be information that's produced in discovery.

8         Like, for example, we're not going to be

9  ambushing defendants with a license that was never

10 produced in discovery, trying to use it in an expert

11 report.  The -- that really, actually, your Honor, is --

12 basically sums up our entire argument.  We don't have any

13 dispute here on factual bases and disclosing things in

14 discovery.  We do on providing what they're asking for

15 here, which is the complete legal bases for all of our

16 opinions, which in our -- our position is asking for our

17 expert report.

18         THE COURT:  Okay.  And as it sits today, I

19 haven't seen the answer to the interrogatory, but to what

20 extent has plaintiff responded to this interrogatory?

21 Have you gone so far as to disclose whether you're seeking

22 lost profits as well as a reasonable royalty or one or the

23 other?  Or what disclosure's been made?

24         MR. LENNING:  I can't recall what the specific

25 response to the interrogatory is, your Honor, but I will

1   say that we have disclosed that we are seeking both lost

2   profits and reasonable royalty and it's even in our chart

3   responding to this.  We believe that we disclosed that in

4   our Rule 26 initial disclosures.  It states that we intend

5   to seek both.  But to the extent that wasn't clear, it is

6   absolutely clear now.  It's in our chart response that we

7   intend to seek both.

8           MS. ROSS:  And, your Honor, if I -- if it's

9   helpful to the Court, I actually have that interrogatory

10  response pulled up.  I can share it with the Court if

11  that's helpful.

12          THE COURT:  Okay.  Maybe in just a second, Ms.

13  Ross.  But yeah, that would be helpful in just a second.

14          Yeah, Mr. Lenning, yeah, the way I read the chart

15  -- and I'm looking back at it here -- is that the damages

16  claimed will include at least actual damages both past and

17  future and other damages such as special damages,

18  exemplary damages, a reasonable royalty in any amount to

19  which Midas is entitled under 35 U.S.C., Section 284.

20          So what initially struck me about that is it

21  begins to read much like I would have expected in, say, an

22  injury case rather than a patent case.  But I don't see

23  the type of specificity, you know, we are seeking

24  reasonable royalty, we are seeking lost profits.  At least

25  from my review of the chart, it doesn't even specifically

1  say lost profits.

2         MR. LENNING:  We don't have an objection to

3  supplementing and saying exactly that, your Honor.

4         THE COURT:  Okay.  Let me see -- unless there's

5  anything else, let me see, Ms. Ross, if you will pull up a

6  copy of the interrogatory response.

7         MS. ROSS:  Your Honor, can you see my screen now?

8         THE COURT:  I can.

9         MS. ROSS:  So this is the total of what we've

10 received.  And may I respond to what Mr. Lenning just

11 said?  Or would you prefer to just take a look at this

12 first?

13        THE COURT:  No.  Go ahead.  Yeah, I've already

14 looked at it.

15        MS. ROSS:  There's not much here, your Honor, as

16 you can see.  So I think that the issue we're having is --

17 you know, there's a reason why there are both requests for

18 production and interrogatories as forms of discovery tools

19 in cases, and that's because requests for production

20 hopefully results in voluminous productions of materials.

21 But putting together the pieces -- expecting defendants to

22 put together those pieces such that we understand what

23 their theories are and how those licenses, for instance,

24 are applicable, that's what we're missing here, right?

25             So it would not be sufficient to put us on notice

1    to just say we're seeking lost profits or we're seeking a

2    reasonable royalty without any further information.  And

3    likewise, I don't think it puts us on notice to just say

4    we've dumped a bunch of documents on you, but we're not

5    going to tell you how they're going to actually apply

6    those, or which of those documents we're actually going to

7    be using, or which of those documents we think are

8    relevant to damages here.

9            So I think that's really the issue here.  And I

10   know your Honor had asked again about expert reports, but

11   I don't think applying facts in the way we've asked for

12   them is seeking an expert report here.  And I also don't

13   think that just because an interrogatory response might be

14   close to what an expert would also rely on or also opine

15   on is a reason not to give an interrogatory response.

