IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **Midas Green Technologies, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:22-CV-00050-ADA |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Rhodium Enterprises, Inc.;** | ) | |
| **Rhodium Technologies LLC;** | ) | |
| **Rhodium 10MW LLC;** | ) | |
| **Rhodium 2.0 LLC;** | ) | |
| **Rhodium 30MW LLC**; | ) | |
| **Rhodium Encore LLC;** | ) | |
| **Rhodium Renewables LLC;** | ) | |
| **Rhodium Renewables Sub LLC; and** | ) | |
| **Rhodium Ready Ventures LLC.** | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT AND COUNTERCLAIMS

Defendants Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, Rhodium Encore LLC, Rhodium Renewables LLC, Rhodium Renewables Sub LLC; and Rhodium Ready Ventures LLC. (collectively, "Rhodium" or "Defendants") hereby file their Answer to Midas Green Technologies, LLC ("Midas" or "Plaintiff")'s Third Amended Complaint for Patent Infringement.

### I.    PARTIES

**Complaint Paragraph 1:**

1.     Plaintiff Midas Green Technologies, LLC is a Texas limited liability company with its principal place of business at 7801 N Capital of Texas Hwy # 230, Austin, TX 78731. Midas designs and builds immersion cooling solutions for use in data centers including cryptocurrency

mining facilities. Midas has been an innovative pioneer in the application of immersion cooling technology.

**Response:**     Defendants admit, on information and belief, that Plaintiff is a Texas limited liability company with its principal place of business in Austin, Texas, that has offered immersion cooling solutions for sale. Defendants lack knowledge or information sufficient to form a belief about the business of Plaintiff's customers, and deny the remaining allegations of Paragraph 1.

**Complaint Paragraph 2:**

2.     Defendant Rhodium Enterprises, Inc. is a Delaware corporation formed on April 22, 2021. Rhodium Enterprises, Inc. conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to its most recent SEC filing, Rhodium Enterprises, Inc. is a holding company and the sole managing member of Defendant Rhodium Technologies LLC. *See* SEC Amendment No. 6 to Form         S-1         *see*         https://www.sec.gov/Archives/edgar/data/0001874985/000121390022002442/fs12022a6_rhodium.htm.

**Response:**     Defendants admit that Rhodium Enterprises, Inc. is a Delaware corporation formed on April 22, 2021 and that it conducts business in Texas, including in the Waco Division of this District. Defendants admit that Rhodium Enterprises, Inc. is a holding company and the manager and a member of  Rhodium Technologies LLC. To the extent that there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 3:**

3.     Defendant Rhodium Technologies LLC is a Delaware limited liability company formed on October 23, 2020. Rhodium Technologies LLC was formerly known as Rhodium Enterprises LLC. Rhodium Technologies LLC is a subsidiary of Defendant Rhodium Enterprises,

Inc. Rhodium Technologies LLC conducts business in Texas, including in this District, and including in the Waco Division, including by way of its subsidiaries as described herein. According to the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is a holding company. In the foregoing most-recent Amended SEC Form S-1 filing, Defendant Rhodium Technologies LLC is known as "Rhodium Holdings."

**Response:**     Defendants admit that Rhodium Technologies LLC is a limited liability company formed on October 23, 2020, and was formerly known as Rhodium Enterprises LLC. Defendants admit that Rhodium Technologies LLC is a subsidiary of Rhodium Enterprises, Inc. and that it conducts business in Texas, including in the Waco Division of this District. Defendants admit that Rhodium Technologies LLC is a holding company and is referenced as "Rhodium Holdings" in the referenced Amended SEC Form S-1 filing. To the extent that there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 4:**

4.     Defendant Rhodium 10MW LLC is a Delaware limited liability company formed on March 12, 2021. Rhodium 10MW LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 10MW LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 5:**

5.     Defendant Rhodium 2.0 LLC is a Delaware limited liability company formed on December 17, 2020. Rhodium 2.0 LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 2.0 LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 6:**

6.     Defendant Rhodium 30MW LLC is a Delaware limited liability company formed on April 1, 2020. Rhodium 30MW LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium 30MW LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 7:**

7.     Defendant Rhodium Encore LLC is a Delaware limited liability company formed on January 1, 2021. Rhodium Encore LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Encore LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Defendants admit that Rhodium Encore LLC was formed in January 2021 (on January 8, 2021). Defendants admit the remaining allegations of Paragraph 7.

**Complaint Paragraph 8:**

8.     Defendant Rhodium Renewables LLC is a Delaware limited liability company formed on March 17, 2021. Rhodium Renewables LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Renewables LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 9:**

9.     Defendant Rhodium Renewables Sub LLC is a Delaware limited liability company formed on April 25, 2022, with a principal office at 4146 W. US Highway 79, Rockdale, Texas

76567-5278. Rhodium Renewables Sub LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Renewables Sub LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 10:**

10.     Defendant Rhodium Ready Ventures LLC is a Delaware limited liability company formed on August 23, 2022, with a principal office at 4146 W. US Highway 79, Rockdale, Texas 76567-5278. Rhodium Ready Ventures LLC is an operating company and a subsidiary of Defendant Rhodium Technologies LLC. Rhodium Ready Ventures LLC conducts business in Texas, including in this District, and including in the Waco Division.

**Response:**     Admitted.

**Complaint Paragraph 11:**

11.     The foregoing SEC filing describes each of Defendants Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, Rhodium Encore LLC, Rhodium Industries LLC, and Rhodium Renewables LLC, as operating subsidiaries of Rhodium Technologies LLC. This SEC filing (dated January 18, 2022) also refers to i Ventures Enterprises LLC (then doing business as Energy Tech LLC) as a related party. Accordingly, these defendants will be collectively be referenced herein as "the Rhodium Operating Subsidiaries."

**Response:**     Defendants admit that the referenced SEC filing is dated January 18, 2022. The SEC filing speaks for itself.

**Complaint Paragraph 12:**

12.     After Midas filed this case on January 13, 2022, and after the January 18, 2022 date of the aforementioned SEC filing, Jordan HPC Sub LLC, Rhodium Renewables Sub LLC, and

Rhodium Ready Ventures LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium Technologies LLC. After the filing of this case and of the aforementioned SEC filing, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, Rhodium Encore Sub LLC, and Rhodium 2.0 Sub LLC were formed by certain of the other Defendants, ostensibly to be governed by Rhodium JV LLC. Accordingly, these companies, whether a defendant or not, will be collectively referenced herein as "the Rhodium Post-Filing Operating Subsidiaries."

**Response:**   Defendants admit that Jordan HPC Sub LLC, Rhodium Renewables Sub LLC, and Rhodium Ready Ventures LLC were formed after January 13, 2022, that Jordan HPC Sub LLC is governed by Rhodium Technologies, LLC, and that Rhodium 10MW Sub LLC, and Rhodium 30MW Sub LLC are governed by Rhodium JV LLC. The remaining allegations are vague as to "certain of the other Defendants," "ostensibly to be governed," and the companies intended to be included in "these companies," and Defendants thus lack information sufficient to admit or deny them. On that basis, Defendants deny the remaining allegations of Paragraph 12.

**Complaint Paragraph 13:**

13.   Chase Blackmon is a Texas resident, is a co-founder and the Chief Operating Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Chase Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Chase Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies by way of an entity called Imperium Investment Holdings LLC ("Imperium"). Imperium is the majority and controlling owner of both Rhodium entities. According to the foregoing SEC filing, Chase Blackmon controls 25% of the voting interests in Imperium. Chase Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Chase Blackmon helped design Defendants' infringing immersion cooling systems, and

he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

**Response:**     Defendants admit Chase Blackmon is a Texas resident, deny that he is a nominee and admit that he is a current member of the board of directors of Rhodium Enterprises, Inc. Defendants admit that the SEC filing referenced in this paragraph states that Chase Blackmon controls 25% of the voting interests in Imperium. Defendants deny that they or Chase Blackmon have engaged in any infringing conduct, including that they have not designed, made, or used any systems that infringe any valid and enforceable claim of any asserted patent. To the extent that there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 14:**

14.     Cameron Blackmon is a Texas resident, is a co-founder and the Chief Technology Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Cameron Blackmon is a director nominee for the board of directors of Rhodium Enterprises. Cameron Blackmon also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium. According to the foregoing SEC filing, Cameron Blackmon controls 25% of the voting interests in Imperium. On information and belief, Cameron Blackmon personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Cameron Blackmon helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

**Response:**     Defendants admit Cameron Blackmon is a Texas resident and is a co-founder and the Chief Technology Officer of Rhodium Enterprises, Inc. Defendants admit that the SEC filing

referenced in this paragraph states that Cameron Blackmon controls 25% of the voting interests in Imperium. Defendants deny that they or Cameron Blackmon have engaged in any infringing conduct, including that they have not designed, made, or used any systems that infringe any valid and enforceable claim of any asserted patent. To the extent that there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 15:**

15.     Nathan Nichols is a Texas resident, is a co-founder and the Chief Executive Officer of both Rhodium Enterprises, Inc., and Rhodium Technologies LLC. Nathan Nichols serves on the board of directors for Rhodium Enterprises. Nathan Nichols also owns shares of both Rhodium Enterprises and Rhodium Technologies through Imperium. According to the foregoing SEC filing, Nathan Nichols controls 25% of the voting interests in Imperium. On information and belief, Nathan Nichols personally directed, participated in, authorized, and/or ratified the infringing conduct of the Defendants. For example, on information and belief, Nathan Nichols helped design and develop Defendants' infringing immersion cooling systems, and he directs, participates in, and makes decisions regarding the making and use of the infringing immersion cooling systems.

