UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC**, | |
| Plaintiff, | Civil Action No. 6:22-cv-00050-ADA |
| - vs. - | **Jury Trial Demanded** |
| **Rhodium Enterprises, Inc.**;<br>**Rhodium Technologies LLC**;<br>**Rhodium 10mw LLC**;<br>**Rhodium 2.0 LLC**;<br>**Rhodium 30mw LLC**;<br>**Rhodium Encore LLC**;<br>**Rhodium Renewables LLC**; | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

**OPINIONS OF AND TO EXCLUDE TESTIMONY OF DR. JAMES LEE**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................. 2

   A. Dr. Lee's Opinions Regarding the Priority Date Were Properly Disclosed. .... 2

   B. Dr. Lee's Analysis of Midas Practicing the Claimed Invention Is Proper Rebuttal Testimony. ................................................................................................. 3

   C. There is No Requirement that the Temperature Be Measured in the Tanks. 4

III. LEGAL STANDARD ........................................................................................................ 4

IV. ARGUMENT ...................................................................................................................... 5

   A. Dr. Lee's Report Explicitly Opines that Mr. Boyd Had a Definite and Permanent Idea of the Invention of Claim 1 ................................................................ 5

   B. Dr. Lee's Opinion That Midas Practices the Claimed Invention is rebuttal to Dr. Ortega and is Not New Or Prejudicial. ................................................................. 9

   C. Dr. Lee's Opinion That Midas Practices the Claimed Invention is Reliable .. 9

V. CONCLUSION .................................................................................................................. 11

i

# Cases

*Gay v. Stonebridge Life Insurance Company*, 660 F.3d 58, 64 (1st Cir. 2011)............................... 8

*Kaneka Corp. v. Xiamen Kingdomway Group Company,* 790 F.3d 1298, 1304 (Fed. Cir. 2015)................................................................................................................................ 5

*Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ........................................... 5

*Music Choice v. Stingray Digital Group Inc.,* 2019 U.S. Dist. LEXIS 191589, *12 (E.D. Tex Nov 5, 2019)................................................................................................................. 4, 8

*Personalized Media Communications, LLC v. Apple Inc.*, 952 F.3d 1336, 1343 (Fed. Cir. 2020).................................................................................................................................. 4, 5

*SEC v. Life Partners Holdings, Inc.*, 2013 U.S. Dist. LEXIS 194549, 2013 WL 12076934, at *3 (W.D. Tex. Nov. 8, 2013) ................................................................................................. 8

*Spansion, Inc. v. International Trade Commission*, 629 F.3d 1331, 1356 (Fed. Cir. 2010)........... 5

*Summit 6, LLC v. Samsung Electronics Company, Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ... 5

I. **INTRODUCTION**

Rhodium attempts to exclude three portions of Dr. James Lee's expert report and testimony, but these attempts are meritless and should be denied. In his Rebuttal Report, Dr. Lee opined that Mr. Chris Boyd conceived the subject matter of claim 1 of the U.S. Patent 10,405,457 ("'457 Patent") at least as early as March 12, 2012. In doing so, Dr. Lee evaluated pages 4 and 5 of Mr. Boyd's inventor's notebook and opined that every limitation of Claim 1 can be found. Dr. Lee was also extensively questioned on this opinion and testified that nothing in his testimony changed or added to any of the opinions in his report. Near the end of his deposition, Dr. Lee added a one-sentence clarification to align his deposition testimony with the text of his report. The clarification was not a new opinion and did not modify an existing opinion in his Report. As such, there is no basis to strike this opinion.

Dr. Lee also opined that the products Midas sold and installed at Whinstone/Riot practiced the invention of the '457 Patent. Rhodium complains that this opinion is untimely, and wants it excluded. To the contrary, this opinion was proper rebuttal to Dr. Alphonso Ortega's assertion that he could find no commercial nexus between the claimed invention and Midas' commercial success. Exhibit 4 to Dr. Lee's Report included the claim charts from Midas' Supplemental Response to Interrogatory No. 4 dated December 2, 2022, so these were not a surprise to Rhodium. As Dr. Lee was giving a proper rebuttal opinion, and Rhodium was fully aware of the Midas position, there is no basis to strike this opinion.

