1              UNITED STATES DISTRICT COURT

2               WESTERN DISTRICT OF TEXAS

3                    WACO DIVISION

4

5    MIDAS GREEN TECHNOLOGIES,   )
     LLC,                        )
6                                )
                 Plaintiff,      )
7                                )
                 vs.             )    No.
8                                )    6:22-cv-00050-ADA
     RHODIUM ENTERPRISES,        )
9    INC., et al.,               )
                                 )
10               Defendant.      )
     ------------------------    )

11

12

13

14        * * * C O N F I D E N T I A L * * *

15

16

17                     February 19, 2024

18                     9:40 a.m.

19

20          Deposition of JAMES H. LEE on

21     invalidity, held at the offices of K&L Gates

22     LLP, 599 Lexington Avenue, New York, New York,

23     pursuant to notice, before Laurie A. Collins,

24     a Registered Professional Reporter and Notary

25     Public of the State of New York.

                                        Page 1

1    Q.   I'm asking about the entirety of your
2  definition.  I focused you on the part that that I
3  was particularly --
4         ATTORNEY THOMAS:  Interested in.
5    Q.  -- interested in.              09:48:15
6         ATTORNEY THOMAS:  You didn't read all
7  of it.
8    A.   It also says, Additional education can
9  compensate for less particular experience and vice
10  versa.                              09:48:26
11         After reviewing it, I would not modify
12  the definition, no.
13    Q.   Okay.  And, by the way, I should also
14  just ask you:  Is there anything in your report
15  that you're aware of before we start that you     09:48:34
16  would like to modify or correct?
17    A.   I do have four corrections that I would
18  like to put forward --
19    Q.   Oh, okay.
20    A.  -- from my report.               09:48:45
21    Q.   All right.  What is that piece of
22  paper?
23    A.   This is a list of the four corrections.
24    Q.   Okay.  I'd like to get a photo of it.
25         ATTORNEY THOMAS:  We'll give it to you   09:48:56

Page 10

1  at a break.  He'll read them into the record
2  now.  We'll give you a copy.
3         ATTORNEY HALPERN:  That would be great.
4  Thank you.
5         ATTORNEY THOMAS:  Go ahead.         09:49:04
6         Do you want him to read it?
7         ATTORNEY HALPERN:  Yes.
8    A.   At --
9    Q.   Yes.
10    A.   Are you ready for me to start?     09:49:11
11    Q.   I'm ready.
12    A.   Okay.  It says at paragraph 258 the
13  last sentence currently says, Consequently, the
14  2014 Best publication does not disclose a plenum
15  positioned adjacent to the bottom of the tank     09:49:27
16  adapted to dispense the dielectric fluid
17  substantially uniformly upwardly through each
18  appliance slot and therefore the Best '463 patent
19  is incapable of anticipating Claim 1 under 35 USC
20  paragraph 102.                        09:49:45
21         Now, the corrected version should read,
22  Consequently, the 2014 Best publication does not
23  disclose a plenum positioned adjacent to the
24  bottom of the tank adapted to dispense the
25  dielectric fluid substantially uniformly upwardly  09:50:02

Page 11

1  through each appliance slot and therefore the 2014
2  Best publication is incapable of anticipating
3  Claim 1 under 35 USC at 102.
4    Q.   Okay.
5    A.   The next correction is at paragraph 274  09:50:26
6  in the third sentence.
7    Q.   Okay.
8    A.   Currently that sentence says, It is not
9  boiling dielectric fluid.  The correct version
10  should say, It is not circulating dielectric     09:50:42
11  fluid.
12    Q.   Okay.
13    A.   The next correction should be an
14  omitted paragraph immediately after paragraph 370
15  on page 121.                          09:51:02
16    Q.   Okay.
17    A.   And the additional paragraph should
18  read, It is my opinion that there is no motivation
19  for a POSITA to use the JP '758 patent nor the
20  Attlesey '419 patent in combination with any other  09:51:28
21  references cited by Dr. Ortega.
22         (Pause.)
23    A.   And I can repeat any of that if it
24  would be helpful.
25    Q.   I'm just writing.  One moment.     09:52:26

