# EXHIBIT H
# PROPOSED JURY
# INSTRUCTIONS AND SPECIAL
# INSTRUCTIONS

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**
WACO DIVISION

| | | |
|---|---|---|
| **Midas Green Technologies, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:22-CV-00050-ADA |
| v. | ) | |
| | ) | |
| **Rhodium Enterprises, Inc.;** | ) | **JURY TRIAL DEMANDED** |
| **Rhodium Technologies LLC;** | ) | |
| **Rhodium 10MW LLC;** | ) | |
| **Rhodium 2.0 LLC;** | ) | |
| **Rhodium 30MW LLC;** | ) | |
| **Rhodium Encore LLC;** | ) | |
| **Rhodium Renewables LLC;** | ) | |
| **Rhodium Renewables Sub LLC;** and | ) | |
| **Rhodium Ready Ventures LLC.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**PROPOSED JURY INSTRUCTIONS**</u>

Pursuant to the Court's Standing Order, the parties make the below jury instruction proposal. Text agreed by the parties is in black. Proposals by plaintiff Midas Green Technologies, LLC ("Midas Green") are in red. Proposals by defendants Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium 10MW LLC, Rhodium 2.0 LLC, Rhodium 30MW LLC, Rhodium Encore LLC, Rhodium Renewables LLC, Rhodium Renewables Sub LLC, and Rhodium Ready Ventures LLC (together, "Rhodium") are in blue.

1.        PRETRIAL INSTRUCTIONS...........................................................5

    1.1        Instructions for the Beginning of Trial .......................................5

    1.2        Nature of the Parties and the Action .........................................7

    1.3        United States Patents..................................................................8

    1.4        Patent Litigation.........................................................................9

    1.5        Contentions of the Parties .......................................................10

    1.6        Trial Procedure.........................................................................12

    1.7        Preliminary Instructions to Jury ..............................................14

2.        DURING-TRIAL INSTRUCTIONS .......................................16

    2.1        First Recess ...............................................................................16

    2.2        Stipulations of Fact ..................................................................17

    2.3        Limiting Instruction .................................................................18

    2.4        Charts and Summaries ..............................................................19

    2.5        Demonstrative Evidence ..........................................................20

    2.6        Impeachment by Witnesses' Inconsistent Statements .............21

    2.7        Deposition Testimony...............................................................22

3.        FINAL JURY INSTRUCTIONS ..............................................23

    3.1        Prefatory Final Jury Charge ....................................................23

    3.2        Summary of Contentions ..........................................................25

    3.3        Burden of Proof: Preponderance of the Evidence....................27

    3.4        Burden of Proof: Clear and Convincing Evidence ..................28

3.5      Evidence ........................................................................................................ 29

3.6      Witnesses ...................................................................................................... 30

3.7      Expert Witnesses .......................................................................................... 31

3.8      Claim Construction ....................................................................................... 32

    3.8.1  Midas Green's Proposal ........................................................................ 32

    3.8.2  Rhodium's Proposal .............................................................................. 33

3.9      Infringement .................................................................................................. 36

    3.9.1  Midas Green's Proposal ........................................................................ 36

    3.9.2  Rhodium's Proposal .............................................................................. 40

3.10     Invalidity ...................................................................................................... 43

    3.10.1 Midas Green's Proposal ........................................................................ 43

    3.10.2 Rhodium's Proposal .............................................................................. 45

3.11     Anticipation .................................................................................................. 54

    3.11.1 Anticipation - Generally ....................................................................... 54

    3.11.2 Prior Public Knowledge (Pre-AIA) ...................................................... 57

    3.11.3 Prior Public Use (Pre-AIA) ................................................................... 58

    3.11.4 Prior Patent (Pre-AIA) .......................................................................... 60

3.12     Damages Generally ....................................................................................... 61

3.13     Damages Start Date ....................................................................................... 64

3.14     Kinds of Damages That Can Be Recovered ................................................. 65

3.15     Lost Profits  - Generally ................................................................................ 66

    3.15.1 Midas Green Proposal ........................................................................... 66

3.15.2 Rhodium Proposal .................................................................. 67

3.16    Lost Profits – Panduit Factors – Demand ................................. 69

3.17    Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes. 70

3.18    Lost Profits – Panduit Factors  - Ability to Meet Demand ...................... 71

3.19    Lost Profits – Amount of Profit – Incremental Income Approach ........... 72

3.20    Lost Profits – Convoyed Sales .................................................. 73

3.21    Reasonable Royalty – Generally ................................................ 74

3.22    Reasonable Royalty – Hypothetical Negotiation Method ...................... 76

3.23    Reasonable  Royalty  –  Relevant  Factors  If  Using  the  Hypothetical Negotiation Method .................................................................. 77

3.24    Reasonable Royalty – Attribution / Apportionment ................................ 80

3.25    Reasonable Royalty – Timing .................................................. 82

3.26    Reasonable Royalty – Availability of Non-Infringing Substitutes ........... 83

3.27    Reasonable Royalty – Use of Comparable License Agreements.............. 85

3.28    Doubts Resolved Against Infringer .......................................... 86

3.29    Willful Infringement .......................................................... 87

3.30    Bias – Corporate Party Involved.............................................. 88

3.31    Duty to Deliberate; Notes .................................................... 89

1.    **Pretrial Instructions**

1.1    **Instructions for the Beginning of Trial**

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging ser- vice, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the wit- nesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process.

If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

*Source: Pattern Jury Instructions 2020.*

### 1.2    Nature of the Parties and the Action

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

This is a patent case. The patents involved in this case relate to immersion cooling technology. Computers can get hot when they operate.  One way to cool them is to immerse them in a [special][non-conductive] fluid so the heat moves from the computer to the fluid. The [circulating fluid can be cooled][fluid can be circulated and cooled] so that the computers operate in a safe temperature range.  During the trial, the parties will offer testimony to familiarize you with this technology.

[Midas is the owner of a patent, which is identified by the Patent Office number: 10,405, 457 (which may be called "the '457 patent").]

[This action concerns U.S. Patent Number 10,405,457. This patent may be called the '457 Patent.]

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium's minor changes more accurately reflect the technology. Rhodium contends that it is improper to instruct the jury on the ownership of the '457 Patent before that ownership has been established. Rhodium's proposed final paragraph, as an alternative to Midas's, will aid the jury's understanding without touching on that issue.}

### 1.3    United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "USPTO"). A patent gives the owner the right to exclude others from making, using, offering to sell, or selling [[the claimed invention] [a product made by a process according to the claimed invention]] within the United States or importing it into the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here. To obtain a patent, an application for a patent must be filed with the PTO by an applicant. The application includes a specification, which should have a written description of the invention, how it works, and how to make and use it so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to particularly point out what the applicant regards as the claimed invention and to define the scope of the patent owner's exclusive rights. After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO Patent Examiner. The Patent Examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the claimed invention. In examining a patent application, the Patent Examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant. When the parties are done presenting evidence, I will give you more specific instructions as to what constitutes prior art in this case. Generally, prior art is previously existing technical information and knowledge against which the Patent Examiners determine whether or not the claims in the application are patentable.  The Patent Examiner considers, among other things whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. In addition, the Patent Examiner may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract deas. The Patent Examiner also may consider whether the claims are not indefinite and are adequately enabled and described by the application's specification. Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the Patent Examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the Patent Examiner is called an "Office Action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. The applicant then responds to the Office Action and sometimes cancels or changes the claims or submits new claims or makes arguments against a rejection. This process may go back and forth between the Patent Examiner and the applicant for several months or even years until the Patent Examiner is satisfied that the application and claims are patentable. Upon payment of an issue fee by the applicant, the PTO then "issues" or "grants" a patent with the allowed claims. The collection of papers generated by the Patent Examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper." In this case, it is ultimately for you to decide, based on my instructions to you, whether [the Defendant] has shown that the patent claims are invalid.

*Source: 2018 AIPLA Model Patent Jury Instructions*

{In light of the patent video and other instructions, Rhodium believes this instruction is unnecessary.}

### 1.4    Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid. A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. If a party challenges the validity of the patent, you must decide, based on the instructions I will give you, whether the challenger has overcome the presumption of validity with proof that the asserted claims of the patent are invalid. The party challenging validity must prove invalidity by clear and convincing evidence. I will discuss more of this topic later. I will now briefly explain the parties' basic contentions in more detail.

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium believes this instruction is unnecessary.}

9

### 1.5    Contentions of the Parties

Midas contends that Rhodium imports, makes, uses, offers to sell, or sells an immersion cooling system that infringes claims 1 and 5 of the '457 patent. Midas must prove that Rhodium infringes one or more claims of the '457 patent by a preponderance of the evidence. That means that Midas must show that it is more likely that Rhodium's immersion cooling system infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed.  First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine infringement, you must compare the accused immersion cooling system with each claim from the '457 that Midas asserts is infringed. It will be my job to tell you what the language of the patent claims means. You must follow my instructions as to the meaning of the patent claims. You are not to define the patent claims yourselves.

A patent claim is literally infringed only if Rhodium's immersion cooling system includes each and every element in that patent claim. If Rhodium's immersion cooling system does not contain one or more elements in that claim, Rhodium does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

A patent claim is infringed under the doctrine of equivalents only if there is an equivalent component in Rhodium's immersion cooling system for each element of the patent claim that is not literally present in Rhodium's immersion cooling system. In other words, Midas must prove that it is more likely than not that Rhodium's immersion cooling system contains the equivalent of each element of the claimed invention that is not literally present in Rhodium's immersion cooling system. An equivalent of an element is a component that is only insubstantially different from the claimed element. One way of showing that an element is only insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.

Rhodium denies that it is infringing the claims of the '457 patent and contends that the '457 patent is invalid.

Invalidity of the asserted patent claim(s) is a defense to infringement. Therefore, even though the Patent Examiner has allowed the claims of the '457 patent, you, the jury, must decide whether each claim of the '457 patent that is challenged by Rhodium is invalid. Rhodium must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity. Clear and convincing evidence means that it is highly probable that the fact is true. This standard is different from the standard that applies to other issues in this case. I have instructed you that other issues, such as infringement, may be found under a lower standard, namely, by a preponderance of the evidence. You may think of this "preponderance of the evidence" as slightly greater than 50%. This is different from the criminal law standard of "beyond a reasonable doubt." You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard is between the two.

Source: 2018 AIPLA Model Patent Jury Instructions

{Rhodium contends that Midas's instruction is so lengthy and complicated as to be entirely unhelpful for the jury. Rhodium further objects that Midas's instruction refers to a single cooling system, when the facts will show that Rhodium has different systems at each of its Temple and Rockdale facilities. Rhodium also objects that Midas's repeated references to the term "immersion cooling system" are unnecessary. Rhodium further objects to Midas's inclusion of an instruction on infringement by equivalents, as Midas has conceded any such claim. Dkt. 169. Rhodium further objects that Midas's instruction omits Rhodium's defense that the patent may not be asserted.  Rhodium instead maintains that the Court should adopt its instruction, which is narrowly tailored to the needs and issues of this case.}

At this point, will first give you a summary of each side's contentions in this case. Midas Green seeks money damages from Rhodium for allegedly infringing the '457 Patent by making products that Midas Green argues are covered by claims 1 and 5 of the '457 Patent. These are the "Asserted Claims" of the '457 Patent.