16           THE COURT:  Okay.  All right.  So on this one,

17   what I'm going to do is, I will order plaintiff to

18   supplement its response.  When is fact discovery cutoff,

19   Ms. Ross?

20           MS. ROSS:  I'm sorry, your Honor, we just moved

21   it, so I haven't -- it's in July 20, your Honor.

22           THE COURT:  Okay.  Okay.  Well, I'm going to give

23   -- order plaintiff to supplement its response within 14

24   days.  I will say that I believe plaintiff needs to

25   generally describe the damages being sought and the

1  factual basis for them.  And so, to that extent, I think

2  that the interrogatory -- to the extent it calls for a

3  very high level of detail or complete legal and factual

4  basis is too much information requested.  And I think the

5  best description I can give at this point is that

6  plaintiff just needs to generally state what it's seeking

7  and the support therefor.  The prior Rule 26 disclosures

8  that Ms. Ross showed us definitely, I think, satisfy that

9  requirement and probably go a little beyond what I would

10 consider general statement.  But you at least need to say,

11 you know, we're seeking lost profits and here's why, and

12 we're seeking reasonable royalty and here's why it's

13 sufficient to put the defendant on notice of what you're

14 seeking and the general basis for it.

15        And unfortunately, it's hard to draw a

16 black-and-white line between what's sufficient for fact

17 discovery and when it's getting into expert testimony.

18 But -- so because of that, I'm going to say generally, the

19 general description of the damages being sought and the

20 support therefor.  And so, with that modification to the

21 interrogatory, I'll overrule plaintiff's objections and

22 order a response within 14 days.

23        Okay.  And that takes care of Interrogatory No.

24 1.  Now I've got Interrogatory No. 10, the infringement

25 bases for the interrogatory.  I will say -- and I've read

1     the parties' charts.  I will say that I've always

2     understood infringement contentions to exist essentially

3     to avoid the need for an interrogatory such as this.  But

4     with that kind of comment in mind, I'll turn it over to --

5     Ms. Ross, will you argue this one, as well?

6             MS. ROSS:  Yes, your Honor, I will.

7             THE COURT:  Okay.  Go ahead.

8             MS. ROSS:  Your Honor, I think the issue here is

9     really what's kind of -- what's missing and whether we

10    approach this as a supplementation of the contentions or

11    the supplement to the rog.  It's really getting to the

12    same issue here.  And this interrogatory asks for the

13    types of infringement they're alleging.

14            As your Honor might be aware, there are a number

15    of named defendants in this case who have been kind of

16    summarily alleged to have induced infringement or

17    contributed to infringement, and none of that is present

18    in the infringement contentions as to who's doing what, or

19    how they're inducing, or who's contributing to

20    infringement, who's literally infringing, that sort of

21    thing.  So that was part of what was sought in this

22    interrogatory request, which I think is laid out in the

23    discovery dispute chart.

24            But more specifically, there is a major issue,

25    which we've raised with Midas as to its factual support

1    for one element that kind of pervades these claims.  And

2    Midas again bears the burden on infringement, but we don't

3    understand, and we've told Midas this, what parts of the

4    tanks Midas is alleging meets the control facility.  And,

5    your Honor, if I might pull up their -- because the

6    interrogatory response referred back to the infringement

7    contentions, so if I might be permitted to pull up the

8    infringement contentions, I could show you what I'm

9    talking about.

10          THE COURT:  Certainly.

11          MS. ROSS:  Is your Honor able to see my screen?

12          THE COURT:  I can.  Yes, ma'am.

13          MS. ROSS:  So this is the portion of Midas'

14   infringement contentions and here is set forth the aspect

15   of the claim I'm talking about.  It requires a control

16   facility adapted to coordinate the operation of the

17   primary and secondary fluid circulation facilities as a

18   function of the temperature of the dielectric fluid in the

19   tank.  And we just cannot tell from what Midas has cited

20   here what they contend the control facility is.

21          They say that the control facility includes an

22   automated controller with software that monitors and

23   controls the pumps, dry coolers, and temperature of the

24   dielectric fluid in the tanks.  But number one, they're

25   talking about software and we can't tell what source code

1   they're pointing to.  I would note for the Court that our

2   source code we've made available since June 17th of last

3   year and Midas has never taken us up on the repeated offer

4   to come look at it.