**Response:**     Defendants admit on information and belief that Nathan Nichols is a Texas resident and admit that he is a co-founder of Rhodium Enterprises, Inc. Defendants admit that the SEC filing referenced in this paragraph states that Nathan Nichols controls 25% of the voting interests in Imperium. Defendants deny that they or Nathan Nicols have engaged in any infringing conduct, including that they have not designed, made, or used any systems that infringe any valid and enforceable claim of any asserted patent. To the extent that there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 16:**

16.    Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Defendant Rhodium Operating Subsidiaries have common stock ownership. Each of Chase Blackmon, Cameron Blackmon, and Nathan Nichols (the "Individuals") owns shares of both Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC through Imperium. *See* SEC Amendment No. 6 to Form S-1 at 102. Rhodium Technologies LLC in turn directly or indirectly owns all of the outstanding equity interests in the Rhodium Operating Subsidiaries. *Id*. at 103-05. Rhodium Technologies LLC also directly or indirectly owns all of the outstanding equity interests in the Rhodium Post-Filing Operating Subsidiaries.

**Response:**    Defendants admit that Rhodium Technologies LLC directly or indirectly owns all of the outstanding equity interests in the Rhodium Operating Subsidiaries. Otherwise denied.

**Complaint Paragraph 17:**

17.    The Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, share common directors and officers with Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC.

**Response:**    Denied.

**Complaint Paragraph 18:**

18.    Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Rhodium Operating Subsidiaries file consolidated financial statements. *Id.* at F-17 ("The condensed consolidated financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries.")

**Response:**    Admitted with respect to the SEC filing referenced in this paragraph.

**Complaint Paragraph 19:**

19.    Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the

Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries were incorporated by Cameron Blackmon, acting on behalf of Imperium, a third party under the control of the Individuals.

**Response:**     Defendants admit that Cameron Blackmon signed the incorporation documents for Rhodium Technologies LLC, the Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries. Defendants deny the remaining allegations of this paragraph.

**Complaint Paragraph 20:**

20.     The Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, are presently undercapitalized and exist for the purposes of illegitimately shielding Defendant Rhodium Enterprises, Inc., and Rhodium Technologies LLC, and in turn the Individuals, from liability. On information and belief, the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries, would be unable to satisfy any money judgement levied against them because of their undercapitalization and because their revenues flow directly to Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC.

**Response:**     Denied.

**Complaint Paragraph 21:**

21.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC finance the Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing Operating Subsidiaries.

**Response:**     Denied.

**Complaint Paragraph 22:**

22.     Rhodium Shared Services LLC directly pays the salaries of all Rhodium officers and employees, with the exception that Rhodium Shared Services LLC indirectly pays the salary

of Rhodium Chief Financial Officer Nicholas Cerasuolo by way of its subsidiary, Rhodium Shared Services PR Inc.

**Response:**      Admitted that Rhodium Shared Services LLC directly pays the salaries of all Rhodium employees. Otherwise denied.

**Complaint Paragraph 23:**

23.      Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries, use each other's properties as their own. For example, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities.

**Response:**      Defendants admit that Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, and Rhodium Encore LLC operate out of the same Rockdale, Texas bitcoin mining facility. Otherwise denied.

**Complaint Paragraph 24:**

24.      The daily operations of Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries are not kept separate. For example, they collectively operate the same bitcoin mining operation. *Id.* At F-16 ("The Company, together with its subsidiaries, operates a digital mining operation"). As discussed above, on information and belief, some or all of them operate out of the same Rockdale, Texas bitcoin mining facility, among other facilities. On information and belief, they also have common business departments.

**Response:**      Denied.

**Complaint Paragraph 25:**

25.      The Rhodium Operating Subsidiaries, as well as the Rhodium Post-Filing

Operating Subsidiaries, receive no business except through that allocated and arranged by Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC. For example, Defendant Rhodium Enterprises, Inc. and/or Defendant Rhodium Technologies LLC negotiate contracts on behalf of the Defendant Rhodium Operating Subsidiaries and the Rhodium Post-Filing Operating Subsidiaries, or vice versa.

**Response:**     Denied.

**Complaint Paragraph 26:**

26.     Defendant Rhodium Enterprises, Inc., Defendant Rhodium Technologies LLC, and the Defendant Rhodium Operating Subsidiaries do not observe corporate formalities, including keeping separate books. See *Id*. at F-17 ("The condensed financial statements include the accounts of Rhodium Enterprises Inc. and its respective subsidiaries. All inter-company accounts, balances, and transactions have been eliminated.") (emphasis added). On information and belief, the same is true with respect to the Rhodium Post-Filing Operating Subsidiaries.

**Response:**     Denied.

**Complaint Paragraph 27:**

27.     Each Rhodium Operating Subsidiary and Rhodium Post-Filing Operating Subsidiary is an agent of Defendants Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC (aka Rhodium Holdings) and their owners and operators, Chase Blackmon, Cameron Blackmon, and Nathan Nichols. Defendant Rhodium Enterprises, Inc. Defendant Rhodium Technologies LLC, the Defendant Rhodium Operating Subsidiaries, and the Rhodium Post-Filing Operating Subsidiaries therefore act as a common enterprise, their actions ultimately being directed by the Individuals. Specifically, the Individuals direct and control the activities of Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC, and those

Defendants in turn direct and control the activities of the operating subsidiaries. The operating subsidiaries do not function as separate entities, but rather as controlled agents of the parent entities and the operating subsidiaries act on behalf of the parent entities. *See, e.g.*, SEC Amendment No. 6 to Form S-1 at F-17 (referring to the operating subsidiaries as "the subsidiaries through which the Company operates its assets").

**Response:**     Denied.

## II.     JURISDICTION

**Complaint Paragraph 28:**

28.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**Response:**     Defendants admit that this is a civil action for patent infringement arising under the patent laws of the United States and admit that the Court has subject matter jurisdiction, but deny that Defendants have committed any act of infringement and deny the legal sufficiency of Plaintiff's complaint.

**Complaint Paragraph 29:**

29.     Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to their extensive business in this District, including by reason of their infringement alleged herein. Specifically, and for example, Defendants own and operate an infringing bitcoin mining facility in Rockdale, Texas. *See* SEC Amendment No. 6 to Form S-1 at l (referring to Defendants' Rockdale location as the "initial Texas site"). Rockdale, Texas is located in Milam County, which is within the Western District of Texas. In addition, Defendants' second Texas site is in Temple, Texas.

Temple, Texas is located in Bell County, which is also within the Western District of Texas. Further, Defendants' third Texas site[1] is within the Northern District of Texas.

**Response:**     Defendants do not contest the exercise of personal jurisdiction and admit that there are Rhodium sites in Texas, including in Rockdale and Temple, but deny having committed any act of infringement.

**Complaint Paragraph 30:**

30.     Jurisdiction is also found as Defendant Rhodium Enterprises, Inc., and Defendant Rhodium Technologies LLC direct and control the infringing activities of the other Defendants. Further, Rhodium Enterprises, Inc. and Rhodium Technologies LLC purchase immersion cooling system tanks and other components, and then provide those infringing tanks for other Defendants to use. *See*, for example, **Exhibit C**, which is a manufacturing and purchase agreement whereby Rhodium Enterprises, Inc. purchases tanks and other immersion cooling products that infringe the Midas Asserted Patents, which Rhodium Enterprises, Inc. then provides either directly or indirectly to other Defendants. The entirety of the purchase agreement is marked Confidential-Outside Attorneys' Eyes Only and therefore filed under seal.

**Response:**     Defendants do not contest the exercise of personal jurisdiction and admit that Exhibit C to the Third Amended Complaint appears to be a copy of a Manufacturing Services Agreement between Rhodium Industries LLC and Ameritex Machine and Fabrication, LLC. Defendants admit that Exhibit C is marked "Confidential – Outside Attorneys' Eyes Only" and therefore was filed under seal. Defendants deny the remaining allegations of Paragraph 30.

---

[1] The third location is information learned from Defendants' Further Supplemental Responses, the relevant portion of which is Attached as Exhibit D, page 9. The full text of Defendants' Further Supplemental Responses is not included in the body of the Complaint as they are marked Confidential-Outside Attorneys' Eyes Only and therefore are filed under seal.

**Complaint Paragraph 31:**

31.     In further support of jurisdiction, each of the Defendant subsidiaries infringes the Midas patented immersion cooling system as claimed in the Assert Patents. The use of the tanks is admitted in Defendants' Further Supplemental Responses of which is Attached as **Exhibit D**. The entirety of the Defendants' Further Supplemental Responses is not included below as they are marked Confidential-Outside Attorneys' Eyes Only. Instead, citations are provided to where Rhodium admits use of the tanks.

<u>Defendant Rhodium Operating Subsidiaries</u>

Rhodium 10MW LLC - - page 8, at paragraph labeled "2"

Rhodium 2.0 LLC - - page 8, at paragraph labeled "2"

Rhodium 30MW LLC - - page 7, at paragraph labeled "1"

Rhodium Encore LLC - - page 8, at paragraph labeled "2"

Rhodium Renewables LLC - - page 8, at paragraph labeled "2"

<u>Defendants also Identified as Rhodium Post-Filing Operating Subsidiaries</u>

Rhodium Renewables Sub LLC - - page 9, first indented paragraph

Rhodium Ready Ventures LLC - - page 9, second indented paragraph

**Response:**     Defendants do not contest the exercise of personal jurisdiction and admit that Exhibit D to the Third Amended Complaint appears to be a copy of Defendants' Further Supplemental Interrogatory Responses to Plaintiff's First Set of Interrogatories, but deny having committed any act of infringement.