Finally, Rhodium asserts that Dr. Lee's opinion on practicing the invention is unreliable because the Midas installation does not have a temperature sensor in the tank. Rhodium misreads the plain language of Claim 1 and somehow has concluded that Claim 1 requires a temperature sensor in the tank that measures fluid temperature. First, the plain language of Claim 1 does not

1

require that a temperature sensor be in the tank. Second, Claim 1 is silent as to what and where temperature is measured. Third, the '457 Patent has preferred embodiments, and none show a temperature sensor in the tank. It would violate basic patent law to interpret a claim in a way that excludes preferred embodiments. Fourth, Fig. 13 of the '457 Patent shows that temperature can be measured in many places, in either the primary or secondary circulation facilities, and in fact, Fig. 13 shows no sensor ever in the tank. Rhodium's interpretation is not supported by plain reading or by the specification of the '457 Patent.

## II. STATEMENT OF FACTS

### A. Dr. Lee's Opinions Regarding the Priority Date Were Properly Disclosed.

Dr. Lee opined in his Report that Mr. Boyd conceived of each and every claim limitation in the '457 Patent on March 12, 2012. (See Exhibit A to the Kolegraff Decl., Lee Report at ¶¶ 70-94). Dr. Lee further opined that the limitation of a "control facility" was fully formed in the mind of Mr. Boyd at the time Mr. Boyd recorded his invention in his inventor's notebook. (Ex. A, Lee Report at ¶¶ 90-94). Throughout his report, Dr. Lee referenced a reproduction of the inventor's notebook, which Dr. Lee opines shows that Mr. Boyd had every claim limitation of Claim 1 in his mind at the time of conception. Paragraph 73 could not be clearer that page 5 of the inventor's notebook showed every limitation of Claim 1, including the control facility.

> *It is my opinion that Page 5 of Mr. Boyd's inventor notebook shows that Mr. Boyd, as of March 12, 2012, had a definite and permanent idea of the complete and operative invention as set out in the Asserted Claims.* (Lee Report at ¶ 73).

At his deposition, Rhodium asked Dr. Lee if he had any corrections to his report. (See Exhibit B to the Kolegraff Decl., Lee Dep. at 10:13-13:19). Dr. Lee answered that he had four corrections to his report. (*Id.* at 10:13-23). Dr. Lee read the corrections into the record, and at the end of the deposition provided the written list of corrections to counsel. (*Id.* at 10:24-11:7). During

the deposition, Dr. Lee was asked,

> Q: "So where does page 5 of the inventor's notes talk about the control facility?"
> A: "I would say in Note 3, which is U tubes drain into a closed sump container for recirculation through heat exchanger. Note that the pump cannot drain the tank. I think this combined with the deposition conversations with Mr. Boyd clearly show that a control facility was in his mind when he conceived of the concept of the -- what became the '457 patent." (Id. at 145:20-146:5).

Dr. Lee stated <u>clearly on the record</u>, *"I did refer to page 5 when making my opinion that there was a control facility included."* (*Id.* at 149:16-18). At the conclusion of his testimony, Dr. Lee was asked by Rhodium if he had any amendments to his list of corrections. Dr. Lee stated that he intended to add:

> *Due to the confusion of the questioning around limitation -- or of section H, I should say, I said I would like to add the addition at the end of paragraph 93 on page 34… This limitation H is fully supported by the inventor's notebook pages 4 and 5, including the side view and annotations and notes 3 and 4 on pages 5 of the inventor's notebook. (Ex. B, Lee Dep. at 285:6-25).*

Dr. Lee's opinion that Mr. Boyd had conceived of every claim limitation by March 12, 2012 is not new or prejudicial, and the one sentence added near the end of the deposition was done simply to align his deposition testimony with his report. Rhodium is not prejudiced in any way.