Page 12

1    A.   Okay.
2         (Pause.)
3    Q.   Okay.
4    A.   And then the fourth and last correction
5  that I'm currently aware of, the last sentence   09:52:40
6  words "otherwise system does not work" should be
7  removed from the end of the sentence.  But I want
8  to emphasize --
9    Q.   I don't know where you are.  You didn't
10  say.                                 09:52:56
11    A.   Oh, paragraph 382.  I apologize.
12    Q.   Okay.  So what's the --
13    A.   So the words at the end of the sentence
14  "otherwise system does not work" should be removed
15  from the end of the sentence, but the footnote     09:53:19
16  should remain.
17    Q.   Okay.  All right.
18    A.   And that is all the corrections I'm
19  currently aware of.
20    Q.   Okay.  Thank you.              09:53:29
21         ATTORNEY HALPERN:  So this would be Lee
22  Exhibit 2.
23         ATTORNEY THOMAS:  Lee Exhibit 2, for
24  the record -- for the record, Lee Exhibit 2 is
25  Exhibit 1 to the report.              09:54:52

Page 13

4 (Pages 10 - 13)

1 automatically control inactive messaging systems
2 that were not operating properly.
3    Q.   Okay.  For both of those sentences you
4 cite to the deposition testimony of Mr. Boyd --
5 correct? -- Footnotes 9 and 10?                02:45:17
6    A.   Yes, that's correct.
7    Q.   Was there information in there that
8 derived also from conversations with Mr. Boyd in
9 addition to his deposition testimony?
10    A.   During a conversation with Mr. Boyd, we  02:45:39
11 did talk about the inventor's notebook, page 5.
12 We also talked about inventor's notebook page 4,
13 which does have a mention of -- I forget the exact
14 quote -- somehow water was going to be -- I think
15 rainwater was being recaptured for the external   02:45:59
16 coolers.
17        And so I did ask him if, you know, he
18 intended -- in his -- as he was conceiving of the
19 information on page 5 was he also considering a
20 secondary cooling system, and he pointed to page  02:46:2
21 4.  He said, yes, definitely, you know, any
22 practical cooling system would need to have a
23 secondary cooling facility.
24    Q.   Okay.  But that's the secondary cooling
25 facility.  There's no -- you didn't mention --     02:46:41
Page 142

1 well, first of all, that is not cited in your
2 report; right?  Page 4 is not cited here, of
3 Dr. -- in this section -- sorry.
4        In these paragraphs discussing control
5 facility, you don't cite -- as you already       02:46:56
6 testified, you don't cite any page of Mr. Boyd's
7 inventor's notebook?
8    A.   Oh, sure -- of Section H?
9    Q.   Yeah.
10    A.   Okay.  No, I do not.              02:47:11
11    Q.   But you're referencing that Mr. Boyd
12 told you in conversation that he had in mind --
13 well, I'm asking about a control facility.  Are
14 you telling me he had in mind -- he told you in
15 conversation, in addition to the testimony you   02:47:33
16 cite here, at the time he had a control facility
17 in mind?
18    A.   Yes, I believe in deposition he said it
19 would be something along the lines of any system
20 would require a control system.              02:47:48
21    Q.   Okay.  I'm just trying to establish
22 what you're relying on here.  So you're relying on
23 his deposition testimony, and are you also relying
24 on conversations you had with him for your
25 opinions in Section H about limitation H,        02:47:59
Page 143

1 paragraphs 90 through 93?
2    A.   Yes.
3    Q.   Okay.
4        So you do not offer any opinion that
5 the control facility limitation is described on   02:48:24
6 page 5 of Mr. Boyd's inventor's notebook; correct?
7        I'm talking about like what you have
8 here.  In your discussion from 90 to 93,
9 paragraphs 90 to 93 -- you can include 94, which
10 is kind of the ultimate opinion -- you don't offer  02:48:49
11 any opinions in paragraphs 90 to 94 that the
12 control facility limitation is described on page 5
13 of Mr. Boyd's inventor's notebook; correct?
14    A.   In Section H I do not refer to page 5
15 of Mr. Boyd's notebook, no.                02:49:08
16    Q.   And the control facility limitation
17 that you quote in heading H on page 32 is part of
18 the claimed invention; right?
19    A.   Yes, it is.
20    Q.   Okay.  In light of that, do you wish to  02:49:23
21 revise your opinion, which is at page 73,
22 paragraph 24 --
23    A.   Page 73?
24    Q.   Unless I somehow screwed this up, which
25 I'm fearing that I have.  Okay.  Sorry.  I have an  02:49:44
Page 144