The Rhodium products that are alleged to infringe are the R70 immersion cooling systems as installed at the Temple facility and the R70 and R30 immersion cooling systems located at the Rockdale facility.

Midas alleges that Rhodium's products infringe claims 1 and 5 of the '457 Patent. Midas also asserts that any infringement was willful.

Rhodium denies that it has infringed the Asserted Claims of the '457 Patent, and further denies that any infringement was willful. Rhodium also argues that the Asserted Claims are invalid and may not be asserted because Midas's '457 Patent does not identify the proper inventors, because the claims are obvious and not novel in light of existing technology, and because they fail the "written description" and "enablement" requirements. Your job is to decide whether Rhodium has infringed the Asserted Claims of the '457 Patent, and whether any of the Asserted Claims of the '457 Patent is invalid. If you decide that any claim of the '457 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Midas Green to compensate it for the infringement.

*Source: Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); Videoshare, LLC v. Google LLC, No. 6:19-cv-00663-ADA (W.D. Tex. Nov. 15, 2021); CloudofChange LLC v. NCR Corp., No. 6:19-cv-00513 (W.D. Tex. May, 19, 2021); ESW Holdings, Inc. v. Roku, Inc., No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021); Freshub, Inc. v. Amazon.com, Inc., No. 6:21-cv-00511-ADA (W.D. Tex. Jun. 21, 2021).*

### 1.6    Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.

This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations. You must make your decision based on the evidence and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you. Witnesses will take the witness stand and documents will be offered and admitted into evidence. Midas goes first in calling witnesses to the witness stand. These witnesses will be questioned by Midas' counsel in what is called direct examination. After the direct examination of a witness is completed, Rhodium has an opportunity to cross-examine the witness. After Midas has presented its witnesses, Rhodium will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony. All three are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during the trial. You need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments." As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and decide in this case. We both have a job to do. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language, even if you do not agree with me. Nothing I say or do during the trial is intended to indicate what your verdict should be.

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium believes this instruction is unnecessary. Rhodium further notes that any instruction on the order of party presentation may require modification to the extent the Court and parties agree that it is appropriate to take any witness out of order.}

### 1.7    Preliminary Instructions to Jury

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules  of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text  or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any is- sue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the wit- nesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

*Source: Pattern Jury Instructions 2020*

## 2.     <u>During-Trial Instructions</u>

### 2.1     First Recess

We are about to take our first break in this trial. Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors. If anyone approaches you and tries to talk to you about the case, advise me about it immediately. Do not read or listen to any news reports of the trial or use any technology tools to do independent research. Remember to keep an open mind until all the evidence has been received. Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.

*Source: Pattern Jury Instructions 2020*

**2.2     Stipulations of Fact**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

*Source: Pattern Jury Instructions 2020*

**2.3     Limiting Instruction**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

*Source: Pattern Jury Instructions 2020*

## 2.4    Charts and Summaries

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

*Source: Pattern Jury Instructions 2020*

### 2.5    Demonstrative Evidence

[Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.][Exhibit __ is an illustration.] It is party's [describe exhibit] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

*Source: Pattern Jury Instructions 2020*

*Source: Profectus Technology LLC v. Google LLC*, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); *Videoshare, LLC v. Google LLC*, No. 6:19-cv-00663-ADA (W.D. Tex. Nov. 15, 2021); *Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co. Ltd.*, No. 6:20-cv-00018-ADA (W.D. Tex. Nov. 4, 2021); *CloudofChange LLC v. NCR Corp.*, No. 6:19-cv-00513 (W.D. Tex. May, 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020).

### 2.6    Impeachment by Witnesses' Inconsistent Statements

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

*Source: Pattern Jury Instructions 2020*

### 2.7 Deposition Testimony

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.

Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be shown to you today. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court. You should not hold the quality of the video against either party.

*Source: Pattern Jury Instructions 2020*

*Source: Profectus Technology LLC v. Google LLC*, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); *Videoshare, LLC v. Google LLC*, No. 6:19-cv-00663-ADA (W.D. Tex. Nov. 15, 2021); *Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co. Ltd.*, No. 6:20-cv-00018-ADA (W.D. Tex. Nov. 4, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex. Jun. 21, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020).

**3.**      **Final Jury Instructions**

**3.1      Prefatory Final Jury Charge**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admit- ted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you. are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

*Source: Pattern Jury Instructions 2020*

23

*Source: Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); 5th Circuit Pattern Jury Instructions (Civil Cases), with revisions through June 2020, § 3.1; Videoshare, LLC v. Google LLC, No. 6:19-cv-00663-ADA (W.D. Tex. Nov. 15, 2021); Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co. Ltd., No. 6:20-cv-00018-ADA (W.D. Tex. Nov. 4, 2021); Freshub, Inc. v. Amazon.com, Inc., No. 6:21-cv-00511-ADA (W.D. Tex. Jun. 21, 2021); CloudofChange LLC v. NCR Corp., No. 6:19-cv-00513 (W.D. Tex. May, 19, 2021); ESW Holdings, Inc. v. Roku, Inc., No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021); MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020).*

### 3.2    Summary of Contentions

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following four main issues:

1. Whether Midas has proven that Rhodium infringed claims 1 and 5 of the '457 patent.

2. Whether Rhodium has proven that claims 1 and 5 of the'457 patent are invalid.

3. What amount of damages, if any, Midas has proven.

4. Whether Rhodium's infringement was willful.

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium objects that  that Midas's sparse instruction will not be helpful in situating the jury at the outset of deliberations. Rhodium further objects that Midas's third and fourth asserted issues assume that there is infringement; the Court should decline any instruction that adopts one party's contention. Rhodium proposes the language below, which echoes its pre-trial "Contentions of the Parties" proposal.}

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. As I previously told you, Midas Green seeks money damages from Rhodium for allegedly infringing the '457 Patent by making products that Midas Green argues are covered by claims 1 and 5 of the '457 Patent. These are the "Asserted Claims" of the '457 Patent.

The Rhodium products that are alleged to infringe are the R70 immersion cooling systems as installed at the Temple facility and the R70 and R30 immersion cooling systems located at the Rockdale facility.

Midas alleges that Rhodium's products infringe claims 1 and 5 of the '457 Patent. Midas also asserts that any infringement was willful.

Rhodium denies that it has infringed the Asserted Claims of the '457 Patent, and further denies that any infringement was willful. Rhodium also argues that the Asserted Claims are invalid and may not be asserted because Midas's '457 Patent does not identify the proper inventors, because the claims are obvious and not novel in light of existing technology, and

because they fail the "written description" and "enablement" requirements. Your job is to decide whether Rhodium has infringed the Asserted Claims of the '457 Patent, and whether any of the Asserted Claims of the '457 Patent is invalid. If you decide that any claim of the '457 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Midas Green to compensate it for the infringement.

### 3.3     Burden of Proof: Preponderance of the Evidence

Plaintiff Midas Green Technologies has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff Midas Green Technologies has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim.

*Source: Pattern Jury Instructions*

### 3.4     Burden of Proof: Clear and Convincing Evidence

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy .

*Source:* Pattern Jury Instructions 2020

### 3.5    Evidence

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude an- other fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

*Source: Pattern Jury Instructions*

*Source: Profectus Technology LLC v. Google LLC*, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); 5th Circuit Pattern Jury Instructions (Civil Cases), with revisions through June 2020, § 3.3; *Videoshare, LLC v. Google LLC*, No. 6:19-cv-00663-ADA (W.D. Tex. Nov. 15, 2021); *Jiaxing Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co. Ltd.*, No. 6:20-cv-00018-ADA (Nov. 4, 2021); *Freshub, Inc. v. Amazon.com, Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex. Jun. 21, 2021); *CloudofChange LLC v. NCR Corp.*, No. 6:19-cv-00513 (W.D. Tex. May, 19, 2021); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020).

### 3.6     Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of wit- nesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

*Source: Pattern Jury Instructions 2020*

### 3.7    Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

*Source: Pattern Jury Instructions 2020*

### 3.8    Claim Construction

{The parties present alternative proposals for claim construction instructions. Rhodium contends that its instructions accurately summarize the relevant concepts for the jury. Midas Green's instructions, on the other hand, lack detail and will confuse the jury on the core issues. For example, Midas's instruction on claim scope does not define what the phrase "cover" means in the patent context, although Midas uses the term later in its proposed instructions. Rhodium's proposal gives that important definition. The Court should adopt Rhodium's proposed instructions.}

#### 3.8.1    Midas Green's Proposal

##### (a)    Claim Construction – Generally

Before you decide whether Rhodium has infringed the claims of Midas' patent or whether Midas' patent is invalid, you will have to understand the patent claims.

The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claim 1, beginning at column 9, line 33 of the patent, and claim 5, beginning at column 10, line 11, which is Exhibit JX1 in evidence. The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

*Source: 2018 AIPLA Model Patent Jury Instructions*

##### (b)    Claim Construction for the Case

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

| Term | Claim(s) | Agreed Construction |
|------|----------|---------------------|
| "weir" | '457 and '446 patents, all claims | "an overflow structure or barrier that determines the level of liquid" |
| "plenum" | '457 and '446 patents, all claims | "a structure for dispensing liquid" |

*Source: 2018 AIPLA Model Patent Jury Instructions.*

{Rhodium contends that its proposal, set out below, is superior. Here, Rhodium notes only that to the extent the Court adopts Midas's instruction, it should not refer to the '446 Patent, which is no longer asserted.}

### 3.8.2    Rhodium's Proposal

#### (a)    The Role of Claims of a Patent

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

For claim limitations that I have not construed—that is, interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention.

*Source: 35 U.S.C. § 112; Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831 (2015); Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc); Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 882 (Fed. Cir. 1988).*

#### (b)    How a Claim Defines What It Covers

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than an-other claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" with-in the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement.

*Source: MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020); 35 U.S.C. § 112; Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831 (2015); Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc); Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 882 (Fed. Cir. 1988).*

### (c)    Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" does not refer to any other claim of the patent. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The de-pendent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

In this case, the independent claim is claim 1 of the '457 Patent. You know claim 1 is in-dependent because it mentions no other claims. Accordingly, the words of claim 1 of the '457 Patent are read by themselves in order to determine what claim 1 covers. You know claim 5, on

the other hand, is a dependent claim because it refers to independent claim 1. Accordingly, the words of claims 1 and 5 are read together in order to determine what claim 5 of the patent covers.

*Source: Comaper Corp. v. Antec. Inc., 596 F.3d 1343, 1350 (Fed. Cir. 2010); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1344 (Fed. Cir. 2009); Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1319 (Fed. Cir. 2007).*

**(d)    Claim Interpretation**

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to one of skill in the art at the time of the invention. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as  infringement. These issues are yours to decide.