5          So I think we're kind of in the same posture that

6   we are with respect to Interrogatory 8 where we are afraid

7   that we're going to get to expert discovery and Midas is

8   suddenly going to come forth with new contentions and new

9   factual support.  They've cited in support these SEC

10  filings and then, some of these documents down here, which

11  are over 500 pages long and there's no pincites to them.

12  So we just can't tell what the control facility is.

13         And I think the request here is really to make

14  sure that either Midas is kind of -- they've got what

15  they've got, and as your Honor ordered in November,

16  whatever's in the expert report has to be based on this,

17  what's in their infringement contentions, and you can't

18  kind of come up with new facts or come up with new

19  documents and new information.  Or we want it now so that

20  we can understand this and, again, go through discovery

21  and make sure we're pressure testing those theories, as

22  well.

23         THE COURT:  Okay.  Who wants to respond for

24  plaintiff?  Mr. Lenning?

25         MR. LENNING:  I will be, your Honor.

1          There's a couple of issues on this one.  The

2     first one is that the first time that we read about these

3     deficiencies -- alleged deficiencies was when we received

4     this chart.  I know that we have -- Rhodium disputes and

5     asserts that we discussed this on a meet-and-confer.  We

6     have a very different recollection of that

7     meet-and-confer.  Our -- essentially what we were asked

8     was to provide a complete response with the complete basis

9     as it asked for in Interrogatory No. 10, and to us, this

10    is the exact same issue as before where what they're

11    asking for is our complete legal bases.

12         We are considering supplementing on this control

13    facility limitation that they have pointed out here and

14    we're open to discussing that with Rhodium if they -- to

15    supplement and provide more factual details as they need.

16    But we do object to providing the complete basis, which in

17    our mind and our position is, it seeks the -- essentially

18    an expert report on infringement contentions, your Honor.

19         THE COURT:  Okay.  With regard to this one, on --

20    with regard to Interrogatory No. 10, what I'm going to

21    order y'all to do is to meet and confer on this one and

22    try and get the additional information, again, keeping in

23    mind my prior comment that I think a general description

24    of the issues at the fact discovery stage is fine.

25    Detailed all factual and legal basis I think gets more

1  towards expert reports.

2          So with that guidance and in light of the fact

3  that I'm going to go with plaintiff's comment that they

4  really hadn't had a full opportunity to address this one,

5  I'm going to order y'all to meet and confer on this one

6  and then, bring it back to the Court if you cannot reach

7  resolution.  As you can see, we could get you in and get

8  you a resolution quickly, so hopefully that won't be an

9  issue.  But that's going to be the ruling on No. 10.

10          MS. ROSS:  If you could just put a timeline on

11  that.  I'm sorry, if -- I just am really worried about

12  kind of making sure things move forward because of how

13  long everything's taking.  So I don't know what your Honor

14  thinks is reasonable but making sure kind of the parties

15  are moving this along would be really helpful.

16          THE COURT:  Yeah.  No.  I appreciate that and --

17  I mean, I don't see any reason why y'all couldn't have a

18  meaningful meet-and-confer within the next two weeks.  I'm

19  not going to order you to meet and confer within two weeks

20  but if you -- obviously that's up to you, Ms. Ross, if you

21  don't reach out to them until two weeks from now, then

22  it's hard for you to say, well, they failed to meet and

23  confer.  So it's up to you to push it, which I'm confident

24  you will do, but I don't see any reason why you can't get

25  back and forth -- I don't know everybody's schedules but

1    why you can't have a meaningful meet-and-confer within the

2    next two weeks.

3              MS. ROSS:  Okay.  Thank you, your Honor.

4              THE COURT:  Yeah.  That way, you can figure out

5    if there really is an issue or if the plaintiff will agree

6    to give you the answer that solves the issue or not.

7              And so, let's go to No. 14, the secondary

8    considerations.  And again, Ms. Ross, will you get to

9    handle this one?

10             MS. ROSS:  Yes, your Honor.

11             THE COURT:  All right.  Go ahead.

12             MS. ROSS:  You'll be hearing from me three times

13   today.