### III.     VENUE

**Complaint Paragraph 32:**

32.     Venue is proper in this district under 28 U.S.C. §§ 139l(b) and 1400(b). All

Defendants have at least two places of business in this District and in the Waco Division, *i.e.*, in Rockdale, Texas and in Temple, Texas. Defendants have committed acts of infringement, or a portion thereof, at these two locations within this District and within this Division.

**Response:**     Defendants do not contest the propriety of venue but deny having committed any act of infringement.

## IV.     THE ASSERTED PATENTS

### A. The '457 Patent

**Complaint Paragraph 33:**

33.     U.S. Patent No. 10,405,457, entitled "Appliance Immersion Cooling System," was duly and legally issued on September 3, 2019 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 14/355,533, was filed on April 30, 2014. A true and correct copy of the '457 Patent is attached as **Exhibit A** and incorporated by reference.

**Response:**     Defendants admit that what purports, on its face, to be U.S. Patent No. 10,405,457, entitled "Appliance Immersion Cooling System," and issued on September 3, 2019 claiming priority to an underlying application, U.S. Patent Application No. 14/355,533, filed on April 30, 2014, is attached to the Third Amended Complaint as Exhibit A. On information and belief, Defendants deny that the patent was duly and legally issued.

**Complaint Paragraph 34:**

34.     Midas is the assignee of all right, title, and interest in the '457 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '457 Patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '457 Patent by Defendants.

**Response:**     Defendants lack knowledge or information sufficient to form a belief about the truth

of the allegations of paragraph 34 and therefore deny them.

### B. The '446 Patent

**Complaint Paragraph 35:**

35. U.S. Patent No. 10,820,446 entitled "Appliance Immersion Cooling System," was duly and legally issued on October 27, 2020 by the U.S. Patent and Trademark Office. The underlying application, U.S. Patent Application No. 16/243,732, was filed on January 9, 2019, and is a continuation of the application which issued as the '457 Patent filed on April 30, 2014. A true and correct copy of the '446 Patent is attached as **Exhibit B** and incorporated by reference.

**Response:**      Defendants admit that what purports, on its face, to be U.S. Patent No. 10,820,446 entitled "Appliance Immersion Cooling System," issued on October 27, 2020, and claiming priority to an underlying application, U.S. Patent Application No. 16/243,732, filed on January 9, 2019, is attached to the Third Amended Complaint as Exhibit B. Defendants admit that what purports, on its face, to be U.S. Patent No. 10,820,446 indicates that U.S. Patent Application No. 16/243,732 was a continuation of the application which issued as the '457 Patent. On information and belief, Defendants deny that the patent was duly and legally issued.

**Complaint Paragraph 36:**

36. Midas is the assignee of all right, title, and interest in the '446 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '446 Patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '446 Patent by Defendants.

**Response:**      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 36 and therefore deny them.

## V.   RHODIUM AND ITS [ALLEGED] INFRINGEMENTS

**Complaint Paragraph 37:**

37.    Rhodium Defendants are part of "an industrial-scale digital asset technology company" that "mine[s] bitcoin" with a "fully integrated" liquid cooling system. *See* SEC Amendment No. 6 to Form S-1 at 1.

**Response:**    Admitted that this paragraph quotes excerpts from the cited SEC document, which speaks for itself.

**Complaint Paragraph 38:**

38.    Rhodium's "founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of [their] liquid-cooling technology to mining bitcoin." *Id.* Rhodium designs, builds, and operates data centers, also called "mining farms" consisting of "bitcoin miners" (i.e. high-powered computers) submerged in dielectric cooling fluid within specialized tank modules. *Id.* at 1, 22. The miners mine bitcoin and thus generate revenue. The liquid cooling system permits Rhodium to "predictably and consistently mine more bitcoin with fewer miners" by "optimize[ing] the hash rate, or processing power" of the miners. *Id.* at 1.

**Response:**    Defendants admit that Paragraph 38 contains excerpts from SEC filings, which speak for themselves. Defendants admit that some of Rhodium's business involves operating and contributing to the design of certain data centers, some of which use tank modules and liquid cooling systems. Defendants deny that all of their bitcoin mining uses liquid cooling systems.

**Complaint Paragraph 39:**

39.    According to the foregoing SEC filing, Rhodium does not sell immersion cooling products to third parties, but instead is a fully integrated bitcoin mining operation that designs,

builds, and then operates its own allegedly proprietary immersion cooling systems to mine bitcoin and generate revenue. *Id.* at 1. Rhodium and its non-defendant subsidiaries operate as a common enterprise controlled by Rhodium Enterprises and/or by Rhodium Technologies, and/or by their officers and primary shareholders the Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

**Response:**     Defendants admit that they do not sell immersion cooling products to third parties. Defendants admit that they generate revenue through bitcoin mining operations. The referenced SEC fiing speaks for itself. Defendants otherwise deny the allegations of Paragraph 39.

**Complaint Paragraph 40:**

40.     Rhodium Defendants own and operate a bitcoin mining facility in Rockdale, Texas. Below are images from Rhodium's Rockdale facility showing the infringing liquid immersion cooling systems and tank modules:



*See, e.g.*, "Investor Presentation 17.02.2020. In connection with proposed acquisition of Distributed Ledger Technologies Ireland, Ltd, Element ASA" (February 17, 2020), downloaded from https://dltx.com/uploads/images/Reports-and-Documents/Presentations-and-Docs/Exemption-Doc/Element_Investor_Presentation_210217.pdf.

**Response:**      Defendants admit to operating a bitcoin mining facility in Rockdale, Texas, which Defendants do not own. As of the date of this answer, the link cited in Paragraph 40 is broken. The referenced document speaks for itself. Defendants deny that any of their systems infringe any valid and enforceable claim of any asserted patent.

**Complaint Paragraph 41:**

41.      Accordingly, Defendants have directly infringed at least claims 1, 2, 5-7, 10, 11, 14 and 15 of the '457 Patent and at least claims 1, 2, 5-7 and 10 of the '446 Patent. Attached as **Exhibit E** is the claim chart for independent claims 1 and 6 of the '457 Patent. Attached as **Exhibit F** is the claim chart for independent claims 1 and 6 of the '446 Patent. These claim charts are excerpts from Midas' Final Infringement Contentions, which were served on Defendants on November 21, 2022. Midas provided claim charts for all asserted claims in its Final Infringement contentions. Exhibits E and F are designated Confidential-Outside Attorneys' Eyes Only and therefore filed under seal.

**Response:**      Defendants admit that excerpts from Midas' Final Infringement Contentions served on or about November 21, 2022 are attached as Exhibits E and F, but deny having infringed any asserted claim of either patent.

## VI.   DEFENDANTS' [ALLEGED] KNOWLEDGE OF THE ASSERTED PATENTS, THEIR [ALLEGED] INFRINGEMENTS, AND THE PRIOR CLAIM CONSTRUCTION ORDER

**Complaint Paragraph 42:**

42.      As detailed below, all Defendants have had actual notice of the Asserted Patents and their own infringements for some time. For example, the Individuals became aware of the '457 Patent and their infringements thereof no later than February 2020, when they received a notice letter from Midas addressed to another entity founded by the Individuals, *i.e.*, Immersion Systems LLC. Further, the Individuals became aware of the '457 Patent and their infringements thereof, no

later than November 24, 2020, when Midas amended its lawsuit against Immersion Systems to assert the '457 Patent.

**Response:**      Defendants admit that, on information and belief, Immersion Systems received a letter from Plaintiff in February 2020. Defendants deny the remaining allegations of Paragraph 42, including that Defendants deny having committed any act of infringement and deny having actual notice of their own alleged infringement.

**Complaint Paragraph 43:**

43.      Before founding any of their Rhodium entities, Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols began to commercialize certain liquid immersion cooling systems intended to be used in bitcoin mining operations. To sell those liquid immersion cooling systems to third parties, the Individuals formed an entity called Immersion Systems LLC in 2018. Exemplary YouTube videos show Chase Blackmon and Cameron Blackmon working on such immersion cooling systems. *See* AntMiner S9 - Immersion CoolingTest, Feb. 17, 2018. https://www.youtube.com/watch?v=DRck1Iegf2A (last accessed March 28, 2023); immersion Cooling- Beta Test 1, Feb. 17, 2018, https://www.youtube.com/watch?v=SzUO-PMtda4 (last accessed March 28, 2023); *see also* SEC Amendment No. 6 to Form S-1 at 1 ("Our founders spent the previous four years developing, testing, and collecting field operational data to optimize the application of our liquid-cooling technology to mining bitcoin.").

**Cameron Blackmon**

**Chase Blackmon**




**Response:**      Defendants admit that Chase Blackmon and Cameron Blackman formed an entity

called Immersion Systems LLC in 2018. Defendants admit that the business of Immersion Systems

LLC involved liquid cooling systems and that the images shown are from certain YouTube videos

titled "AntMiner S9 - Immersion CoolingTest," posted on Feb. 17, 2018, accessible at

https://www.youtube.com/watch?v=DRck1Iegf2A; and "Immersion Cooling - Beta Test 1,"

posted on Feb. 17, 2018, and accessible at https://www.youtube.com/watch?v=SzUO-PMtda4.

Defendants admit that Paragraph 43 contains excerpts from SEC filings, which speak for

themselves. To the extent there are other allegations in this paragraph that require a response,

Defendants deny those remaining allegations.