### B.   Dr. Lee's Analysis of Midas Practicing the Claimed Invention Is Proper Rebuttal Testimony

In his Opening Invalidity Expert Report, Dr. Ortega opined:

> *I have not seen documentation that would support MGT's allegations of commercial success tied to the claimed invention. To the extent the Asserted Patents have achieved the commercial success that MGT alleges, I have seen no evidence that such commercial success is due to the claimed invention. (See Exhibit C to the Kolegraff Decl., Ortega Report at ¶393).*

As would be expected, Dr. Lee responded to Dr Ortega's comment, and opined in rebuttal that Midas does practice the claimed invention. (Ex. A, Lee Report at ¶372). In fact, Dr. Lee cites the same interrogatory response upon which Mr. Duross O'Bryan relied in forming his Expert

3

Opinion. Again, this opinion is not new or prejudicial and was done in rebuttal to a position taken by Dr. Ortega in his *opening* report.

### C. There is No Requirement that the Temperature Be Measured in the Tanks.

Rhodium baldly asserts that there must be a temperature sensor in the tank that directly measures the fluid temperature. (Motion, pg. 7). This oddly narrow interpretation is not supported by a plain reading of the claim and would exclude preferred embodiments described and disclosed in the '457 Patent specification. Claim 1 requires that the control facility coordinate operation of the circulation facilities as a function of temperature. The claim is completely silent on the use of any temperature probe at all, and the claim certainly does not place a temperature probe in the tank. It is surprising that Rhodium takes such an extreme position, as the preferred embodiments of the '457 Patent *do not even* have a temperature sensor in the tank. Further, its basic patent law that claims should not be interpreted to not read-on preferred embodiment. *Personalized Media Communs., LLC v. Apple Inc.*, 952 F.3d 1336, 1343 (Fed. Cir. 2020).

### III. <u>LEGAL STANDARD</u>

Providing notice to opposing counsel of the expert's proposed testimony is one of the primary purposes of Rule 26(a)(2)(B). *Music Choice v. Stingray Dig. Grp. Inc.,* 2019 U.S. Dist. LEXIS 191589, *12 (E.D. Tex Nov 5, 2019),

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson,* 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible, or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015);.

4

"Conception may be corroborated even if no single piece of evidence shows complete conception. Instead, all of the evidence of record must be collectively evaluated in determining when the invention was conceived. [Citations Omitted]." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010). "[A] particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Personalized Media Communs., LLC* see also MPEP § 2111. "A construction that excludes all disclosed embodiments . . . is especially disfavored." *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.,* 790 F.3d 1298, 1304 (Fed. Cir. 2015).

IV. **ARGUMENT**

**A. Dr. Lee's Report Explicitly Opines that Mr. Boyd Had a Definite and Permanent Idea of the Invention of Claim 1**

In his report, Dr. Lee opined that Mr. Boyd's inventor notebook at page 5 fully evidenced each and every limitation of Claim 1 including the claim limitation "H" regarding the "control facility." Dr. Lee states:

> *It is my opinion that Page 5 of Mr. Boyd's inventor notebook shows that Mr. Boyd, as of March 12, 2012, had a definite and permanent idea of the complete and operative invention as set out in the Asserted Claims. It is also my opinion that Page 5 is a sufficient contemporaneous disclosure that would enable one skilled in the art to make the invention of the Asserted Claims, which was corroborated by Mr. Koen on March 14, 2012.* (Ex. A, Lee Report at ¶73).