1 incorrect reference in there -- paragraph 73, page
2 24.  Yes.  Okay.
3        Yeah, do you wish to revise your
4 opinion at page 24, paragraph 73, that page 5 of
5 Mr. Boyd's inventor's notebook shows that        02:50:23
6 Mr. Boyd, as of March 12th, 2012, had a definite
7 and permanent idea of the complete and operative
8 invention as set out in the asserted claims, since
9 the complete invention includes the limitation H
10 and you've just testified that you don't point to  02:50:50
11 any support on page 5 for that limitation?
12    A.   Can you repeat your question?
13    Q.   Sure.  Do you wish to revise your
14 opinion at page 24, paragraph 73, that page 5 of
15 Mr. Boyd's inventor's notebook shows that        02:51:13
16 Mr. Boyd, as of March 12th, 2012, had a definite
17 and permanent idea of the complete and operative
18 invention as set out in the asserted claims?
19    A.   No.
20    Q.   Okay.  And so where does page 5 of the  02:51:28
21 inventor's notes talk about the control facility?
22    A.   I would say in Note 3, which is U tubes
23 drain into a closed sump container for
24 recirculation through heat exchanger.  Note that
25 the pump cannot drain the tank.             02:53:02
Page 145

37 (Pages 142 - 145)

1    I think this combined with the
2 deposition and conversations with Mr. Boyd clearly
3 shows that a control facility was in his mind when
4 he conceived of the concept of the -- what became
5 the '457 patent.                    02:53:28
6    Q.   So you did not cite this in this
7 discussion on page 5 -- correct? -- as I think you
8 already testified?
9         ATTORNEY THOMAS:  I just want to
10 object.  It's at page 25 -- he just read from  02:53:41
11 page 25 of his report.
12        ATTORNEY HALPERN:  Yeah.  No, I know.
13 But I asked him earlier if he had identified
14 in his discussion of the control facility
15 limitation anything supporting that as     02:54:00
16 disclosed on page 5, and he acknowledged that
17 he had not cited page 5 and that all the
18 materials that he was relying on were in that
19 section.
20    So now I've asked, well, what on page 5  02:54:12
21 supports that limitation.
22    Q.   And you're pointing to this paragraph.
23 So the assertion that page 5 discloses the control
24 facility limitation is a new opinion that you're
25 offering?                           02:54:38

Page 146

1 the control facility limitation.
2    A.   And you were asking specifically about
3 Section H.  Am I not correct?
4    Q.   Yeah, the control facility limitation.
5    A.   In Section H I did not refer to it,   02:56:11
6 which was your question.  So I answered your
7 question as stated I believe correctly.  If I --
8 if I did not, I will amend my answer.
9    Q.   Okay.  I asked you does this section
10 identify all the facts and evidence you considered  02:56:55
11 and relied on in forming that opinion, the opinion
12 that Mr. Boyd had conceived of the control
13 facility limitation as of March 14th, 2012.
14    I said does this section identify all
15 the facts and evidence you considered and relied   02:57:15
16 on in forming that opinion that the patent is
17 entitled to a priority date of March 14th, 2012.
18 And, I'm sorry, and then...
19        (Pause.)
20    Q.   I said, So you do not offer any opinion  02:58:01
21 that the control facility limitation as described
22 on page 5 of Mr. Boyd's inventor's notebook.  And
23 then it says correct.  I think that was an answer,
24 but it's not showing as an answer on the real-
25 time, and then -- but I could be wrong.  Just from  02:58:17

Page 148

1         ATTORNEY THOMAS:  Objection,
2 mischaracterizes his report.
3         ATTORNEY HALPERN:  I'm asking.
4    A.   If I recall correctly -- and if I'm
5 wrong, please point it out -- what you asked was   02:54:49
6 in Section H, which is a control facility adapted
7 to coordinate the operation of the primary and
8 secondary fluid circulation facility as a function
9 of the temperature of the dielectric fluid in the
10 tank, did I refer to page 5.  And the answer to   02:55:04
11 that is yes.
12    Did I never respond or never cite page
13 5 as being considered for my opinion?  The answer
14 to that would be yes, I did consider it, just not
15 in Section 8 -- H.                   02:55:24
16    So I think it's a stretch to say
17 because it's not in Section H I didn't consider
18 it.
19    Q.   I didn't ask if you considered it; I
20 asked if you cited it or relied on it --     02:55:36
21    A.   In Section H.
22    Q.   Yes, as support.  I asked you if you
23 cited or relied on page 5 of the inventor notes as
24 support for a disclosure as of -- or of -- sorry,
25 a support for invention as of March 14th, 2012, of  02:55:56