All of the Asserted Claims require "weir" and a "plenum." These are my constructions:

| "plenum" | A structure for dispensing liquid. |
|---|---|
| "weir" | An overflow structure or barrier that determines the level of liquid. |

*Source: 35 U.S.C. § 112; Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831 (2015); Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc); Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 882 (Fed. Cir. 1988).*

### 3.9    Infringement

{The parties present alternative instructions on infringement below. Rhodium contends that its instruction is superior – unlike Midas Green's, Rhodium's instructions are customized to the case (for example, Midas's instructions discuss indirect infringement, which is not at issue in this case). Rhodium's instructions accurately summarize the issues in this case in a way that will be helpful for the jury, while Midas Green's boilerplate instructions are likely to confuse the jury. The Court should adopt Rhodium's proposed infringement instructions.}

#### 3.9.1    Midas Green's Proposal

##### (a)    Infringement - Generally

Questions 1 through 2 of the Verdict Form read as follows:

**Question 1A:**
Has Midas proven that it is more likely than not that Rhodium made, had made, or used a product that contains each element of Claim 1 of the '457 Patent?

**Question 1B:**
Has Midas proven that it is more likely than not that Rhodium made, had made, or used a product that contains each element of Claim 5 of the '457 Patent?

**Question 2:**
Has Midas proven by a preponderance of the evidence that Rhodium's infringement was willful?

I will now instruct you as to the rules you must follow when deciding whether Midas has proven that Rhodium infringed any of the claims of the '457 patent. Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Midas alleges that Rhodium's immersion cooling system infringes claim(s) 1 and 5 of Midas' '457 patent.

You have heard evidence about both Midas' commercial product and Rhodium's accused immersion cooling system. However, in deciding the issue of infringement you may not compare Rhodium's accused immersion cooling system to Midas' commercial product. Rather, you must compare the Rhodium's accused product to the claims of the '457 patent when making your decision regarding infringement.

A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused product is covered by at least one claim of the patent. Indirect infringement results if the defendant induces another to infringe a claim of a patent or contributes to the infringement of a claim of a patent by another.

35 U.S.C. § 271; Limelight Networks, Inc. v. Akamai Techs., Inc., 134 S. Ct. 2111 (2014); Merial Ltd. v. CIPLA Ltd., 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); WiAV Solutions LLC v.  Motorola, Inc., 631 F.3d 1257, 1264 (Fed. Cir. 2010); WordTech Sys., Inc. v. Integrated Network Solutions, Inc., 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium objects that its instruction, set forth below, is superior. Rhodium objects here to note that Midas includes instructions addressing indirect infringement; there is no theory of indirect infringement in this case, and no instruction on indirect infringement should be given.}

### (b)    Direct Infringement – Knowledge of the Patent and Intent to Infringe are Immaterial

In this case, Midas asserts that Rhodium has directly infringed the patent. Rhodium is liable for directly infringing Midas' patent if you find that Midas has proven that it is more likely than not that Rhodium made, used, imported, offered to sell, or sold the invention defined in at least one claim of Midas' patent.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

35 U.S.C. § 271(a); Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920 (2015); Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843 (2014); Global-Tech Appliances, Inc. v. SEB, S.A., 131 S. Ct. 2060, 2065 n.2 (2011); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 35 (1997); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330 (Fed. Cir. 2001); Seal-Flex, Inc. v. Athletic Track & Court Constr., 172 F.3d 836, 842 (Fed. Cir. 1999); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988).

*Source:* 2018 AIPLA Model Patent Jury Instructions

{Rhodium believes this instruction is unnecessary. The infringement instruction will state what is necessary for infringement.}

### (c)    Infringement of Dependent Claims

There are two different types of claims in the patent. One type is called an independent claim. The other is called a dependent claim.

An independent claim does not refer to any other claim of the patent. For example, Claim 1 is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, Claim 5 is a dependent claim that refers to claim 1. A dependent claim includes all elements recited in the dependent claim, as well as all elements of the independent claim to which it refers.

To establish literal infringement of claim 5, Midas must show that it is more likely than not that Rhodium's product includes each and every element of Claim 1 and Claim 5.

If you find that Claim 1 from which Claim 5 depends is not literally infringed, then you must find that Claim 5 is also not literally infringed.

Wolverine World Wide v. Nike Inc., 38 F.3d 1192, 1196-99 (Fed. Cir. 1994) (citing Johnston v. IVAC Corp., 885 F.2d 1574, 1577-89 (Fed. Cir. 1989)); Wilson Sporting Goods v. David Geoffrey & Assocs., 904 F.2d 677, 685-86 (Fed. Cir. 1990); Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552-53 n.9 & n.10 (Fed. Cir. 1989); Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 626 (Fed. Cir. 1985).

*Source:* 2018 AIPLA Model Patent Jury Instructions

### (d)    Infringement of "Comprising of," "Consisting of," and "Consisting Essentially of" Claims

(Alternative 1: "comprising") The preamble to claim 1 uses the phrase "An appliance immersion cooling system comprising". The word "comprising" means "including the following but not excluding others."

If you find that Rhodium's product includes all of the elements in claim 1, even if Rhodium's product includes additional components method steps, you must find that Rhodium's product literally infringes claim 1.

*CIAS Inc. v. Alliance Gaming Corp., 504 F.3d 1356 (Fed. Cir. 2007); Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004); Invitrogen Corp. v. Biocrest Mfg. LP, 327 F.3d 1364, 1368 (Fed. Cir. 2003); AFG Indus. V. Cardinal IG Co., 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); PPG Indus. V. Guardian Indus. Corp., 156 F.3d 1351, 1354 (Fed. Cir. 1998); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1271 (Fed. Cir. 1986); AB Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium objects that this instruction, which is unnecessary, cannot be understood. The Court should not give an instruction that will confuse the jury.}

### (e)    Direct Infringement – Infringement Under the Doctrine of Equivalents

38

If you decide that Rhodium's product does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that Rhodium's product infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present in the product. If the product is missing an equivalent component method step to even one component method step of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the product has an equivalent component method step to each individual claim element that is not literally present in the product.

An equivalent of an element is a component that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the component with the claimed requirement. However, known interchangeability between the claim requirement and the component of the product is not necessary to find infringement under the doctrine of equivalents.

Further, the same component of the accused product may satisfy more than one element of a claim. Further, two components of the accused product may satisfy a single claim element.

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co., v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Intendis GmbH v. Glenmark Pharmaceuticals Inc.*, 822 F.3d 1355 (Fed. Cir. May 16, 2016); *Ring & Pinion Serv., Inc. v. ARB Corp.*, 743 F.3d 831, 834 (Fed. Cir. 2014); *Johnson & Johnston Assoc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325 (Fed. Cir. 1985); *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371-72 (Fed. Cir. 2015); *Eagle Comtronics, Inc. v. Arrow Commc'n. Labs., Inc.*, 305 F.3d 1303, 1316-17 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1332 (Fed. Cir. 2001) (citing *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994)).

*Source:* 2018 AIPLA Model Patent Jury Instructions

{Rhodium contends that this instruction is inappropriate. Midas Green has conceded any claim under the Doctrine of Equivalents, and may not present it at trial. Dkt. 169. Accordingly, the jury need not be instructed on this theory; doing so will cause unnecessary confusion and

prejudice to Rhodium. Further, even if the Court were inclined toward Midas Green's proposal, the final two sentences should be removed; neither theory is a part of this case.]

### 3.9.2    Rhodium's Proposal

#### (a)    Infringement Generally

I will now instruct you how to decide whether or not Midas Green has proven that Rhodium has infringed the '457 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In this case, there are two possible ways that a claim be infringed: (1) literal infringement; and (2) infringement by the doctrine of equivalents. In this case, Midas Green alleges that Rhodium literally infringes the '457 Patent. Alternatively, Midas Green alleges that Rhodium infringes the '457 Patent under the doctrine of equivalents.

To prove infringement, Midas Green must prove that the requirements for one or more types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.

I will now explain literal infringement and infringement under the doctrine of equivalents in more detail.

*Source: 35 U.S.C. § 271; Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014); Merial Ltd. v. CIPLA Ltd., 681 F.3d 1283, 1302–03 (Fed. Cir. 2012); WordTech Sys., Inc. v. Integrated Network Solutions, Inc., 609 F.3d 1308, 1313–18 (Fed. Cir. 2010).*

#### (b)    Literal Infringement

In order to prove literal infringement, Midas Green must prove by a preponderance of the evidence that Rhodium made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Midas Green. You must compare the product with each and every one of the requirements of a claim to determine whether the system contains each and every requirement or limitation recited in the claim. If Rhodium's product does not have every requirement in the patent claim, exactly, Rhodium's product does not literally infringe that claim.

You must determine, separately for each Asserted Claim, whether or not there is infringement.  For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim.  On the other hand, if you find

that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

*Source: Advanced Steel Recovery, LLC v. X-Body Equip., Inc., 808 F.3d 1313, 1319 (Fed. Cir. 2015) (quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995)); Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014); Hutchins v. Zoll Med. Corp., 492 F.3d 1377, 1380 (Fed. Cir. 2007); Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997); Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1481–82 (Fed. Cir. 1984); The Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § B.3.1a; Int'l Bus. Mach. Corp. v. Booking Holdings Inc., 775 F. App'x 674, 677–78 (Fed. Cir. 2019); Koninklijke Philips N.V. v. Zoll Med. Corp., 656 F. App'x 504, 520–21 (Fed. Cir. 2016); Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1219–22 (Fed. Cir. 2014); SiRF Tech, Inc. v. ITC, 601 F.3d 1319, 1330–31 (Fed. Cir. 2010); see also Sapphire Crossing LLC v. Abbyy USA Software House, Inc., No. 20-cv-03590-YGR, *4–*6 (N.D. Cal. Oct. 28, 2020).*

### (c)    Infringement Under the Doctrine of Equivalents

{Rhodium contends that this instruction is unnecessary in light of Midas's concession on the Doctrine of Equivalents. Dkt. 169. Nevertheless, it proposes this instruction in the event the Court does not agree.}

If you decide that Rhodium's product does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that product infringes the asserted claim under what is called the "doctrine of equivalents." You will only consider the doctrine of equivalents for those claim limitations where Midas argues that they are infringed by equivalents, namely: the overflow lip and the secondary circulation facility,

Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes components that are equivalent to those elements of the claim that are not literally present in the product. If the product is missing an equivalent component to even one component of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents.

Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether the product has an equivalent component to each individual claim element that is not literally present in the product. An equivalent of an element is a component that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substan-tially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.