14             THE COURT:  Excellent.

15             MS. ROSS:  So I think the dispute raised with

16   respect to this interrogatory is whether Midas needs to

17   provide its secondary considerations evidence now.  I

18   think it's a very similar dispute as with respect to

19   Interrogatory 8.  I think -- you know, I just want to make

20   sure I address plaintiff's position in their chart.  What

21   plaintiffs say is, they've offered to respond to the

22   interrogatory identifying the secondary considerations

23   they presently believe to be relevant and provide a

24   description of the factual bases for those.

25             And I think the issue here is, you know, we did

1   have a conversation with them back on February 3rd on that

2   with -- and as, actually, on the other interrogatory, too,

3   and kind of laid out what we think is missing as we did

4   with Interrogatory 10, kind of saying this is the element

5   we think is missing with respect to interrogatory.  So

6   it's been three weeks since we had that February 3rd

7   meeting, and Midas hasn't given us any supplement, which

8   begs the question of why they have not.

9          So clearly Midas has information, but they're not

10  giving it to us and I think that's because Midas' offer

11  really in their chart is a conditional one.  It's

12  predicated on agreeing -- us agreeing that their objection

13  on the basis of Stratus Audio is justified and allowing

14  them to kind of provide only half of an answer and only

15  kind of -- I think the language that makes me nervous is a

16  description of its factual bases rather than the factual

17  bases themselves, right, you know, with the -- I think

18  attorneys are very good at playing with language but a

19  description of the factual bases is not really what we're

20  asking for.  We want the actual factual bases.

21         And so, as an example here, if Midas contends its

22  claims led to unexpected results, we need to know what

23  those results were.  If they allege that someone copied

24  the invention, we need to know by whom, when, how, kind of

25  what documents they're relying on.  If there's a long-felt

1   need that they're saying the claims met, we need to know

2   what that need is and what shows that there was a need.

3   And again, this is all information that should be

4   available to them, especially with respect to things like

5   long-felt need, industry praise, you know, what are they

6   saying is the praise there.

7          And so, again, your Honor, the response that

8   we've gotten so far is with respect to this interrogatory

9   is nothing as you saw with Interrogatory 8.  It's the same

10  answer.  They just have given us nothing.  So it worries

11  me, your Honor, that they have kind of said they would be

12  willing to give us information, but it sounds like they're

13  planning to give us information that would be incomplete,

14  as we read that, and not to the level of detail that they

15  need to provide us to put us on notice of kind of not only

16  like these are the five secondary considerations we're

17  setting forth, but what is your support for those.

18          THE COURT:  Okay.  Let me hear from plaintiff on

19  this one.  Mr. Lenning.

20          MR. LENNING:  The offer that we outlined in the

21  chart is not conditional.  We haven't provided it because

22  defendants rejected it.  So when we met and conferred, we

23  offered to provide the secondary considerations that we

24  believed to be relevant and provide kind of general

25  high-level description of our factual bases for those at

1   this point.  But what we objected to, as with the other

2   rogs, was providing our complete factual and legal bases

3   for all contentions regarding secondary considerations,

4   which we, again, believe was for asking for an expert

5   report.

6          We offer that, defendants said no and said that

7   they were going to move to compel the factual and legal

8   bases for those.  Plaintiffs remain -- plaintiff remains

9   willing to provide that information and supplement it.  We

10   need a little bit of time to put it together, but we could

11   certainly do that within 14 days.

12          THE COURT:  Okay --

13          MS. ROSS:  Your Honor, if I could --

14          THE COURT:  -- Ms. Ross --

15          Ms. Ross:  -- clarify, I just want to make sure I

16   clarify the record on something.  My apology.  It sounded

17   like you were going to ask me a question, as well.

18          THE COURT:  No, no, no.  I was going to ask if

19   you had a response.  So go ahead.