**Complaint Paragraph 44:**

44.      From Immersion Systems' YouTube channel and Twitter feed, numerous images

and videos are available of these liquid immersion cooling systems. For example, below is a picture from a November 12, 2019 tweet, depicting a stack of immersion cooling tank modules, from Immersion System's Twitter feed with the caption "Another shipment out! Here was have [sic] 5 Bitmain S9 tanks, fitting 42 miners each." *See* https://twitter.com/ImmersionSystem/status/1194318079758610438 (last accessed on March 28, 2023)



**Response:**     Defendants admit that the image shown appears to be from Immersion Systems' Twitter feed with the caption, "Another shipment out! Here was have [*sic*] 5 Bitmain S9 tanks, fitting 42 miners each." To the extent there are other allegations in this paragraph that require a response, Defendants deny them.

**Complaint Paragraph 45:**

45.      In another example, below is a picture from an October 15, 2019 tweet, with the caption "Another shipment ready to go at Immersion Systems! We deploy, at industrial scale, liquid immersion crypto-mining solutions. We provide free fluid extraction and tech replacement if you want to upgrade your miners on site. Contact us at sales@immersionsystems.io for more info."



**Response:**      Defendants admit that the image shown appears to be from Immersion Systems' Twitter feed with the caption, "Another shipment ready to go at Immersion Systems! We deploy, at industrial scale, liquid immersion crypto-mining solutions. We provide free fluid extraction and tech replacement if you want to upgrade your miners on site. Contact us at sales@immersionsystems.io for more info." To the extent there are other allegations in this paragraph that require a response, Defendants deny them.

**Complaint Paragraph 46:**

46.     In another example, below is a picture from a July 21, 2019 tweet, with the caption "Preparing another order for shipping out this week! All of our systems are thoroughly tested prior to shipping. @ourbcma @MiningDisrupt #immersioncooling #mining #bitcoin."



**Response:**     Defendants admit that the image shown appears to be from Immersion System's Twitter feed with the caption, "Preparing another order for shipping out this week! All of our systems are thoroughly tested prior to shipping. @ourbcma @MiningDisrupt #immersioncooling #mining #bitcoin." To the extent there are other allegations in this paragraph that require a response, Defendants deny them.

**Complaint Paragraph 47:**

47.     In another example, Immersion System's YouTube channel loaded a five- minute video     entitled     "Introduction"     on     December     10,     2018.     *See*

https://www.youtube.com/watch?v=kQ6cycss5ds (last accessed March 28, 2023). That video features Individual Chase Blackmon and contains detailed explanations and videos clips of Immersion Systems' "flagship" immersion cooling system, designed by Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols.

**Response:**     Defendants admit that a video titled "Immersion Systems – Introduction," uploaded by a YouTube channel called "Immersion Systems" on December 10, 2018, is acceesible at https://www.youtube.com/watch?v=kQ6cycss5ds. The video speaks for itself. To the extent there are other allegations in this paragraph that require a response, Defendants deny them.

**Complaint Paragraph 48:**

48.     The exemplar video shows the structure of the immersion cooling systems designed by Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols, including its central area with appliance slots, holed weir design, winged fluid recovery chambers on either side of the central area, the dielectric fluid flowing up through the central area and the appliance slots, and the pump system sending the heated dielectric fluid to a dry cooler and then back. *See id.* at 0:44 ("In here, you can see this is BitCool that we use to pump up through the miners and then it exits the sides in a fluid recovery chamber.").







**Response:**    Defendants admit that the images shown are from a video titled "Immersion Systems – Introduction," uploaded by a YouTube channel called "Immersion Systems" on December 10, 2018, accessible at https://www.youtube.com/watch?v=kQ6cycss5ds. The video speaks for itself. To the extent there are other allegations in this paragraph that require a response, Defendants deny those remaining allegations.

**Complaint Paragraph 49**:

49.    From approximately 2018 to 2020, Immersion Systems promoted infringing immersion cooling systems with this design to third parties for use in bitcoin mining operations.

**Response:**    Denied.

**Complaint Paragraph 50:**

50.    On the basis of these videos and photos, Midas sent a detailed letter and claim chart to Immersion Systems on February 7, 2020, explaining that Immersion Systems' immersion cooling systems infringed the '457 Patent. On information and belief, each of the Individuals received and actually read Midas' February 7, 2020 letter around the time that it was sent. Immersion did not respond to that letter, or a second letter sent shortly thereafter.

**Response:**     Admitted that, on information and belief, Midas sent a letter on or about February 7, 2020 proposing a license to the '457 Patent. Denied as to the remaining allegations.

**Complaint Paragraph 51:**

51.     After Immersion Systems did not respond to the second letter from Midas, Midas filed suit against Immersion Systems on May 29, 2020 in the Northern District of Texas, *Midas Green Technologies, LLC v. Immersion Systems LLC,* No. 4:20-cv-00555-O (hereafter, "the Immersion Systems Litigation."). On November 24, 2020, Midas amended its complaint to include detailed allegations of patent infringement for the '446 Patent.

**Response:**     Defendants admit that Midas filed suit against Immersion Systems on May 29, 2020, in the Northern District of Texas, *Midas Green Technologies, LLC v. Immersion Systems LLC*, No. 4:20-cv-00555-O. Defendants admit that on November 24, 2020, Midas amended its complaint. To the extent there are other allegations in this paragraph that require a response, Defendants deny them.

**Complaint Paragraph 52:**

52.     The individuals decided to shut down Immersion Systems in 2020, shortly after receiving Midas' first letter on February 7, 2020. On information and belief, the Individuals made this decision to cease conducting business under Immersion Systems because they then knew that their particular immersion cooling systems infringed the '457 Patent.

**Response:**     Denied.

**Complaint Paragraph 53:**

53.     Around this time, as detailed further below, the Individuals Chase Blackmon, Cameron Blackmon, and Nathan Nichols formed their first Rhodium entity in April 2020, *i.e.,* Defendant Rhodium 30MW LLC. The purpose of this entity (and of the other Defendant Rhodium

Operating Subsidiaries and Rhodium Post-Filing Operating Subsidiaries) was not to sell immersion cooling systems to third parties, but rather to use immersion cooling systems to mine bitcoin.

**Response:**     Defendants admit that Rhodium 30MW LLC was formed in April 2020 not to sell immersion cooling systems to third parties, but rather to use immersion cooling systems to mine bitcoin. Defendants otherwise deny the allegations of Paragraph 53.

**Complaint Paragraph 54:**

54.     During the pendency of the Immersion Systems Litigation, the Individuals caused Immersion Systems to take steps to conceal the existence of the Individuals' new Rhodium businesses.

**Response:**     Denied.

**Complaint Paragraph 55:**

55.     Exemplary photos from Defendants' Rockdale, Texas facility (see above), and as well as photos from Rhodium's website (rhdm.com, see below), appear to suggest that the immersion cooling systems of Rhodium are materially identical to the immersion cooling systems previously promoted by the Individuals by way of Immersion Systems.



**Response:**     Defendants admit that the photo shown is from the website rhdm.com. Defendants otherwise deny the allegations of Paragraph 55.

**Complaint Paragraph 56:**

56.     Because the immersion cooling systems products previously promoted by Immersion Systems and the immersion cooling systems used by Rhodium appear to be materially identical, each of the Individuals had actual notice that the immersion cooling systems of Rhodium infringed the '457 Patent, as of February 2020. Despite this knowledge, on information and belief, the Individuals acting through one or more of the Defendants, decided to utilize the particular immersion cooling systems that they had previously promoted via Immersion Systems, in the Defendants' new Rhodium-labelled bitcoin mining business ventures.



**Response:**     Denied.

**Complaint Paragraph 57:**

57.     On information and belief, all of the Rhodium Defendants had actual and constructive notice and knowledge of the '457 Patent as of their founding, at least by virtue of the actual notice of the '457 Patent possessed by the Individuals.

**Response:**     Denied.

**Complaint Paragraph 58:**

58.     On information and belief, all of the Rhodium Defendants had actual knowledge that their immersion cooling systems would infringe the '457 Patent as of their founding, at least

by virtue of the knowledge of infringement possessed by the Individuals.

**Response:**     Denied.

**Complaint Paragraph 59:**

59.     On information and belief, each of the Defendants gained actual notice of the '446 Patent in November of 2020, by virtue of the filing by Midas of its amended complaint in the Immersion Systems Litigation. Each of the Defendants had actual notice that the immersion cooling systems of Rhodium infringed the '446 Patent, by virtue of the filing by Midas of its amended complaint.

**Response:**     Denied.

**Complaint Paragraph 60:**

60.     During the course of the Immersion Systems Litigation, Midas and Immersion Systems submitted a Joint Claim Construction Chart (Dkt. 82) in which the parties agreed to the proper construction of two claim terms, *i.e.*, "weir" and "plenum," and in which the parties further agreed that seventeen other claim terms should be afforded their plain and ordinary meaning. A true and correct copy of that filing is attached as **Exhibit G**.

**Response:**     Admitted.

**Complaint Paragraph 61:**

61.     On November 22, 2021, the Court in the Immersion Systems Litigation issued its claim construction order, rejecting arguments from Immersion System that the '457 and '446 Patents were invalid as indefinite, and adopting Midas' proposed constructions as plain and ordinary meaning, with regard to two disputed claim terms. A true and correct copy of the Court's claim construction order is attached as **Exhibit H**. In its claim construction order, the Court also adopted the proposed constructions for nineteen agreed-upon terms and phrases as set forth in the

parties' Joint Claim Construction Chart (Dkt. 82).