In this way, Dr. Lee opines directly that EVERY limitation in Claim 1 can be found in Mr. Boyd's inventor notebook at page 5. Furthermore, at the close of his deposition, Dr. Lee added the following sentence to the end of paragraph 73:

> *"This limitation 'H' is fully supported by the inventor notebook pages 4 and 5, including the side view and annotations, and notes 3 and 4 on page 5 of the inventor notebook."*

As Dr. Lee already had the opinion that Mr. Boyd's inventor's notebook at page 5 shows

5

EVERY limitation of Claim 1, the newly added sentence cannot be a new opinion, but simply confirms what he already stated in paragraph 73. Dr. Lee analyzed Mr. Boyd's inventor's notebook at page 5 in section IX(A) of his report (Ex. A, Lee Report at ¶¶70-94). An introduction to the inventor's notebook and explicitly page 5, are described in paragraphs 70-74, while paragraphs 75-89 evaluate each of the limitations other than the control facility. The control facility is further evaluated in paragraphs 90-94 and additionally cite Mr. Boyd's extensive experience in control systems.

In his deposition Dr. Lee agreed that in the text of section IX(A)(H) of his report he had not expressly referred to page 5 of the inventor's notebook. (Ex. B, Lee Dep. at 144:14-15). Rhodium's counsel seized on this as a "gotcha" moment and tried to get Dr. Lee to change or modify his opinion that page 5 showed every limitation:

> *Q. Do you wish to revise your opinion at page 24, paragraph 73, that page 5 of Mr. Boyd's inventor's notebook shows that Mr. Boyd, as of March 12th, 2012, had a definite and permanent idea of the complete and operative invention as set out in the asserted claims?*
> *A. No.*
>    (Ex. B, Lee Dep. at 145:13-19).

Instead of making any change to his existing opinion, Dr. Lee emphatically confirms his existing opinion in ¶ 73, which states that every limitation of Claim 1 can be found on page 5 of the inventor's notebook. Rhodium's counsel then challenged Dr. Lee to identify where more specifically on page 5 the control facility can be found.

> *Q.    And so where does page 5 of the inventor's notes talk about the control facility?*
> *A.    I would say in Note 3, which is U tubes drain into a closed sump container for recirculation through heat exchanger. Note that the pump cannot drain the tank. I think this combined with the deposition and conversations with Mr. Boyd clearly shows that a control facility was in his mind when he conceived of the concept of the -- what became the '457 patent. ( Ex. B, Lee Dep. at 145:13-146:5).*

Once more, Rhodium's counsel attempts to claim that Dr. Lee was forming a new opinion

6

when addressing page 5 in relation to the control facility:

> *Q. And you're pointing to this paragraph. So the assertion that page 5 discloses the control facility limitation is a new opinion that you're offering? [objections removed]*
> *A. If I recall correctly -- and if I'm wrong, please point it out -- what you asked was in Section H, which is a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank, did I refer to page 5. And the answer to that is yes. Did I never respond or never cite page as being considered for my opinion? The answer to that would be yes, I did consider it, just not in Section 8 -- H. So I think it's a stretch to say because it's not in Section H I didn't consider it.*
> (Lee Dep. at 146:22-147:18).[1]

It's also important to note that ¶94, which is the final paragraph in section H regarding the control facility, states as follows:

> *It is my opinion the Mr. Boyd invented this limitation no later than March 12, 2012, and Mr. Koen corroborated it on March 14, 2012. (Id.).*

Here Dr. Lee is referring to page 5 of the inventor's notebook, which was used by Mr. Boyd to show conception, and also used by Mr. Koen to corroborate the control facility. This necessarily means that Dr. Lee *was* using page 5 of Mr. Boyd's inventor notebook to show the control facility of Claim 1. Dr. Lee opined in ¶ 73 of his report that every limitation of Claim 1 was shown on page 5 of Mr. Boyd's inventor's notebook; Nothing in his deposition testimony changed that.