Page 147

1 the rhythm of it.  Maybe I'm wrong.  Okay.
2    Then I asked, In your discussion from
3 90 to 93, paragraphs 90 to 93, you don't offer any
4 opinions in paragraphs 90 to 94 that the control
5 facility limitation is described on page 5 of     02:58:36
6 Mr. Boyd's inventor's notebook; correct?  And you
7 answered, In Section H I do not refer to page 5 of
8 Mr. Boyd's notebook, no.
9    A.   Which is a true statement.
10    Q.   Okay.                       02:58:48
11    A.   If you look at all these different
12 paragraphs in Section H, there is no mention of
13 page 5.
14    Q.   Okay.
15    A.   I believe it isn't a stretch -- and let  02:58:55
16 me just be very clear -- I did refer to page 5
17 when making my opinion that there was a control
18 facility included.
19    Q.   Where did you refer to page 5 in
20 support of that opinion?               02:59:08
21    A.   It is right here on page 25.  As I
22 said, in note 3.
23    Q.   Page 25 is just (indicating).
24    A.   It's a reproduction --
25    Q.   Right.                      02:59:25

Page 149

38 (Pages 146 - 149)

1    Q.   And why is it that you want to make
2  this clarification or correction to your report?
3    A.   I think this more correctly expresses
4  the material considered in Section H.
5        ATTORNEY THOMAS:  Okay.  I have no        07:06:29
6  further questions.
7        ATTORNEY HALPERN:  Okay.  And not going
8  to ask a question about this, but I'm just
9  going to move to strike this.  Obviously we
10  have to follow this up with a written motion   07:06:37
11  as an untimely opinion that goes outside the
12  scope of his report.  I asked him questions
13  about it.  He testified about it.  You know,
14  that's part of the normal process.  But this
15  is not.  So move to strike.                    07:06:48
16        ATTORNEY THOMAS:  Okay.  Motion denied.
17  Okay.  We're done.
18        (Continued on following page.)
19
20
21
22
23
24
25
                                            Page 286

---

1        THE VIDEOGRAPHER:  We're going off the
2  record at 7:07 p.m.  This concludes today's
3  testimony given by Dr. James Lee.  The total
4  number of media units used was eight and will
5  be retained by Veritext Legal Solutions.       07:07:10
6  Thank you.  We're off the record.
7        (Time noted:  7:07 p.m.)
8        _____
9        JAMES H. LEE
10
11  Subscribed and sworn to before me
12  this ___ day of _____ 2024.
13
14  _____
15
16
17
18
19
20
21
22
23
24
25
                                            Page 287

---

1             C E R T I F I C A T E
2  STATE OF NEW YORK   )
3                     : ss.
4  COUNTY OF NEW YORK  )
5
6        I, LAURIE A. COLLINS, a Registered
7  Professional Reporter and Notary Public
8  within and for the State of New York, do
9  hereby certify:
10        That JAMES H. LEE, the witness whose
11  deposition is hereinbefore set forth, was
12  duly sworn by me and that such deposition
13  is a true record of the testimony given by
14  the witness.
15        I further certify that I am not
16  related to any of the parties to this
17  action by blood or marriage and that I am
18  in no way interested in the outcome of this
19  matter.
20        IN WITNESS WHEREOF, I have hereunto
21  set my hand this 21st day of February 2024.
22
23
24        _____
          LAURIE A. COLLINS, RPR
25
                                            Page 288

---

1  - - - - - - - - - - I N D E X - - - - - - - - - -
2
3  WITNESS:        EXAMINATION BY:        PAGE
4  James H. Lee    Attorney Halpern        5
5
6  ------------------- EXHIBITS -------------------
7  LEE NO.         DESCRIPTION          PAGE
8
9  Exhibit 1, expert report of Lee        8
10  Exhibit 2, Exhibit 1 to expert report    14
11  of Lee
12  Exhibit 3, Exhibits 3 and 4 to expert    57
13  report of Lee
14  Exhibit 4, excerpted deposition         73
15  transcript of Sickmiller
16  Exhibit 5, press release            93
17  Exhibit 6, excerpted deposition       116
18  transcript of Boyd
19  Exhibit 7, pages 217 to 222 from       118
20  deposition transcript of Boyd
21  Exhibit 8, Exhibit 8 to deposition of    137
22  Boyd
23  Exhibit 9, errata to deposition       168
24  transcript of Boyd
25  Exhibit 10, pages 164 and 165 of       169
                                            Page 289

73 (Pages 286 - 289)