*Source:        AIPLA Model Patent Jury Instructions, 2018; Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Graver Tank & Mfg. Co., v. Linde Air Prods. Co.,*

*339 U.S. 605, 609 (1950); Intendis GmbH v. Glenmark Pharmaceuticals Inc., 822 F.3d 1355 (Fed. Cir. May 16, 2016); Ring & Pinion Serv., Inc. v. ARB Corp., 743 F.3d 831, 834 (Fed. Cir. 2014); Johnson & Johnston Assoc. v. R.E. Serv. Co., 285 F.3d 1046, 1053-54 (Fed. Cir. 2002) (en banc); Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998); Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 397 (Fed. Cir. 1994); Datascope Corp. v. SMEC, Inc., 776 F.2d 320, 325 (Fed. Cir. 1985); Cadence Pharm. Inc. v. Exela PharmSci Inc., 780 F.3d 1364, 1371-72 (Fed. Cir. 2015); Eagle Comtronics, Inc. v. Arrow Commc'n. Labs., Inc., 305 F.3d 1303, 1316-17 (Fed. Cir. 2002); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1332 (Fed. Cir. 2001) (citing Dolly, Inc. v. Spalding & Evenflo Cos., Inc., 16 F.3d 394, 398 (Fed. Cir. 1994)).*

### 3.10    Invalidity

{The parties present alternative instructions on invalidity below. Rhodium contends that its instruction is superior. Rhodium's instructions accurately summarize the issues in this case in a way that will be helpful for the jury, while Midas Green's boilerplate instructions are likely to confuse the jury and contains several instructions that are in no way relevant to the case. The Court should adopt Rhodium's proposed invalidity instructions.}

#### 3.10.1  Midas Green's Proposal

##### (a)    Summary of Invalidity Defense

Rhodium contends that the asserted claim(s) of the patent[s]-in-suit are invalid.

Rhodium must prove that it is highly probable that each asserted claim is invalid. Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of Midas's claims is invalid.

Rhodium contends that '457 patent claims  1 and 5 are invalid for the following reasons:

- Claims 1 and 5 are anticipated by one or more of the prior art references;

- The invention of claims 1 and 5 was obvious in light of the prior art references;

- The patent names the wrong persons as inventors;

- The patent does not adequately describe the invention of claims 1 or 5; and

- The patent does not enable a person of ordinarily skill in the art to make and use the invention of claims 1 or 5.

I will now instruct you in more detail why Rhodium alleges that the asserted claim(s) of the '457 patent are invalid.

*Source: 2018 AIPLA Model Patent Jury Instructions*

##### (b)    Prior Art

{Rhodium objects to Midas's attempt to provide only pre-AIA instructions. The priority date of Midas's patent is in dispute; Rhodium contends that Midas's priority date is not supported by its first provisional application, and thus that the appropriate priority date is after the effective date of the AIA. The Court should give Rhodium's proposed instructions, which accommodate this possibility, and should not give Midas's incomplete instructions. Nor should the Court adopt Midas's March 14, 2012 effective filing date.}

##### (i)    Prior Art Defined (pre-AIA)

Prior art includes any of the following items received into evidence during trial:

1. any product that was publicly known or used by others in the United States before the claimed invention was invented;

2. any product that was in public use or on sale in the United States before March 14, 2012;

3. any patents that issued before March 14, 2012;

4. any publications having dates of public accessibility before March 14, 2012; and

5. any product that was made by anyone in the United States before the date of invention where the claimed invention was not later abandoned, suppressed, or concealed.

In this case, [the Defendant] contends that the following items are prior art:

[Identify the prior art admitted into evidence by name] 35 U.S.C. § 102 (pre-AIA).


*Source: 2018 AIPLA Model Patent Jury Instructions*

### (ii)    Prior Art Considered or Not Considered by the USPTO

Regardless of whether a particular prior art references were considered by the Patent Examiner during the prosecution of the application which matured into the '457 patent, Rhodium must prove that it is highly probable that the challenged claims are invalid. This burden of proof on Rhodium never changes regardless of whether the Patent Examiner considered the reference.

Microsoft Corp. v. i4i Ltd. P'ship., 131 S. Ct. 2238, 2251 (2011); Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1260 (Fed. Cir. 2012); SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d 1349, 1355-56 (Fed. Cir. 2000); Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1306 (Fed. Cir. 2005).

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium does not disagree with the substance of this instruction, only its location. This instruction is repeated and adopted in Rhodium's proposal below.}

### (c)    Invalidity of Independent and Dependent Claims

There are two different types of claims in the patent. One type is called an "independent claim." The other is called a "dependent claim."

An independent claim does not refer to any other claim of the patent. For example, claim 1 is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim. A dependent claim refers to at least one other claim in the

patent. For example, claim 5 is a dependent claim that refers to claim 1. A dependent claim includes all of the elements recited in the dependent claim, as well as all of the elements of the claim to which it refers.

Claim 5 requires each of the elements of claim, as well as all of the additional elements of claim 1.

You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the independent claim from which it depends.

*Comaper Corp. v. Antec. Inc., 596 F.3d 1343, 1350 (Fed. Cir. 2010); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1344 (Fed. Cir. 2009); Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1319 (Fed. Cir. 2007).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### (d)    Person of Ordinary Skill in the Art

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the March 14, 2012. Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the March 14, 2012.

*35 U.S.C. § 103; KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 420 (2007); Continental Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1268 (Fed. Cir. 1991).*

*Source: 2018 AIPLA Model Patent Jury Instructions.*

### 3.10.2  Rhodium's Proposal

### (a)    Invalidity – Burden of Proof

I will now instruct you on the rules you must follow in deciding whether or not Rhodium has proven that the Asserted Claims of the '457 Patent are invalid. To prove that any claim of a patent is invalid, Rhodium must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

*Source: Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); Federal Circuit Bar Association Model Patent Jury Instructions, May 2020, § B.4.1; Jiaxing*

*Super Lighting Elec. Appliance Co., Ltd. v. CH Lighting Tech. Co. Ltd., No. 6:20-cv-00018-ADA (W.D. Tex. Nov. 4, 2021); Freshub, Inc. v. Amazon.com, Inc., No. 6:21-cv-00511-ADA (W.D. Tex. Jun. 21, 2021); CloudofChange LLC v. NCR Corp., No. 6:19-cv-00513 (W.D. Tex. May, 19, 2021); ESW Holdings, Inc. v. Roku, Inc., No. 6:19-cv-00044-ADA (W.D. Tex. Apr. 9, 2021).*

### (b)    Inventorship

In this case, Rhodium contends that the '457 patent is invalid because of incorrect inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement. To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent (even if that claim has not been alleged to be infringed). Whether the contribution is significant in quality is measured against the scope of the full invention. If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed. Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

*Source:       Federal Circuit Bar Association Model Instructions (2020); 35 U.S.C. §§ 102, 256; Pannu v. Iolab Corp., 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid.") and id. at 1351 (setting forth framework for determining joint inventorship); Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); Hess v. Advanced Cardiovascular Sys. Inc., 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985); see SiOnyx LLC v. Hamamatsu Photonics K.K., 981 F.3d 1339, 1351 (Fed. Cir. 2020) (describing jury's determination of inventorship below); LendingTree, LLC v. Zillow, Inc., 656 Fed. Appx. 991, 998 (Fed. Cir. 2016) (same).*

### (c)    Invalidity Based on Prior Art

### (i)    Prior Art – Generally

In order for someone to be entitled to a patent, the invention must actually be "new" and "nonobvious" compared to what came before, which is referred to as the prior art. Prior art is considered in determining whether claim(s) 1 and 5 of the '457 Patent are invalid for being anticipated or obvious. I will explain anticipation and obviousness more fully a bit later. Prior art may include items that were publicly known or that have been used or offered for sale, or

references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Rhodium contends that the Asserted Claims of the '457 Patent are invalid because the prior art references came before the '457 Patent and possessed the same functionality Midas accuses of infringement.

Where Rhodium is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is invalidated by the prior art for anticipation or obviousness, then the claims from which it depends are necessarily anticipated or obvious as well.

*Source: Microsoft Corp. v. i4i Ltd. P'ship., 564 U.S. 91, 110–11 (2011); Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1260 (Fed. Cir. 2012).*

### (ii)    Prior Art – Conception and Reduction to Practice

There is no dispute that the prior art references Rhodium identifies are early enough to qualify as prior art, except for the U.S. Patent Application Publication US 2014/0211412 Al (the "Best Publication"). Rhodium contends that the Best Publication is prior art to the '457 Patent because it was filed on August 4, 2012, which is earlier than the earliest invention date the '457 Patent is entitled to. Midas contends that the Best Publication is not prior art because the invention of the '457 Patent was conceived on March 14, 2012 and was diligently reduced to practice andthe Patent is therefore entitled to an invention date of March 14, 2012.

In this case, you must determine the date of invention for the claims of the '457 Patent. The date of invention is either when the invention was reduced to practice or when it was conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day. Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.

Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. The complete idea of the invention must contain every limitation of the claim.

A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application that fully describes the invention.

*Source: AIPLA Model Patent Jury Instructions, 2018; In re Magnum Oil Tools Int'l, Ltd., 829 F.3d 1364, 1376 (Fed. Cir. 2016) ("a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference"); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1576-79 (Fed. Cir. 1996); E.I. du Pont De Nemours & Co. v. Unifrax I LLC, 921 F.3d 1060 (Fed. Cir. 2019); Perfect Surgical Techniques, Inc. v. Olympus Am., Inc., 841 F.3d 1004 (Fed. Cir. 2016); Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).*

### (iii)    Date of Invention – Priority to Provisional Application

A patent application can be provisional or nonprovisional. A provisional application is a temporary placeholder for a more substantive nonprovisional application to follow.

The provisional application serves the purpose of setting a priority date for the claimed invention provided it contains a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the claimed invention. This priority date is then used to determine what qualifies as prior art for evaluating the question of validity.

In this case, the parties dispute the priority date of the '457 Patent. Specifically, Rhodium contends that the priority date for the '457 Patent is the filing date of its nonprovisional application, December 13, 2013, and that the '457 Patent is not entitled to the filing date of either provisional application. Midas Green claims that the priority date for the '457 Patent, if you find it is not March 14, 2012, is the filing date of the first provisional application, December 14, 2012.

For the '457 Patent to be entitled to the priority date of the provisional application, Midas Green has the burden of providing evidence that the provisional application satisfies both the written description and enablement requirements. If Midas Green does so, Rhodium has the burden of showing by clear and convincing evidence that the provisional application does not meet those two requirements. Rhodium also contends, and has the burden of showing by clear and convincing evidence, that even with the later December 13, 2013 priority date, the application for the '457 Patent does not meet the written description or enablement requirements.

I will now tell you more about each of these two requirements.