20          MS. ROSS:  Yeah.  I don't think -- I'm a little

21   confused now, I would say, because if it's not a

22   conditional offer, I'm not sure why they haven't given it

23   to us.  I think that the concern we had and as it's set

24   forth in this chart, it doesn't say we're willing to

25   provide this.  It's saying, well, Stratus Audio makes it

1    so we don't have to give you the information you're asking

2    for.  So it really was unclear to us what they're willing

3    to give us.

4         And I'm not sure why they haven't.  It's been

5    three weeks.  It sounds like they were ready to, I think,

6    another two weeks.  It's just going to cause further delay

7    in this case that's long in the tooth.  And so, my concern

8    here, I would request from the Court at least a ruling

9    that their objection as to Stratus Audio is overruled just

10   so that's not hanging out there.  It seems like that's the

11   case that keeps popping up over and over again.  And on

12   top of that, I think we just want to make sure what we're

13   getting is the factual bases as I've already laid them

14   out.

15        So just to be clear on that meet-and-confer, it

16   wasn't us saying we didn't want what they were going to

17   give us.  I think it was saying, well, you need to give us

18   that and more and at least give us -- to us now and it's

19   been another three weeks.  So I'm not sure why there was

20   delay there.

21        THE COURT:  Okay.  So here's what we'll do on

22   this one.  I'm going to partially grant plaintiff's

23   request -- or defendants' request, excuse me, and I'm

24   going to order plaintiff to supplement its response within

25   14 days to generally describe your position regarding

1    secondary considerations in support for the secondary

2    considerations you believe apply.  But I'm not going to --

3    I'm going to overrule it to the extent that the

4    interrogatory -- I was looking for the language, but to

5    the extent the interrogatory requires in detail all

6    factual and legal bases as that, I think, goes towards

7    expert reports.  And when you're drafting your response,

8    Mr. Lenning, this is not part of the order.  This is more

9    advisory -- well, and I'll say, to the extent, you know --

10   let me back up.

11           For Stratus Audio, I think that was a specific

12   ruling regarding a specific interrogatory going towards

13   validity, and I don't think it prevents a party from being

14   able to ask and get answers to these types of contention

15   interrogatories.

16           For guidance in responding to it, which I'm sure

17   Mr. Lenning doesn't need me to tell him, but as you're

18   providing your response, if you can keep in mind that to

19   make it a response that had you asked the question you

20   would like to receive, that's one way to look at it.  And

21   then, also keep in mind that if Ms. Ross does not like the

22   answer, she's likely to bring it back to me to address.

23   So make it as defensible as possible when you do that.

24   But I do not believe at least that you're required to

25   provide the level of detail sought by all factual and

1  legal bases or similar to what you would put in an expert

2  report; but at least put the defendant on notice of the

3  considerations and the general support for those that you

4  will assert when the time comes.

5          So that will be the ruling on that one.  I think

6  that we've reached the end of the chart.  So let me start

7  with Ms. Ross.  Is there anything else for defendant

8  today?

9          MS. ROSS:  No, your Honor.  Thank you for your

10  time.

11          THE COURT:  All right.  Thank you and job well

12  done, Ms. Ross.  Next time -- you already sound like a

13  seasoned pro.  Next time, you will be a seasoned pro.

14          MS. ROSS:  Thank you.

15          THE COURT:  And anything else for plaintiff, Mr.

16  Smith, or, Mr. Lenning, or anyone else on the plaintiff's

17  behalf?

18          MR. LENNING:  No, your Honor.

19          MR. SMITH:  No, your Honor.

20          MR. LENNING:  Thank you for your time, your

21  Honor.

22          THE COURT:  Thank you all very much and we'll be

23  adjourned.

24          MS. ROSS:  Thank you.

25          (Proceedings conclude at 10:09 a.m.)

REPORTER'S CERTIFICATE

   I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING

WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE

TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT

TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE

PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE

TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY

THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES,

ON THIS 1st DAY OF MARCH, 2023.

*Lily Iva Reznik*

~~~~~~~~~~~~~~~~~~~~~~~~~
LILY I. REZNIK, CRR, RMR
Official Court Reporter
United States District Court
Austin Division
501 West 5th Street, Suite 4153
Austin, Texas 78701
(512)391-8792
SOT Certification No. 4481
Expires: 1-31-25