**Response:**     Defedants admit that the Court in the Immersion Systems Litigation issued an order On November 22, 2021 and that it is attached to the complaint as Exhibit H. The order speaks for itself. Defendants deny the complaint's characterization that the order "rejected arguments from Immersion Systems that the '457 and '446 Patents were invalid as indefinite." Defendants otherwise admit the allegations of Paragraph 61.

**Complaint Paragraph 62:**

62.     As of their receipt of the foregoing claim construction ruling from the Immersion Systems Litigation in late November 2021, the Defendants knew or should have known that the Asserted Patents were valid and infringed by Defendants, to the extent they did not already possess such knowledge.

**Response:**     Denied.

**Complaint Paragraph 63:**

63.     The Amended SEC Form S-1 filed by Defendant Rhodium Enterprises, Inc. on December 14, 2021 discloses the existence of the Immersion Systems Litigation, as well as acknowledging the possibility that Midas might file a patent infringement lawsuit against Rhodium. *See* SEC Amendment No. 4 to Form S-1 at 29, Rhodium Enterprises, Inc. (Dec. 14, 2021),        *available        at*        https://sec.report/Document/0001213900-21-065116/fs12021a4_rhodium.htm. Notably, the Form S-1 does *not* state that the Rhodium systems or tanks are different in any material respect from the accused Immersion systems or tanks, amounting to a tacit admission that they are the same or similar in all material respects. *Id.* Even after Midas filed the Original Complaint in this action, Rhodium filed an amended Form S-1 acknowledging the lawsuit but not containing any statements that the Rhodium systems or tanks

differ in any material respect from the infringing Immersion systems or tanks. SEC Amendment No. 6 to Form S-1 at 4. Defendants' disclosure of the Immersion Systems Litigation, and a corresponding litigation risk to the Rhodium entities, in its Form S-1 further demonstrate its knowledge of the Asserted Patents and of its infringement.

**Response:**     Defendants admit that the referenced SEC filing discloses the existence of the Immersion Systems Litigation. The filing speaks for itself. Defendants otherwise deny the allegations of Paragraph 63.

**Complaint Paragraph 64:**

64.    As of the filing of this suit on January 13, 2022, each of the Defendants is well aware of the Asserted Patents, and each of the Defendants is well aware of their infringements thereof.

**Response:**     Denied.

## VII.    CAUSES OF ACTION

### Count 1: [Alleged] Infringement of U.S. Patent No. 10,405,457

**Complaint Paragraph 65:**

65.    Midas incorporates by reference the preceding paragraphs, as if set forth herein.

**Response:**     To the extent that a response is required, Defendants repeat and reallege their responses to ¶¶ 1–64 of the Third Amended Complaint as if fully set forth therein.

**Complaint Paragraph 66:**

66.    The '457 Patent was filed April 30, 2014, and legally issued by the United States Patent and Trademark Office on September 3, 2019. The '457 Patent is valid and enforceable and presumed as such pursuant to 35 U.S.C. § 282.

**Response:**     Defendants do not understand the vague allegation that "[t]he '457 Patent was filed

April 30, 2014," and on that basis deny it. Defendants otherwise deny the allegations of Paragraph 66.

**Complaint Paragraph 67:**

67.    Without a license or permission from Midas, Defendants have directly infringed and continue to directly infringe one or more claims of the '457 Patent by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

**Response:**    Denied.

**Complaint Paragraph 68:**

68.    Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC directly infringe the '457 Patent under 35 USC §271(a) by (1) providing infringing immersion cooling systems to other Defendants; (2) controlling and directing the direct infringement of one or more of the other Defendants; and (3) benefitting and profiting from the infringement of one or more of the other Defendants. The other Defendants directly infringe the '457 Patent under 35 USC §271(a) by their admitted use of infringing immersion cooling systems.

**Response:**    Denied.

**Complaint Paragraph 69:**

69.    Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC further indirectly infringe the '457 Patent by (1) directing other third parties to design, build or install infringing products and devices; and (2) controlling and directing the direct infringement of one or more of the other Defendants.

**Response:**    Denied.

**Complaint Paragraph 70:**

70.     Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning February 7, 2020, with the delivery of Midas' noticed letter to Immersion Systems, of which the Individuals had contemporaneous notice.

**Response:**     Denied.

**Complaint Paragraph 71:**

71.     Defendants' acts of infringement of the '457 Patent have caused and will continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284. Defendants' acts of infringement of the '457 Patent have caused and will continue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

**Response:**     Denied.

## A.  [Alleged] Direct Infringement

**Complaint Paragraph 72:**

72.     Defendants have directly infringed one or more claims of the '457 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claims 1 and 6 of the '457 Patent. If any limitation of claim 1 or 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

**Response:**     Denied.

**Complaint Paragraph 73:**

73.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC

have directly infringed one or more claims of the '457 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of: (1) directing and controlling the activities of the Defendant Rhodium Operating Entities and the Defendants identified as Rhodium Post-Filing Operating Subsidiaries; and (2) benefiting and profiting from the other Defendants infringing actions. Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC also purchase infringing immersion cooling tanks and provided those infringing tanks to one or more of the other Defendants.

**Response:**     Denied.

**Complaint Paragraph 74:**

74.     *See* **Exhibit E** which is an exemplary claim chart detailing representative infringement of claims 1 and 6 of the '457 Patent.

**Response:**     Defendants admit that Exhibit E appears to be a claim chart. Defendants otherwise deny the allegations of Paragraph 74.

## B. [Alleged] Induced Infringement

**Complaint Paragraph 75:**

75.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have been and are inducing infringement of the '457 Patent by actively and knowingly inducing others, including other Defendants, to make, have made and/or use, the infringing immersion cooling systems and tank modules that embody the invention claimed in the '457 Patent in violation of 35 U.S.C. § 271(b). Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have also induced infringement by willfully directing and controlling the infringing activities of other third parties, such as manufacturers and installers, to make, have made, or use the infringing immersion cooling systems and tank modules.

**Response:**     Denied.

**Complaint Paragraph 76:**

76.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have possessed specific intent to induce infringement of the '457 Patent. Specifically, Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have long been aware of the '457 Patent and the specific manner in which their immersion cooling system design infringes the '457 Patent, by virtue of detailed claim charts provided to the Individuals and either shared with all other Defendants or that all other Defendants have knowledge of their infringement through the knowledge of the Individuals, who are officers, directors, and owners of the Rhodium Defendants. Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint. For example, Defendant Rhodium Enterprises, Inc. directed Ameritex Machine and Fabrication, LLC ("Ameritex") to make and sell its infringing immersion tanks. *See* Exhibit C.

**Response:**     Defendants admit that Exhibit C to the Third Amended Complaint, which was marked "Confidential – Outside Attorneys' Eyes Only" and filed under seal, is a copy of a Manufacturing Services Agreement between Rhodium Industries LLC and Ameritex Machine and Fabrication, LLC. The document speaks for itself. Defendants deny the remaining allegations of Paragraph 76.

**Complaint Paragraph 77:**

77.     Defendants have induced infringement by providing designs and instructions to third party manufacturers, such as Ameritex and contractors to have made infringing immersion cooling systems and tank modules. *Id.*

**Response:**      Denied.

**Complaint Paragraph 78:**

78.      Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to other Defendants, third party manufacturing companies, such as Ameritex and other contractors, for knowing use in infringing activity to mine bitcoin and generate revenue. *Id.*

**Response:**      Denied.

**Count 2: [Alleged] Infringement of U.S. Patent No. 10,820,446**

**Complaint Paragraph 79:**

79.      Midas incorporates by reference the preceding paragraphs, as if set forth herein.

**Response:**      To the extent any response is required, Defendants repeat and reallege their responses to ¶¶ 1–78 of the Third Amended Complaint as if fully set forth therein.

**Complaint Paragraph 80:**

80.      The '446 Patent was filed January 9, 2019, and legally issued by the United States Patent and Trademark Office on October 27, 2020. The '446 Patent is valid and enforceable, and presumed as such pursuant to 35 U.S.C. § 282.

**Response:**      Defendants do not understand the vague allegation that "[t]he '446 Patent was filed January 9, 2019," and on that basis deny it. Defendants deny the remaining allegations of Paragraph 80.

**Complaint Paragraph 81:**

81.      Without a license or permission from Midas, Defendants have directly infringed and continue to directly infringe one or more claims of the '446 Patent, by making, having made,

using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

**Response:**     Denied.

**Complaint Paragraph 82:**

82.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC directly infringe the '446 Patent under 35 USC §271(a) by; (1) providing infringing immersion cooling systems to other Defendants; (2) controlling and directing the direct infringement of one or more of the other Defendants; and (3) benefitting and profiting from the infringement of one or more of the other Defendants. The other Defendants directly infringe the '446 Patent under 35 USC §271(a) by their admitted use of infringing immersion cooling systems.

**Response:**     Denied.

**Complaint Paragraph 83:**

83.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC further indirectly infringe the '446 Patent by; (1) directing other third parties to design, build or install infringing products and devices; and (2) controlling and directing the direct infringement of one or more of the other Defendants. Defendants' infringement has been, and continues to be, knowing, intentional, and willful, at least beginning November 24, 2020, with the filing of Midas' amended complaint against Immersion Systems, of which the Individuals had contemporaneous notice.

**Response:**     Denied.

**Complaint Paragraph 84:**

84.     Defendants' acts of infringement of the '446 Patent have caused and will continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284.

Defendants' acts of infringement of the '446 Patent have caused and willcontinue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

**Response:**   Denied.

### C. [Alleged] Direct infringement

**Complaint Paragraph 85:**

85.   Defendants have directly infringed one or more claims of the '446 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claims 1 and 6 of the '446 Patent. If any limitation of claims 1 or 6 is not practiced in a literal sense, then that limitation is present under the doctrine of equivalents.