Rhodium argues, in essence, that unless each and every paragraph in an Expert Report states explicitly that it relies on a piece of evidence, then an expert did not sufficiently rely on that information. Based on this erroneous analysis, Rhodium asserts that since Dr. Lee's opinions in ¶¶90-94 of his report do not explicitly mention page 5, any allusion to page 5 would now constitute an entirely new opinion. This is an absurd argument that is unsupported by law or fact. Dr. Lee's

---

[1] In pages of questioning on this topic, Dr. Lee points out that he annotated the inventor notebook page 5 to highlight "Note 3", page 25

7

Report fully sets out his opinion that every limitation of Claim 1 can be found from Mr. Boyd's inventor's notebook. In *Music Choice*, the court faced a similar argument. The Court rejected the moving party's motion to strike the expert testimony on the grounds that the expert's "statements… merely elaborate on the already existing opinions within the expert non-infringement report." *Music Choice, citing Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011) ("Although his testimony uses different words than the expert report, it was a reasonable elaboration of the opinion disclosed in the report."); *see also SEC v. Life Partners Holdings, Inc.*, 2013 U.S. Dist. LEXIS 194549, 2013 WL 12076934, at *3 (W.D. Tex. Nov. 8, 2013)

Similarly, Dr. Lee did opine that page 5 of Mr. Boyd's inventor notebook discloses each and every claim. Dr. Lee also references Mr. Boyd's testimony that he had worked for years developing complex control systems for the national telecommunication giant. (Ex. A, Lee Report at ¶¶90-94). Hence, the Report sufficiently expresses Dr. Lee's opinion on the matter and leaves no basis for Rhodium to claim unfair surprise or prejudice. In his deposition, Dr. Lee simply elaborated on his already formed and stated opinion that page 5 of Mr. Boyd's inventor's notebook also discloses the claim limitation of a control facility. Consequently, there is no prejudice to Rhodium. In fact, from the start of this case, Midas asserted a priority date of March 14, 2012, for all asserted claims in its preliminary infringement contentions.

> *"The priority date (earliest date of invention) for all asserted claims is at least as early as March 14, 2012."* (See Exhibit D to the Kolegraff Decl., Midas Preliminary Infringement Contentions, dated April 2022 at page 1-2).

Furthermore, Midas served supplemental responses to interrogatory no. 2 and clearly indicated that:

> *Midas contends that for the asserted claims, it is entitled to a date of first conception at least as early as March 14, 2012, see MIDAS0000036 (lab notebook signed by Chris Boyd on March 4, 2012 and witnessed by Jim Koen on March 14, 2012).* (See Exhibit E to the Kolegraff Decl.).

8

Rhodium has known since Spring 2022 that Midas was relying on the evidence from page 5 of Mr. Boyd's inventor's notebook to affirmatively claim a date of conception of March 12, 2012. In other words, Rhodium cannot claim to be surprised that Midas is now taking the position that its priority date claim is supported by Mr. Boyd's inventor's notebook page 5. This is just absurd.

### B. Dr. Lee's Opinion That Midas Practices the Claimed Invention is rebuttal to Dr. Ortega and is Not New Or Prejudicial.

In Dr. Ortega's opening infringement report at ¶ 393 he opined:

*I have not seen documentation that would support MGT's allegations of commercial success tied to the claimed invention. To the extent the Asserted Patents have achieved the commercial success that MGT alleges, I have seen no evidence that such commercial success is due to the claimed invention.*

In his rebuttal report, Dr. Lee answered Dr. Ortega, and opined that Midas practices the claimed invention. (Ex. A, Lee Report at ¶372). As a result, Dr. Lee's opinion that Midas practices the '457 Patent is proper rebuttal opinion. Further, Dr. Lee's opinion is no surprise to Rhodium, as Dr. Lee supports his opinion using claim charts he attached as Exhibit 4. These claim charts in Exhibit 4 are the same charts that Midas served on Rhodium on December 2, 2022 in its supplemental response to interrogatory no. 4. (See Exhibit F to the Kolegraff Decl.). As a result, Rhodium has been on notice for *over a year* that Midas practices the patented invention. And Rhodium has had possession for *over a year* of the exact Exhibit 4 claim charts that Dr. Lee attached to his Report. It seems disingenuous that Rhodium now claims surprise or lack of notice.