*Source: Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101-ADA, Dkt. 193 at 26-27, (W.D. Tex. Oct. 6, 2021); MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020); Internet Machines, LLC v. PLX Tech., Inc., No. 6:10-cv-23 (E.D. Tex.); Dynamic Drinkware, LLC v. Nat'l Graphics, Inc., 800 F.3d 1375, 1379 (Fed. Cir. 2015); Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1328-29 (Fed. Cir. 2008); Federal Circuit Bar Association Model Patent Ju-ry Instructions §§ B.4.2a, B.4.2b; 35 U.S.C. § 112.*

(d)     **Obviousness**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Rhodium may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art. Rhodium contends that the invention of the '457 Patent was obvious in light of the Best Tank, the Best Publication, and the Best '463 Patent alone or in combination with the teachings of each other, or in combination with the teachings of the following patents and patent applications: Oktay '244, JP '758, the Pfahnl Application, Best '914, Rolfson '298, Quon '108, and Attlesey '419.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of com-bining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combina-tions of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.      Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertis-ing or similar activities);

b.      Whether the claimed invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the claimed invention;

d.      Whether others invented the claimed invention at roughly the same time;

e.      Whether others copied the claimed invention;

f.      Whether there were changes or related technologies or market needs con-temporaneous with the claimed invention;

g.      Whether the claimed invention achieved unexpected results;

h.      Whether others in the field praised the claimed invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

J.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

*Source: Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101 (W.D. Tex. Oct. 5, 2021); Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 110–11 (2011); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 405 and 421 (2007); Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966); Apple Inc. v. MPS Elecs. Co., Ltd., 839 F.3d 1034, 1047–48 (Fed. Cir. 2016); Cir. Check Inc. v. QXQ Inc., 795 F.3d 1331, 1335 (Fed. Cir. 2015); see also In re Clay, 966 F.2d 656, 658–59 (Fed. Cir. 1992); In re Wood, 599 F.2d 1032, 1036–37 (C.C.P.A. 1979); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 420–22 (2007); Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966); Arendi S.A.R.L. v. Apple Inc., 832 F.3d 1355, 1361, 1366 (Fed. Cir. 2016); PAR Pharm., Inc. v. TWI Pharm., Inc., 773 F.3d 1186, 1193 (Fed. Cir. 2014). Inherency: Par Pharm., Inc. v. TWI Pharm., Inc., 773 F.3d 1186, 1194–96 (Fed. Cir. 2014); Alcon Research, Ltd. v. Apotex Inc., 687 F.3d 1362, 1369 (Fed. Cir. 2012); In re Kubin, 561 F.3d 1351, 1357 (Fed. Cir. 2009); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 420–22 (2007); Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966); Ruiz v. A.B. Chance Co., 234 F.3d 654, 666–67 (Fed. Cir. 2000); Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 696–97 (Fed. Cir. 1983); Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966); U.S. v. Adams, 383 U.S. 39, 52 (1966); Apple Inc. v. MPS Elecs. Co., Ltd., 839 F.3d 1034, 1048, 1052–53 (Fed. Cir. 2016); WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1329–37 (Fed. Cir. 2016).*

### (e)    Level of Ordinary Skill

In deciding what the level of ordinary skill in the field of the invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

*Source: KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 420–22 (2007); Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966); Ruiz v. A.B. Chance Co., 234 F.3d 654, 666–67 (Fed. Cir. 2000); Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 696–97 (Fed. Cir. 1983); VocaLife LLC v. Amazon.com, Inc., No. 2:19-cv-123-JRG, Dkt. 340 at 42 (E.D. Tex. Oct. 9, 2020); Graham v. John Deere Co., 383 U.S. 1 (1966); Daiichi Sankyo Co. v. Apotex, Inc., 501 F.3d 1254, 1256 (Fed. Cir. 2007); Ruiz v. A.B. Chance Co., 234 F.3d 654, 666-67 (Fed. Cir. 2000); Orthopedic Equip. Co. v. United States, 702 F.2d 1005 (Fed. Cir. 1983); Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693 (Fed. Cir. 1983).*

### (f)    Scope and Content of Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

*Source: Cir. Check Inc. v. QXQ Inc., 795 F.3d 1331, 1335 (Fed. Cir. 2015); see also In re Clay, 966 F.2d 656, 658–59 (Fed. Cir. 1992); In re Wood, 599 F.2d 1032, 1036–37 (C.C.P.A. 1979).*

### (g)    Written Description

A patent application, whether provisional or nonprovisional, must contain an adequate written description of the claimed invention. Rhodium contends that the asserted claims of the '457 Patent are invalid for failure of the patent to provide an adequate written description. To demonstrate that the '457 Patent lacks adequate written description, Rhodium must prove by clear and convincing evidence that the original specification set forth in the application for the patent filed in 2013 does not describe the full scope of the Asserted Claims.

The patent laws require that a patent must contain an adequate written description of the claims of the patent. That means the original specification must describe the invention in full, clear, concise, and exact terms. The written description requirement helps to ensure that the patent applicant actually invented what is claimed, in other words, that the patent inventor possessed the full scope of the claimed invention at the time the patent application was filed.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the original patent specification, that the inventor invented what is contained in the Asserted Claims of the patent. The written description may be satisfied by the words, structures, figures, diagrams, formulas, et cetera, in the original patent application, and any combination of them as understood by one of ordinary skill.

It is not necessary to use identical language to the claims. However, the original patent application must contain a precise definition of the invention and all the claim limitations must appear in the specification.

If a claim limitation is not described explicitly, the original specification must describe it inherently. That means a person of ordinary skill in the art reading the original specification would recognize that the limitation is necessarily present. It is not enough if the limitation would have been obvious and not enough if a person of ordinary skill might be able to identify or construct the patentee's device from the teachings of the disclosure. Rather, the application must necessarily disclose that particular device. There must be sufficient description that a person of ordinary skill in the art reading the disclosure would immediately discern that the claim limitation is present.

*Source:* *Profectus Technology LLC v. Google LLC, No. 6:20-cv-00101-ADA, Dkt. 193 at 26-27, (W.D. Tex. Oct. 6, 2021); MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020); Internet Machines, LLC v. PLX Tech., Inc., No. 6:10-cv-23 (E.D. Tex.); Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc., 923 F.3d 1368, 1382 (Fed. Cir. 2019); Dynamic Drinkware, LLC v. Nat'l Graphics, Inc., 800 F.3d 1375, 1379 (Fed. Cir. 2015); Inphi Corp. v. Netlist, Inc., 805 F.3d 1350, 1355 (Fed. Cir. 2015); Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1328-29 (Fed. Cir. 2008); PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed. Cir. 2008); Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000); Tronzo v. Biomet, Inc., 156 F.3d 1154, 1159 (Fed. Cir. 1998); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997); Federal Circuit Bar Association Model Patent Jury Instructions §§ B.4.2a, B.4.2b; 35 U.S.C. § 112.*

### (h)    Enablement

A patent application, whether provisional or nonprovisional, must also disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed, to make and use the claimed invention without undue experimentation. This requirement is known as the enablement requirement. Each claim must be analyzed for compliance with the enablement requirement. If a patent claim is not enabled, it is invalid. In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention.

*Source: MTel v. Samsung, No. 2:13-cv-259, Dkt. No. 115 at 27:2-15 (Dec. 18, 2014); Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co., No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *5 (E.D. Tex. May 18, 2017); Profectus Technology LLC v. Google LLC, No. 6:20-*

*cv-00101-ADA, Dkt. 193 at 26-27, (W.D. Tex. Oct. 6, 2021); MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020); Internet Machines, LLC v. PLX Tech., Inc., No. 6:10-cv-23 (E.D. Tex.); Dynamic Drinkware, LLC v. Nat'l Graphics, Inc., 800 F.3d 1375, 1379 (Fed. Cir. 2015); Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1328-29 (Fed. Cir. 2008); Federal Circuit Bar Association Model Patent Jury Instructions §§ B.4.2a, B.4.2b; 35 U.S.C. § 112.*

### (i)    Claims Must be Applied Identically for Validity and Infringement

You must apply the claims with the same scope when determining validity and infringement. Therefore, if the same technology or technological feature accused of infringing the patent is found in the prior art, then that technology or technological feature is either present for purposes of both infringement and validity, or it is absent for both infringement and validity. That which infringes if later anticipates if earlier.

*Source: Polaroid Corp. v. Eastman Kodak Co., 789 F.2d 1556, 1573 (Fed. Cir. 1986) (citing Peters v. Active Mfg. Co., 129 U.S. 530, 537 (1889); 01 Communique Lab., Inc. v. Citrix Sys., Inc., 889 F.3d 735, 742 (Fed. Cir. 2018); Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1330 (Fed. Cir. 2003); Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001).*

### 3.11    Anticipation

#### 3.11.1  Anticipation - Generally

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, [the Defendant] must prove that it is highly probable that the claimed invention is not new.

In this case, Rhodium contends that claims 1 and 5 of the '457 patent are anticipated. For example, Rhodium contends that the invention of claims 1 and 5 of the '457 patent were present in the best tank.

In deciding whether the claims are new or anticipated by prior art, you are to consider the following items received into evidence during the trial which the parties agree are prior art and the Rhodium contends anticipates the claimed invention:

(i) the Best Tank

(ii) the Best Publication, and

(iii) the Best '463 Patent.

You must determine what is the prior art that may be considered in determining whether the '457 patent is new or anticipated. There are different types of prior art and I will instruct you on each of the relevant types of prior art that you will need to consider.

To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior publication, patent, etc., you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular prior publication, patent, etc.

Inherency: In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference prior publication, patent, etc., but also what is inherently present or disclosed in that prior art or inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the single item of prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove that it is highly probable that the allegedly inherent element or feature necessarily is present.

Evidence outside of the prior art reference itself [including experimental testing] may be used to show that elements that are not expressly disclosed in the reference are inherent in it. To be inherent, the feature that is alleged to have been inherent must necessarily have existed in the prior art reference. The fact that the feature is likely to have existed is not sufficient. It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the prior art was first known or used. Thus, the prior use of the patented invention that

was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent feature was necessarily present in the reference.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the categories of anticipation that Rhodium contends apply in this case. I will now instruct you about these.

*Net MoneyIN, Inc. v. Verisign, Inc., 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); Toro Co. v. Deere & Co., 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377-78 (Fed. Cir. 2003); In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999); Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1347-48 (Fed. Cir. 1999); Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1554 (Fed. Cir. 1995); Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1565 (Fed. Cir. 1992);*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium agrees that an instruction on anticipation is appropriate, and does not dispute that the first paragraph is appropriate. Rhodium contends that, as to the remainder, its instruction is superior.}

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention. To prove anticipation, [the Defendant] must prove that it is highly probable that the claimed invention is not new.

In this case, Rhodium contends that claims 1 and 5 of the '457 Patent are anticipated. In particular, Rhodium contends that the invention of claims 1 and 5 of the '457 Patent was present in:

(i) the Best Tank, and described in each of

(ii) the Best Publication, and

(iii) the Best '463 Patent.

In deciding whether the claims are new or anticipated by prior art, you are to consider the following items received into evidence during the trial which the parties agree are prior art and Rhodium contends anticipates the claimed invention: the Best Tank and Best '463 Patent.

You must also determine whether the Best Publication is prior art that may be considered in determining whether the '457 Patent patent is new or anticipated. There are different types of prior art and I will instruct you on each of the relevant types of prior art that you will need to consider. To anticipate a claim, each element in the claim must be present in a single item of prior art and arranged or combined in the same way as recited in the claim. You may not combine two or more items of prior art to find anticipation. In determining whether every one of the elements of the claimed invention is found in the Best Tank, Best Publication, or Best '463

Patent, you should consider what a person of ordinary skill in the art would have understood from his or her review of the particular system or publication.