**Response:**   Denied.

**Complaint Paragraph 86:**

86.   Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have directly infringed one or more claims of the '446 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of (1) directing and controlling the activities of the Defendant Rhodium Operating Entities and the Defendants identified as Rhodium Post-Filing Operating Subsidiaries and (2) benefiting and profiting from the other Defendants infringing actions. Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC also purchase infringing immersion cooling tanks and provided those infringing tanks to one or more of the other Defendants.

**Response:**   Denied.

41

**Complaint Paragraph 87:**

87.     *See* **Exhibit F** which is an exemplary claim chart detailing representative infringement of claims 1 and 6 of the '446 Patent.

**Response:**     Defendants admit that Exhibit F appears to be a claim chart. Defendants otherwise deny the allegations of Paragraph 87.

### D. [Alleged] Induced Infringement

**Complaint Paragraph 88:**

88.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have been and are inducing infringement of the '446 Patent by actively and knowingly inducing others, including other Defendants, to make, have made, and/or use, the infringing immersion cooling systems and tank modules that embody the invention claimed in the '446 Patent in violation of 35 U.S.C. § 271(b). Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have also induced infringement by willfully directing and controlling the infringing activities of other third parties, such as manufacturers and installers, to make, have made, or use the infringing immersion cooling systems and tank modules.

**Response:**     Denied.

**Complaint Paragraph 89:**

89.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have possessed specific intent to induce infringement of the '446 Patent. Specifically, Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have long been aware of the '446 Patent and the specific manner in which their immersion cooling system design infringes the '446 Patent, by virtue of detailed claim charts provided to the Individuals and either shared with all other Defendants or that all other Defendants have knowledge of their infringement

through the knowledge of the Individuals, who are officers, directors, and owners of the Rhodium Defendants.

**Response:**     Denied.

**Complaint Paragraph 90:**

90.     Despite this knowledge of the patent and the infringing design, Defendants have induced third parties to take actions that they know will infringe, either directly or contributorily, through the actions described in this section and throughout this complaint. For example, Defendant Rhodium Enterprises, Inc. directed Ameritex Machine and Fabrication, LLC ("Ameritex") to make and sell it infringing immersion tanks.

**Response:**     Defendants admit that Exhibit C to the Third Amended Complaint is a copy of a Manufacturing Services Agreement between Rhodium Industries LLC and Ameritex Machine and Fabrication, LLC, which was marked "Confidential – Outside Attorneys' Eyes Only" and filed under seal. Defendants deny the remaining allegations of Paragraph 90.

**Complaint Paragraph 91:**

91.     Defendants have induced infringement by providing designs and instructions to third party manufacturers, such as Ameritex, and contractors to have made infringing immersion cooling systems and tank modules.

**Response:**     Denied.

**Complaint Paragraph 92:**

92.     Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have induced infringement by willfully providing infringing directions, instructions and designs for immersion cooling systems and tank modules to other Defendants, third party manufacturing companies, such as Ameritex and other contractors, for knowing use in infringing activity to mine

bitcoin and generate revenue.

**Response:**     Denied.

**Count 3: [Alleged] Willfulness and Egregiousness**

**Complaint Paragraph 93:**

93.     Midas incorporates by reference the preceding paragraphs, as if set forth herein.

**Response:**     To the extent any response is required, Defendants repeat and reallege their responses to ¶¶ 1–92 of the Third Amended Complaint as if fully set forth therein.

**Complaint Paragraph 94:**

94.     Defendants have willfully and maliciously infringed the '457 and '446 Patents at least since the date of their actual notice of the patents and their infringement. Specifically, despite receiving detailed claim charts both in letters and having received such information through the Immersion Systems litigation showing that their immersion cooling systems designs infringes Midas' patents, Defendants have continued to operate their infringing immersion cooling systems. Indeed, Defendants have aggressively sought to expand their operations and add additional immersion cooling systems, knowing throughout their existence that they infringe Midas' patents.

**Response:**     Denied.

**Complaint Paragraph 95:**

95.     The Individuals (by way of Immersion Systems) actively sought to conceal the existence of their Rhodium business and did not reveal its existence during the course of the Immersion Systems litigation, despite clear discovery obligations to do so. The Individuals also actively sought to conceal that Immersion Systems had ceased business operations, continuing in the Northern District of Texas litigation for the true benefit of the Defendants.

**Response:**     Denied.

**Complaint Paragraph 96:**

96.     At the same time, on information and belief, the Individuals, and/or Rhodium directly or indirectly bankrolled the filing and prosecution, nominally in the name of Immersion Systems, of an *Inter parties* review proceeding directed to attempt to invalidate the '457 Patent, as well as a Post-Grant review proceeding directed to attempt to invalidate the '446 Patent.

**Response:**     Denied.

**Complaint Paragraph 97:**

97.     Defendants' infringement has been egregious, wanton, malicious, and in bad faith.

**Response:**     Denied.

**Complaint Paragraph 98:**

98.     The Individuals, who are the officers, directors, and owners of the Defendants, possessed full knowledge that their immersion cooling systems design infringed the '457 and '446 Patents, knew these patents were valid, did not attempt to procure a license to these valid patents, and instead proceeded to start a new business using the same or substantially the same infringing design. As Rhodium advertises, this immersion cooling system design is critical to their business and a primary driver of their profitability, and yet Defendants have knowingly and maliciously stolen Midas' patented and innovative technology for their own profit without compensating the inventors of the technology.

**Response:**     Denied.

**Additional Allegations Relating to the Asserted Patents**

**Complaint Paragraph 99:**

99.     The '457 Patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '457 Patent seeks to solve at least two problems in the prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to

the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non-uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '457 Patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The '457 Patent accomplishes these improvements through a unique, innovative design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly through the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The '457 Patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

**Response:**    Denied.

**Complaint Paragraph 100:**

100.    The '457 Patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a

dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. The appliance immersion cooling system also, in some embodiments, includes a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted. The appliance immersion cooling system also includes a control facility adapted to coordinate the operation of the primary and, if included, the secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

**Response:**    The patent speaks for itself. Defendants deny that the patent claims patent-eligible subject matter or anything sufficiently innovative to be patentable.

**Complaint Paragraph 101:**

101.    The '457 Patent also claims, among other things, a tank module adapted for use in an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot, and a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid

through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

**Response:** The patent speaks for itself. Defendants deny that the patent claims patent-eligible subject matter or anything sufficiently innovative to be patentable.

**Complaint Paragraph 102:**

102.   The '446 Patent is directed to an improved appliance immersion cooling system and method of operation. Specifically, the '446 Patent seeks to solve at least two problems in the prior art of appliance immersion cooling systems: (1) the difficulty of maintenance and access to the electrical equipment in prior art vertical-stack-type systems, which necessitate draining the cooling fluid to gain access to the equipment; and (2) non- uniform flow patterns of the dielectric fluid within the tank and constricted dielectric fluid supply and return ports, resulting in uneven cooling and unnecessarily high fluid flow velocities. The invention of the '446 Patent is an improvement over the prior art and provides greater efficiency and effectiveness through ease of access to the electrical appliances in an open horizontal tank, substantially uniform fluid flow patterns through all appliance slots leading to substantially uniform cooling, and lower fluid flow velocities. The '446 Patent accomplishes these improvements through a unique, innovative design, as described below, that achieves substantially uniform flow of dielectric fluid upwardly through the tank, beginning from a plenum that substantially uniformly distributes the dielectric fluid across the bottom of the tank and then a weir that is adapted to facilitate substantially uniform recovery of the dielectric fluid that has cooled the appliances, where the fluid flows over the weir into fluid recovery reservoirs, to then be cycled and re-cooled, for recirculation into the tank. The

'446 Patent therefore does not claim an abstract idea, law of nature, or natural phenomenon, but instead to a tangible, patent-eligible invention.

**Response:**    The patent speaks for itself. Defendants deny that the patent claims patent-eligible subject matter or anything sufficiently innovative to be patentable.

**Complaint Paragraph 103:**

103.    The '446 Patent claims, among other things, an appliance immersion cooling system that includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The appliance immersion cooling system also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank. The primary circulation facility includes a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. The appliance immersion cooling system also includes, in at least one embodiment, a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulation in the primary circulation facility, and to dissipate to the environment the heat so extracted, and a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

**Response:**    The patent speaks for itself. Defendants deny that the patent claims patent-eligible subject matter or anything sufficiently innovative to be patentable.

**Complaint Paragraph 104:**

104.    The '446 Patent also claims, among other things, a tank module adapted for use in

an appliance immersion cooling system. The tank module includes a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically long, and extending transverse to, a long wall of the tank. The tank includes a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. The tank module also includes a primary circulation facility adapted to circulate the dielectric fluid through the tank, including a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot, and a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

**Response:**     The patent speaks for itself. Defendants deny that the patent claims patent-eligible subject matter or anything sufficiently innovative to be patentable.

**Complaint Prayer for Relief:**

Wherefore, Midas requests judgment against Defendants as follows:

A.     Adjudging that all Defendants have directly infringed, the'457 Patent, in violation of 35 U.S.C. § 271(a);

B.     Adjudging that Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have actively induced infringement of the '457 Patent, in violation of 35 U.S.C. § 271(b);

C.     Adjudging that all Defendants have directly infringed the'446 Patent, in violation of 35 U.S.C. § 27l(a);

D.     Adjudging that Defendant Rhodium Enterprises, Inc. and Defendant Rhodium Technologies LLC have actively induced infringement of the '446 Patent, in violation of 35 U.S.C.