### C. Dr. Lee's Opinion That Midas Practices the Claimed Invention is Reliable

Dr. Lee's report correctly identifies that Midas does not use a temperature sensor in the tank. Rhodium repeatedly asserts that there must be a temperature sensor in the tank that directly measures the fluid temperature. (Motion, pg. 10). This oddly narrow interpretation is not supported

9

by a plain reading of the claim, and this interpretation would exclude preferred embodiments described and shown in the '457 Patent specification. (See Exhibit G to the Kolegraff Decl.). Claim 1 only requires that the control facility coordinate operation of the circulation facilities as a function of temperature. The claim is completely silent on the use and placement of any temperature probe at all, and the claim certainly does not place a temperature probe in the tank. It's disconcerting that Rhodium adopts such an extreme interpretation, especially considering that the '457 Patent's preferred embodiments don't incorporate a temperature sensor in the tank. For example, Fig. 4 shows that a preferred embodiment has a temperature probe "T" in a thermowell of a recovery reservoir, which is behind the tank.



Fig. 4 shows a preferred embodiment of the Immersion Cooling System.

There is a tank (14) where the electronic appliances are fully immersed in a dielectric fluid.

There is a separate recovery reservoir (42).

Hot fluid from the tank (14) flows over a weir (not shown) and is collected in a recovery reservoir (42).

A temperature probe (T) is coupled only to the recovery reservoir (42).

There is no temperature probe in the tank (14).

FIG. 12, further illustrates that the temperature probes (T) are not in the tank (14) but are in the recovery reservoir (42). This is again shown in the extraction for Fig. 13, below, which shows the temperature "T" being measured from the recovery reservoir, not the tank.

10



Further, as shown in the text and extraction from Fig. 13, probes "S" (which can be temperature probes) are placed on the oil fluid lines themselves, and temperature probe T is on the recovery reservoir. In this way, the '457 Patent discloses preferred embodiments taking temperature readings outside the tank, so claim 1 cannot require a temperature probe in the tank.



> *As can be seen, we have incorporated into the primary circulation sub-facility 28a: supply and return sensors, including a temperature probe, T, inserted into a thermowell (not shown) installed in the bottom of the reservoir 42 adjacent a respective return port 44a (note that, in FIG. 4, only one of the holes that receive the thermowells is illustrated, but both holes are illustrated in FIG. 12); a pair of sensor facilities, S, which may sense temperature, pressure and conductivity, as deemed desirable )* (Ex. G, '457 Spec. 5:41-49).

Regardless, this argument that Dr. Lee's placement of the sensors goes to the weight of his testimony and not its admissibility. There is no basis to exclude this testimony.

## V.    CONCLUSION

Based on the forgoing, Midas respectfully requests that the Court deny Rhodium's motion in its entirety.

| | |
|---|---|
| DATED: March 15, 2024 | Respectfully submitted,<br>*/s/ Joseph E. Thomas* <br><br>Joseph E. Thomas (*admitted p.h.v.*)<br>William J. Kolegraff (*admitted p.h.v.*)<br>Grant J. Thomas (*admitted p.h.v.*)<br>THOMAS WHITELAW & KOLEGRAFF LLP<br>18101 Von Karman Ave., Suite 230<br>Irvine, California 92612<br>Telephone: (949) 679-6400<br>Fax: (949) 679-6405<br>jthomas@twtlaw.com<br>bkolegraff@twtlaw.com<br>gthomas@twtlaw.com<br><br>Attorneys for Plaintiff Midas Green Technologies |

## CERTIFICATE OF SERVICE

    I hereby certify that counsel of record who have appeared electronically in this case are being served with this document on March 15, 2024 by way of the primary email address that said counsel supplied to the Court's CM/ECF system.

/s/ Tierra Mendiola