*Source:        AIPLA Model Patent Jury Instructions, 2018; Net MoneyIN, Inc. v. Verisign, Inc., 545 F.3d 1359, 1369-70 (Fed. Cir. 2008); Toro Co. v. Deere & Co., 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377-78 (Fed. Cir. 2003); In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999); Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1347-48 (Fed. Cir. 1999); Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1554 (Fed. Cir. 1995); Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1565 (Fed. Cir. 1992); Cont'l Can Co. USA v. Monsanto Co., 948 F.2d 1264, 1267-69 (Fed. Cir. 1991); Buildex, Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988).*

### 3.11.2  Prior Public Knowledge (Pre-AIA)

Rhodium contends that claims of the '457 patent are invalid because the invention defined in that claim was publicly known by others in the United States before March 14, 2012.

That patent claim is invalid if the invention defined in that claim was publicly known by others in the United States before it was invented by Midas.

The invention defined by claim of the '457 patent was invented on before March 14, 2012.

*35 U.S.C. § 102(a) (pre-AIA); Minnesota Mining and Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301, 1306 (Fed. Cir. 2002); Ecolochem, Inc. v. Southern Cal. Edison Co., 227 F.3d 1361, 1369(Fed. Cir. 2000); Woodland Trust v. Flowertree Nursery, 148 F.3d 1368, 1370 (Fed. Cir. 1998).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium contends that this instruction is unnecessary in light of the prior art instructions to be given above. Rhodium further reiterates its objection to Midas's March 14, 2012 proposed effective filing date and its use of exclusively pre-AIA. }

### 3.11.3  Prior Public Use (Pre-AIA)

Rhodium contends that claims 1 and 5 of the '457 patent are invalid because the invention defined in that claim was publicly used by others in the United States before March 12, 2012 was publicly used in the United States before March 14, 2012.

The patent claim is invalid if the invention defined in that claim was publicly used by others in the United States before it was invented by Midas.

The invention defined by claims 1 and 5 of the '457 patent were invented on March 14, 2012. Midas filed his patent application on December 14, 2021.

That invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation.

The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. The invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

*35 U.S.C. § 102(a), (b) (pre-AIA); Clock Spring, L.P. v. Wrapmaster, Inc., 560 F.3d 1317, 1325-27 (Fed. Cir. 2009); Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1267 (Fed. Cir. 2008); Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); SmithKline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); Abbott Labs. v. Geneva Pharms., Inc., 182 F.3d 1315, 1319, (Fed. Cir. 1999); Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342 1347 (Fed. Cir. 1999); Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); Grain Processing Corp. v. Am. Maize-Prods. Co., 840 F.2d 902, 906 (Fed. Cir. 1988); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); Kinzenbaw v. Deere & Co., 741 F.2d 383, 390-91 (Fed. Cir. 1984); TP Lab., Inc. v. Prof'l Positioners, Inc., 724 F.2d 965, 970-72 (Fed. Cir. 1984); WL Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); In re Smith, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium contends that this instruction is unnecessary in light of the prior art instructions to be given above. Rhodium further reiterates its objection to Midas's March 14, 2012 proposed effective filing date and its use of exclusively pre-AIA}

### 3.11.4  Prior Patent (Pre-AIA)

Rhodium contends that claims 1 and 5 of the '457 patent is invalid because the invention defined in that claim was patented by Best '463 Patent before March 14, 2012

That patent claim is invalid if the invention defined in that claim was patented in the United States or a foreign country by Best '463 before March 14, 2012.

The invention defined by claim 1 of the '457 patent was invented on March 14, 2012.

*35 U.S.C. § 102(a), (b) (both pre-AIA); Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1287-83 (Fed. Cir. 2000); In re Carlson, 983 F.2d 1032, 1035-36 (Fed. Cir. 1992).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium contends that this instruction is unnecessary in light of the prior art instructions to be given above. Rhodium further reiterates its objection to Midas's March 14, 2012 proposed effective filing date and its use of exclusively pre-AIA}

### 3.12    Damages Generally

If you find that the accused device infringes any of the claims of the '457 patent, and that those claims are not invalid, you must determine the amount of damages to be awarded Midas for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you should not consider damages in your deliberations.

Midas must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by Midas, damages must be in an amount adequate to compensate Midas for the infringement. The purpose of a damage award is to put Midas in about the same financial position it would have been in if the infringement had not happened. But the damage award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My Instructions about damages are for your guidance only in the event you find in favor of Midas. You will need to address damages only if you find that one or more of the asserted claims are both not invalid and infringed. the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Rhodium has proven that the claimed invention would have been obvious.

*Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); United States v. Adams, 383 U.S. 39, 52 (1966); Apple Inc. v. Samsung Elecs. Co., Ltd., 839 F.3d 1034, 1052 (Fed. Cir. 2016); WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1329 (Fed. Cir. 2016); Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 894-95 (Fed. Cir. 1984); Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 697 (Fed. Cir. 1983); WL Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); Stratoflex, Inc., v. Aeroquip Corp., 713 F.2d 1530, 1538-39 (Fed. Cir. 1983). Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1238 (Fed. Cir. 2011); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 868 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1325 (Fed. Cir. 2009); 35 U.S.C. § 284 (2004); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); Vulcan Eng'g Co. v. FATA Aluminum, Inc., 278 F.3d 1366, 1376 (Fed. Cir. 2002); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); Hebert v. Lisle Corp., 99 F.3d 1109, 1119 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 870 (Fed. Cir. 1993); Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988), overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1326 (Fed. Cir. 1987).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium agrees that an instruction on this topic is appropriate, but contends that its single instruction more completely instructs the jury on the applicable law.}

If you find that Rhodium infringed any valid claim of the '457 Patent, you must then consider what amount of damages to award to Midas Green. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Rhodium has not infringed any valid claim of the patent, then Midas Green is not entitled to any damages.

The damages you award must be adequate to compensate Midas Green for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Midas Green in approximately the same financial position that it would have been in had the infringement not occurred.

Midas Green has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Midas Green establishes that it more likely than not has suffered. While Midas Green is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Midas Green may be entitled to recover. In this case, Midas Green seeks lost profits or, alternatively, a reasonable royalty.

Lost profits refers to the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "what profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related products with those lost sales or from being forced to reduce its price for its product or other related products to compete.

A reasonable royalty is defined as the money amount Midas Green and Rhodium would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that if you conclude that it is entitled to damages, Midas Green is entitled to recover no less than a reasonable royalty for each infringing sale.

*Source:*      *AIPLA Model Patent Jury Instructions, 2018; 35 U.S.C. § 284 (2004); WesternGeco LLC v. ION Geophysical Corp., 138 S. Ct. 2129, 2137 (2018); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1333 (Fed. Cir. 2009); Monsanto Co. v. McFarling, 488 F.3d*

*973, 978 (Fed. Cir. 2007); Bigelow v. R.K.O. Pictures, Inc., 327 U.S. 251, 264 (1946); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 868–69 (Fed. Cir. 2010); DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1309 (Fed. Cir. 2006); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1544–45 (Fed. Cir. 1995); Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 870 (Fed. Cir. 1993); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).*

### 3.13   Damages Start Date

The date that Midas first notified Rhodium of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. Midas must prove that it is more likely than not that the Rhodium was put on notice of the claim for patent infringement as of the date alleged by Midas.

Midas can give notice in either of two ways. The first way is to give notice to the public in general. Midas can do this by marking substantially all products it sold which included the patented invention, or by including on the labeling of substantially all products the word "patent" or the abbreviation "PAT" with the number of the patent. Midas also may give notice by marking substantially all products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number. This type of notice to the public in general starts from the date Midas began to mark substantially all of its products that use the invention with the patent number. If Midas did not mark substantially all of those products with the patent number, then Midas did not provide notice in this way.

A second way Midas can give notice of its patents is to directly notify Rhodium with a specific claim that the allegedly infringing product infringed the '457 patent. This type of notice starts from the date Rhodium received the notice.

If you find that Midas, before filing this lawsuit, did not provide an effective public notice by properly marking its products to, and did not properly provide direct notice to Rhodium with a specific charge that the allegedly infringing product infringed, then Midas can only recover damages for infringement that occurred after it sued Rhodium on January 1, 2022.

*35 U.S.C. § 287(a); Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp., 616 F.3d 1357, 1373-74 (Fed. Cir. 2010); Gart v. Logitech, Inc., 254 F.3d 1334, 1345 (Fed. Cir. 2001); Lans v. Digital Equip. Corp., 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001); Amsted Indus., Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 184-87 (Fed. Cir. 1994); Devices for Med., Inc. v. Boehl, 822 F.2d 1062, 1066 (Fed. Cir. 1987).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.14    Kinds of Damages That Can Be Recovered

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "what profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related products with those lost sales or from being forced to reduce its price for its product or other related products to compete.

Another kind of patent damages is an established royalty, namely an amount that the patentee has agreed to accept for licensing the patented invention to either the accused infringer or to other parties through a consistent licensing practice outside of litigation.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

*35 U.S.C. § 284; Rude v. Westcott, 130 U.S. 152, 165 (1889); Seymour v. McCormick, 57 U.S.480, 490-91 (1854); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1333 (Fed. Cir. 2009); Monsanto Co. v. McFarling, 488 F.3d 973, 978 (Fed. Cir. 2007); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium contends that this separate instruction is unnecessary because the information covered herein is included in Rhodium's proposed instruction 3.12. Rhodium suggests that its more succinct summary will conserve jury time. Further, to the extent the Court includes this instruction, it should not include the paragraph on established royalty; Midas does not contend that there is an established royalty for its technology.}

65

### 3.15   Lost Profits  - Generally

{Rhodium agrees that an instruction on these topics are appropriate if Midas Green's expert will be permitted to opine on lost profits notwithstanding Rhodium's pending *Daubert* motion, Dkt. 154. However, Rhodium contends that its single instruction is more straightforward, and will more ably assist the jury in determining the issues.}

### 3.15.1  Midas Green Proposal

#### (a)    Lost Profits – The "But For" Test

Midas is seeking lost profits damages in this case. To prove lost profits, Midas must show that, but for Rhodium's infringement, Midas would have made additional profits through the sale of all or a portion of the sales of the allegedly infringing products made by Rhodium. Plaintiff must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the parties who practiced the allegedly infringing product from Rhodium would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Midas, not the profits, if any, made by Rhodium.

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1289 (Fed. Cir. 2011); Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262 (Fed. Cir. 2008); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); Micro Chem. v. Lextron, Inc., 318 F.3d 1119, 1122-25 (Fed. Cir. 2003); Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C., 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003); Tate Access Floors, Inc. v. Maxcess Techs., Inc., 222 F.3d 958, 971 (Fed. Cir. 2000); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); King Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989); Ryco, Inc. v. Ag- Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988); King Instrument Corp. v. Otari Corp., 767 F.2d 853, 863-64 (Fed. Cir. 1985); Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 21 (Fed. Cir. 1984); Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1365 (Fed. Cir. 1984); Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578-79 (Fed. Cir. 1983).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

#### (b)    Lost Profits – Panduit Factors

Midas has proven its lost profits if you find that Midas has proven each of the following factors by the more likely than not standard:

1.     the demand for the patented product;

2.     absence of acceptable non-infringing substitutes;

3.    that Midas had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Rhodium; and

4.    the amount of profit that Midas would have made if it were not for Rhodium's infringement.