§ 271(b);

      E.     Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of, the '457 Patent and of the '446 Patent;

      F.     Ordering Defendants to account for and pay damages adequate to compensate Midas for Defendants' infringement of, and inducement to infringe, the '457 Patent and the '446 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

      G.     Ordering an accounting by Defendants for any infringing activity not presented at trial and an award by the court of additional damages for any such infringing activity to Midas;

      H.     Ordering that the damages award by increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

      I.     Declaring this case exceptional and ordering Defendants to pay the cost of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

      J.     Awarding such other and further relief as this Court deems just and proper.

**Response to Prayer for Relief:**  Defendants deny that Plaintiff is entitled to any of the relief it requests in its Prayer for Relief.

**GENERAL DENIAL**

      Defendants further deny each and every allegation contained in Midas's Third Amended Complaint to which Defendants have not specifically admitted, denied, or otherwise responded to herein.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Subject to their responses above, and upon information and belief, Defendants allege and assert the following defenses in response to the allegations of the Third Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to affirmative defenses described below, subject to their responses above, Defendants specifically reserve all right to allege additional affirmative defenses pursuant to any scheduling order or that may otherwise be lawfully asserted in this action for any reason, including because those that become known through the course of discovery or further investigation.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Midas has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Invalidity of '457 Patent)

The claims of U.S. Patent No. 10,405,457 (the "'457 Patent") are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 101, 102, 103, and/or 112.

### THIRD AFFIRMATIVE DEFENSE

### (Invalidity of '446 Patent)

The claims of U.S. Patent No. 10,820,446 (the "'446 Patent") are invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 101, 102, 103, and/or 112.

## FOURTH AFFIRMATIVE DEFENSE

### (Non-Infringement of '457 Patent)

Defendants have not infringed and do not infringe any valid and enforceable claim of the '457 Patent.

## FIFTH AFFIRMATIVE DEFENSE

### (Non-Infringement of '446 Patent)

Defendants have not infringed and do not infringe any valid and enforceable claim of the '446 Patent.

## SIXTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Midas's claims for monetary damages are limited by the statute of limitations and, pursuant to 35 U.S.C. § 286, K.Mizra is not entitled to any purported damages suffered more than six (6) years prior to the filing of the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mark)

Midas' claims for recovery are barred or limited, in whole or in part, prior to the date on which Defendants received actual notice of Midas' allegations in infringement concerning the '457 Patent and the '446 Patent, including under 35 U.S.C. § 287.

## EIGHTH AFFIRMATIVE DEFENSE

### (Equitable Doctrines)

Midas' claims are barred by one or more of the doctrines of waiver, acquiescence, estoppel (including without limitation equitable estoppel and prosecution history estoppel), unenforceability, and unclean hands.

## NINTH AFFIRMATIVE DEFENSE

### (No Entitlement to Injunctive Relief)

Midas is not entitled to injunctive relief. Among other things, Midas is not able to meet the standards for such relief as set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Disclaim)

On information and belief, Midas' claims for recovery are barred or limited, in whole or in part, by 35 U.S.C. § 288 (failure to disclaim invalid claim(s)).

## RESERVATION OF RIGHTS

Defendants expressly reserve the right to assert any other legal or equitable defenses to which they are shown to be entitled, including all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses that may now exist or in the future be available based on discovery or further factual investigation in this case.

## I.   PRAYER FOR RELIEF

WHEREFORE, Defendants seek the following relief:

A.     That the Court enter judgment in Defendants' favor;

B.     That Midas take nothing by its Third Amended Complaint and that its claims against Defendants be dismissed with prejudice;

C.     That judgment be entered finding that Defendants have not infringed and do not infringe any valid and enforceable claim of either the '457 Patent or the '446 Patent, either literally or under the Doctrine of Equivalents;

D.      A judgment that the '457 Patent and the '446 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

E.      A declaration that the '457 Patent and the '446 Patent are unenforceable;

F.      An order declaring that Defendants are the prevailing party and that this is an exceptional case, awarding Defendants their costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

G.      That Defendants be granted such other and additional relief as this Court deems just and proper.

## II.  DEMAND FOR A JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Defendants respectfully demand a jury of all issues triable to a jury in this action.

## DEFENDANTS' COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, Rhodium Encore LLC, Rhodium Renewables LLC, Rhodium Renewables Sub LLC; and Rhodium Ready Ventures LLC. (collectively, "Rhodium" or "Counterclaim-Plaintiffs") repeat and reallege the allegations provided in their Answer as though fully set forth herein. Rhodium further alleges, on knowledge as to its own actions and on information and belief as to all other matters, as follows:

1.      This Court has personal jurisdiction over Plaintiff and Counterclaim-Defendant Midas Green Technologies, LLC ("Midas Green"), which, on information and belief, is a Texas limited liability company with its principal place of business in Texas, and has consented to the

exercise of such jurisdiction by filing its original complaint and Third Amended Complaint for Patent Infringement against Rhodium.

2.    This Court has subject matter jurisdiction over these counterclaims because they arise under the Federal Declaratory Judgements Act, Title 28 U.S.C. §§ 2201 and 2202, and the laws of the United States relating to patents, Title 28 U.S.C. § 1338(a).

3.    By filing its claims for patent infringement against Rhodium in this Court, Midas Green has consented to the propriety of venue over these counterclaims.

4.    In its complaint, Midas Green accuses Rhodium of infringement of one or more claims of two United States Patents: U.S. Patent No. 10,405,457 ("the '457 Patent"), and U.S. Patent No. 10,820,446 ("the '446 Patent") (together, "the Asserted Patents").

5.    The Asserted Patents are invalid and/or Rhodium has not infringed any valid claim of the Asserted Patents, whether directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise.

6.    Consequently, as a result of at least the allegations of Midas Green's Third Amended Complaint, an immediate, real, and justiciable controversy exists between Rhodium and Midas Green as to whether Rhodium infringes the Asserted Patents, and as to whether the Asserted Patents are valid and enforceable.

### FIRST COUNTERCLAIM

### Declaration of Non-Infringement of U.S. Patent No. 10,405,457

7.    Rhodium repeats and realleges the allegations in Paragraphs 1–6 of its Counterclaims as though fully set forth herein.

8.    Rhodium has not infringed and does not infringe any valid and enforceable claim of the '457 Patent, either literally or under the Doctrine of Equivalents, because the Accused

Products do not practice or possess the elements of the claims of the '457 Patent. At minimum, for example, the Accused Products do not have the required "control facility adapted to coordinate the operation of the primary [and secondary] fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank."

9.     Every claim of the '457 Patent, by virtue of independent claims 1, 6, and 11, requires an appliance immersion cooling system with a "control facility adapted to coordinate the operation of the primary [and secondary] fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank."

10.     The Accused Products do not contain the claimed "control facility," and Midas has presented no evidence that they do. In fact, Midas does not even contend that the Accused Products contain this limitation. Rather, Midas alleges only that the Accused Products may be altered such that they would satisfy the limitation. *See, e.g.*, Plaintiff's Supp. Resp. to Interrog. No. 10 (asserting that Accused Products *can*, for example, have sensors installed). This is insufficient to show infringement. The Asserted Claims require an appliance immersion cooling system to have the claimed "control facility"—not the mere ability to be altered to have one.

11.     Additionally, the Accused Products do not contain the alleged "control" features as described by Midas. They do not, and without modification cannot even allegedly, coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

12.     Absent a declaration of non-infringement, Midas Green will continue wrongfully to assert the '457 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is

necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '457 Patent.

13.     Rhodium thus seeks a judgment declaring that Rhodium does not infringe, either literally or under the Doctrine of Equivalents, any claims of the '457 Patent.

## SECOND COUNTERCLAIM

### (Declaration of Non-Infringement of U.S. Patent No. 10,820,446)

14.     Rhodium repeats and realleges the allegations in Paragraphs 1–13 of its Counterclaims as though fully set forth herein.

15.     Defendants have not infringed and do not infringe any valid and enforceable claim of the '446 Patent, either literally or under the Doctrine of Equivalents, because the Accused Products do not practice the elements of the claims of the asserted patent. At minimum, for example, the Accused Products do not have a "control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank."

16.     Every claim of the '446 Patent, by virtue of independent claims 1 and 6, requires an appliance immersion cooling system, or a tank module for use in such a system, with a "control facility adapted to [coordinate]/[control] the operation of the primary and secondary fluid circulation [facility]/[facilities] as a function of the temperature of the dielectric fluid in the tank."

17.     The Accused Products do not contain the claimed "control facility," and Midas has presented no evidence that they do. In fact, Midas does not even contend that the Accused Products contain this limitation. Rather, Midas alleges only that the Accused Products may be altered such that they would satisfy the limitation. *See, e.g.*, Plaintiff's Supp. Resp. to Interrog. No. 10 (asserting that Accused Products *can*, for example, have sensors installed). This is insufficient to

show infringement. The Asserted Claims require an appliance immersion cooling system or tank to have the claimed "control facility"—not the mere ability to be altered to have one.

18.     Additionally, the Accused Products do not contain the alleged "control" features as described by Midas. They do not, and without modification cannot even allegedly, coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

19.     Absent a declaration of non-infringement, Midas Green will continue wrongfully to assert the '446 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '446 Patent.

20.     Rhodium thus seeks a judgment declaring that Rhodium does not infringe, either literally or under the Doctrine of Equivalents, any claims of the '446 Patent.

### THIRD COUNTERCLAIM

### (Declaration of Invalidity of U.S. Patent No. 10,405,457)

21.     Rhodium repeats and realleges the allegations in Paragraphs 1–20 of its Counterclaims as though fully set forth herein.