I will now explain each of these factors.

*Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275 (Fed. Cir. 2017); Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1287 (Fed. Cir. 2011); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1329 (Fed. Cir. 2009); Tate Access Floors, Inc. v. Maxcess Techs., Inc., 222 F.3d 958, 971 (Fed. Cir. 2000); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-79 (Fed. Cir. 1997); Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989); Yarway Corp. v. Eur-Control USA, Inc., 775 F.2d 268, 275 (Fed.Cir. 1985); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.15.2  Rhodium Proposal

To recover lost profits (as opposed to reasonable royalties), Midas must show a causal relationship between the infringement and its loss of profit. In other words, Midas must show that, but for the infringement, there is a reasonable probability that it would have earned higher profits. To show this, Midas must prove that, if there had been no infringement, it would have sold its products to Rhodium. Midas is entitled to lost profits if it establishes each of the following:

(1) That there was demand for the patented product.

(2) That there were no available, acceptable, noninfringing substitute products, or, if there were, that Rhodium would have bought Midas's product, despite the availability of other acceptable noninfringing substitutes.

(3) That Midas had the manufacturing and marketing capacity to make the sales to Rhodium for which Midas seeks an award of lost profits—in other words, that Midas was capable of satisfying the demand.

(4) The amount of profit that Midas would have made if Rhodium had not infringed.

*Source: Federal Circuit Bar Association Model Patent Jury Instructions § B.5, 5.2 (May 2020); 35 U.S.C. § 284; Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 502-07 (1964); Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed. Cir. 2003); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-78*

*(Fed. Cir. 1997); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); Carella v. Starlight Archery, 804 F.2d 135, 141 (Fed. Cir. 1986); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552 (Fed. Cir. 1984); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978). The four-factor "but for" test was first articulated in Panduit, 575 F.2d at 1156, and has since been adopted by the Federal Circuit. See, e.g., Rite-Hite, 56 F.3d at 1545. It is not, however, the only available method for proving lost profits. Id.; see also BIC, 1 F.3d at 1218-19. Once a patent holder has shown the four elements of the Panduit test, the burden then shifts to alleged infringer to show that patent holder's "but for" causation analysis is unreasonable under the specific circumstances. Rite-Hite, 56 F.3d at 1545.*

### 3.16    Lost Profits – Panduit Factors – Demand

The first factor asks whether there was demand for the patented product in the relevant market. Midas can prove demand for the patented product by showing significant sales of Midas's own patented product. Midas also can prove demand for the patented product by showing Rhodium's demand for the Midas' product by proving Rhodium made and used Midas' product.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1330 (Fed. Cir. 2009);Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552 (Fed. Cir. 1984).*

{Rhodium objects that this instruction is circular – Midas would have the Court instruct the jury that the existence of infringement proves demand for Midas's product. Midas's construction therefore reads the "demand for the patented product" out of the test. It is also inaccurate on its own terms – Rhodium constructed its own products. The Court should adopt Rhodium's proposed construction.}

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

To show that it has sold the patented product, Midas must show it is more likely than not that the products it sold contain each and every limitation of the patented invention.

*Source: Federal Circuit Bar Association Model Patent Jury Instructions § B.5, 5.2 (May 2020); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1330 (Fed. Cir. 2009); Hebert v. Lisle Corp., 99 F.3d 1109, 1119 (Fed. Cir. 1990).*

### 3.17    Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes

The second factor asks whether there were non-infringing, acceptable substitutes for Midas's product that competed with Rhodium's infringing product in the marketplace and the impact of such substitutes on the marketplace absent the sale of Rhodium's product. If the realities of the marketplace are that competitors other than Midas would likely have captured some or all of the products made by Rhodium, even despite a difference in the products, then Midas is not entitled to lost profits on those sales.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent. A non-infringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product. The acceptable substitutes, in addition to being either licensed or non-infringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then Rhodium must show by a preponderance of the evidence that, during the damages period, a competitor or Rhodium had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute.

Even if you find that Midas's and Rhodium's products were the only ones with the advantages of the patented invention, Midas is nonetheless required to prove to you that it, in fact, would have made Rhodium's infringing sales.

*SynQor, Inc. v. Aresyn Techs., Inc., 709 F.3d 1365, 1383 (Fed. Cir. 2013); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, (Fed. Cir. 2008); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-78 (Fed. Cir.1997); Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); Standard Havens Prods., Inc. v. Gencor Indus., 953 F.2d 1360, 1373 (Fed. Cir. 1991); Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1166 (Fed. Cir. 1991); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 901-02 (Fed. Cir. 1986).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.18    Lost Profits – Panduit Factors  - Ability to Meet Demand

The third factor asks whether Midas had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Rhodium's infringement. Midas must prove that it could have supplied the additional products needed to make the sales Midas said it lost, or that someone working with Midas could have supplied the additional products. Midas also must prove that it more likely than not had the ability to market and sell these additional products.

*Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1553 (Fed. Cir. 1997); Kearns v. Chrysler Corp., 32 F.3d 1541, 1551 (Fed. Cir. 1994); Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 825 (Fed. Cir. 1989); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 554 (Fed. Cir. 1984).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, Midas must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Midas must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

*Source: Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1553 (Fed. Cir. 1997) (finding that the patent holder, a young company, would have expanded to meet the increased demand created by the success of the patented product); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 554 (Fed. Cir. 1984).*

### 3.19    Lost Profits – Amount of Profit – Incremental Income Approach

Midas may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that Midas would have had to pay to make the lost sales. This might include additional costs for making the products, additional sales costs, additional packaging costs, additional shipping costs, etc. Any costs that do not change when more products are made, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost sales amount. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

*Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1572 (Fed. Cir. 1996); Oiness v. Walgreen Co., 88 F.3d 1025, 1030 (Fed. Cir. 1996); Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991); Kalman v. Berlyn Corp., 914 F.2d1473, 1482-83 (Fed. Cir. 1990); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1579-80 (Fed. Cir. 1989); Ryco, Inc. v. Ag-Bag Corp., 857 F.2d 1418, 1428 (Fed. Cir. 1988); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1327 (Fed. Cir. 1987); King Instrument Corp. v. Otari, 767 F.2d 853, 863-64 (Fed. Cir. 1985); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 554-55 (Fed. Cir. 1984); Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 22 (Fed. Cir. 1984); Bio-Rad Labs., Inc. v. Nicolet Inst. Corp., 739 F.2d 604 (Fed. Cir. 1984); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.20    Lost Profits – Convoyed Sales

In this case, Midas contends that its product is ordinarily sold along with other products, namely collateral products. These other products are called "collateral products." It is part of your job to determine whether Midas has proven that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, Midas must prove two things. First, Midas must prove that it is more likely than not that it would have sold the collateral products but for the infringement. Second, the collateral products and the product must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the product.

*Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1333 (Fed. Cir. 2009); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989); Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 656 (Fed. Cir. 1985); Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 22-23 (Fed. Cir. 1984).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium objects to Midas's instruction, which misstates the law (as it does not apply *Warsaw Orthopedic*'s functional relationship test). The Court should not instruct the jury on a standard that is contrary to law. Rhodium addresses this issue at length in its motion to exclude the testimony of J. Duross O'Bryan, Dkt. 154.}

In this case, in addition to lost profits for the sales of products that infringe its patent, Midas is seeking lost profits from sales of unpatented parts of the immersion cooling systems it sells (such as piping and fans), which Midas contends it would have sold to Rhodium along with the product it sells that competes with Rhodium's infringing products. These products sold along with the competitive product are called collateral products. To recover lost profits on sales of such collateral products, Midas must establish two things. First, Midas must establish it is more likely than not that it would have sold the collateral products but for the infringement. Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or, in other words, they must constitute a single functional unit. Recovery for lost profits on sales of collateral products must not include items that can be used independent of the patented device and were sold with the competitive product only as a matter of convenience or business advantage. Midas cannot recover lost profits for the collateral products if the collateral products work as well with a non-infringing system.

*Source: Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc) (denying recovery for lost profits on collateral sales where nonpatented product lacked a functional relationship to the patented product); Warsaw Orthopedic, Inc. v. NuVasive, Inc., 778 F.3d 1365, 1375-76 (Fed. Cir. 2015), vacated on other grounds, 136 S. Ct. 893 (2016), reinstated in relevant part, 824 F.3d 1344, 1346 (Fed. Cir. 2016) (components sold in a single kit with patented product for use with patented product lacked a functional relationship where those components would work as well with technologies not covered by the patent); see also State Indus., Inc. v. Mar-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1157-58 (6th Cir. 1978).*

### 3.21    Reasonable Royalty – Generally

If you find that Midas has not proven its claim for lost profits, or if you find that Midas has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.

The amount of damages that Rhodium pays Midas for infringing Midas's patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Midas's invention.

You must award Midas a reasonable royalty in the amount that Midas has proven it could have earned on any infringing sales for which you have not already awarded lost profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, or sell a patented product.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

*35 U.S.C. § 284; Exmark Mfg. Co., v. Briggs & Stratton Power Group,    F.3d (Fed. Cir. 2018); Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014); VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed. Cir. 2014); Apple Inc. v. Motorola Inc., 757 F.3d 1286 (Fed. Cir. 2014); Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1312 (Fed. Cir. 2011); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1998) overruled on other grounds; Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir 2004); Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1119 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium agrees that an instruction on these topics are appropriate if Midas Green's expert will be permitted to opine on a reasonably royalty notwithstanding Rhodium's pending *Daubert* motion, Dkt. 154. Rhodium proposes its own instruction below, but given the overlap in the parties' proposals, Rhodium anticipates that an agreement can be reached.

Rhodium notes that, to avoid confusion and counter the implication implicit in Midas's proposal that a prevailing defendant is entitled to a royalty, any final version of this instruction should include the following two sentences:

"However, there is no minimum amount you must award as a reasonable royalty. Midas must prove the amount of the royalty it is entitled to and you must award the royalty that the evidence supports, no more, no less."

}

If you find that a patent claim is infringed and not invalid, Midas is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Midas has not proved its claim for lost profits, then you must award it a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. However, there is no minimum amount you must award as a reasonable royalty. Midas must prove the amount of the royalty it is entitled to and you must award the royalty that the evidence supports, no more, no less.

*Source: Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § B.5, 5.5; 35 U.S.C. § 284; Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336 (Fed. Cir. 2001); Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1998); Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996); RiteHite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Lindemann Maschinenfabrik Gmbh v. Am. Hoist & Derrick Co., 895 F.2d 1403, 1407-08 (Fed. Cir. 1990) (no minimum reasonable royalty); EVS Codec Techs., LLC v. ZTE Corp., Civil Action No. 3:19-cv-00385-M, 2020 WL 10847326 at \*7-\*8 (N.D. Tex. July 21, 2020) (same).*

### 3.22    Reasonable Royalty – Hypothetical Negotiation Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Midas and Rhodium. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation [understood][believed] that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

Apple Inc. v. Motorola Inc., 757 F.3d 1286 (Fed. Cir. 2014); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 75 (Fed. Cir. 2012); Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1311 (Fed. Cir. 2011); Fujifilm Corp. v. Benun, 605 F.3d 1366, 1372 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324-25 (Fed. Cir. 2009); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 870 (Fed. Cir. 1993).