22.     The '457 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

23.     For example, the claims of the '457 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because prior art, such as The Green Revolution Cooling tank invented by Christiaan Best (the "Best Tank"), U.S. Patent Application Publication No. 2014/0211412A1 (the "Best Publication"), U.S. Patent No. 10,123,462B2 ("Best '463 Patent"), U.S. Patent No. 5,167,511

("Krajewski '511"), U.S. Patent Application Publication No. 2006/0126292A1 (the "Pfahnl Publication"), Russian Federation Patent No. 2,500,013 ("Gryzhin '013"), U.S. Patent No. 3,406,244 ("Oktay '244"), Japanese Patent No. JPH04116758 U ("JP '758"), and U.S. Patent No. 9,992,914B2 ("Best '914 Patent"), discloses or renders obvious the limitations of the claims of the '457 Patent—at least as Midas asserts them.

24.     As another example, as Midas is well aware, the '457 Patent is invalid for improper inventorship under 35 U.S.C. § 101 and pre-AIA 35 U.S.C. §§ 101 and 102(f) for naming incorrect inventors and/or omitting at least one inventor (Christiaan Best) who should have been named.

25.     The claims of the '457 Patent are also invalid under 35 U.S.C. § 112 at least because they are indefinite and/or because the specification of the '457 Patent does not contain sufficient written description and/or enabling disclosure to support the claims as asserted by Midas.

26.     Absent a declaration of invalidity, Midas Green will continue wrongfully to assert the '457 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '457 Patent.

27.     Rhodium thus seeks a judgment declaring that the claims of the '457 Patent are invalid.

## FOURTH COUNTERCLAIM

### (Declaration of Invalidity of U.S. Patent No. 10,820,446)

28.     Rhodium repeats and realleges the allegations in Paragraphs 1–27 of its Counterclaims as though fully set forth herein.

29.     The '446 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

30.     For example, the claims of the '446 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 because prior art, such as The Green Revolution Cooling tank invented by Christiaan Best (the "Best Tank"), U.S. Patent Application Publication No. 2014/0211412A1 (the "Best Publication"), U.S. Patent No. 10,123,462B2 ("Best '463 Patent"), U.S. Patent No. 5,167,511 ("Krajewski '511"), U.S. Patent Application Publication No. 2006/0126292A1 (the "Pfahnl Publication"), Russian Federation Patent No. 2,500,013 ("Gryzhin '013"), U.S. Patent No. 3,406,244 ("Oktay '244"), Japanese Patent No. JPH04116758 U ("JP '758"), and U.S. Patent No. 9,992,914B2 ("Best '914 Patent"), discloses or renders obvious the limitations of the claims of the '446 Patent—at least as Midas asserts them.

31.     As another example, as Midas is well aware, the '446 Patent is invalid for improper inventorship under 35 U.S.C. § 101 and pre-AIA 35 U.S.C. §§ 101 and 102(f) for naming incorrect inventors and/or omitting at least one inventor (Christiaan Best) who should have been named.

32.     The claims of the '446 Patent are also invalid under 35 U.S.C. § 112 at least because they are indefinite and/or because the specification of the '446 Patent does not contain sufficient written description and/or enabling disclosure to support the claims as asserted by Midas.

33.     Absent a declaration of invalidity, Midas Green will continue wrongfully to assert the '446 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '446 Patent.

34.     Rhodium thus seeks a judgment declaring that the claims of the '446 Patent are invalid.

## FIFTH COUNTERCLAIM

### (Declaration of Unenforceability of U.S. Patent No. 10,405,457)

35.     Rhodium repeats and realleges the allegations in Paragraphs 1–34 of its Counterclaims as though fully set forth herein.

36.     The '457 Patent is unenforceable based on inequitable conduct by at least Chris Boyd and Jim Koen. Each of Mr. Boyd and Mr. Koen owed a duty of candor to the USPTO, which included a duty to disclose to the USPTO all information known to them to be material to patentability. This included not only prior art, but also possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, and inventorship conflicts.

37.     For example, despite knowing that the Best Tank was previously on sale, sold, publicly used, and in fact possessed by Midas Green, Mr. Boyd and Mr. Koen did not tell the USPTO about the existence of the Best Tank or the Best Publication, which are both material prior art to the '457 Patent and were known and available to Mr. Boyd and Mr. Koen during their prosecution of the '457 Patent.

38.     Midas has admitted "that at least one individual associated with Midas was aware of the Best Tank prior to issuance of the Notice of Allowance for '457 Patent on September 14, 2018," Plaintiff's Resp. to Def's. 1st Set of RFAs at 3, and also "that it did not disclose the Best Tank to the U.S.P.T.O. at any point prior to issuance of the Notice of Allowance for the '457 Patent on September 14, 2018," *id.* at 6.

39.     Mr. Boyd and Mr. Koen also failed to tell the USPTO that Christiaan Best was a coinventor as alleged above.

40.     On information and belief, the single most reasonable inference that can be drawn is that Jim Koen and Chris Boyd intended to deceive the USPTO.

41.     Absent a declaration of unenforceability, Midas Green will continue wrongfully to assert the '457 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '457 Patent.

42.     Rhodium thus seeks a judgment declaring that the claims of the '457 Patent are unenforceable.

## SIXTH COUNTERCLAIM

### (Declaration of Unenforceability of U.S. Patent No. 10,405,446)

43.     Rhodium repeats and realleges the allegations of Paragraphs 1–42 of their Counterclaims as though fully set forth herein.

44.     The '446 Patent is unenforceable based on inequitable conduct by at least Chris Boyd and Jim Koen. Each of Mr. Boyd and Mr. Koen owed a duty of candor to the USPTO, which included a duty to disclose to the USPTO all information known to them to be material to patentability. This included not only prior art, but also possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, and inventorship conflicts.

45.     For example, despite knowing that the Best Tank was previously on sale, sold, publicly used, and in fact possessed by Midas Green, Mr. Boyd and Mr. Koen did not tell the USPTO about the existence of the Best Tank or the Best Publication, which are both material prior art to the '446 Patent and were known and available to Mr. Boyd and Mr. Koen during their prosecution of the '446 Patent.

46.    Midas has admitted "that at least one individual associated with Midas was aware of the Best Tank prior to issuance of the Notice of Allowance for '446 Patent on April 16, 2020," Plaintiff's Resp. to Def's. 1st Set of RFAs at 4, and also "that it did not disclose the Best Tank to the U.S.P.T.O. at any point prior to issuance of the Notice of Allowance for the '446 Patent on April 16, 2020," *id.* at 7.

47.    Mr. Boyd and Mr. Koen also failed to tell the USPTO that Christiaan Best was a coinventor as alleged above.

48.    On information and belief, the single most reasonable inference that can be drawn is that Jim Koen and Chris Boyd intended to deceive the USPTO.

49.    Absent a declaration of unenforceability, Midas Green will continue wrongfully to assert the '446 Patent against Rhodium, thereby causing Rhodium irreparable injury and damage. A judicial declaration is also reasonably calculated to prevent needless litigation, and is necessary to resolve the actual controversy that exists between Rhodium and Midas Green and to determine the parties' respective rights regarding the '446 Patent.

50.    Rhodium thus seeks a judgment declaring that the claims of the '446 Patent are unenforceable.

### PRAYER FOR RELIEF ON RHODIUM'S COUNTERCLAIMS

WHEREFORE, Rhodium seeks the following relief:

A.    A declaration that Rhodium has not infringed and does not infringe any valid and enforceable claim of either the '457 Patent or the '446 Patent, either literally or under the Doctrine of Equivalents;

B.      A declaration that the '457 Patent and the '446 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C.      A declaration that the '457 Patent and the '446 Patent are unenforceable;

D.      That an order be entered enjoining Midas and its officer, agent, servants, employees, attorneys, and those in concert or participation with them from asserting infringement or instituting or continuing any action for infringement of the '457 Patent and the '446 Patent;

E.      That pursuant to 35 U.S.C. § 285, Midas's conduct in commencing and pursuing this action be found to render this an exceptional case and that Defendants be awarded attorneys' fees in connection with this action;

F.      A judgment in Rhodium's favor on all of its counterclaims; and

G.      For such other and additional relief as this Court deems just and proper.

## JURY DEMAND

Rhodium hereby demands a trial by jury on all issue so triable.

Dated: April 26, 2023                    Respectfully submitted,


                                         By: */s/ Melissa R. Smith*
                                         Melissa R. Smith
                                         (State Bar No. 24001351)
                                         melissa@gillamsmithlaw.com
                                         **GILLAM & SMITH LLP**
                                         303 South Washington Avenue
                                         Marshall, TX 75670
                                         Telephone: 903.934.8450
                                         Facsimile: 903.934.9257

                                         Elizabeth R. Brannen
                                         California State Bar No. 226234
                                         **STRIS & MAHER LLP**
                                         777 S. Figueroa St, Ste 3850
                                         Los Angeles, CA 90017
                                         Telephone: (213) 995-6800
                                         Fascimile: (213) 216-0299
                                         Email: ebrannen@stris.com

                                         *Attorneys for Defendants Rhodium Enterprises,*
                                         *Inc., Rhodium Technologies LLC, Rhodium*
                                         *10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW*
                                         *LLC, Rhodium Encore LLC, Rhodium*
                                         *Renewables LLC, Rhodium Renewables Sub*
                                         *LLC; and Rhodium Ready Ventures LLC*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today, April 26, 2023, with a copy of this document via the Court's CM/ECF system.

*/s/ Melissa R. Smith*