*Source:* 2018 AIPLA Model Patent Jury Instructions

*Source:* 35 U.S.C. § 284; *Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Seymour v. McCormick*, 57 U.S. 480, 490–91 (1854); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009); *Monsanto Co. v. McFarling*, 488 F.3d 973, 978 (Fed. Cir. 2007); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); 35 U.S.C. § 284; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Group*, 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Rhodium Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011).

### 3.23    Reasonable Royalty – Relevant Factors If Using the Hypothetical Negotiation Method

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product.

(2)    The value that factors other than the claimed invention contribute to the accused product.

(3)    Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

[LIST ONLY THOSE FACTORS RELEVANT IN THE CASE AND PROPERLY SUPPORTED BY ADMITTED EVIDENCE.]

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by Rhodium to license other patents comparable to the '457 patent.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the '457 patent and the term of the license.

8.    The established profitability of the product made under the '457 patent; its commercial success; and its popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.    The extent to which Rhodium has made use of the invention; and any evidence that shows the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.    The opinion testimony of qualified experts.

15.    The amount that a licensor and a licensee (such as Rhodium) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1230-32 (Fed. Cir. 2014); Apple Inc. v. Motorola Inc., 757 F.3d 1286 (Fed. Cir. 2014); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 60 (Fed. Cir. 2012); Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1319 (Fed. Cir. 2010); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869-73 (Fed. Cir. 2010); Monsanto Co. v. McFarling, 488 F.3d 973 (Fed. Cir. 2007); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 898-*

*900 (Fed. Cir. 1986); Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{The parties are in broad agreement on this instruction. Rhodium believes that the introductory list of factors will assist in situating the jury and indicating that the *Georgia-Pacific* factors are non-exclusive and not exhaustive.}

*Source: Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

### 3.24    Reasonable Royalty – Attribution / Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Rhodium's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

*Exmark Mfg. Co., v. Briggs & Stratton Power Group,F.3d (Fed. Cir. 2018); AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1339 (Fed. Cir. 2015); Ericsson, Inc. v. D-Link Sys., 773 F.3d 1201, 1226 (Fed. Cir. 2014); Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1319 (Fed. Cir. 2014); VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308 (Fed. Cir. 2014); Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255 (Fed. Cir. 2013); LaserDynamics, Inc. v. Quanta Computer, Inc. et al, 694 F.3d 51, 60 (Fed. Cir. 2012); Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009); Imonex Svcs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH, 408 F.3d 1374 (Fed. Cir. 2005).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Midas's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. Unless you find that the claimed invention is the sole driving factor for customers' demand for the accused product, Midas may not use the value of the entire product to calculate a reasonable royalty. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and not on the value of features that the patent does not cover.

*Source:        Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 904 F.3d 965, 977–79 (Fed. Cir. 2018); Exmark Mfg. Co., v. Briggs & Stratton Power Grp., 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1339 (Fed. Cir. 2015); Ericsson, Inc. v. D-Link Sys., 773 F.3d 1201, 1226 (Fed. Cir. 2014); Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1319 (Fed. Cir. 2014); VirnetX, Inc. v. Rhodium Sys., Inc., 767*

*F.3d 1308 (Fed. Cir. 2014); Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255 (Fed. Cir. 2013); Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1336 (Fed. Cir. 2009).*

{Rhodium's proposal economizes and is a clearer, better explanation of the governing law. Midas's does not discuss the "sole driving factor" requirement of the entire market value rule, and yet Midas does not propose a separate instruction on the entire market value rule.}

### 3.25    Reasonable Royalty – Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

*35 U.S.C. § 284; Sinclair Ref. Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 698 (1933); Aqua Shield v. Inter Pool Cover Team, et al., 774 F.3d 766, 770-773 (Fed. Cir. 2014); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324-25, 1333 (Fed. Cir. 2009); Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002); Interactive Pictures Corp. v. Infinite Pictures Corp., 274 F.3d 1371, 1384-85 (2001); Studiengesellschaft Kohle, mbH v. Dart Indus., Inc., 862 F.2d 1564, 1571 (Fed. Cir. 1988); Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 898-900 (Fed. Cir. 1986).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.26    Reasonable Royalty – Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

*Prism Techs. LLC v. Sprint Spectrum L.P., 849 F.3d 1360, 1376-1377 (Fed. Cir. 2017); Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1313 (Fed. Cir. 2011); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1571-72 (Fed. Cir. 1996).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Substantively, the parties' proposed instructions are similar. But on the whole, Rhodium's instruction explains the concepts more clearly, including because Midas's instruction does not include the separate sentence, at the end of Rhodium's instructions, regarding the definition of a non-infringing substitute. }

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product/method that is licensed under the patent or that does not infringe the patent. To be an acceptable, non-infringing alternative, a product must have had one or more of the advantages of the patented invention that were important to the purchasers of the infring-ing product. A non-infringing substitute may be one that involved the modification of the in-fringing product to avoid infringement or the removal of at least one feature of the invention from the product.

*Source: MV3 Partners LLC v. Roku, Inc., No. 6:18-cv-00308-ADA (W.D. Tex. Oct. 14, 2020); Personalized Media Communications, LLC v. Google LLC, No. 2:19-cv-90-JRG (E.D.Tex. Nov. 6, 2020); DataTreasury Corp. v. Well Fargo & Co., No. 2:06- cv-72, 2011 WL 8810604, at \*13 (E.D. Tex. Aug. 2, 2011); SSL Servs., LLC v. Citrix Sys., Inc., No. 2:08-cv-158-JRG, 2012 WL 1995514, at \*2 (E.D. Tex. June 4, 2012), related appeal, 769 F.3d 1073, 1093-94 (Fed. Cir. 2014); Smart Skins, LLC v. Microsoft Corp., No. C15-554-MJP, 2016 WL 4148091, at \*2-3 (W.D. Wash. July 1, 2016); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1373 (Fed. Cir. 2008), modified on other grounds, 557 F.3d 1377 (Fed. Cir. 2009); SynQor, Inc. v. Aresyn Techs., Inc., 709 F.3d 1365, 1383 (Fed. Cir. 2013); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, (Fed. Cir. 2008); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); Standard Havens Prods., Inc. v. Gencor Indus., 953 F.2d 1360, 1373 (Fed. Cir. 1991); Kaufman Co. v. Lantech, Inc., 926*

*F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1166 (Fed. Cir. 1991); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 901-02 (Fed. Cir. 1986); AIPLA Model Patent Jury Instructions, 2018.*

### 3.27    Reasonable Royalty – Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Midas and Rhodium in order for you to consider it.

However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Midas and Rhodium, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

*Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1227-28 (Fed. Cir. 2014); VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1330-31 (Fed. Cir. 2014); Apple Inc. v. Motorola Inc., 757 F.3d 1286, 1325-26 (Fed. Cir. 2014); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77-81 (Fed. Cir. 2012); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869-70 (Fed. Cir. 2010); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.28    Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to Rhodium's failure to keep proper records should be decided in favor of Midas. Any confusion or difficulties caused by Rhodium's records also should be held against Rhodium, not Midas.

*Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

{Rhodium objects that this instruction is unnecessary and prejudicial. Midas Green has not identified any facts that would make it appropriate (there are none), and absent a showing that evidence is missing, the jury should not hear an instruction that might lead them to suspect that materials are missing without any basis. The Court should decline to give this instruction.}

### 3.29    Willful Infringement

If you find that it is more likely than not that Rhodium infringed a valid claim of Midas's patent, either literally or under the doctrine of equivalents, then you must also determine whether or not Rhodium's infringement was willful.

To show that Rhodium's infringement was willful, Midas must prove by a preponderance of the evidence that Rhodium knew of Midas's patent and intentionally infringed at least one asserted claim of the patent. For example, you may consider whether Rhodium's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith. However, you may not find that Rhodium's infringement was willful merely because Rhodium knew about the patent, without more. In determining whether Midas has proven that Rhodium's infringement was willful, you must consider all of the circumstances and assess Rhodium's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

*Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923 (2016); WesternGeco L.L.C. v. Ion Geophysical Corp., No. 2013-1527 (Fed. Cir. Sept. 21, 2016); WBIP, LLC v. Kohler Co., No. 2015-1038, 2016 WL 3902668, at \*15 (Fed. Cir. July 19, 2016).*

*Source: 2018 AIPLA Model Patent Jury Instructions*

### 3.30    Bias – Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated  as equals in a court of justice.

*Source: Pattern Jury Instructions 2020*

### 3.31    Duty to Deliberate; Notes

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re- examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the writ- ten questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

*Source: Pattern Jury Instructions 2020*

Proposed Special Instruction No. 1:

If an accused product is designed to be altered or assembled before operation, a defendant accused of infringement  may be held liable for infringement if the accused product, as altered or assembled, infringes a valid patent as long as the components of the accused product are ready for assembly and serve no useful noninfringing purpose.

Source:

[I]f a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." Mass Engineered Design, Inc. v. Ergotron, Inc., 633 F. Supp. 2d 361, 377 (E.D. Tex. Apr. 17, 2009); High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1556 (Fed. Cir. 1995); see also Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11, 19 (Fed. Cir. 1984) (components of a machine held to infringe when components are ready for assembly and serve "no useful noninfringing purpose").

{Rhodium objects to Midas's proposed "special instruction No. 1." It misstates the law of direct infringement, which requires a complete device or system. 35 U.S.C. S. 271(a); Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 527-28 (1972); Synchronoss Techs., Inc. v. Dropbox, Inc., 987 F.3d 1358, 1368 (Fed. Cir. 2021) ("'[O]ne may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention.'") (quoting Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000)). It also misconstrues and misapplies the cited Mass Engineered Design case, which has no applicability here. See High Tech Med. Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551, 1555 (Fed. Cir. 1995) (rejecting the proposition that a device infringes if it can merely be altered without undue difficulty to operate in an infringing manner, and holding that rather, the claim must read on the device as made and sold).}

Proposed Special Instruction 2:

Direct infringement by use of a system claim requires a party to use each and every element of a claimed system. To use a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it. Use does not require a party to exercise physical or direct control over each individual element of the system.

Source:

Georgetown Rail Equip. Co. v. Holland L.P., 867 F.3d 1229, 1239 (Fed. Cir. 2017); Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc., 631 F.3d 1279, 1284 (Fed. Cir. 2011)

{Rhodium objects to Midas's proposed "special instruction no. 2": The first sentence is duplicative and unnecessary in light of the other instructions. The remaining sentences are irrelevant, confusing, and potentially prejudicial, including because the alleged infringement does not involve systems maintained or operated by multiple parties or in multiple places. There is thus no need or basis for an instruction on the "put into service" requirement, and the proposed language might be read to suggest, incorrectly, that Rhodium may be found to directly infringe based on use of a system it does not possess or control. Nor is the proposed instruction (in any form) warranted based upon indirect infringement, which Midas does not allege.}